**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| **1001 WL LLC,** | ) | Case No. 24-10119 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within fourteen (14) days from the date of service,**

**the relief requested herein may be granted without a hearing being held.**

**A timely response is necessary for a hearing to be held.**

TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership ("Romspen"), as senior secured lienholder against property of the estate, files this *Motion for Relief from the Automatic Stay* (the "Motion"). A form of order granting this Motion is appended hereto, and will be uploaded separately to the Court in accordance with local rules. In support of the Motion, Romspen relies on: (i) the Declaration of Scott Mestrezat (the "Romspen Declaration"), which will be served but not filed in accordance with Local Rule of Bankruptcy Procedure 4001(a)(4)(A); (ii) the exhibits attached to this Motion; and (iii) the entire record before the Court in this single asset real estate Chapter 11 case, and states as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

## FACTUAL BACKGROUND

2.      On February 6, 2024 (the "Petition Date"), 1001 WL LLC (the "Debtor") filed a voluntary petition for protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[1] admitting in Paragraph 7 of its Petition that it filed as a single asset real estate ("SARE") debtor.

### A.  Debtor's Acceptance of Transfer of its Single Real Estate Asset Two Weeks Prepetition.

3.      Romspen learned of this bankruptcy filing when the Debtor's attorney, Mr. Sather, sent an email to undersigned counsel on February 6, 2024, at 9:49 a.m. The subject line of the email read, "1001 WL, LLC, Successor in Interest to Galleria Note Holder, LLC." A true and correct copy of the email from Mr. Sather is attached hereto as Exhibit 26.

4.      Upon further inquiry, Mr. Sather produced a Special Warranty Deed recorded on January 22, 2024 (the "Prepetition Transfer Deed"), purporting to convey to the Debtor an office building located at 1001 West Loop South, Houston, Texas, 77027 (the "Office Building") from the then-owner, Galleria Loop Note Holder, LLC ("GLNH"). A true and correct copy of the Prepetition Transfer Deed is attached hereto as Exhibit 24.

5.      The timing of Mr. Sather's email coincided with the February 6, 2024, 10:00 a.m. properly-noticed, scheduled non-judicial trustee's sale of the Office Building and related personal property (collectively, the "Property") pursuant to, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 4, 2019, given by GLNH for the benefit of Romspen, as beneficiary, recorded on September 5, 2019, in the Official Records of Harris County, Texas at Document Number RP-2019-392981 (the "Romspen

---

[1]      The use of sections herein shall refer to the Bankruptcy Code, except as otherwise specified.

DOT"). Romspen's interest in the Property, the circumstances leading to the non-judicial trustee's sale, and GLNH's efforts to hinder, delay, and frustrate Romspen's enforcement efforts are described more fully below.

**B.  Common Identity of Interests Among Debtor and Other Interested Parties.**

6.     As of the filing of this Motion, the Debtor has not filed its statement of financial affairs and schedules.

7.     The Debtor has only filed its Chapter 11 petition (the "Petition") that lists (i) no unsecured creditors and (ii) four notice parties: Romspen, the Harris County Tax Assessor; "Galleria Note Holder, LLC," and "Ali Chaudhri."

8.     GLNH is "Galleria **Loop** Note Holder, LLC" (emphasis added). Romspen is unfamiliar with an entity named "Galleria Note Holder, LLC." Mr. Sather referenced "Galleria Note Holder, LLC" in his February 6 email. However, as described more fully below, Romspen is owed more than $30 million from GLNH, whose name is similar to the name listed as a notice party in the Petition and in Mr. Sather's email. In fact, Romspen is in active litigation with GLNH pending in Harris County, Texas, for breach of GLNH's loan obligations (the "Romspen Action"), and Romspen was seeking to foreclose on GLNH's interests in and to the Property at the time of Mr. Sather's email. GLNH's counsel in the state court action is James Pope, and the address for "Galleria Note Holder, LLC" in the notice party section of the Petition is "c/o James Pope."[2]

---

[2]     On February 12, 2024, Mr. Pope filed on behalf of GLNH in the Romspen Action a "Suggestion of Bankruptcy:" (i) reporting to the state court judge that the "Property is part of the Debtor's bankruptcy estate, and is afforded automatic stay protection . . . ." and (ii) attaching a copy of Romspen's *Notice of Non-Consent to Use of Cash Collateral* filed in this case at ECF No. 3. A true and correct copy of the Suggestion of Bankruptcy is attached hereto as Exhibit 27. Romspen asks that this Court take judicial notice of Exhibit 27 pursuant to Federal Rule of Evidence 201.

Romspen therefore assumes that the name used by Mr. Sather and in the notice section of the Petition are mistaken forms of GLNH.

9.      Romspen is unfamiliar with an individual named "Ali Chaudhri." However, as described more fully below, Ali Choudhri ("Choudhri") is (i) the person in control of GLNH; (ii) a guarantor of the loan made by Romspen to GLNH; and (iii) a co-defendant with GLNH in the Romspen Action as a result of his failure and refusal to pay and perform as agreed under his guaranty. Choudhri signed the Romspen DOT on behalf of GLNH, as well as the Prepetition Transfer Deed on behalf of GLNH. Choudhri also signed, on behalf of the Debtor, a "Deed of Trust & Security Agreement" on February 2, 2024 (the "Choudhri DOT"), recorded within two (2) hours of this bankruptcy filing on February 6, 2024, purporting to grant a security interest in and to the Property in favor of himself, as lender, to secure repayment of an alleged promissory note with an undisclosed date, in an undisclosed amount, and with undisclosed terms, allegedly given by the Debtor to Choudhri. A true and correct copy of the Choudhri DOT is attached hereto as Exhibit 25.[3] Romspen therefore assumes that Choudhri's name is simply misspelled in the notice portion of the Petition.

### C.  Romspen's Interest in the Property.

10.      Romspen made a loan to GLNH in the original principal amount of $18,500,000.00 (the "Loan").

11.      The Loan is evidenced by, among other things: (i) that certain Loan Agreement dated May 31, 2019, between GLNH (signed by Choudhri) and Romspen (as amended, modified, and/or restated from time to time, the "Loan Agreement"); and (ii) that certain Promissory Note

---

[3]      Romspen asks that the Court take judicial notice of Exhibit 25 pursuant to Federal Rule of Evidence 201.

dated May 31, 2019, in the original amount of $18,500,000.00 given by GLNH (signed by Choudhri) in favor of Romspen (as amended, modified, and/or restated from time to time, the "Note" and together with the Loan Agreement and all other documents evidencing or securing the Loan, the "Loan Documents"). True and correct copies of the Loan Agreement and the initial Note are attached hereto as Exhibits 1 and 2, respectively.

