IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| 1001 WL, LLC | § § | Case No. 24-10119-SMR |
| Debtor. | § § § | |

### XAVIER ACADEMY'S MOTION TO CONVERT TO CHAPTER 7

**This pleading request relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held**

TO THE HONORABLE SHAD ROBINSON, UNITED STATES BANKRUPTCY JUDGE:

Xavier Educational Academy, LLC ("Xavier Academy") files this *Motion to Convert to Chapter 7* (this "Motion"), and shows the following:[1]

### RELIEF REQUESTED

1. Given Debtor's gross mismanagement of the Property and its inexcusable misconduct in this proceeding, this case should be converted to a case under chapter 7. The Property continues to deteriorate under the Debtor's mismanagement, causing substantial diminution the estate. The Debtor and its principal, Ali Chaudhri's, bad faith conduct in this proceeding has undermined the trust of creditors in the Debtor's ability to administer any Plan. Orderly liquidation under the care of an appointed chapter 7 trustee is in the best interest of creditors and the estate.

---

[1] Any terms not defined herein have the meaning as that in Xavier Academy's Objection to Disclosure Statement. Docket No. 186.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by this Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested include: 11 U.S.C. §§ 101–1532 (the "Code"); rules 1017(f), 2002, and 9006(c) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"); and rule 1017 of the Bankruptcy Local Rules (the "Local Rules").

## BACKGROUND

4. The Debtor remains in possession and continues operation of the Property.

5. On February 6, 2024 (the "Petition Date"), the Debtors filed a voluntary petition in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") [Docket No. 1] This case has not been previously converted or dismissed.

6. On March 5, 2024, the Debtor filed its *Motion to Use Cash Collateral*. [Docket No. 26]. After several hearings, this Court has still not approved the Debtor's use of cash collateral on a final basis. The Debtor continues to use cash collateral only on an interim basis. [*See* Docket Nos. 46, 111, 168, 220].

7. On March 5, 2024, the Debtor filed its *Schedules, Statements, and Summary*, signed by Ali Chaudri on behalf of the Debtor. [Docket No. 28]. Listed amongst the Debtor's secured creditors are Ali Chaudri; BFDI, LLC; and GLNH. *See* Schedule D. Listed among Debtor's unsecured creditors is Jetall Companies. *See* Schedules E/F. Xavier Academy is not included in the list of creditors. The Debtor does not list a potential claim against Xavier Academy in its assets. *See* Schedule A/B, at part 11. The Debtor does not include a potential claim against Xavier Academy in its list of Legal Actions or Assignments, which calls into question what other assets

2

the Debtor has "left off" its schedules. *See* Statement of Financial Affairs, part 3, ¶ 7. Although the Debtor has represented to the Court it will file amended Schedules, four months later, it has not done so.

8. On March 5, 2024, the Debtor filed its *Amended List of Creditors*. [Docket No. 29]. Despite ongoing litigation with Xavier Academy in state court and the Debtor purporting to have a lease with Xavier Academy, Xavier Academy is not listed. In fact, Xavier Academy is not even scheduled as a creditor and did not know of this case until a third party told Xavier Academy in late March. The Debtor has represented it intends to amend this list, but four months later has failed to do so.

9. On March 27, 2024, the Debtor filed its Monthly Operating Report for the period ending February 29, 2024 [Docket No. 72]. The next day, Debtor moved to redact the document from the docket [Docket No. 73].

10. On April 23, 2024, the Debtor filed a Monthly Operating Report for the period ending March 31, 2024 using a form designated for cases filed under sub V of chapter 11 [Docket No. 127].

11. On April 30, 2024, the Debtor filed amended Monthly Operating Reports for the periods ending February 29, 2024 and March 31, 2024. [Docket No. 135, 136]. Ali Chaudri signed as the Responsible Party on behalf of the Debtor. [*See* Docket No. 135, at p. 1; Docket No. 136, at p. 1].

12. On May 31, 2024, the Debtor filed its proposed *Amended Plan of Reorganization Dated May 31, 2024* ("Plan") and its *Disclosure Statement Under 11 U.S.C. § 1125 for the Debtor's Amended Plan of Reorganization dated May 31, 2024* ("Disclosure Statement"). [Docket Nos. 182, 183]. The Disclosure Statement again failed to list Xavier Academy as a creditor.

