**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **1001 WL LLC,** | ) | Case No. 24-10119 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

**RESPONSE IN OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION FOR NEW TRIAL REGARDING COURT'S ORDER DENYING PLAN CONFIRMATION**

TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership ("Romspen") responds in opposition to the *Debtor's Emergency Motion for Reconsideration or New trial Regarding Court's Order Denying Plan Confirmation* [ECF 522] (the "Reconsideration Motion") and the supplement thereto [ECF 524] (the "Supplement") filed on behalf of debtor and debtor-in-possession 1001 WL, LLC (the "Debtor").

There was no error. The Court properly took under consideration three days of witness testimony and hundreds of pages of documentary evidence to conclude the Debtor's proposed plan of reorganization (the "Plan") could not be confirmed because the Debtor failed to satisfy its burden of proof under 11 U.S.C. § 1129(a)(3) and (11). And given the history of this case, the Supplement's request for another extension of time to continue working towards an unfeasible Plan should be declined.

Further, this is a coordinated effort to – again – thwart and disrupt Romspen's right to enforce its lien interests in and to the Property in bad faith, as reflected by the Petition filed by another entity controlled by the Debtor's principal in the Harris County state court.

1

The Reconsideration Motion should thus be denied in its entirety.

## RELEVANT PROCEDURAL BACKGROUND

1.      Although the Court is aware of the procedural background of this case, this summary frames specific issues relevant to this Response.

2.      On February 6, 2024 (the "Petition Date"), days after receiving title to the Debtor's sole asset, an office building located in Houston (the "Property") through a transfer from its affiliate Galleria Loop Note Holder, LLC ("GLNH"), the Debtor filed a voluntary petition for protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") as a single asset real estate ("SARE") debtor.  The Debtor and GLNH are both owned and controlled by Ali Choudhri.

3.      Romspen promptly filed for stay relief.  As set forth in Romspen's motion, GLNH has been in default *for years* of its loan obligations owed to Romspen.  As further set forth in Romspen's motion, the transfer to the Debtor just prior to the Petition Date was an attempt to hinder, delay, and frustrate Romspen's legitimate debt enforcement efforts.  *See* Romspen's Stay Relief Motion [ECF 5].

4.      After conducting an evidentiary hearing spanning three court days in early April 2024, the Court granted stay relief under 11 U.S.C. § 362(d)(1) & (2) and modified the stay to permit Romspen to post for, and conduct, a July 2024 (or any month thereafter) foreclosure sale of the Property.  *See Order Modifying the Stay* [ECF 151].

5.      Romspen posted and prepared for the July 2024 foreclosure sale.

6.      The Court's decision to modify the stay was designed to permit the Court an opportunity to rule on the Debtor's adversary proceeding challenging Romspen's lien.  *See* Hearing T'script, April 30, 2024, at 29:19-33:14.  The Court clarified that Romspen's permission

2

to foreclose was granted "unless [Romspen is] restrained in the adversary proceeding or there's a confirmed plan in this case that moots it." *Id.*, at 31:21-32:1. The court set the adversary proceeding on an expedited schedule because the Court was "not going to let this thing languish." *Id.*, at 32:16-17.

7. The Court moved forward with resolving the adversary proceeding in Romspen's favor, accommodating the expedited schedule by entering a single order further modifying stay relief by extending the first date by which Romspen may foreclose to the August 2024 sale date. *See Order* [ECF 206] (modifying stay to permit for August 2024 sale); *Final Judgment* [Adv. No. 24-01010, ECF 46].

8. Romspen posted and prepared for the August 2024 foreclosure sale.

9. The Debtor filed its first version of the Plan on May 6, 2024 [ECF 152], with subsequent modifications. The Court denied the initial version of the disclosure statement [ECF 163], but approved the subsequent amended disclosure statement on June 10, 2024 [ECF 194]. The Court scheduled a confirmation hearing for August 2, 2024, in advance of the August 6, 2024, foreclosure sale date. [ECF 212]. At the Debtor's last-minute request based on the timely disclosure of expert reports by Romspen, the Court extended the confirmation hearing and modified stay relief extending the first date by which Romspen may foreclose to the September 2024 sale date. *See Order* [ECF 359] (modifying stay to permit for September 2024 sale); *Order Granting 1001 WL LLC's Motion to Continue Hearing* [ECF No. 358].

10. Romspen posted and prepared for the September 2024 foreclosure sale.

11. The Court conducted an evidentiary hearing on the Plan on August 22, 28, and 29. At the conclusion of those three days, the Court took the matter under advisement. Given the proximity to the pending September sale, the Court again modified stay relief extending the first

date by which Romspen may foreclose to the October 2024 sale date. *See Order* [ECF 463] (modifying stay to permit for October 2024 sale).

12.     Romspen posted, and is prepared for, the October 1, 2024, foreclosure sale.

13.     On September 16, 2024, the Court conducted an oral ruling on confirmation of the Plan, determining that the Debtor had failed to satisfy its burden of proof of good faith (1129(a)(3)) and feasibility (1129(a)(11)). The Court's ruling was memorialized in an order entered on September 19, 2024 [ECF 502].

14.     Romspen is prepared to proceed with the October 1, 2024, foreclosure sale of the Property.

15.     The Debtor filed its Reconsideration Motion on September 26, 2024 – ten (10) calendar days after the Court's oral ruling denying confirmation of the Plan. The Debtor requested an expedited hearing in advance of the October 1, 2024, hearing date. [ECF 523].

16.     In concert with the Reconsideration Motion, GLNH filed a petition in the Harris County state court seeking, among other things, to enjoin the October 1 foreclosure sale. A copy of the Petition filed on behalf of GLNH is attached as Exhibit A. Romspen has filed a notice of removal to the Southern District of Texas federal court, and intends to file a motion to transfer to this Court. Notably, the Petition (i) fails to identify that the Debtor owns the Property; (ii) fails to inform the state court of this bankruptcy case or Romspen's stay relief; and (iii) makes false and/or misleading statements regarding the liens, GLNH's conduct relating to the Property, and Romspen's enforcement rights.

