



*Rev. Sept 2022*

Partners – Houston
5847 San Felipe St #1400
Houston, Texas 77057
(713) 629-0500

# Exclusive Sale Listing Agreement

      This Exclusive Sale Listing Agreement (the "**Agreement**") made and entered into effective as of the _____ day of _____, 20___ (the "**Agreement Date**"), by and between John Patrick Lowe, as trustee (the "Trustee") of the Chapter 11 bankruptcy estate of 1001 WL, LLC, a New York limited liability company (the "**Owner**") and **PCR Brokerage Houston, LLC, a Texas limited liability company, d/b/a Partners** (the "**Broker**"), regarding the real property located at 1001 West Loop South in Harris County, Texas, or as may be more particularly described on any attached <u>Exhibit A</u>, together with all buildings, improvements, and fixtures; all rights, privileges, and appurtenances pertaining to the Property, including Owner's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, easements and rights-of-way; Owner's interest in all leases, rents, and security deposits for all or part of the Property; Owner's interest in all licenses and permits related to the Property; Owner's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures; and Owner's interest in any trade names, if transferable, used in connection with the Property (collectively, the "**Property**"). The Broker is informed that the Property is encumbered by a senior-priority lien interest in favor of TIG Romspen US Master Mortgage LP ("Lender").

In consideration of the agreements contained herein, the Trustee and Broker agree as follows:

**A.**     **Appointment of Broker**. The Trustee desires to sell the Property (and the terms "sale" or "sell" as used in this Agreement include a sale or exchange), and desires to retain the exclusive services of Broker to assist the Trustee in that regard. Subject to approval of the bankruptcy court (the date of entry of a bankruptcy court order approving this Agreement, the "Effective Date"), the Trustee appoints Broker as its sole and exclusive agent for the term of this Agreement with the exclusive right to list and sell the Property upon the terms and conditions contained in this Agreement. Broker will assist the Trustee in the marketing of the Property and in the negotiating a sale with any prospective purchaser (the "**Prospect**"). Broker may carry out its duties under this Agreement through its sales associates and other brokers ("**Cooperating Brokers**").

**B.**     **Listing Term**. The term of this Agreement commences on the Effective Date and will expire on April 1, 2026 (the "**Expiration Date**"). However, if on the Expiration Date there is a pending agreement to sell the Property (a "**Pending Transaction**") between the Trustee and a Prospect, and the Pending Transaction has not yet been closed and funded, then this Agreement will remain in effect until the Pending Transaction closes, is funded, and the Fee (defined below) is paid to Broker. If a contingent contract or an option agreement covering the Property is executed by the Trustee during the term of this Agreement, then this Agreement will remain in effect until the earlier of: (i) the transaction contemplated by the contract or agreement is closed and funded and a Fee is paid to Broker; or (ii) the contract or agreement expires or is terminated, and is not renewed or reinstated. Notwithstanding the Listing Term stated above in this paragraph, this Agreement shall continue after the Expiration Date and the Term shall be automatically extended on a month to month basis unless the Owner or Broker provides thirty (30) days' prior written notice to the other party that it elects not to renew or terminates this Agreement after the Expiration Date by providing thirty (30) days' prior written notice of termination to the other party. If, during the Listing Term, there was a Pending Transaction that subsequently was terminated, then this Agreement shall automatically be extended by the time the Property was subject to a pending agreement to sell. If, for any reason, during this

1

Agreement, Broker is required to cease marketing of the Property, the Listing Term shall be extended for an equal time period.

**C.** **Listing Price for Sale**. The Broker may list the Property for sale at a price to be determined. However, the sale of the Property will be conducted pursuant to sale procedures to be approved by the bankruptcy court. Any purchase of the Property is subject to bankruptcy court approval. The Trustee agrees to sell the Property for such price as is acceptable to the Trustee and approved by the bankruptcy court in accordance with the approved sale procedures. Owner will pay from sale proceeds all typical closing costs charged to sellers of commercial real estate in Texas unless otherwise negotiated with a potential buyer.