12.     As of the Petition Date, the amount of indebtedness GLNH owes Romspen under the Loan is no less than **$33,215,553.94**.

13.     To secure GLNH's payment and performance obligations under the Loan, GLNH granted to Romspen, among other things: (i) a senior priority lien interest in and to the Property, which includes the Office Building and related personal property, all as set forth in the Romspen DOT (signed by Choudhri); (ii) an absolute assignment of all the rents generated from and leases related to the Office Building pursuant to that certain Assignment of Leases and Rents dated September 4, 2019, given by GLNH (signed by Choudhri) to Romspen, and recorded on September 5, 2019, in the Official Records of Harris County, Texas at Document Number RP-2019-393175 (the "Romspen Assignment of Rents"); and (iii) a senior priority security interest in substantially all of GLNH's personal property as set forth in that certain Security Agreement dated May 31, 2019 given by GLNH (signed by Choudhri) to Romspen (the "Romspen Security Agreement" and, together with the Romspen DOT and the Romspen Assignment of Rents, the "Security Documents"). True and correct copies of the Security Documents are attached hereto as Exhibits 3, 4, and 5, respectively.

14.     Romspen has perfected its security interests in and to the Property by recording the Romspen DOT and the Assignment of Rents in the Harris County Records; and by filing a UCC-1 Financing Statement in the Texas Secretary of State's Office on June 13, 2019 as document

number 19-0022217680. A true and correct copy of the UCC-1 financing statement is attached hereto as <u>Exhibit</u> 23.

15. Mr. Choudhri absolutely, unconditionally, and irrevocably guaranteed GLNH's Loan repayment and performance obligations as set forth in that certain Guaranty agreement dated as of May 31, 2019, executed by Choudhri in favor of Romspen (the "<u>Guaranty</u>"). A true and correct copy of the Guaranty is attached hereto as <u>Exhibit</u> 21.

16. The Loan Documents prohibit GLNH from transferring any of the Property. Loan Agreement, § 5(C); Romspen DOT, § 6.2.

17. Romspen asserts that its interests in the leases, rents, and proceeds generated by the Office Building constitute Romspen's collateral, including cash collateral as defined in Section 363(a).

18. The Loan was intended to be a short-term loan, with an original maturity date only 12 months after the Loan's inception. Note, § 1.7.

19. The Loan accrues non-default interest at the "<u>Interest Rate</u>," which equals 10.25% per annum. *Id.* § 1.1(a). The Loan accrues default interest at the "<u>Default Rate</u>," which equals 15.25% per annum. *Id.* § 2.3.

20. The parties agreed that, upon the occurrence and during the continuation of any event of default, GLNH's revocable license to collect and use rents that Romspen conditionally granted to GLNH under the Security Documents would be automatically revoked, and GLNH would be obligated to turn over to Romspen, upon Romspen's demand, all rents (and proceeds thereof) and books and records relating to the operation of the Property. *See* Romspen DOT, ¶¶ 1.1(h), 1.2, and 7.1(h); Romspen Assignment of Rents, ¶¶ 1(b), 1(e), and 6.

21.     GLNH also agreed that upon the occurrence and during the continuance of any event of default, Romspen would be authorized to seek the appointment of a receiver over the Property. *See* Deed of Trust, ¶ 7.1(g); Assignment of Rents, ¶¶ 6.2 and 16.2.

### D. GLNH's Serial Defaults and Romspen's Conditional Agreements to Forbear.

22.      GLNH defaulted under the Loan Documents in numerous ways, including but not limited to: (i) failing to repay the outstanding balance of the Note when it matured on May 31, 2020; (ii) failing to pay property taxes when due, resulting in the filing of third party tax liens; and (iii) permitting additional liens to be placed against the Office Building.

23.     As a result of the foregoing defaults, Romspen had the lawful right to enforce its rights and remedies, including non-judicial foreclosure of the Property and demanding that GLNH turn over all rents and revenues generated by the Office Building.

24.     At Choudhri's urging (on his own behalf and for GLNH), Romspen agreed not to pursue its enforcement rights. Rather, in good faith and under no obligation to do so, Romspen agreed to conditionally forbear on numerous occasions.

25.     Romspen first formally agreed to conditionally forbear as reflected in an agreement dated May 10, 2021 (the "First Forbearance Agreement") and subsequently in an agreement dated May 24, 2022 (the "First Amended and Restated Forbearance Agreement" and, together with the First Forbearance Agreement, the "Forbearance Agreements"). True and correct copies of the Forbearance Agreements (signed by Choudhri for GLNH and in his individual capacity) are attached hereto as Exhibits 6 and 7, respectively.

26.     Under the Forbearance Agreements, GLNH acknowledged the defaults under the Loan Documents and Romspen's right to pursue its lawful enforcement rights and remedies; and

Romspen conditionally agreed not to exercise its enforcement rights and remedies arising from GLNH's various defaults and breaches (including the Maturity Date Defaults).

27.    Under the First Forbearance Agreement, the parties acknowledged that the total amount of unpaid principal, interest, and late charges owing under the Loan, exclusive of costs, fees, and other expenses, equaled $20,706,379.02 as of January 18, 2021. In addition, the First Forbearance Agreement provides for a period of forbearance through no later than July 14, 2022, at which time GLNH agreed to repay the entire outstanding balance due and owing.

28.    Under the First Amended and Restated Forbearance Agreement, the parties acknowledged that the total amount of unpaid principal, interest, and late charges owing under the Loan, exclusive of costs, fees, and other expenses, equaled $21,290,227.80 as of March 18, 2022. In addition, the First Amended and Restated Forbearance Agreement provides for a period of forbearance through no later than December 30, 2022, at which time GLNH agreed to repay the entire outstanding balance due and owing.

29.    GLNH failed to perform as required under the Forbearance Agreements, despite Romspen's good-faith agreements to conditionally forbear. As a result, Romspen again had the lawful right to pursue and enforce its rights and remedies under the Loan Documents.

30.    Again, at Choudhri's urging (on his own behalf and for GLNH), and although under no obligation to do so, Romspen conditionally agreed not to pursue its enforcement rights and remedies as reflected in that certain Reinstatement of and Amendment to Loan Agreement dated as of November 14, 2022 ("Reinstatement Agreement"). A true and correct copy of the Reinstatement Agreement (signed by Choudhri on behalf of GLNH and in his individual capacity) is attached hereto as Exhibit 8.