3

13. On June 24, 2024, the Debtor filed its Monthly Operating Report for the period ending May 31, 2024. Docket No. 213. Angela DeCaro signed as the Responsible Party on behalf of the Debtor. [Docket No. 213, at p. 1].

14. Without having amended its Schedules or List of Creditors, Debtor commenced solicitation of the Plan on June 25, 2024.

15. On July 5, 2024, the Debtor filed five amended Monthly Operating Reports. [Docket Nos. 229, 230, 231, 232, 233]. The only amendment was the signatory—Angela DeCaro was substituted for Ali Chaudri. [Docket No. 230, at p. 1].

16. The 341 examination of the Debtor has been continued to July 15, 2024.

## BASIS FOR RELIEF

17. A court shall dismiss or convert a chapter 11 case to a chapter 7 case if: (1) cause exists, and (2) conversion is in the best interests of the creditors and the estate.[1] Cause is broadly defined in the Code, and includes:

   a. substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

   b. gross mismanagement of the estate;

   c. unexcused failure to timely file required reports.[2]

Cause to convert this case exists for several reasons, including for (1) the Debtor's principal's bad faith;[3]; (2) the Debtor's bad faith; (3) substantial diminution to the estate without likelihood of rehabilitation; (4) gross mismanagement of the estate; and (5) the Debtor's failure to timely file required reports.

---

[1] *See* 11 U.S.C. § 1112(b)(1).

[2] *See* 11 U.S.C. § 1112(b)(4).

[3] *See In re Zamora-Quezada*, 622 B.R. 865, 879 (Bankr. S. D. Tex. 2017) (holding bad faith conduct constitutes cause for conversion).

## I. The Pattern of Bad Faith Orchestrated by Debtor's Principal is Cause for Conversion.

18. First, most troublingly, the pattern of bad faith by Debtor, Debtor's alter ego, GLNH, and Debtor's principal, Ali Chaudri, constitute cause for conversion. These parties act in concert while purporting to hold adverse interests, to the detriment of other creditors. Taking a step back and looking at these parties' conduct in sum, their conduct constitutes—at best—a serious breach of fiduciary duty that throws into question the legitimacy of this proceeding. Cause to convert is substantiated by the Debtor's bad faith and misconduct.

19. The parties' are intricately intertwined. Chaudri, as the principal of GLNH, purportedly transferred the Property to the Debtor, as its principal, and then filed this chapter 11 proceeding immediately after the transfer.[1] Chaudri has appeared in this proceeding wearing many hats, sometimes at the same time. For purposes of clarity, Chaudri owns 100% equity in the Debtor. He also owns several of the Debtor's creditors: BDFI, LLC, GLNH, and Jetall Companies. And Chaudri himself purports to be a secured creditor of the Debtor's.

20. Chaudri is a fiduciary of the estate.[2] He is the Debtor's principal, the proposed manager of the Debtor's estate for purposes of reorganization, and a signatory swearing to the accuracy of Debtor's Monthly Operating Reports.

---

[1] Chaudri operates in a dizzying pattern: he takes money from a lender in exchange for a lien on the asset, then he creates shell entities and transfers the assets between them—all with the goal of positioning himself on both sides of the transaction in a blatant attempt to try to control the proceeding and thwart the creditor from exercising its remedy on its lien. *See Tex. Reit, LLC v. Mokaram-Latif W. Loop, Ltd.*, No. 14-22-00014-CV, 2022 WL 17421518, at *1 (Tex. App.—Houston [14th Dist.] Dec. 6, 2022, pet. denied); *see* In re Galleria West Loop Investments, No. 23-34815, (Bankr. S. D. Tex.—Houston, Dec. 5, 2023); *and* In re: Galleria West Loop Investments, LLC, Case No. 23-50027 (Bankr. W. D. Tex.—San Antonio, Jan. 3, 2023); *and* In re Galleria 2425 Owner, LLC. No. 23-34815 (Bankr. S. D. Tex.—Houston, Dec. 5, 2023*); and* In re Galleria 2425 Owner, LLC, No. 23-60036 (Bankr. S. D. Tex.—Victoria, July 5, 2023).