## ARGUMENT

17.     The Court did not err as a matter of law when it applied a "totality of the circumstances" test for evaluating compliance with 11 U.S.C. § 1129(a)(3).

18. This Court evaluated several factors in determining the Debtor failed to satisfy its burden of proof, following its rationale announced in the *In re Trinity Family Practice & Urgent Care PLLC* case. 661 B.R. 793, 813-15 (W.D. Tex. Bankr. 2024). The *Trinity* case's application of a "totality of the circumstances" test has a basis in Fifth Circuit precedent. Specifically, in connection with evaluating the identical good faith requirement under a Chapter 13 plan, the Fifth Circuit expressly adopted a totality of the circumstances test. *In re Chaffin*, 816 F.2d 1070, 1073 (5th Cir.1987) ( "Chaffin I "), modified, *In re Chaffin*, 836 F.2d 215, 216–17 (5th Cir.1988). The Debtor has not cited, and Romspen has not found, any Fifth Circuit cases overturning a lower court's application of a "totality of the circumstances" test in determining compliance with the good faith requirements under 1129(a)(3) or its corollary in Chapter 13 cases, 1325(a)(3). However, in an unpublished opinion, the Fifth Circuit expressly relied on *Chaffin* in affirming the bankruptcy court's application of the "totality of the circumstances" test in a Chapter 13 case. *See In re Stanley*, 224 Fed.Appx.343, 346-47 2007 WL 1026423 *2-3 (5th Cir. March 29, 2007) (reversing district court and affirming bankruptcy court's application of the totality of the circumstances). There is no reason this Court should not apply a "totality of the circumstances" test in a Chapter 11 case when expressly adopted by the Fifth Circuit, under identical Code language, for a Chapter 13 case. The Court, both here and in *Trinity*, considered the totality of factors guided by persuasive decisions from other jurisdictions. Because the Debtor solely attacks the "totality of the circumstances" approach and <u>not</u> the facts supporting such approach, reconsideration on the basis of legal error must be denied.

19. As for feasibility, the Debtor challenges the factual findings of this Court which are reviewed on appeal for clear error. *Nationwide Mut. Ins. Co. v. Berryman Prods.*, 159 F.3d 941, 943 (5th Cir.1998) (findings of fact subject to clear error review). As stated during the Court's

oral ruling, which is incorporated into the order denying Plan confirmation, the Court found the Debtor's condominium conversion strategy too speculative. The Debtor cannot identify any facts supporting a finding of clear error, but rather re-hashes the same arguments made in closing arguments in support of Plan confirmation. Absent any new evidence or other basis for reconsideration, the Reconsideration Motion must be denied as to the Court's finding that the Debtor failed to satisfy its burden of proving that the Plan is feasible under Section 1129(a)(11).

20.     Finally, the Court should deny the Supplement's request for *even more time* to attempt to obtain additional evidence in support of Plan confirmation. The Debtor filed the Plan in May. The Debtor presumably was prepared to proceed with evidence in support of confirmation at the evidentiary hearing scheduled to begin August 2, but sought reconsideration solely as a result of expert reports timely disclosed by Romspen. The Debtor presented its case in chief, in full, during three days over August 22, 28, and 29. The Debtor had its opportunity to present evidence in support of its Plan, and Romspen – having satisfied the bases for stay relief in April – efficiently and effectively demonstrated the speculative nature of the Plan.

21.     Romspen has been delayed already by several months. The Debtor filed this case after GLNH made the Property transfer to protect against a foreclosure. The Court lifted the stay in April. The modified stay relief has already been extended from July, to August, to September, and now to October. There is no just cause for further delaying Romspen's right to enforce its prepetition lien interests in the Property transferred to the Debtor weeks prior to the Petition Date in an attempt to frustrate and hinder Romspen. Because the Supplement merely requests more time to present evidence that <u>does not exist</u> and that could have been presented at the evidentiary hearing if it had existed, the Debtor's request should be denied.

22.     To the extent the Court finds it appropriate to consider new evidence (which Romspen believes is unnecessary to deny the Reconsideration Motion, and for which no new evidence has been presented), Romspen asks that the Court take judicial notice of the petition filed on September 29, 2024 (accepted for filing on September 30, 2024) in the Harris County state court, a copy of which is attached as Exhibit A (the "Petition").

23.     GLNH, like the Debtor, is controlled by Choudhri.   The Petition is filed on behalf of GLNH and seeks, among other things, to enjoin the October 1, 2024 non-judicial foreclosure sale that this Court has authorized to proceed.   In doing so, GLNH makes false and/or misleading statements including, among other things, the continued misrepresentation regarding the "flawed" foreclosure sale that was decided by the Texas Court of Appeals and upheld on a collateral attack by the Debtor by this Court; and this Court's final ruling that Romspen's liens are valid and senior in priority.   In fact, the Petition fails to *even mention this bankruptcy case*.   The filing of the Reconsideration Motion (with a request for expedited hearing on one day's notice) and the last-minute filing of the false and misleading Petition is clearly a coordinated effort by Choudhri to further frustrate Romspen – a coordinated effort this Court should not condone.

**CONCLUSION**

For these reasons, Romspen asks that this Court deny the Reconsideration Motion, including the relief requested in the Supplement.

DATED this 30th day of September, 2024.