**D.** **Lease of the Property**. Intentionally deleted.

**E.** **Professional Service Fee**.

    1. In consideration of the services to be rendered by Broker for the benefit of Owner, including the procuring of a Prospect and, if requested, assisting the Trustee in negotiating a contract for sale, the Trustee agrees to pay Broker a professional service fee (the "**Fee**") upon the sale of the Property to a purchaser other than Lender in an amount equal to: two percent (2%) of the Sales Price of the Property. The term "**Sales Price**" means the gross sales price of the Property, including the value of any other property given in exchange. Owner shall cause the Fee to be paid to Broker at the closing of the sale from sale proceeds. Notwithstanding the above, in the event the property Property is purchased by TIG Romspen US Master Mortgage LP ("Lender")Lender, Broker shall be paid by the Trustee a fee equal to $50,000.00 in lieu of the Fee outlined above.

    2. The Fee is payable in Harris County, Texas. Owner shall pay any applicable sales taxes on the Fee. Execution by the Trustee of a contract on any price or terms other than as listed in this Agreement will not preclude Broker from collecting the Fee based upon the actual price or as may be otherwise earned by Broker. The Trustee acknowledges that: (i) professional service fees and Broker's commissions are at a market rate and are not controlled or fixed by a group or association; and (ii) the Fee has been negotiated at arms-length with Broker and, taking all circumstances into consideration, is a fair amount equivalent to the value of the services to be rendered by Broker under this Agreement.

    3. The Trustee will pay the Fee upon the sale, exchange, or transfer of an equitable interest in the Property to the Prospect during the term of this Agreement or during the Protection Period, subject to, and only after, approval by the bankruptcy court. In the event of a dispute between the Trustee and any Prospective Purchaser in which the Trustee recovers or receives in settlement any deposit or earnest money, then the Trustee shall pay to Broker a liquidated sum equal to twenty percent (20%) of such deposit or earnest money.

    4. Intentionally omitted.

    5. Owner hereby authorizes and instructs any title company representative, escrow officer, or any other person handling the closing of any transaction to pay and disburse the Fee directly to Broker out of the proceeds at the closing, to the extent approved by the bankruptcy court.

    6. No Fee will be payable if a Prospect declines to purchase the Property because: (i) the Trustee, without fault, is unable to deliver an abstract of title to the Property or an owner's policy of title insurance, or (ii) a substantial part of the Property is destroyed by fire or other casualty and the Trustee, without fault, cannot restore the Property to its previous condition.

       7.       Once the Fee is earned, the Fee is payable either during the Listing Term or after it ends and after the closing and funding of any sale or exchange of all or part of the Property and bankruptcy court approval.

**F.**       **Protection Period**.

       1.       As to transactions which close after the Expiration Date, the Trustee will pay the Fee to Broker upon the closing and funding of a transaction with a Listed Prospect (defined below), if Broker delivers to the Trustee within fifteen (15) days after the Expiration Date a written list of the names of the Prospects with whom Broker has made contact and, within One Hundred and Eighty (180) days after the Expiration Date (the "**Protection Period**"), the Trustee (i) executes a contract of sale or exchangeor (ii) otherwise agrees to transfer any legal or equitable interest in the Property (including a contract for deed or an option to purchase or lease the Property) to a Listed Prospect. The term "**Listed Prospect**" means a Prospect named on the list delivered to the Trustee, provided Broker (or a Cooperating Broker working with Broker) during the term of this Agreement (i) procured the Prospect; or (ii) called the Prospect's attention to the Property; or (iii) has engaged in negotiations with Prospect; or (iv) has shown the Property to Prospect. Any person or entity related to a Listed Prospect by family or business relationship will also be deemed to be a Listed Prospect. If the Trustee subsequently enters into a listing agreement with another real estate broker with respect to the Property, the Trustee agrees to exclude the Listed Prospect(s) from the other broker's listing agreement during the Protection Period.

       2.       Owner warrants that any existing protected listed prospects have been disclosed to Broker, and any such prospect or list not disclosed shall be subject to the Fee outlined in Section E.

**G.**       **Cooperating Brokers**. Owner authorizes Broker to make offers of cooperation to Cooperating Brokers in the listing of the Property, including offers of sub-agency, and to cooperate with and use the services of the Cooperating Brokers and their sales associates from time to time in discharging and performing the duties of Broker. Broker may share a portion of the Fee with the Cooperating Brokers, including Cooperating Brokers who may be acting as agents for Prospects. The Trustee shall pay the full amount of the Fee to Broker, and Broker may divide the Fee with Cooperating Brokers in any proportion as Broker may elect.