31.     Among other things, in the Reinstatement Agreement, GLNH acknowledged that: (i) its prior defaults remained continuing and uncured; (ii) it had defaulted under the terms of the Forbearance Agreements; (iii) the period of forbearance had expired; and (iv) the total amount of unpaid Loan principal, interest, and late charges, exclusive of costs, fees, and other expenses, equaled $24,243,501.32 as of September 1, 2022. Reinstatement Agreement, p. 1 and §§ 1 and 10.

32.     In exchange for Romspen's agreement to conditionally reinstate the defaulted Loan and extend the maturity date to December 31, 2023, GLNH agreed to, among other things: (i) make an effective date payment of $500,000; an additional payment of $500,000.00 by no later than July 1, 2023; and monthly payments beginning March 15, 2023, of $183,000.00; and (ii) deliver certain financial records to Romspen within ten (10) days of the date of the Reinstatement Agreement, including the documents and financial information GLNH failed to deliver in connection with the Forbearance Agreements. *Id*. § 2.

33.     GLNH again failed to perform, including by failing to comply with its agreement to make the payments and deliver the documents and financial information required under the Reinstatement Agreement. As a result, Romspen again had the lawful right to pursue and enforce its rights and remedies under the Loan Documents. Romspen therefore notified GLNH of the defaults and initiated non-judicial foreclosure of its lien interests in the Property.

34.     GLNH, through last-minute promises made by Choudhri, once again requested that Romspen grant yet another chance to perform. Although under no obligation to do so, Romspen again, in good faith, conditionally agreed; and once again GLNH failed to perform. This occurred on at least two occasions in early 2023, resulting in cancelled trustee's sales in April 2023 and May 2023, followed by GLNH's failure to perform. Romspen, through counsel, sent several notices to GLNH and Choudhri, notifying them of these defaults, demanding them to cure, and

eventually accelerating the maturity date of the Note (to the extent acceleration was even necessary). True and correct copies of these notices are attached hereto as Exhibits 9-13.

35. Immediately before the scheduled June 2023 foreclosure sale, GLNH initiated a state court action and obtained a temporary restraining order without notice to Romspen. Romspen removed the action to federal court and filed a motion to dissolve the state court-issued temporary restraining order.

36. Choudhri (on his own behalf and for GLNH) again begged Romspen to provide him with more time to perform; and again, in good faith, Romspen agreed to an order resolving the injunction dispute. Days later, the parties entered into that certain First Amendment to Reinstatement of and Amendment to Loan Agreement (the "First Amended Reinstatement Agreement"), and the Amended and Restated First Amendment to Reinstatement of and Amendment to Loan Agreement (the "Amended and Restated First Amended Reinstatement Agreement" and, together with the First Amended Reinstatement Agreement, the "GLNH Last Chance Agreement"). A true and correct copy of the First Amended Reinstatement Agreement (signed by Choudhri on behalf of GLNH and in his individual capacity) is attached hereto as Exhibit 14 and a true and correct copy of the Amended and Restated First Amended Reinstatement Agreement (signed by Choudhri on behalf of GLNH and in his individual capacity) is attached hereto as Exhibit 15.

37. Under the GLNH Last Chance Agreement, among other things: (i) GLNH acknowledged that the total amount of unpaid principal, interest, and late charges owing under the Loan, exclusive of costs, fees, and other expenses, equaled $29,831,352.58 as of June 6, 2023; (ii) GLNH acknowledged its various defaults under the Loan Documents and Romspen's right to pursue its lawful enforcement rights and remedies; (iii) GLNH and Choudhri waived and released

any and all claims that they had against Romspen; (iv) Romspen agreed to conditionally extend the maturity date of the Loan to June 30, 2024, with the ability to further extend the maturity date to December 31, 2024, subject to various conditions and requirements, including that GLNH fully perform thereunder; (v) GLNH agreed to repay the entire outstanding Loan balance when due and owing; and (vi) GLNH agreed to promptly deliver specific documents and financial information to Romspen, and to make monthly payments to Romspen. *See* Amended and Restated First Amended Reinstatement Agreement, Recitals B and C and §§ 1, 5, and 6.

38.     In addition, under the GLNH Last Chance Agreement, GLNH was required to: (i) execute and deliver to Romspen an amended and restated promissory note (the "Amended Note"); (ii) cause a related third party to record a deed of trust granting Romspen a second-priority security interest on certain real property owned by that related third party (the "La Vernia DOT"); and (iii) deliver to Romspen certain information relating to the La Vernia DOT transaction. *See id.*, ¶¶ 1 and 4.

39.     GLNH delivered the Amended Note on August 18, 2023, signed by Choudhri on behalf of GLNH. A true and correct copy of the signed Amended Note is attached hereto as Exhibit 22.

40.     GLNH failed to timely perform its obligations under the GLNH Last Chance Agreement. For example, while GLNH caused the recording of the La Vernia DOT, GLNH did deliver the corresponding information as required – including proof that the recorded La Vernia DOT was in second-priority position, and the required information and consent from the senior lender.

41.     Romspen, through undersigned counsel, sent Notices to Cure and Intent to Accelerate on August 1, 2023, August 22, 2023, and September 20, 2023 to GLNH, Choudhri, and

their lawyers. True and correct copies of each of the foregoing notices are attached hereto as Exhibits 16, 17, and 18, respectively.

42.     GLNH provided some documentation but otherwise failed to cure.

43.     As a result of the ongoing failures to perform or cure, on October 13, 2023, Romspen caused a Notice of Substitute Trustee's Sale to be posted and recorded reflecting a sale date of November 7, 2023. A true and correct copy of the Notice of Substitute Trustee's Sale, along with the transmittal letter, are attached hereto as Exhibit 19. In the transmittal letter, Romspen also notified GLNH that, as provided in the Security Documents, the license granted to GLNH to collect rents from the Property had been revoked; all rents received from the Property were to be immediately forwarded to Romspen; and the outstanding balance of the Loan was immediately due and payable. GLNH ignored Romspen's demand, and in direct violation of GLNH's agreements contained in the Security Documents, GLNH refused to deliver any rents to Romspen and refused and failed to repay the outstanding balance of the Loan.

44.     In addition, on October 25, 2023, Romspen, through undersigned counsel, issued a letter to Choudhri and his counsel listing all of the outstanding payment and performance obligations that remained outstanding. A true and correct copy of this letter is attached hereto as Exhibit 20.