[2] *In re Insulfoams*, 184 B.R. 694 (Bankr. W. D. Penn. 1995) (holding debtor in possession and its director has a fiduciary obligation to protect and conserve estate property for the benefit of its creditors and to provide voluntary and honest disclosure of financial information).

21. At the same time, Chaudri is also adverse to the Debtor and the estate and uses that leverage against the Debtor. For example, on April 26, 2024, Chaudri appeared as a creditor in the hearing on Debtor's Cash Collateral Motion. In that capacity, he questioned a representative from Jetall (also owned and controlled by Chaudri, and also a creditor of the Debtor's). Yet a few days later, Chaudri signed a Monthly Operating Report on behalf of Debtor. Logically, the end result of this arrangement is difficult to calculate but the impact on this proceeding is undeniable. Given the clear conflict, it is alarming that Chaudri has been directing the Debtor through this proceeding. Chaudri cannot fulfill his fiduciary obligations to the Debtor and the estate while simultaneously asserting his rights as a creditor. Chaudri's bad faith as the debtor's director constitutes cause to convert this case to chapter 7.

22. Chaudri additionally uses the Debtor and GLNH to play both sides of the proceeding. Xavier Academy believes that the Debtor is an alter ego for GLNH. The Debtor stands in GLNH's shoes when convenient—for example, the Debtor proposes to assume contracts owned by GLNH in its proposed plan of reorganization. It is not a party to any of those contracts. And because of Chaudri's bad faith maneuvering, creditors have been forced to seek information from both the Debtor and GLNH. The Debtor feigns compliance by filing inaccurate Schedules and creditor lists while GLNH outright dodges its obligations. The Debtor relies on the veil of a different corporate identity when it does not want to answer for GLNH's misconduct. While the Debtor continues to enjoy the protections of chapter 11, GLNH flouts the rules, defying this Court's Orders to keep creditors from being able to recover on their claims.

### II. The Debtor's Own Misconduct Constitutes Cause for Conversion.

23. It is not just the misconduct of Debtor's alter ego that is cause for conversion here. The Debtor's own misconduct has also undermined the legitimacy of this proceeding: the Debtor's mismanagement has substantially diminished the Property's value; the Debtor failed entirely to

6

schedule Xavier Academy as a creditor or to list its liabilities to Xavier in the Schedules; and the Debtor misrepresents its liabilities to creditors. It is alarming that the Debtor has commenced solicitation of a Plan without having disclosed a complete and accurate list of creditors or having attended a meeting of creditors. This Court should convert this case to a case under chapter 7.

24. Ultimately, conversion of this case to chapter 7 is in the best interests of the creditors and the estate. Given the Debtor's misconduct, it is unlikely that Debtor will be able to oversee or implement an orderly administration of any plan. Rather, a Chapter 7 trustee would be in the best position to investigate and efficiently liquidate the estate's assets, including the causes of action asserted by the Debtor.[1] The Debtor has shown itself to be incapable of managing the estate or administering a plan. Conversion and orderly liquidation by an appointed chapter 7 trustee is in the best interests of the creditors and the estate.

### III. The Debtor's Mismanagement Has Caused Substantial Diminution to the Property.

25. The Property has considerably deteriorated during the pendency of this proceeding, causing substantial diminution in value. The Debtor is unable to rehabilitate the loss to the estate.[2] For whatever they are worth, the Debtor's Monthly Operating Reports reveal one thing—that the Debtor does not have sufficient cash flow to maintain the Property, much less to remedy all the damage that has been done as a result of its neglect. As this Court has noted, the Debtor's proposed Cash Collateral Budget is simply not sufficient to cover repairs needed to maintain the Property.

26. Ongoing hazards such as serious structural damage to the parking lot, unrepaired damage within the building, a lack of security, and inadequate janitorial and maintenance services

---

[1] *See In re M.A.R. Designs & Construction, Inc.*, 653 B.R. 843 (Bankr. S. D. Tex. 2023).

[2] *In re Zamora-Quezada*, 622 B.R. 865 (Bankr. S. D. Tex. 2017) (likelihood of rehabilitation focuses on whether debtor can be put back in good condition, and whether debtor's business prospects justify continuance of the reorganization effort).