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Kyle S. Hirsch*
Kyle S. Hirsch (Tex. Bar No. 24117262)
2200 Ross Avenue, 4200W
Dallas, Texas 75201
Telephone: 602.364.7170
Email: kyle.hirsch@bclplaw.com
Brigid K. Ndege (*Pro Hac Vice*)
161 North Clark Street, Suite 4300
Chicago, Illinois 60601-3315
Telephone: 312.602.5104
Email: brigid.ndege@bclplaw.com
***Attorneys for TIG Romspen US***
***Master Mortgage LP***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2024, a true and correct copy of the foregoing was served via the Court's ECF notification system, including counsel for the Debtor, the U.S. Trustee, and any party who has noticed an appearance in this case, as follows:

William Steven Bryant on behalf of Creditor TIG Romspen US Master Mortgage LP
sbryant@lockelord.com; jpelayo@lockelord.com

Reed W. Burritt on behalf of Creditor Boxer Property Management Corporation
Reed.Burritt@BoxerProperty.com

Beau Butler on behalf of Interested Party Xavier Educational Academy, LLC
bbutler@jw.com; kgradney@jw.com; steso@jw.com

Ali Choudhri, member/manager of Galleria Loop Note Holder, LLC
ali@jetallcapital.com

Genevieve M. Graham on behalf of Interested Party Xavier Educational Academy, LLC and Plaintiff Xavier Educational Academy, LLC
ggraham@jw.com; dtrevino@jw.com

Tara L. Grundemeier on behalf of Creditor City of Houston, Creditor Houston Community College System and Creditor Houston ISD
houston_bankruptcy@lgbs.com

Mark Junell on behalf of Creditor BDFI, LLC
mark@junellfirm.com

Shea Neal Palavan on behalf of Interested Party Galleria Loop Note Holder, LLC
shea@houstonip.com

Shea Neal Palavan on behalf of Interested Party Ali Choudhri
shea@houstonip.com

James Q. Pope on behalf of Creditor BDFI, LLC
ecf@thepopelawfirm.com, jpope@jubileebk.net

James Q. Pope on behalf of Interested Party Galleria Loop Note Holder, LLC
ecf@thepopelawfirm.com, jpope@jubileebk.net

John C. Roy on behalf of U.S. Trustee United States Trustee - AU12
casey.roy@rsbfirm.com; gary.wright3@usdoj.gov

Stephen W. Sather on behalf of Debtor 1001 WL, LLC

ssather@bn-lawyers.com; phammer@bn-lawyers.com; cmurnane@bn-lawyers.com; plevine@bn-lawyers.com; cchristensen@bn-lawyers.com; BarronNewburgerPCAustin@jubileebk.net; mcalderon@bn-lawyers.com; kparsley@bn-lawyers.com

Mark Curtis Taylor on behalf of Attorney Holland & Knight LLP and Debtor 1001 WL, LLC
mark.taylor@hklaw.com; tammy.greenblum@hklaw.com; annmarie.jezisek@hklaw.com

Shane P. Tobin on behalf of U.S. Trustee United States Trustee - AU12
shane.p.tobin@usdoj.gov; Carolyn.Feinstein@usdoj.gov; gary.wright3@usdoj.gov; Tisha.Savannah@usdoj.gov

United States Trustee - AU12
ustpregion07.au.ecf@usdoj.gov

Broocks Wilson on behalf of Creditor Sonder USA Inc.
mack.wilson@keanmiller.com

In addition, a copy was emailed to:
Ali Choudhri
ali@jetallcompanies.com; ali@jetallcapital.com


*/s/ Brigid K. Ndege*
 Brigid K. Ndege

224 Fed.Appx. 343
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See Fed.
Rule of Appellate Procedure 32.1 generally governing
citation of judicial decisions issued on or after Jan.
1, 2007. See also Fifth Circuit Rules 28.7, 47.5.3,
47.5.4. (Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals,
Fifth Circuit.

In the matter of: James Henry STANLEY;
Dorothy Jean Wicker Stanley, Debtor.
Kathleen Suggs, Appellee–Cross–Appellant,
v.
James Henry Stanley and Dorothy Jean
Wicker Stanley, Appellants–Cross–Appellees.

No. 06–30343.
|
March 29, 2007.

**Synopsis**

**Background:** Debtors filed petition for Chapter 13
bankruptcy. Unsecured creditor objected to confirmation of
the Chapter 13 plan and moved to convert it to one under
Chapter 7. The Bankruptcy Court denied the motion, and,
on appeal, the United States District Court for the Western
District of Louisiana, S. Maurice Hicks Jr., J., reversed.
Parties cross-appealed.

**Holding:** The Court of Appeals held that Bankruptcy Court
properly applied totality-of-the-circumstances test when
it determined that debtors filed petition for Chapter 13
bankruptcy in good faith, warranting confirmation of the
Chapter 13 plan.

Reversed and remanded.

**Procedural Posture(s):** On Appeal.

West Headnotes (1)

**[1]**    **Bankruptcy**  👉  Particular Plans

**Bankruptcy**  👉  Proceedings in General

**Bankruptcy**  👉  Evidence

Bankruptcy court properly applied totality-of-
the-circumstances test when it determined that
debtors filed Chapter 13 petition in good faith,
warranting confirmation of the Chapter 13 plan,
although bankruptcy court did not explicitly
state that it was considering the individual
circumstances cumulatively, where bankruptcy
court analyzed each of the most relevant indicia
of bad faith, and its determination that bad faith
was not indicated was plausible. 11 U.S.C.A. §
1325(a)(3).

35 Cases that cite this headnote

**Attorneys and Law Firms**

**\*344**  Jim Roger Nash, Nash Law Firm, Little Rock, AR,
J. Broocks Greer, III, Ratcliff & Greer, Shreveport, LA, for
Appellee–Cross–Appellant.

Robert William Raley, Bossier City, LA, for Appellants–
Cross–Appellees.

Appeals from the United States District Court for the Western
District of Louisiana (No. 5:04cv0059; No. 5:04cv0060).