**H.**       **Broker's Authority**.

       1.       Broker shall use such marketing techniques and shall devote such time and effort on Owner's behalf as Broker, in its sole discretion, deems appropriate and necessary to attempt to achieve the timely sale or lease of the Property, including, but not limited to, (i) the exclusive right to place advertising signs on the Property and to remove all other real estate signs, and (ii) listing or marketing the Property online or through social media networks.

       2.       Broker is authorized to enter upon the Property at reasonable times, and with Cooperating Brokers and Prospects, for purposes of viewing the Property and showing the Property to Prospect's employees, inspectors, agents and contractors.

       3.       Broker may use the listing information and sales and/or lease price, rental and terms information upon closing for Broker's market evaluation, networking and appraisal purposes, and for disclosing to other persons as Broker may deem desirable, including disclosing the information in an on-line property network. Any photographs, videos or other materials submitted to an on-line listing service become the property of the listing service. Broker may also advertise that Broker "sold" or "leased" the Property after the closing of a sale or execution of a lease in which the Broker was involved.

       4.       Broker shall not execute any document on behalf of the Trustee without written authorization.

**I.**       **Owner Representations**. The Trustee represents and warrants that:

       1.       (i) the Trustee is not, and none of his partners, members, managers, employees, officers, directors, representatives or agents is, a person or entity with whom U.S. persons or entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("**OFAC**") of the Department of the Treasury (including

3

those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or under any other law, rule, order, or regulation that is enforced or administered by OFAC (such persons and entities each being a "**Prohibited Person**"); (ii) it is not acting directly or indirectly, for or on behalf of any Prohibited Person; (iii) it is not engaged in this transaction, directly or indirectly, on behalf of, or instigating or facilitating this transaction, directly or indirectly, on behalf of any Prohibited Person; and (iv) it will not contract with or otherwise engage in any dealings or transactions or be otherwise associated with any Prohibited Person. **THE TRUSTEE, ON BEHALF OF OWNER AND NOT IN HIS INDIVIDUAL CAPACITY, HEREBY AGREES TO DEFEND, INDEMNIFY, AND HOLD HARMLESS BROKER FROM AND AGAINST ANY AND ALL CLAIMS, DAMAGES, LOSSES, RISKS, LIABILITIES, AND EXPENSES (INCLUDING ATTORNEY'S FEES AND COSTS) ARISING FROM OR RELATED TO ANY BREACH OF THE FOREGOING REPRESENTATIONS AND WARRANTIES;**

2. Owner has fee simple title to and peaceable possession of the Property and all its improvements and fixtures thereon, unless rented, and the legal capacity to lease the Property;

3. neither Owner nor the Trustee is bound by a listing agreement with another broker for the sale, exchange, or lease of the Property that is or will be in effect during the Term of this Agreement;

4. no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;

5. except as Trustee has otherwise disclosed to Broker, there are no delinquencies or defaults under any deed of trust, mortgage, or other encumbrance on the Property;

6. except for the United States Bankruptcy Court for the Western District of Texas, Austin Division, the Property is not subject to the jurisdiction of any court;

7. Owner or the Trustee owns sufficient intellectual property rights in any materials which the Trustee provides to Broker related to the Property (for example, brochures, photographs, drawings, or articles) to permit Broker to reproduce and distribute such materials for the purposes of marketing the Property or for other purposes related to this Agreement;

8. all information relating to the Property provided by the Trustee to Broker is true and correct to the best of the Trustee's knowledge;

9. except as noted in writing to Broker or as set forth in the bankruptcy court proceedings, (i) there are no foreclosures, lien claims, litigation or condemnation proceedings or similar actions pending with respect to any part of the Property, and (ii) the Trustee has not received any notices that any such actions are being contemplated. Owner shall notify Broker in writing if, during the term of this Agreement, any such actions are brought, or the Trustee receives any such notices;

10. to the Trustee's knowledge, other than as disclosed by to Broker in writing or as set forth in the bankruptcy court proceedings, the Property (i) does not have any material latent, structural or construction defects, and (ii) is not contaminated with any toxic or hazardous substances in violation of applicable laws and regulations. The Trustee hereby authorizes Broker to disclose to Prospects all information about the condition of the Property whether disclosed by the Trustee orally or in writing, or otherwise discovered by Broker. The Trustee shall indemnify, defend and hold harmless Broker against any and all claims, damages and costs of every kind and character (including but not limited to reasonable attorney's fees and court costs) resulting from or related to: (i) any incomplete, incorrect, misleading or inaccurate information furnished by the Trustee about the Property; or (ii) concealment by the Trustee of any material information about the Property. The Trustee hereby acknowledges that