### E.  **Romspen's Foreclosure Efforts Obstructed by GLNH and Facilitated by the Debtor and Choudhri.**

45.     After Romspen's prior non-judicial sales were cancelled based on Choudhri's false promises to pay or perform, Romspen was prepared to conduct the non-judicial trustee's sale of the Property when scheduled on November 7, 2023. However, on the eve of the sale, GLNH secretly and without any notice to Romspen or its counsel initiated an action in Harris County, Texas, state court (the "GLNH Action") seeking, among other things, the issuance of a temporary

restraining order to prevent the sale. In doing so, GLNH raised bogus claims with a distorted recitation of the background facts. GLNH did all of this through counsel (Mr. Pope) and with full knowledge that Romspen was represented by undersigned counsel. That same day, and without notice to Romspen, the state court entered a temporary restraining order. As a result, Romspen caused the sale to be cancelled.

46.    Romspen filed a motion to dissolve the TRO, and filed an application for affirmative relief - to appoint a state court receiver. The judge in the GLNH Action set the receiver application for hearing on December 1, 2023; and the dissolution motion for hearing on December 4, 2023.

47.    After hours on November 30, 2023, GLNH non-suited the GLNH Action. Although Romspen's counsel appeared in court and argued that the non-suit did not moot Romspen's affirmative claim for the appointment of a receiver, the judge refused to consider the matter.

48.    Romspen then initiated the Romspen Action against GLNH and Choudhri for breaching their respective agreements. Romspen applied for appointment of a receiver over the Property, and a motion asking the judge to restrict GLNH's ability to file *ex parte* injunctive relief. Those motions remain pending.

49.    GLNH has been served, and has failed to timely answer the petition in the Romspen Action. Choudhri has evaded service of the citation and petition in the Romspen Action.

50.    With the improperly-issued temporary restraining order expired, Romspen properly noticed the Property for a non-judicial trustee's sale scheduled for February 6, 2024, at 10:00 a.m. A true and correct copy of the Notice of Substitute Trustee's Sale reflecting the February 6, 2024, 10:00 a.m. sale date and time is included as an enclosure to the transmittal letter attached as Exhibit 30.

13

51.     Immediately prior to the sale, Mr. Sather sent undersigned counsel notice of the filing of this bankruptcy case. Upon undersigned counsel's inquiry, Mr. Sather sent a copy of the Prepetition Transfer Deed – reflecting that the Property had been transferred by GLNH to the Debtor.

52.     GLNH did not seek Romspen's consent to the transfer of the Property; Romspen was not informed of GLNH's transfer of the Property; and Romspen did not consent to the transfer of the Property that is subject to Romspen's liens and security interests.

53.     As a result of the transfer of the Property to the Debtor and the Debtor's initiation of this case, Romspen instructed the trustee to cancel the scheduled non-judicial foreclosure sale of the Property.

54.     Although neither GLNH nor Choudhri have filed for bankruptcy protection, GLNH's counsel (Mr. Pope) filed, on February 12, 2024, a "Suggestion of Bankruptcy" in the Romspen Action.  *See* Exhibit 27.  This is clearly an attempt to further disrupt Romspen's efforts to enforce against even non-estate assets belonging to GLNH (if any) and Choudhri.

55.     Further, and despite that (i) the Office Building generates rents and (ii) the rents constitute the Property that is encumbered by Romspen's lien, the Debtor has not filed a motion (as of the filing of this Motion) for permission to use cash collateral. Romspen has filed its notice of non-consent to the use of its cash collateral, which non-consent is repeated here.

56.     It is also notable that Choudhri is not a stranger to problematic bankruptcy cases. A neighboring project owned by an entity called "Galleria 2425 Owner, LLC" filed a Chapter 11 case in July 2023 to avoid foreclosure by its senior lender (S.D. Tex. Bankr. Case No. 23-60036-CML); Judge Lopez dismissed the case on November 1, 2023, for cause; the entity again filed for Chapter 11 protection on December 5, 2023 to again avoid foreclosure by its senior lender (S.D.

Tex. Bankr. Case No. 23-34815, "Galleria II"); and on January 31, 2024, Judge Norman ordered the appointment of a Chapter 11 trustee. A true and correct copy of the order directing the appointment of a trustee in Galleria II is attached hereto as <u>Exhibit</u> 29. Also attached hereto as <u>Exhibit</u> 28 is a true and correct page from the Galleria II Statement of Financial Affairs identifying Choudhri as the 100% owner of the debtor.[4] The senior lender to the debtor filed a motion to convert in the Galleria II case at Docket Entry No. 72 setting forth a detailed history of the loan default, enforcement efforts, and obstructions imposed by its borrower, which resonate with the Romspen's experience with GLNH.

## F. <u>The Property's Poor Financial Performance and Cash Transfers to Insiders.</u>

57.    The most recent information provided to Romspen reflects that as of September 2023, the Property was only 61% occupied.

58.    From the few documents GLNH delivered to Romspen, Romspen learned that GLNH had transferred a total of nearly $600,000.00 to its affiliates and/or insiders from March through August, 2023. Romspen believes that if GLNH had delivered the full scope of requested documents – including bank records dating back to early 2022 – Romspen would have found transfers to affiliates and/or insiders totaling in the millions of dollars. Romspen also believes that if GLNH had timely and fully provided such documents, Romspen would have been able to protect against GLNH's improper transfers of Romspen's collateral to GLNH's insiders.   Romspen reserves all rights as it relates to the foregoing.

---

[4]    Romspen asks that the Court take judicial notice of <u>Exhibits</u> 28 and 29 pursuant to Federal Rule of Evidence 201, as well as the motion to convert filed at Docket No. 72 in the Galleria II case.

59.     In addition, the documents disclosed by GLNH to Romspen revealed that GLNH's operation of the Property has incurred a total of nearly $360,000.00 in net operating **losses** in the period of March 2023 – August 2023.

60.     Romspen asserts that the value of the Office Building is $23,400,000.00, pursuant to a recently-issued appraisal report.

## ARGUMENT

61.     Romspen requests that this Court enter an order pursuant to Section 362(d) terminating the automatic stay to permit Romspen to exercise all of its rights and remedies with respect to the Property.

62.     Several independent grounds justify granting Romspen relief from the automatic stay: (i) cause exists under Section 362(d)(1); (ii) the Debtor has no equity in the Property or any prospects for successfully reorganizing within a reasonable time, warranting stay relief under Section 362(d)(2); (iii) the Debtor cannot confirm a plan or make sufficient payments within the required timeline for a single asset real estate case pursuant to Section 362(d)(3); and (iv) Romspen's claim is secured by the Property, ownership of which was transferred days prior to the Petition Date by GLNH to the Debtor without Romspen's knowledge or consent, and the filing of this case is part of an ongoing scheme to hinder, delay, and defraud Romspen and other legitimate creditors – warranting stay relief *in rem* as to the Property in accordance with Section 362(d)(4).