US-DOCS\148510189.11

continue to plague the few tenants remaining at the Property. The Debtor's plan of reorganization relies on the marketability of the Property to investors, leaving little likelihood that the Debtor will be able to effect a reorganization. Debtor does not have the funds to rehabilitate the deterioration so the Property will continue to diminish in value, to the detriment of creditors and the estate.

### IV. The Debtor Has Grossly Mismanaged the Estate.

27. By its gross mismanagement, the Debtor has breached its fiduciary obligation to the estate.[1] The Debtor has breached its duties to creditors, including by: (1) failing to maintain the estate's only asset; (2) filing inaccurate schedules; (3) filing incomplete creditor matrices; and (4) filing Monthly Operating Reports late. The Debtor continues to shirk its obligation to provide even the most basic of information, including accurate creditor lists.[2] And when the Debtor does provide information, that information is incomplete or inaccurate.

28. It is troubling that the Debtor has commenced solicitation with an inaccurate and incomplete creditor list. Allowing the Debtor to haphazardly proceed to solicit the Plan to an incomplete list of creditors calls into question the legitimacy of this proceeding and can only result in a waste of valuable estate resources, all to the detriment of creditors

### V. The Debtor Has Failed to Comply with Its Reporting Obligations.

29. The Debtor has failed several times to meet its filing requirements—every single Monthly Operating Report has been filed late and then amended. The Debtor is not providing complete and accurate information in this proceeding. Any protection the Debtor enjoys from the Code comes with an obligation to abide by its provisions and to be forthcoming and accurate in its

---

[1] *See In re M.A.R. Designs & Construction, Inc.*, 653 B.R. 843 (Bankr. S. D. Tex. 2023).

[2] *See Mahanna v. Bynum*, 465 B.R. 436 (W. D. Tex. 2011) (affirming dismissal for cause when debtors failed to comply with court orders and provide complete and accurate schedules, monthly operating reports, and a creditor matrix).

representations to this Court and to creditors. The Debtor continues to fail to meet its obligations under the Code.

30. Cause exists to convert this case to a case under chapter 7. Doing so will ensure the legitimacy of these proceedings and ensure that creditors and the estate are protected from the Debtor and its director's bad faith.

## RESERVATION OF RIGHTS

31. As this case is still developing—the 341 creditors meeting has yet to convene—Xavier Academy reserves its right to supplement this Motion.

Xavier requests this Court convert the Debtor's chapter 11 case to a chapter 7 and grant Xavier any further relief as may be just and proper.

Dated: July 12, 2024

/s/ *Genevieve M. Graham*
**JACKSON WALKER LLP**
Genevieve M. Graham (TX Bar No. 24085340)
Maha Ghyas (TX Bar No. 24138116)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221 Email:
ggraham@jw.com Email:
mghyas@jw.com

*Counsel to Xavier Educational Academy, LLC*

**Certificate of Service**

      I certify that, on July 12, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of Texas.

    1001 WL, LLC
    2450 Wickersham Lane, Suite 202
    Austin, TX 78741
    *__Debtor/Defendant__*

    Legal Registered Agent Services, Inc.
    5900 Balcones Drive, Suite 100
    Austin, TX 78731
    *__Registered Agent for Debtor/Defendant__*

    Stephen W. Sather
    ssather@bn-lawyers.com
    *__Counsel for Debtor__*

    Galleria Loop Note Holder, LLC,
    Registered Agents Inc 5900 Balcones Drive, Suite 100
    Austin, TX 78731
    *__Registered Agent for Defendant Galleria Loop Note Holder__*

    Galleria Loop Note Holder, LLC
    c/o Ali Choudri
    1001 West Loop South, Suite 700
    Houston, TX 77027
    *Defendant*

    John C. Roy
    casey.roy@rsbfirm.com
    Shane P. Tobin
    shane.p.tobin@usdoj.gov
    903 San Jacinto Blvd., Room 230
    Austin, TX 78701
    *United States Trustee – AU12*

                                               /s/ *Genevieve M. Graham*
                                               Genevieve M. Graham