Before GARWOOD, WIENER, and CLEMENT, Circuit
Judges.

**Opinion**

PER CURIAM: *

**\*\*1**  Debtors–Appellants–Cross–Appellees James Henry
Stanley and Dorothy Jean Wicker Stanley filed a petition for
bankruptcy under Chapter 13 of the United States Bankruptcy
Code. Creditor–Appellee–Cross–Appellant Kathleen Suggs,
an unsecured creditor of the Stanleys, objected to the
confirmation of the Chapter 13 plan and moved to convert
it to one under Chapter 7, asserting that the Stanley's did
not file the petition in good faith, as required by 11 U.S.C.
§ 1325(a)(3). The bankruptcy court denied Suggs's motion
after finding that the Stanleys had filed the petition in good
faith. On appeal, however, the district court reversed, holding
that the bankruptcy court clearly erred in finding good faith.
The Stanleys appeal, asking us to reinstate the ruling of
the bankruptcy court; Suggs cross-appeals, supporting the

ruling of the district court but contending that the Stanleys' bankruptcy action should be dismissed rather than converted to a Chapter 7 proceeding. We reverse the ruling of the district court, affirm the ruling of the bankruptcy court, and remand for further proceedings in that court.

## I. FACTS & PROCEEDINGS

### A. The Judgment

Suggs was the long-time companion of Gilbert Wicker, a brother of Dorothy Stanley. In July 1999, Suggs found Wicker dead in his house in Little Rock, Arkansas. After a brief investigation, the Little Rock police department determined that the cause of death was suicide. [1] In the week following Wicker's death, Mrs. Stanley and her sister challenged the determination that the cause of Wicker's death was suicide, suggesting that Suggs may have played a role in his death. As a result, Suggs brought a diversity action against the decedent's sisters in the Eastern District of Arkansas, claiming that they had defamed her. The jury found in favor of Suggs and awarded her $50,000 in damages. The sisters appealed, and the Eighth Circuit affirmed with one dissent. [2]

### B. The Bankruptcy Petition and Decision

On April 15, 2003, the same day that the judgment against Mrs. Stanley became final and before Suggs could file her judgment **\*345** in the public records and thus become a secured creditor, the Stanleys filed a petition for relief under Chapter 13 of the Bankruptcy Code. The next month, Suggs filed an objection to the proposed wage earners' plan on the grounds that it was a "continuation of the malice of Dorothy Stanley against Kathleen Suggs." Suggs asserted that the plan had not been proposed in good faith, so that confirmation should be denied pursuant to 11 U.S.C. § 1325(a)(3). Suggs also filed a motion to have the Stanleys' Chapter 13 case converted to one under Chapter 7.

Suggs asserted that the Stanleys' lack of good faith was evident from: (1) an earlier filing of a Chapter 7 petition; (2) the timing of the filing of the petition; (3) their attempt to discharge a debt that, according to Suggs, would not be dischargeable in a Chapter 7 bankruptcy, because it arose from a willful or malicious injury; (4) the Stanleys' alleged determination not to pay the debt; (5) Mrs. Stanley's voluntarily quitting her job the month following the entry of the judgment in the district court in Arkansas; (6) the original plan's provision for repayment into a retirement account;

(7) the Stanleys' failure to comply with Suggs's requests for documents; (8) false or undisclosed information on a loan application filed by the Stanleys two months before the bankruptcy filing; (9) the denuding of the Stanleys' home equity by obtaining a mortgage loan; and (10) the plan's preferential treatment of some of the Stanleys' unsecured creditors over Suggs.

**\*\*2** After conducting a hearing, the bankruptcy court confirmed the plan and denied Suggs's motion to convert, finding that the plan had been proposed in good faith. In reaching its conclusion of good faith, the bankruptcy court addressed each of Suggs's proffered indicia of a lack of good faith, rejecting each in turn with reasons. In sum, the bankruptcy court held that the Stanleys filed their petition because "they had no place else they could go and continue to live, pay their bills, and ... support their dependents." The bankruptcy court entered an order overruling Suggs's objection and denying the motion to convert, which Suggs timely appealed to the district court. Following entry of this order, the bankruptcy court allowed modification of the Stanleys' plan, and Suggs objected to the modified plan for substantially the same reasons that she had objected to the original plan. The modified plan was confirmed on December 2, 2003. Suggs again timely appealed to the district court.

The district court consolidated the appeals, eventually reversing the bankruptcy court. The district court concluded that the bankruptcy court had failed to consider the totality of circumstances and remanded the matter to the bankruptcy court for further proceedings. The Stanleys appeal the district court's ruling. Suggs cross-appeals, asserting that the Stanleys' bankruptcy petition should be dismissed rather than converted to a Chapter 7 proceeding.

## II. ANALYSIS

### A. Standard of Review

In reviewing cases originating in bankruptcy, "we perform the same function as did the district court: Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed *de novo*." [3] Whether a petition was filed in good faith is a question **\*346** of fact that we review for clear error. [4] "When a finding of fact is premised on an improper legal standard, or a proper one improperly applied," however, that finding is reviewed *de novo*. [5]

## B. Good Faith

Section 1325(a)(3) of the Bankruptcy Code states that the "court shall confirm a plan if ... the plan has been proposed in good faith and not by any means forbidden by law."[6]  "The good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws."[7]  In proceedings to confirm a plan, the debtor has the burden of proving good faith[8]; in proceedings to convert or dismiss for lack of good faith, the creditor has the burden of showing that the debtor lacks good faith.[9]

To determine whether a Chapter 13 plan was filed in good faith, the bankruptcy court applies a "totality of the circumstances" test.[10]  Under this test, the court considers such factors as (1) "the reasonableness of the proposed repayment plan,"[11] (2) "whether the plan shows an attempt to abuse the spirit of the bankruptcy code,"[12]  (3) whether the debtor genuinely intends to effectuate the plan, (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities, (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay, (6) whether the plan reflects the debtor's ability to pay, and (7) whether a creditor has objected to the plan.[13]  In applying this test, the bankruptcy court "exacts an examination of all of the facts in order to determine the bona fides of the debtor."[14]