Broker, any Cooperating Brokers and Prospects will be relying upon the accuracy and completeness of information furnished by the Trustee;

      11      the Property will be offered, shown to and made available for sale to all persons without regard to race, color, religion, national origin, gender, disability, or familial status;

      12.      the Trustee shall fully cooperate with Broker, Broker's sales associates and Cooperating Brokers, with respect to their efforts to market and sell the Property. The Trustee shall refer to Broker all inquiries about the purchase of the Property, and the Trustee shall conduct all negotiations with Prospects through Broker. The Trustee shall furnish to Broker all reasonable information about the Property as Broker may need in order to market the Property and to timely respond to inquiries by Prospect, to the extent such information is reasonably available to the Trustee;

      13.      the Trustee agrees to reimburse Broker for all authorized expenses incurred by Broker on behalf of the Trustee's advertising and marketing (including signage) the Property up to a maximum amount of $10,000.00. Authorized expenses shall include all costs incurred by Broker in the advertising and marketing of the Property which are specifically authorized by the Trustee in writing. The Trustee shall pay, or reimburse Broker for, authorized expenses from time to time immediately upon receipt by Owner of written statements evidencing the expenses.

      14.      Unless otherwise provided to Broker in writing prior to the Effective Date, the Trustee is not aware of: (a) any subsurface: structures, pits, wastes, springs, or improvements; (b) any pending or threatened litigation, arbitration or other legal proceeding, condemnation, or assessment affecting the Property; (c) any current dispute with a tenant on the Property; (d) any environmental hazards or conditions that materially affect the Property; (e) whether the Property is or has ever been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers; (f) whether radon, asbestos containing materials, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants) or other pollutants or contaminants of any nature now exist or have ever existed on the Property; (g) any wetlands, as defined by federal or state law or regulation, on the Property; (h) any threatened or endangered species or their habitat on the Property; (i) any present or past infestation of wood-destroying insects in the Property's improvements; (j) any contemplated material changes to the Property or surrounding area that would materially and detrimentally affect the ordinary use of the Property; (k) any condition on the Property that violates any law or ordinance; (l) any prevalent odor associated with the Property; and (m) any condition on the Property that would affect the health or safety of an ordinary tenant.

**J.**      **Owner's Additional Promises and Covenants**. The Trustee agrees to: (a) cooperate with Broker to facilitate the showing and marketing of the Property; (b) not negotiate with any prospective buyers/tenant who may contact the Trustee directly, but refer all prospective buyers/tenants to Broker; (c) not enter into a listing agreement with another broker for the lease of the Property to become effective during this Agreement; (d) not enter into a listing agreement for the sale of all or party of the Property with another broker to become effective during this listing without Broker's written permission; (e) provide Broker with copies of the following, if any and within the Trustee's possession, relating to the Property: a current rent roll, all leases including any amendments, architectural plans and drawings, renderings, survey, a current operating statement, environmental inspection reports, engineering reports, and other relevant information that Broker may request during this Agreement; (f) advise Broker of any tenants moving in or out of the Property; (g) complete any disclosures or notices required by law or a contract to lease the Property; (h) amend any applicable notices and disclosures if any material change occurs during this Agreement; and (i) at the Trustee's expense, remove from the Property all "For Lease" (or similarly worded) signs other than Broker's signs, "For Sale" signs from the Property unless the Property is listed for sale with another broker; and "For Information" signs or similarly worded signs other than Broker's signs. The Trustee agrees Broker liability shall be limited to the amount of Fee to be earned by this Agreement.