63.     Romspen has the burden of proving lack of equity in the Property, but the Debtor carries the burden of proof on all issues raised in connection with stay relief. 11 U.S.C. §362(g) (movant carries the burden of proof with respect to lack of equity, but opposing party carries the burden of proof "on all other issues.").

A.    <u>**Stay Relief for Cause is Warranted**</u>.

64.    A court must grant relief from the stay "[f]or cause, including the lack of adequate

protection of an interest in property of [the moving] party in interest." 11 U.S.C. § 362(d)(1).

Although the Bankruptcy Code does not define "cause," courts have recognized it to be a broad

and flexible concept that must determined "on a case-by-case basis." *Reitnauer v. Texas Exotic*

*Feline Found.* (*In re Reitnauer*), 152 F.3d 341, 343 n. 4 (5th Cir. 1998); *In re Choice ATM Enters.,*

*Inc.*, 2015 WL 1014617, at *4 (Bankr. N.D. Tex. 2015) ("Even among bankruptcy courts in this

circuit, no single approach prevails" with respect to determining what constitutes cause); *In re*

*Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988) ("Cause is an intentionally broad

and flexible concept"); *see also In re Mirant Corp.*, 440 F.3d 238, 254 (5th Cir. 2006) (stating that

the lack of a definition of "for cause" provides "flexibility to the bankruptcy courts."). "Cause may

exist whenever the stay harms the creditor and lifting the stay will not unjustly harm the debtor or

other creditors." *Prince v. CMS Wireless LLC*, 2012 WL 1015001, at *11 (Bankr. E.D. Tex. 2012)

(quoting *In re Chirillo*, 84 B.R. 120, 123 (Bankr. N.D. Ill. 1988)).

65.    After the movant makes an initial showing of cause, the Debtor bears the burden of

proof to demonstrate the absence of cause to grant relief from stay. 11 U.S.C. §362(g)(2); *In re*

*Omni Lion's Run, L.P.*, 578 B.R. 394, 397-98 (Bankr. W.D. Tex. 2017); *Mooney v. Gill*, 310 B.R.

543, 547 (N.D. Tex. 2002).

66.    Here, cause exists to lift the stay based on a lack of adequate protection, negative

cash flow derived from the Debtor's sole asset, Debtor's inability to make any post-petition

payments to Romspen, and the Debtor's lack of good faith.

i.    *<u>Romspen's Interests Are Not Adequately Protected.</u>*

67.    The Bankruptcy Code does not define "adequate protection." However, Section 361

sets forth a non-exhaustive list of what may constitute adequate protection, including lump sum or

17

periodic cash payments to the secured party, additional or replacement liens to the secured party, or such other relief that serves as an indubitable equivalent of the secured party's interest in the property. Courts have the authority to fashion adequate protection as they deem appropriate under the circumstances. *See, e.g., In re Fernandez*, 441 B.R. 84, 95 (N.D. Tex. 2010) ("Section 361 recognizes three nonexclusive forms of adequate protection"); *In re O.P. Held, Inc.*, 74 B.R. 777, 782 (Bankr. N.D.N.Y. 1987) (noting that Section 361 "has been consistently interpreted as not containing an exclusive list" of forms of adequate protection).

68. The concept of the "adequate protection" of a secured creditor's interest in collateral was derived by Congress from the constitutional protection of property interests granted by the Fifth Amendment and provides a mechanism to "insure that the secured creditor receives the value for which he bargained." S. Rep. No. 95-989, at 53 (1978); *accord* H.R. Rep. No. 95-595, at 339 (1977); *see also Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273, 278-79 (1940); *In re Swedeland Dev. Grp., Inc.,* 16 F.3d 552, 564 (3d Cir. 1994); *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *Martin v. United States*, 761 F.2d 472, 474 (8th Cir. 1985); *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984); *In re Geijsel*, 480 B.R. 238, 267-68 (Bankr. N.D. Tex. 2012).

69. The adequacy of the proposed protection is measured by "how effectively it compensates the secured creditor for the loss of value." *Swedeland*, 16 F.3d at 564. A promise of collateral that may exist in the future does not suffice. *In re Berg*, 42 B.R. 335, 338 (D.N.D. 1984). The proposed form of adequate protection must be supported by "substantial evidence" that any attendant risk to the secured creditor is insignificant. *In re O'Connor*, 808 F.2d at 1398.

70. The Debtor cannot show that Romspen is adequately protected, nor can it adequately protect Romspen.

71.     There is no equity cushion in the Property to protect Romspen against any diminution in the value of the Property, and the operating expenses exceeding revenue reflects ongoing deterioration of Romspen's cash collateral.

72.     The Debtor has not asked the Court for permission to use cash collateral, and Romspen has made clear that it does not consent. To the extent the Debtor is using Office Building revenues (which constitute Romspen's collateral) without Court approval, then certainly Romspen's interests remain unprotected. And if the Debtor is failing to collect rents, then its waste is harming Romspen's interests.

73.     Finally, the Debtor has not proposed to provide any adequate protection to Romspen.

*ii.*     *The Debtor Projects Negative Cash Flow and Cannot Pay Romspen.*

74.     Courts have held that "cause" can consist of projected ongoing negative cash flow. *In re Creekside Senior Apartments. L.P.,* 489 B.R. 51, 62 (B.A.P. 6th Cir. 2013) (analyzing "cause" for dismissal pursuant to Section 1112(b), but indicating that this same standard evidences "cause" under Section 362(d)(1)). According to the reporting provided to Romspen prepetition, the Property generates net operating losses – resulting in monthly deterioration of cash and the financial inability to protect and preserve the Property.

75.     To the extent the Debtor seeks permission to use cash collateral, then the limited historical data reflects that the Debtor's net operating losses will permit the Debtor to pay Romspen any amounts on the Loan secured by the Property – a loan that matured over three and a half years ago and that neither GLNH nor Choudhri have paid. Prior to the Petition Date, the Loan accrued interest at the Default Rate which equaled 15.25% per annum; from and after February 9, 2024 (until the next interest compounding period), the daily accrual of interest is $13,336.35, which computes to more than $400,000.00 monthly.

76.     The Debtor has not sought Court authorization or Romspen's permission to use cash generated from the Property – which cash constitutes Romspen's collateral. Thus, to the extent the Debtor has dissipated *any* cash, it has violated the Bankruptcy Code and Romspen's rights. 11 U.S.C. § 363(c)(2).