 **3  If the bankruptcy court determines that a Chapter 13 plan has not been filed in good faith, it may deny confirmation.[15]  Furthermore, at the request of an interested party, the court may convert a Chapter 13 case not filed in good faith to one under Chapter 7 or dismiss the case in its entirety, "whichever is in the best interests of  *347  creditors and the estate."[16]

## C. Application

Before determining whether the bankruptcy court applied the totality-of-the-circumstances test and, if so, whether the court applied it correctly, we must first identify the standard of review that applies, *i.e., de novo* or clear error. Suggs insists that, despite the general rule that, being factual, findings of

good faith are reviewed for clear error,[17]  *de novo* review should be applied in this instance, because, she contends, the bankruptcy court did not properly apply the totality-of-the-circumstances test. The district court agreed with Suggs, holding that the bankruptcy court had not considered the totality of the circumstances. In so holding, that court concluded that the bankruptcy court had failed to give adequate weight to various indicia of bad faith. Specifically, the district court focused on the timing of the filing of the petition and the possibility that the debt would be non-dischargeable under Chapter 7.

We disagree with the district court's ruling and conclude that the bankruptcy court applied the totality-of-the-circumstances test and did so properly. The bankruptcy court analyzed each of the most relevant indicia of bad faith, rejecting each in turn for reasons that are not clearly erroneous. It ultimately concluded that

> [t]he indicia that [Suggs's counsel] argues of bad faith, there is a lot of smoke. [Suggs's counsel] was not improper or wrong in pursuing this matter. He did have something to shake and pop on each one of these items. It's just that when you shake and pop and clear the smoke, there's no real fire.

The Stanleys filed their petition, ruled the court, because "they had no place else they could go and continue to live, pay their bills, and ... support their dependents."

It is true that the bankruptcy court did not explicitly state that it was considering the individual circumstances cumulatively, but the Supreme Court has instructed that a court is not required to make "a formulary statement" that it considered the relevant facts "individually and cumulatively" in applying the totality-of-the-circumstances test.[18]  Rather, "[i]t suffices that that was the fair import of the [lower court's] opinion."[19]  Here, "the fair import" of the bankruptcy court's analysis is that it considered each indicium *and* considered them all *in toto*. We therefore review the bankruptcy court's determination that the Stanleys acted in good faith for clear error. "As long as there are two  *348  permissible views of the evidence, we will not find the factfinder's choice between competing views to be clearly erroneous. If the bankruptcy

court's account of the evidence is plausible in light of the record viewed as a whole, we will not reverse it." [20]

 **4  After reviewing the briefs and the record, and hearing oral argument by able counsel for the parties, we conclude that the bankruptcy court's determination that the Stanleys acted in good faith was not clearly erroneous. First, that court's determination that the timing of the petition and the prior bankruptcy filing did not indicate bad faith is plausible. Although these factors are relevant, they are not *per se* evidence of a lack of good faith, and we cannot say that the bankruptcy court clearly erred in discounting them.

Second, the bankruptcy court did not clearly err in declining to consider whether the Stanleys' debt to Suggs would be non-dischargeable as a "willful and malicious injury" under Section 523(a)(6) of Chapter 7. [21]  Contrary to Suggs's contention, Arkansas law does not appear to require a finding that Mrs. Stanley acted maliciously within our interpretation of Section 523(a)(6). We have held that the "test for willful and malicious injury under Section 523(a)(6) ... is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor." [22]  In this case, a verdict against Mrs. Stanley could have been supported by a finding that she acted with reckless disregard for the consequences of her act, a finding that would place the actions outside the scope of Section 523(a)(6). More importantly, even if the debt were non-dischargeable under Chapter 7, this is only one of many factors to be considered in the totality of the circumstances. Alone, it does not demand a finding of a lack of good faith.

Third, the bankruptcy court considered and rejected the remaining asserted signals of bad faith—for example, Mrs. Stanley's decision to stop working, the discovery disputes, a loan application containing incorrect information, and the Stanleys' stripping of equity from their home—because the court accepted the justifications that the Stanleys offered for these actions during their testimony. These determinations are, after all, based largely on the trial court's credibility calls, to which we (and the district court sitting as an appellate court) owe considerable deference. We decline to call them clearly erroneous and therefore decline to disturb them.

Finally, Suggs's repeated assertion that the Stanleys' motive of spite somehow warrants a finding of bad faith fails. Even if we assume *arguendo* that the Stanleys did act with spite and malice, this would not mean that they are automatically not entitled to the protection of the Bankruptcy Code: One may be an honest debtor even if his past dealings with his creditor have been dishonest. The debt in  *Chaffin I* and  *Chaffin II,* for example, stemmed from the debtor's conviction for securities fraud and theft. [23]

Inasmuch as "the bankruptcy court's account of the evidence is plausible in light of  *349  the record viewed as a whole," [24]  we reverse the appellate ruling of the district court and affirm the original good faith ruling of the bankruptcy court.

### III. CONCLUSION

 **5  The bankruptcy court applied the totality of the circumstances test and did so properly. Its conclusion that the Stanleys acted in good faith is not clearly erroneous. Accordingly, we REVERSE the appellate ruling of the district court and AFFIRM the rulings of the bankruptcy court that Suggs appealed. As we have concluded that the bankruptcy court's decisions were not error, we deny Suggs's request that the bankruptcy petition be dismissed, and we REMAND this case to the bankruptcy court for further proceedings consistent with its affirmed ruling.