K. **Indemnity**.

    1. **BROKER IS NOT RESPONSIBLE OR LIABLE IN ANY MANNER FOR PERSONAL INJURY TO ANY PERSON OR FOR LOSS OR DAMAGE TO ANY PERSON'S REAL OR PERSONAL PROPERTY RESULTING FROM ANY ACT OR OMISSION NOT CAUSED BY BROKER. IF THE PROPERTY IS, OR BECOMES, VACANT DURING THIS LISTING, THE TRUSTEE MUST NOTIFY THE TRUSTEE'S CASUALTY INSURANCE COMPANY AND REQUEST A "VACANCY CLAUSE" TO COVER THE PROPERTY. BROKER IS NOT RESPONSBIEL FOR THE SECUIRTY OF THE PROPERTY NOR FOR INSPECTING THE PROPERTY ON ANY PERIODIC BASIS.**

    2. **OWNER'S INDEMNITY OF BROKER. THE TRUSTEE, NOT IN HIS INDIVIDUAL CAPACITY BUT ON BEHALF OF OWNER, HEREBY AGREES TO INDEMNIFY, DEFEND AND HOLD BROKER, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, AGENTS, MEMBERS, MANAGERS, PARTNERS, AFFILIATES, AND EMPLOYEES ("BROKER INDEMNITEES") HARMLESS FROM ALL FINES, SUITS, LOSSES, LIABILITIES, PROCEEDINGS, CLAIMS, COSTS (INCLUDING REASONABLE ATTORNEYS' FEES AND COURT COSTS), DEMANDS, ACTIONS, OR CAUSES OF ACTIONS ARISING OUT OF (I) THE NEGLIGENCE, FRAUD OR WILLFUL MISCONDUCT OF THE TRUSTEE OR HIS EMPLOYEES, CONTRACTORS, SUBCONTRACTORS AND AGENTS (OTHER THAN BROKER OR ANY BROKER INDEMNITEE), (II) THE BREACH OF ANY REPRESENTATION OR WARRANTY OF THE TRUSTEE CONTAINED HEREIN OR (III) A BREACH BY THE TRUSTEE OF ANY PROVISION OF THIS AGREEMENT. THE INDEMNIFICATION OBLIGATIONS OF THE TRUSTEE HEREUNDER SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS AGREEMENT, WITH RESPECT TO ANY CLAIMS ARISING AS THE RESULT OF EVENTS OCCURRING DURING THE EFFECTIVE TERM OF THIS AGREEMENT. THIS PARAGRAPH SHALL SURVIVE THE EXPIRATION OR TERMINATION OF THIS AGREEMENT.**

L. **Jury Waiver**.

**EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.**

M. **Broker's Lien Right**.

**THE TRUSTEE RECOGNIZES AND ACKNOWLEDGES THAT BROKER IS ENTITLED TO FILE AND CLAIM A LIEN UPON THE PROPERTY DESCRIBED HEREIN ON OR AFTER THE DATE THAT BROKER'S COMMISSION SET FORTH IN THIS AGREEMENT IS EARNED PURSUANT TO THE PROVISIONS OF CHAPTER 62 OF THE TEXAS PROPERTY CODE ENTITLED "BROKERS AND APPRAISERS' LIEN ON COMMERCIAL REAL ESTATE ACT.**

N. **Intermediary Relationship**.

    1. **Intermediary Relationship Authorized. The Trustee authorizes Broker to show the Property to prospective buyers/tenants Broker has agreed to represent. If Broker represents a buyer/tenant who offers to purchase/lease all or a part of the Property (hereinafter called the "Prospective Buyer/Tenant"), the Trustee authorizes Broker to act as an intermediary between the Prospective Buyer/Tenant and the Trustee,**

**to present any offer such Prospective Buyer/Tenant may wish to make, and to assist both the Trustee and Prospective Buyer/Tenant in negotiations for the purchase/lease of the Property. Broker's compensation shall be paid by the Trustee as provided herein. If Broker acts as an intermediary between the Trustee and Prospective Buyer/Tenant, Broker: (a) may not disclose to the Prospective Buyer/Tenant that the Trustee will accept a sales price/rental less than the listing amount unless otherwise instructed in a separate writing by the Trustee; (b) may not disclose to the Trustee that the Prospective Buyer/Tenant will pay a sales price/rental greater than the sales price/rental submitted in a written offer to the Trustee unless otherwise instructed in a separate writing by the Prospective Buyer/Tenant; (c) may not disclose any confidential information or any information the Trustee or the Prospective Buyer/Tenant specifically instructs Broker in writing not to disclose unless otherwise instructed in a separate writing by the respective party, or unless required to disclose the information by the Real Estate License Act or a court order, or unless the information materially relates to the condition of the Property; (d) shall treat all parties to the transaction honestly; and (e) shall comply with the Real Estate License Act.**