77.     Based on the prepetition reporting provided by GLNH to Romspen, the Property generates insufficient cash to support operations of the Property – and thus has no remaining cash available to pay Romspen. Failure to make post-petition payments to a secured lender constitutes "cause" to lift the automatic stay. *See*, *e.g. Marable v. Bank of N.Y. Mellon*, 557 B.R. 521, 526 (E.D. Tex. 2016); *In re Hinchliffe*, 164 B.R. 45, 48 (Bankr. E.D. Pa. 1994); *In re Elmira Litho, Inc.*, 174 B.R. 892, 903 (Bankr. S.D.N.Y. 1993). Romspen's *prima facie* showing that the Debtor has failed to make post-petition payments shifts the burden onto the Debtor to show that Romspen's interests in the Property is adequately protected. *See*, *e.g. In re Hinchliffe*, 164 B.R. at 48. The Debtor cannot sustain such a burden, warranting stay relief.

78.     The Debtor has not proposed granting to Romspen additional or replacement liens nor the indubitable equivalent of its interest in the Property. And because the Debtor is a SARE debtor whose sole asset is the Property, the Debtor cannot offer Romspen liens or interests in other estate property – because none exists. Romspen has perfected liens on virtually all, if not all, of the Debtor's assets. *See In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 696 (Bankr. S.D. Tex. 2009) (holding that it was "disingenuous" to offer replacement lien on post-petition rents because lender already had lien on rents); *see also Stearns Bldg. v. WHBCF Real Estate* (*In re Stearns Bldg.*), 1998 WL 661071, at *3-4 (6th Cir. 1998) (considering unencumbered assets in connection with adequate protection analysis); *In re Buttermilk Towne Ctr., LLC*, 442 B.R. 558, 564 (B.A.P. 6th Cir. 2010).

79.     Because the Debtor has no assets that can be drawn upon to provide adequate protection to Romspen, the Debtor cannot utilize the revenue derived from the Property for reorganizational purposes. *In re Las Torres Dev., LLC*, 413 B.R. at 696; *see also In re Buttermilk Towne Center, LLC,* 442 B.R. at 565-67 (holding that debtor's offer of replacement lien in post-petition rents did not provide lender with adequate protection, so that debtor having no equity could not utilize post-petition rents). Without access to cash or other assets with which to make adequate protection payments or to fund whatever as-yet-undisclosed reorganization plan it may have, the Debtor has no possibility of an effective reorganization.

iii.     *The Debtor Did Not File This Case in Good Faith.*

80.     "Good faith is an implicit requirement in the filing of a chapter 11 bankruptcy case and a case not filed in good faith is subject to dismissal under 11 U.S.C. § 1112(b)," and the Debtor bears the burden of proof on this issue. *In re DCNC N.C. I, LLC*, 407 B.R. 651, 661 (Bankr. E.D. Pa. 2009). A grant of relief from the automatic stay is a proper alternative remedy for a bad faith filing. *Laguna Assocs. Ltd. P'ship. v. Aetna Cas. & Sur. Co.* (*In re Laguna Assocs. Ltd. P'ship.*), 30 F.3d 734, 738 (6th Cir. 1994): *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1029 (11th Cir. 1989). Bad faith is determined on a case by case basis. *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 211-12 (3rd Cir. 2003); *In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 131 (6th Cir. 1995).

81.     "Good faith" implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization, and not merely as a device to serve some sinister or unworthy purpose. *In re Metropolitan Realty Corp.,* 433 F.2d 676, 678 (5th Cir. 1970). The test of a debtor's good faith is also whether the filing is an attempt to unreasonably deter and harass creditors, or whether there is an attempt to effect a "speedy, efficient

reorganization on a feasible basis." *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) (quoting *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986)).

82.     For example, filing for bankruptcy relief solely to frustrate or delay a secured creditor's right to foreclose constitutes bad faith. *See, e.g., Udall v. FDIC (In re Nursery Land Dev., Inc.)*, 91 F.3d 1414 (10th Cir. 1996); *In re Laguna Assocs. Ltd. Pshp.*, 30 F.3d 734; *In re Springs Hospitality, Inc.*, 2006 WL 2458679 (Bankr. D. Colo. 2006). This is precisely what occurred here.

83.     As set forth above, the Loan matured approximately 44 months ago. Since then, Romspen has repeatedly worked in good faith with GLNH, at Choudhri's urging, to provide opportunities to pay off the Loan, during which Romspen agreed to conditionally forbear from exercising its remedies and enforcement rights. GLNH and Choudhri squandered each opportunity and breached each agreement.

84.     When Romspen finally refused to offer more chances and moved forward with attempts to foreclose through non-judicial trustee's sale proceedings, GLNH and Choudhri obstructed those efforts through bad faith state court machinations; and after exhausting those efforts, Choudhri orchestrated a purported transfer of Romspen's collateral to the Debtor without Romspen's knowledge or consent, and likely for no value; and purported to further encumber the Property by granting himself (on behalf of the Debtor) a lien interest in the Property, recorded on the Petition Date hours before the filing of the Petition, to allegedly secure a promissory note in an undisclosed amount, with an undisclosed date. The Property transfer, encumbrance effort, and bankruptcy filing were clearly timed to frustrate Romspen's legitimate enforcement efforts – demonstrated even more clearly by Mr. Pope's recent filing of a "Suggestion of Bankruptcy" in the Romspen Action.

85. Even though this is a single asset real estate with revenue generation, the Debtor has failed to ask the Court for permission to use cash collateral. This fact alone indicates the Debtor is not serious about reorganizing.

86. Choudhri, who controls the Debtor and GLNH, was ousted from control over another chapter 11 debtor in Galleria II for engaging in similar abuses of the judicial system. Importantly, he is also a guarantor of the Romspen indebtedness and therefore benefits from hindering, delaying, and frustrating Romspen's legitimate collection efforts.

87. The Fifth Circuit has set forth a list of common, but not exhaustive, factors that evidence whether a bankruptcy filing has been made in bad faith. These are:

   a. The debtor has one asset;

   b. The secured creditors' liens encumber this asset;

   c. There are generally no employees except for the principals;

   d. There is little or no cash flow, and no available sources of income to fund a plan of reorganization or to make adequate protection payments;

   e. There are few, if any, unsecured creditors, and the claims of such creditors are relatively small;

   f. The property has been posted for foreclosure and the debtor has been unsuccessful in defending actions against the foreclosure or "the debtor and one creditor have proceeded to a stand-still in state court litigation and the debtor has lost or been required to post a bond which it cannot afford;"

   g. There are allegations of wrongdoing by the debtor or its principals; and

   h. A "one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors."

*In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986). Not all of the foregoing factors need to exist for a case to have been filed in bad faith. *Id*. at 1072.