**All Citations**

224 Fed.Appx. 343, 2007 WL 1026423

---

### Footnotes

*	Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. 🚩 *Suggs v. Stanley,* 324 F.3d 672, 675–76 (8th Cir.2003).

2. 🚩 *Id.* at 676–77, 682.

3. 🚩 *Nationwide Mut. Ins. Co. v. Berryman Prods.* (*In re Berryman*), 159 F.3d 941, 943 (5th Cir.1998).

4. 🚩 *In re Elmwood Dev. Co.,* 964 F.2d 508, 510 (5th Cir.1992) (chapter 11 petition); *see also* 🚩 *In re Love,* 957 F.2d 1350, 1356 (7th Cir.1992) (chapter 13 petition). "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." 🚩 *In re Missionary Baptist Found. of Am.,* 712 F.2d 206, 209 (5th Cir.1983) (internal quotation marks omitted).

5. 🚩 *In re Missionary Baptist Found. of Am.,* 712 F.2d at 209; *see also* 🚩 *In re Mercer,* 246 F.3d 391, 402 (5th Cir.2001) ("[T]he clear error standard does *not* apply to findings of fact resulting from application of an incorrect legal standard.").

6. 11 U.S.C. § 1325(a)(3).

7. 🚩 *In re Elmwood Dev. Co.,* 964 F.2d at 510.

8. *See* 🚩 *Hardin v. Caldwell,* 895 F.2d 1123, 1126 (6th Cir.1990) 🚩 (*In re Caldwell* ).

9. *See* 🚩 *In re Love,* 957 F.2d at 1355–56.

10. *E.g.,* 🚩 *In re Chaffin,* 816 F.2d 1070, 1073 (5th Cir.1987) ( "🚩 *Chaffin I* "), *modified,* 🚩 *In re Chaffin,* 836 F.2d 215, 216–17 (5th Cir.1988) ("🚩 *Chaffin II* ").

11. 🚩 *Id.*

12. 🚩 *Id.*

13. 🚩 *Chaffin II,* 836 F.2d at 216–17, *modifying* 🚩 *Chaffin I,* 816 F.2d 1070.

14. 🚩 *Chaffin I,* 816 F.2d at 1074.

15. Section 1325(a)(3) of the Bankruptcy Code states that "the court shall confirm a plan if ... the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).

16. Section 1307(c)(5) provides that:

    on request of a party in interest ... and after notice and a hearing, the court may convert a case under ... [chapter 13] to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including ... denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan.

11 U.S.C. § 1307(c)(5). Although not explicitly enumerated as a reason for dismissal or conversion, "[m]ost courts have held that lack of good faith can be cause for dismissal or conversion of a chapter 13 plan." 8 COLLIER ON BANKRUPTCY § 1307.04[10] at 1307–21 (15th ed. revised 1996) (collecting cases).

17   *In re Elmwood Dev. Co.,* 964 F.2d at 510;   *In re Missionary Baptist Found. of Am.,* 712 F.2d at 209 ("A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed.") (internal quotation marks omitted).

18   *Early v. Packer,* 537 U.S. 3, 9, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam)

19   *Id.*

20   *In re Acosta,* 406 F.3d 367, 372 (5th Cir.2005) (internal citation omitted).

21   Chapter 7 states that any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is non-dischargeable.   11 U.S.C. § 523(a)(6).

22   *In re Williams,* 337 F.3d 504, 509 (5th Cir.2003).

23   *Chaffin I,* 816 F.2d at 1071.

24   *In re Acosta,* 406 F.3d at 372.

---

**End of Document**      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT A

9/29/2024 7:43 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 92573988
By: Talitha McCarty
Filed: 9/30/2024 12:00 AM

CAUSE NO. _____

| | | |
|---|---|---|
| GALLERIA LOOP NOTE HOLDER, LLC | § § § | IN THE DISTRICT COURT OF |
| v. | § § | HARRIS COUNTY, TEXAS |
| TIG ROMSPEN US MASTER MORTGAGE, LP | § § § | |
| And | § § | |
| GEORGE LEE | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Galleria Loop Note Holder, LLC, Plaintiff herein, filing this its Original Petition, Application for Injunctive Relief, and Request for Disclosures against TIG Romspen US Master Mortgage, LP, and George Lee, Defendant herein, and for causes of action would respectfully show the Court as follows:

### DISCOVERY

1.     Plaintiff intends to conduct discovery under Texas Rules of Civil Procedure 190.3 (Level 2).

### PARTIES

2.     Galleria Loop Note Holder, LLC is an entity who conducts business in Harris County, Texas and may be served with process on the undersigned legal counsel.

3.     TIG Romspen US Master Mortgage, LP is an entity which conducts business in Harris County, Texas and may be served with process as follows:

> TIG Romspen US Master Mortgage, LP
> c/o The Secretary of the State of Texas
> 1100 Congress, Capitol Bldg., Rm 1E.8
> Austin, Texas 78701

4.     George Lee is an individual who resides in Harris County, Texas and may be served with process as follows:

> George Lee
> 5353 W. Alabama, Suite 610
> Houston, TX 77056

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over TIG Romspen US Master Mortgage, LP because this Defendant is an entity which conducts business Harris County, Texas. The Court has jurisdiction over George Lee because this Defendant is an party who resides in Harris County, Texas.

6.     The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court. Venue is mandatory in Harris County, Texas because the subject matter of the lawsuit involves real property which is located in Harris County, Texas. Further, all or a substantial part of the events or omissions giving rise to Plaintiff's causes of action against Defendant occurred in Harris County, Texas thus venue is proper under §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

## RELEVANT FACTS

7.     The subject matter of this lawsuit is the real property and the improvements thereon located at 1001 West Loop South, Houston, TX 77027 (the "Property").