2.  **If Broker acts as an intermediary, Broker may appoint a licensed associate(s) of Broker to communicate with, carry out the instructions of, and provide opinions and advice to the Trustee and appoint another licensed associate(s) on behalf of the Prospective Buyer/Tenant for the same purposes.**

    **The Trustee acknowledges receipt of the "Information About Brokerage Services (Tar-2501)" attached.**

**O.   Owner Default.** If the Trustee breaches this Agreement, the Trustee is in default and will be liable to Broker for the amount of the Broker's Fee and any other fees Broker is entitled to receive under this Agreement. Broker shall also have all remedies available at law or equity. If a sales price/rental rate is not determinable in the event of a breach, the listing price will be the sales price/rental rate for the purpose of calculating Broker's Fee. The prevailing party in any legal proceeding brought as a result of a dispute under this Agreement or any transaction related to or contemplated by this Agreement, may recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

**P.   <u>Miscellaneous</u>**.

   1.   This Agreement shall be binding on the parties hereto and their legal representatives. This Agreement shall not be assigned by either party as it is a personal services contract. Both parties acknowledge and agree that in the case of any covenant, term, provision or a part thereof being deemed in any judicial proceeding to be unenforceable, the remaining covenants and provisions of this agreement are to remain valid and binding.

   2.   No consent or waiver, express or implied, by Broker or the Trustee, to any breach or default hereunder shall be deemed or construed to be a consent or waiver to any other breach or default hereunder of the same or any other obligations herein contained. Failure on the part of Broker or the Trustee to complain of any act of the other party or declare the other party in default hereunder, irrespective of how long such failure continues, shall not constitute a waiver of such party of its right hereunder.

   3.   This Agreement contains the entire understanding of the parties, and it may not be changed or modified orally, but only by a written instrument signed by duly authorized officers of the parties hereto. The Trustee is not relying upon any representation, warranty or statement by Broker in entering into this Agreement.

   4.   This Agreement is an arm's length transaction between the parties. This Agreement is jointly drafted and shall not be construed against the party who prepared the initial draft of this Agreement.

   5.   The Trustee agrees to make all payments due to Broker under this Agreement to Broker in good funds at its address for notice below.

6.      Any notice, demand or communication required or permitted hereunder, addressed to the following addresses or to such other addresses as any party may hereafter designate by written notice, shall be deemed effectively given when (a) mailed by registered or certified mail, postage prepaid, return receipt requested, or (b) received or refused if delivered by facsimile, email, personal delivery, or national courier:

    If to Trustee and/or Owner:    John Patrick Lowe
        2402 East Main Street
        Uvalde, Texas 78801
        (830) 407-5115
        pat.lowe.law@gmail.com

    With a copy to:    Brian T. Cumings, Esq.
        402 Congress Avenue, Suite 2700
        Austin, Texas 78701
    Email: bcumings@gdhm.com
    Notices to Broker:    Partners - Houston
        Attn: Jon A. Silberman, Managing Partner
        5847 San Felipe St
        Houston, Texas 77057
        Facsimile: 832-448-2260
        Email: jon.silberman@partnersrealestate.com
        <u>AND</u>
        Partners - Houston
        Attn: Travis L. Rodgers
        5847 San Felipe St
        Houston, Texas 77057
        Facsimile: 832-448-2306
        Email: travis.rodgers@partnersrealestate.com

    Courtesy copies of all notices to Lender:
        Bryan Cave Leighton Paisner LLP
        Attention: Kyle S. Hirsch
        2200 Ross Avenue, Suite 4200W
        Dallas, Texas 75201
        Email: kyle.hirsch@bclplaw.com

7.      All sums due Broker which are past due for more than sixty (60) days shall bear interest at an annual interest rate equal to the lesser of fifteen percent (15%) or the maximum legal rate; provided Broker has provided sufficient and accurate information to Owner necessary for payment.

8.      Termination of this Agreement shall in no way affect or impair any rights which have accrued to either party hereto prior to the date when such termination shall become effective.