88. Each of the eight *Little Creek* factors is satisfied here:

   a. The Debtor has designated this case as a SARE case, thereby acknowledging that it only has one asset (the Property);

   b. Romspen's lien fully encumbers the Property;

   c. Upon information and belief, the Debtor has few or no employees;

23

d.  The cash flow generated from the Property is insufficient to support the operations of the Property, let alone fund a plan of reorganization or make adequate protection payments to Romspen. In the six months between March and August 2023, GLNH had operated the Property at massive net losses (approximately $60,000.00/mo.);

e.  The Debtor's petition indicates that there is not a single unsecured creditor. Similarly, although the Debtor has not yet filed any schedules or made any meaningful disclosures, its petition lists Romspen, a taxing authority, and two apparently misnamed affiliates as the only parties entitled to notice;

f.  Romspen has posted the Property for foreclosure several times. Immediately prior to the Petition Date foreclosure sale, the Debtor's counsel notified Romspen's counsel that this case had been filed and submitted a copy of the transfer deed purporting to transfer the Property from GLNH to the Debtor;

g.  Choudhri, who has control over the Debtor and GLNH and is independently liable on the indebtedness, caused GLNH to transfer the Property to the Debtor just days prior to the scheduled non-judicial foreclosure sale without Romspen's consent, in violation of the Loan Documents. Thereafter, Choudhri (on behalf of the Debtor) executed a deed of trust in favor of Choudhri (in his individual capacity) on the Petition Date, thereby placing another lien of record on the Property again without Romspen's consent and in violation of the Loan Documents. Choudhri and GLNH repeatedly failed to provide basic financial information on the Property, and when information was finally disclosed, Romspen learned that GLNH (presumably at Choudhri's direction) had transferred a total of nearly $600,000.00 to affiliates and/or insiders from March through August, 2023;

h.  The Debtor had existed for several years but, pursuant to the SARE designation for this case, had no assets until GLNH transferred the Property to the Debtor days before initiating this case.

89.  Compare the foregoing to the facts in *In re Omni Lion's Run, L.P.*, 578 B.R. 394 (Bankr. W.D. Tex. 2017). In *In re Omni*, the court held that the debtors did not file their cases in bad faith where, among other things, there were multiple material parties in interest, the debtors had sufficient income to support operations and make adequate protection payments, the debtors were "pouring money" into operations and their properties, and there was no evidence of misdeeds on the part of debtors or their principals. *Id*. at 398.

90.  As set forth above, the *Little Creek* factors are not exhaustive and, as a result, courts will consider additional indicia of bad faith. *In re Little Creek Dev. Co.*, 779 F.2d at 1072-73. In addition to meeting <u>each of the *Little Creek* factors</u>, other bad faith indicia exist.

91.     There is no possibility of a reorganization given that the Property does not generate sufficient income to fund its own operations – let alone service debt – and Romspen's claim fully encumbers the Property.

92.     This case is a two-party dispute. The Debtor's Petition indicates that it does not have a single unsecured creditor and only three other parties are included for notice: a taxing authority and two misnamed affiliates of the Debtor. Additionally, Choudhri benefits from further obfuscation and obstruction:  He signed the Choudhri DOT on behalf of the Debtor and the Prepetition Transfer Deed on behalf of GLNH, and in control of GLNH for during nearly $600,000.00 of transfers to affiliates and/or insiders in March-August 2023.

93.     Choudhri has orchestrated similar bankruptcy filings, and was in fact ousted as the person in control of a related debtor in the Galleria II case.

94.     Finally, although the Debtor's petition indicates that its principal place of business is in Austin, Texas, the Choudhri DOT represents that the Debtor's mailing address and principal place of business are in New York, casting doubt as to whether this jurisdiction is proper.  Upon information and belief, this Debtor's filing in this Court was a blatant attempt at shopping for a more favorble forum.  Choudhri has already been identified by judges in the Southern District Bankruptcy Court, who dismissed one case and appointed a trustee in the follow-up case.

    **B.      Stay Relief Is Warranted Under Section 362(d)(2).**

95.     Relief from the stay is also warranted with respect to an act against property if: (i) the Debtor lacks equity in the property and (ii) the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Once Romspen establishes that the Debtor does not have equity in the Property, the burden shifts to the Debtor to establish that the Property is necessary to

an effective reorganization. *See In re Canal Place Ltd. P'ship*, 921 F.2d 569, 576 (5th Cir. 1991); *In re Kolnberger*, 603 B.R. 253, 269 (Bankr. E.D.N.Y. 2019).

96.    The test for determining whether or not equity in an asset exists under Section 362(d)(2) is "the difference between the value of the subject property and the encumbrances against it." *In re Matter of Sutton,* 904 F.2d 327, 329 (5th Cir. 1990); *see also Pegasus Agency v. Grammatikakis (In re Pegasus Agency)*, 101 F.3d 882, 886 (2d Cir. 1996); *Nantucket Investors II v. Cal. Fed. Bank* (*In re Indian Palms Assocs., Ltd.*), 61 F.3d 197, 206 (3rd Cir. 1995); *In re Mellor,* 734 F.2d 1396, 1400 n.2 (9th Cir. 1984) ("'Equity' . . . is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors.").

97.    Although the Debtor has not identified any creditors or their specific asserted claim amounts, Romspen's debt secured by the Property (an amount that exceeds $33 million) exceeds the value of the property (which is approximately $23.4 million as established by an appraisal report by a qualified, respected, credentialed expert in the field of real property valuation). Any additional, as-yet-undisclosed debts secured by the Property simply increase the insufficiency.

98.    Having satisfied the equity prong, the burden shifts to the Debtor to show a likelihood of a successful reorganization in prospect. *See* 11 U.S.C. § 362(g); *In re Canal Place Ltd. P'ship*, 921 F.2d at 576; *In re Kolnberger*, 603 B.R. at 269. This requires more than a mere showing that a reorganization is conceivable; rather, the Debtor must show "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. at 375-76. "[I]f no effective reorganization is in prospect, 'then no property of the debtor can be necessary for that end.'" *Am. Network Leasing v. Apex Pharms. (In re Apex Pharms.*), 203 B.R. 432, 440 (N.D. Ind. 1996) (citation omitted); *see also Albany Partners Ltd. v.*

*Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 673 n.7 (11th Cir. 1984) ("The mere fact that the property is indispensable to debtor's survival is insufficient."). If no reorganization is in prospect, then the protection of the automatic stay should be terminated. *See In re Canal Place Ltd. P'ship*, 921 F.2d at 577 ("In deciding whether or not to lift the stay, the majority of courts which have addressed the issue of an 'effective reorganization' require a showing of a reasonable prospect for a successful reorganization within a reasonable time before allowing the stay to remain in effect."); *see also In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 75 (B.A.P. 9th Cir. 1994); *In re Johnston*, 31 B.R. 202, 205 (Bankr. D. Vt. 1983); *In re Martin*, 19 B.R. 496, 498 (Bankr. E.D. Pa. 1982).