8.     Galleria Loop Note Holder, LLC ("Plaintiff") is the first lien holder for the Property and became so by purchasing the Note from the previous first position lienholder,

Midfirst Bank.  To obtain this note, Plaintiff obtained a loan from TIG Romspen US Master Mortgage, LP ("Defendant") who held a collateral interest on the Note but never obtained a Deed of Trust on the Property, initially.

9.     Due to complications with the Property, the owner breached obligations outlined in the deed of trust.  As such, Plaintiff posted the Property for foreclosure in September 2019 and by way of credit bid, purchased the Property at the sale which was memorialized by a Substitute Trustee's Deed.  Upon Plaintiff's purchase, they gave a deed of trust to Defendant against the Property as security for the loan to purchase the Note.  Now, having a alleged valid deed of trust, Defendant is attempting to foreclose on the Property.

10.     Later, however, it was discovered by a title company that Plaintiff failed to appoint a substitute trustee to conduct the foreclosure sale, thus, the sale was conducted by an unauthorized party. A foreclosure sale conducted by an unauthorized party is void – a nullity - that has been made abundantly clear through case law.  Accordingly, the Substitute Trustee's Deed that purported to give ownership interest to Plaintiff was, also, void.  And, therefore, the deed of trust that Plaintiff gave to Defendant was void.  Essentially, the void foreclosure sale creates a break in the chain of title which prevents any ownership interest from transferring after the sale took place.

11.     Thus, Defendant does not have and can not have standing to conduct the current foreclosure sale because they have no valid security interest in the Property.  Plaintiff is informed and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have standing under a deed of trust and statute.  Plaintiff is informed and believes, and thereon alleges, that in order to give a deed of trust to a lender to secure property, that person must own the property.  A person who does not own a piece of property cannot give a security

interest on that property.

12.     Defendant cannot produce any evidence that the Plaintiff's has ever held an ownership interest that would allow them to give a security interest on the Property to Defendant. Any attempt to transfer the beneficial interest of a deed of trust without actual ownership of the underlying property is void under the law.  Therefore, Defendant cannot establish that is entitled to assert a claim in this case such that the deed of trust to Defendant was effective at all.  As such, Defendant does not have standing to foreclosure on the Property.

13.     Defendant has been made aware of this issue but has insisted on this course of action.  That is knowingly using faulty court records.

14.     In September of 2024, Plaintiff began receiving a barrage of mail from investors and attorneys offering their services to help its save its home from the coming foreclosure sale on October 1, 2024.  Plaintiff was surprised to say the least because it had not received any notice from Defendants regarding the scheduled foreclosure sale.   Apparently, Defendants posted the Property for foreclosure without sending Plaintiff any notice of foreclosure sale which is a violation of the Texas Property Code, the Deed of Trust, and Plaintiff's process rights.

15.     Accordingly, Plaintiff alleges that Defendant is attempting to wrongfully sell its Property at a foreclosure sale on October 1, 2024 in violation of the Deed of Trust, Texas Property Code, Plaintiff's due process rights, and without standing.

## CLAIMS

## AGENCY & RESPONDEAT SUPERIOR

16.     Wherever it is alleged that Defendant did anything, or failed to do anything, it is meant that such conduct was done by Defendant's employees, vice principals, agents, attorneys,

and/or affiliated entities, in the normal or routine scope of their authority, or ratified by Defendant, or done with such apparent authority so as to cause Plaintiff to reasonably rely that such conduct was within the scope of their authority. Plaintiff did rely to Plaintiff's detriment on Defendant's representatives being vested with authority for their conduct. Defendant is vicariously liable for the conduct of their employees, vice principals, agents, attorneys, affiliated entities, and representatives of Defendant's affiliated entities by virtue of respondeat superior, apparent authority, and estoppel doctrines.

## FIRST CAUSE OF ACTION:
## <u>BREACH OF CONTRACT</u>

17.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 16 as if set forth fully herein.

18.     The actions committed by Defendant constitute breach of contract because:

    A.     There exists a valid, enforceable contract between Plaintiff and Defendant;

    B.     Plaintiff has standing to sue for breach of contract;

    C.     Plaintiff performed, tendered performance, or was excused from performing its contractual obligations;

    D.     Defendant breached the contract; and

    E.     The breach of contract by Defendant caused Plaintiff's injury.

## SECOND CAUSE OF ACTION:
## <u>DECLARATORY JUDGEMENT</u>

19.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 18 as if set forth fully herein.

20.     Plaintiffs made, presented, or used the assignment associated with the mortgage loan with knowledge that the documents or other records are fraudulent court records or

fraudulent liens or claims against the real property.  Additionally, Defendant falsely and fraudulently prepared documents required for Defendant to foreclose as a calculated and fraudulent business practice.

21.     Therefore, Plaintiff seeks a determination of the rights of the parties pursuant to Tex. Div. Prac. & Rem. Code Ann. § 37.001 (West). An actual controversy has arisen and now exits between Plaintiff and Defendant did not have the right to foreclose on the Property because Defendant has failed to perfect any security interest in the mortgage note as a real party in interest.  Thus, the purported power to foreclose, or even to collect monetarily on the note, does not now apply.

22.     Plaintiff seeks a determination that Defendant is liable for having failed to properly remove from the record any and all instruments Defendant filed or caused to be filed, registered or recorded in the deed of records of Texas in the same manner as the original instrument was required to be filed, registered or recorded.

23.     Plaintiff seeks a determination that the power of sale in the Deed of Trust has no force and effect at this time as to Defendant because Defendant's actions in processing, handling, and foreclosure of this loan involved fraudulent, false, deceptive and/or misleading practices including, but not limited to, violations of Texas laws meant to protect the property records and property owner's/mortgage borrowers.

24.     Plaintiff seeks a determination that because Defendant does not have standing to initiate foreclosure of the property, that any and all notices sent by Defendant regarding default or foreclosure be declared invalid.