9.      This Agreement shall be governed by the laws of the State of Texas. Venue shall lie in the bankruptcy court.

10.      The Trustee agrees to disclose to Broker and all prospective purchasers any information which the Trustee has or obtains regarding present and future zoning and environmental matters affecting the Property and regarding the condition of the Property, including but not limited to structural, mechanical, and soils conditions, the

presence and location of asbestos, PCB transformers, other toxic, hazardous or contaminated substances and underground storage tanks in or about the Property.

      11.      Time is of the essence with respect to each provision hereof.

      12.      The United States Congress has enacted the Americans with Disabilities Act. Among other things, this act is intended to make many business establishments equally accessible to persons with a variety of disabilities; modifications to real property may be required. State and local laws also may mandate changes. The real estate brokers in this transaction are not qualified to advise you as to what, if any, changes may be required now, or in the future. Owners, buyers and tenants should consult the attorneys and qualified design professionals of their choice for information regarding these matters. Real estate brokers cannot determine which attorneys or design professionals have the appropriate expertise in this area.

      13.      Broker and Outside Brokers may enter upon the Property at any reasonable time for the purpose of showing the same to prospective tenants or purchasers. Broker shall not be responsible or liable in any way for vandalism, theft or damage of any kind whatsoever sustained against the Property during the term of this Agreement, whether caused by prospective tenants or purchasers admitted to the Property by Broker, or otherwise, unless caused by Broker's gross negligence or willful misconduct.

      14.      The headings used herein are for purposes of convenience only and should not be used in construing the provisions hereof.

      15.      The parties hereby agree to execute such other documents and perform such other acts as may be necessary or desirable to carry out the purposes of this Agreement.

      16.      This Agreement may be executed in any number of separate counterparts and by facsimile signatures, each of which shall together be deemed an original, but the several counterparts shall together constitute one and the same instrument. In addition, the parties agree that (i) an electronic signature shall be considered an original signature, and (ii) a copy of the Agreement shall be considered an original instrument, and each, together or separately, shall become binding and enforceable as if original and the parties may rely on the same to prove the authenticity of the Agreement.

      17.      The parties agree to negotiate in good faith in an effort to resolve any dispute that may arise between the parties. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the costs of mediation equally.

      18.      In no event shall the liability of Broker ever exceed the amount of the commission received hereunder.

      19.      Owner acknowledges that Broker may represent other prospective owners who may seek to lease or sell properties that may be competitive with Owner. Owner agrees that Broker may during the term of this Agreement and after it ends, represent such other parties, show to the other prospects competing properties, and act as a real estate broker for such other parties in negotiating the sale or lease of properties.

      20.      Broker shall be an independent contractor of Owner and nothing herein shall be construed to make Broker an employee, partner or joint venturer with Owner or the Trustee.

**Q.**      <u>**Special Provisions.**</u>

Broker liability to be limited to the amount of commission to be earned by this agreement.

**R.    Notices**.
    1.    BROKER'S FEES ARE AT A NEGOTIATED MARKET RATE AS PROVIDED HEREIN.
    2.    **THE PROPERTY MUST BE SHOWN AND MADE AVAILABLE TO ALL PERSONS WITHOUT REGARD TO RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, DISABILITY, OR FAMILIAL STATUS. LOCAL ORDINANCES MAY PROVIDE FOR ADDITIONAL PROTECTED CLASSES (E.G., CREED, STATUS AS A STUDENT, MARITAL STATUS, SEXUAL ORIENTATION, OR AGE).**
    3.    **BROKER CANNOT GIVE LEGAL ADVICE. THIS IS A LEGALLY BINDING AGREEMENT. READ IT CAREFULLY. IF YOU DO NOT UNDERSTAND THE EFFECT OF THIS AGREEMENT, CONSULT YOUR ATTORNEY BEFORE SIGNING.**

This Agreement is effective as of the Effective Date set forth above.