99.     To meet its burden, the Debtor must establish it is moving meaningfully to propose a plan of reorganization that has a realistic chance of being confirmed within a reasonable time. *See In re Canal Place Ltd. P'ship*, 921 F.2d at 577 ("Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization."); *In re Holley's, Inc.*, 140 B.R. 643, 702 (Bankr. W.D. Mich. 1992); *In re Ashgrove Apartments of DeKalb Cnty., Ltd.*, 121 B.R. 752, 756-57 (Bankr. S.D. Ohio 1990).

100.     The Debtor cannot meet this burden – it owns a single real estate asset whose operating revenue cannot sustain its operating expenses. *See, e.g. In re Pegasus Agency, Inc.*, 101 F.3d at 887 (holding that mortgagee should have been granted relief from stay where "'[t]here is no evidence in the record demonstrating that [debtor's president] performed the kind of research, analysis and projections, generally referred to as due diligence, required to make any reliable assessment of the financial feasibility of any plan to develop the Property.'").

///

101.    While its operations do not cash flow, interest accrues on the Loan at an annual rate of 15.25%, yielding monthly interest accrual of no less than $400,000.00.  The Debtor is therefore falling deeper into operating debt without any ability to repay Romspen.

102.    The Debtor has not filed a motion to use cash collateral, indicating no intent to pursue a reorganization.

103.    For these reasons, relief from stay is also warranted under Section 362(d)(2).

**C.      Stay Relief Is Warranted Under SARE Provision.**

104.    Section 362(d)(3) provides for relief from the automatic stay if a SARE debtor fails, within the later of 90 days of the petition date or 30 days after the court determines it is a SARE debtor: (a) to file a plan "that has a reasonable possibility of being confirmed within a reasonable time;" or (b) to commence monthly adequate protection payments to its secured lender in the amount of the non-default interest rate on the value of the creditor's interest in the real estate.

105.    Failure to comply with either subsection of Section 362(d)(3) must result in termination of the automatic stay. *Leeward Subdivision Partners, LLC v. GDR Lending, LLC* (*In re Leeward Subdivision Partners, LLC*), 2010 WL 6259983, at *4 (B.A.P. 9th Cir. 2010) (If a SARE debtor cannot satisfy either subsection of Section 362(d)(3), "it loses the protection of the § 362(a) stay and '[in] essence, the Chapter 11 case is over.'"). Thus, a bankruptcy court must grant stay relief to a moving creditor if a SARE debtor fails to comply with § 362(d)(3). *Id.*

106.    As set forth above, the Property generates insufficient cash flow to pay its operating expenses, let alone to pay Romspen, and a plan of reorganization is not possible. The Debtor admits in its petition that it is a SARE debtor, so there is no ability to extend beyond the first 90 days of this case.  And although the 90-day period has not yet expired, the Debtor cannot satisfy the requirements of Section 362(d)(3) now or by the end of the 90-day period. As a result, Romspen

is moving for relief from the automatic stay under Section 362(d)(3) now to ensure that any stay that remains in place as of the SARE deadline is promptly lifted.

### D.    Stay Relief *In Rem* Is Appropriate.

107.    The Court must lift the stay with *in rem* application for two years after the date of such order if a creditor with an interest in the property establishes that the filing of the petition was a part of a scheme to delay, hinder, or defraud creditors that involved a transfer of all or part of the ownership of, or other interest in, such property without the consent of the secured creditor or court approval. 11 U.S.C. § 362(d)(4); *see also In re JCP Props.*, 540 B.R. 596, 619 (Bankr. S.D. Tex. 2015).

108.    This is precisely the circumstance here. As Romspen was pursuing enforcement of its lien interest encumbering the Property, Choudhri orchestrated a transfer from Romspen's borrower (GLNH) to the Debtor two weeks before the Debtor elected to file this bankruptcy case. Not coincidentally, the Petition was filed immediately prior to and the same day of the scheduled non-judicial foreclosure sale. These irrefutable facts justify relief under Section 362(d)(4).

109.    The Court should lift the stay with 2-year *in rem* effect. Romspen is entitled to such relief, given the ongoing obstruction engaged by Choudhri and GLNH, and now the Debtor. These actions have done nothing other than frustrate Romspen's legitimate enforcement efforts and cause Romspen to incur expense and delay pursuing its legitimate enforcement rights and remedies. This Court has the power to end those efforts now by lifting the stay in Romspen's favor with *in rem* effect that prevents Choudhri from further dishonest efforts.

///


///

## CONCLUSION

For these reasons, Romspen asks that the Court lift the automatic stay, and do so with *in rem* effect as provided under Section 362(d); and grant Romspen such other and further relief as the Court may justify under the circumstances.

DATED this 14th day of February, 2024.

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Kyle S. Hirsch*
Kyle S. Hirsch
2200 Ross Avenue, 4200W
Dallas, Texas 75201
Telephone: 602.364.7170
Email: kyle.hirsch@bclplaw.com

Nicholas R. Marcus (*Pro Hac Vice Forthcoming*)
161 North Clark Street, Suite 4300
Chicago, Illinois 60601-3315
Telephone: 312.602.5151
Email: nick.marcus@bclplaw.com

***Attorneys for TIG Romspen US***
***Master Mortgage LP***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 14, 2024, a true and correct copy of this document was served to any attorney who has appeared of record, through the Court's ECF notification system and/or email including counsel for the Debtor and the Trustee, or by U.S. First Class mail as set out below.

<u>Via ECF/email</u>:

Stephen W. Sather on behalf of Debtor
ssather@bn-lawyers.com

John C. Roy on behalf of U.S. Trustee
casey.roy@usdog.gov, gary.wright3@usdoj.gov

United States Trustee - AU12
ustpregion07.au.ecf@usdoj.gov


<u>By First Class Mail</u>:

1001 WL, LLC
2450 Wickersham Lane, Suite 202
Austin, TX 78741

Ali Chaudhri
2425 West Loop South Suite 1100
Houston, TX 77027

Galleria Note Holder, LLC
c/o James Pope
6161 Savoy Drive Suite 1125
Houston, TX 77036

Harris County Tax Assessor
PO Box 4633
Houston, TX 77210-4663

United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

*/s/ Kyle S. Hirsch*
Kyle S. Hirsch