25.     Plaintiff seeks a declaratory judgment for quiet title, thereby voiding all documents on file indicating any interest of Defendant in the Property pursuant to the Deed or Trust,

subsequent assignment thereof, appointment of substitute trustee documents and voiding any interest in the name of Defendant in the Property. Furthermore, Plaintiff is entitled to peaceful and quiet possession of the Property against Defendant now and forever.

26.     Lastly, Plaintiff seeks a declaratory judgment that Defendant George Lee, who holds the 3rd lien position, does have a financial interest in the Property and, thus, is a necessary party.

### THIRD CAUSE OF ACTION:
### <u>VIOLATION OF TEXAS PROPERTY CODE §5.065</u>

27.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 26 as if set forth fully herein.

28.     Pursuant to the provisions of the Texas Property Code, the holder of a note must ordinarily give notice to the maker of the holder's intent to accelerate the time for payment as well as notice of acceleration. If the mortgagee intends to accelerate the maturity of the debt, the notice must unequivocally inform the mortgagor of the mortgagee's intention. A proper notice of default must give the borrower notice that the alleged delinquency must be cured; otherwise, the loan will be accelerated and the property will go to foreclosure. Prior to a foreclosure action, the noteholder is also required to give the home owners clear and unequivocal acceleration notice. Effective acceleration requires two acts: notice of intent to accelerate and notice of acceleration.

29.     The actions committed by Defendant constitute violations of the Texas Property Code §5.065 because Defendant never sent proper and timely notice of default, the opportunity to cure the default, notice of intent to accelerate the debt, notice of acceleration, and notice of foreclosure sale which are required in order for Defendant to foreclose on their lien rights to the Property.

## FOURTH CAUSE OF ACTION:
## COMMON LAW FRAUD

30.    To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 29 as if set forth fully herein.

31.    The actions committed by Defendant constitute common law fraud because Defendant made false and material representations to Plaintiff when they posted the subject property for foreclosure sale despite having knowledge that their "lien" is void, thus creating a standing issue for them moving forward.  Defendant knows that the representations were and are false or made these representations recklessly, as a positive assertion, and without knowledge of its truth. In addition, Defendant made these representations with the intent that Plaintiff act on them and Plaintiff relied on these representations which caused Plaintiff's injury.

## DAMAGES:
## ACTUAL DAMAGES

32.    Plaintiff is entitled to recover its actual damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## EXEMPLARY DAMAGES

33.    Plaintiff is entitled to recover its exemplary damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## ATTORNEYS' FEES

34.    Plaintiff was forced to employ the undersigned attorneys to represent him and has agreed to pay them reasonable attorneys' fees for their services. Plaintiff is entitled to recover its reasonable attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## CONDITIONS PRECEDENT

35.     All conditions precedent to the Plaintiff's right to bring these causes of action have been performed, have occurred, or have been waived.

## REQUEST FOR DISCLOSURES

36.     Defendant is hereby requested to disclose to Plaintiff, within 50 days of service of this request, the information and material described in Rule 194 of the Texas Rules of Civil Procedure.

## EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

37.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraph 1 through paragraph 39 as if set forth fully herein.

38.     Unless Defendant is enjoined, Plaintiff will suffer probable harm which is imminent and irreparable. More specifically, if not enjoined, Defendant may sell the Property at any time during the pendency of this matter thus depriving Plaintiff of its financial interest and security for their note on the Property and potentially causing Plaintiff to be dispossessed of their interest. Defendant has posted the Property for a foreclosure sale on October 1, 2024.  Plaintiff has no adequate remedy at law because the subject matter is real property, and any legal remedy of which Plaintiff may avail itself will not give him as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

39.     Therefore, Plaintiff requests that this Court issue a Temporary Restraining Order and, thereafter, a Temporary Injunction, to restrain Defendant from taking any further foreclosure action to sell the Property (including, but not limited to, sending notices of default, acceleration, and foreclosure sale) which is the subject matter of this lawsuit and is commonly known as 1001

West Loop South, Houston, TX 77027 at a foreclosure sale.

40.     Plaintiff further requests that, upon trial on the merits, Defendant be permanently enjoined from the same acts listed in Paragraph 39 above.

41.     Plaintiff is likely to prevail on the merits of the lawsuit as described above.

42.     The granting of the relief requested is not inconsistent with public policy considerations.

43.     Plaintiff is willing to post a reasonable temporary restraining order bond and requests that the Court set such bond.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

A.     Defendant be cited to appear and answer herein;

B.     The Court conduct a hearing on Plaintiff's Application for Injunctive Relief;

C.     A temporary restraining order be issued restraining Defendant, their agents, employees, and legal counsel, and those acting in concert or participation with Defendant who receive actual notice of the Order, by personal service or otherwise, from taking any further foreclosure action to sell the Property (including, but not limited to, sending notices of default, acceleration, and foreclosure sale) which is the subject matter of this lawsuit and is commonly known as 1001 West Loop South, Houston, TX 77027 at a foreclosure sale;

D.     A Permanent Injunction be entered enjoining Defendant from the same acts listed in Paragraph C above; and

E.     Upon final hearing or trial hereof, the Court order a judgment in favor of Plaintiff

against Defendant for its actual damages, exemplary damages, reasonable attorneys' fees, all costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff may be entitled.

Respectfully Submitted by,

**Law Office of Erick DeLaRue, PLLC**

By:    /s/ Erick DeLaRue
**ERICK DELARUE**
Texas Bar No: 24103505
2800 Post Oak Boulevard, Suite 5600
Houston, TX  77056
Telephone: 713-899-6727
Email: erick.delarue@delaruelaw.com
Mary Daughtrey
Telephone:  832-763-8818
email.mary.daughtrey@delaruelaw.com

**ATTORNEY FOR PLAINTIFF**