**OWNER:**

_____

By: _____
Print: _____
Title: _____


**BROKER:**

**PCR Brokerage Houston, LLC,**
**a Texas limited liability company**
**d/b/a  Partners**

By: _____
Print: _____
Title: _____

10

**Exhibit A**

Legal Description

BEING 3.889 ACRES OF LAND OUT OF THE WILLIAM WHITE SURVEY, ABSTRACT NO. 836, HOUSTON, HARRIS COUNTY, TEXAS AND BEING THE SAME PROPERTY CONVEYED TO HE IO0I WEST LOOP, LP BY SPECIAL WARRANTY DEED RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732480, AND BEING MORF. PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:
BEGINNING AT A 5/8 INCH IRO ROD SF.TON THE EAST RIGHT OF WAY LINE I.H. 610 WEST LOOP FOR THE NORTHWEST CORNER OF LOT I. BLOCK I. POST OAK PARK, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 134, PAGE 25 OF THE MAP RECORDS OF HARRIS COUNTY. TEXAS;
THENCE NORTH 02 DEGREES 26 MINUTES 59 SECONDS WEST, WITH THE EAST RIGHT OF WAY LINE I. H. 610 WEST LOOP, A DISTANCE OF 645.83 FEET TO A S/8 INCH IRON ROD SET FOR THE CORNER AT THF.: SOUTHWEST WATERS EDGE OF BUFFALO BAYOU;
THENCE DOWNSTREAM ALONG.THE SOUTHWEST WATERS EDGE OF BUFFALO BAYOU AS FOLLOWS:
SOUTH 68 DEGREES 17 MINUTES 34 SECONDS EAST. 138.43 FEET; SOUTH 62 DEGREES 02 MINUTES 17 SECONDS EAST, I00.04l FEET; SOUTH 58 DEGREES 53 MINUTES 53 SECONDS EAST, 100.36 FEET; SOUTH 58 DEGREES 37 MINUTES 53 SECONDS EAST, 100,.48 FEET; SOUTH 59 DEGREES SS MINUTES 24 SECONDS EAST, 100.22 FEET;
SOUTH 52 DEGREES 39 MINUTES 23 SECONDS EAST, A DISTANCE OF 20.56 FEET TO A POINT FOR CORNER ON THE NORTH LINE OF THAT CERTAIN 15,032 SQUARE FOOT TRACT OF LAND CONVEYED TO **HARRIS** COUNTY FLOOD CONTROL DISTRICT BY J. BROWN CUTBIRTH, JR., TRUSTEE., AS RECORDED IN VOLUME 6960, PAGE 72 OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS;
THENCE, NORTH 87 DEGREES 33 MINUTES 01 SECONDS EAST, WITH THE NORTH LINE OF SAID 15.032 SQUARE FOOT TRACT, A DISTA CE OF 40.06 FEET TO A POINT FOR CORNF.R;
THENCE, SOUTH 53 DEGREES 15 MINUTES 01 SECONDS WEST, A DISTANCF. OF 45.83 FEET TO A POINT ON THE NORTHEAST LINE OF SAID POST OAK PARK:
THENCE WITH THE NORTHWESTERLY BOUNDARY OF SAID POST OAK PARK AS FOLLOW:
NORTH 69 DEGREES IS MINUTES 4S SECONDS WEST, 22.74 1-'EET;
SOUTH 10 DEGREES 28 MINUTES IS SECONDS WEST. 85.00 FEET; SOUTH SJ DEGREES 23 MINUTES 15 SECONDS WEST. 34.60 FEET; NORTH 32 DEGREES 38 MINUTES 45 SECONDS WEST, 87.00 FEET:
SOUTH -16 DEGREES 48 MINUTES 15 SECONDS WEST, 39.70 FEET;
SOUTH 01 DEGREES 01 MINUTES 15 SECONDS WEST, 48.40 FEET; SOUTH 78 DEGREES 50 MINUTES 45 SECONDS WEST, 59.60 FEET;
SOUTH 02 DEGREES 57 MINUTES 15 SECO DS EAST, 96.40 FEET;

SOUTH 60 DEGREES 41 MINUTES 15 SECONDS WEST, 41.10 FEET;
SOUTH 11 DEGREES 19 MINUTES IS SECONDS WEST. 68.00 FEET:
NORTH 72 DEGREES 24 MINUTES 45 SECONDS WEST. 145.40 FEET;
SOUTH 24 DEGREES 05 MINUTES 15 SECONDS WEST, 30.01 FEF.T:
SOUTH 42 DEGREES 57 MINUTES 45 SECONDS EAST. 68.90 FEET:
SOUTH 43 DEGREES 26 MINUTES 15 SECONDS WEST, 60.30 FEET:
SOUTH 89 DEGREES 37 MINUTES 15 SECONDS WEST, A DISTANCE OF 71.62 FEET TO THE PLACE OF BEGINNING AND CONTAINING 3.889 ACRES OF LAND, MORE OR LESS.