**GALLERIA LOOP NOTE HOLDER LLC**

**(Borrower)**

to

**TIG ROMSPEN US MASTER MORTGAGE LP**

**(Lender)**

---

**ASSIGNMENT OF LEASES AND RENTS**

---

| | |
|---|---|
| Dated: | As of September 4, 2019 |
| Location: | 1001 West Loop South, Houston, Texas 77027 |
| County: | Harris |

PREPARED BY AND UPON
RECORDATION RETURN TO:

Foley & Lardner LLP
2021 McKinney Ave., Suite 1600
Dallas, Texas 75201
Attention:  Clifton M. Dugas, II, Esq.

4822-3894-4920

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made as of September 4, 2019, by and between **GALLERIA LOOP NOTE HOLDER LLC**, a Texas limited liability company, having an address at 1001 West Loop, Suite 700, Houston, Texas 77027 ("**Borrower**"), and **TIG ROMSPEN US MASTER MORTGAGE LP**, an exempted Cayman Islands limited partnership (together with its successors and assigns, "**Lender**").

### Recitals of Fact

The following recitals are a material part of this instrument:

A.     Borrower is the owner of the Property (as defined in the Loan Agreement (defined below)), with a legal description as set forth in Exhibit A attached hereto and incorporated herein.

B.     Lender is prepared to make a loan (the "**Loan**") to Borrower in the principal amount of Eighteen Million Five Hundred Thousand and No/100 U.S. Dollars (USD $18,500,000.00) pursuant to a Loan Agreement of even date herewith between Lender and Borrower (as the same may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "**Loan Agreement**"), which Loan shall be evidenced by that certain Promissory Note of even date herewith given by Borrower in favor of Lender (as the same may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "**Note**") and secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of the date hereof given by Borrower to Lender and encumbering the Property (as the same may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "**Security Instrument**"). Capitalized terms not otherwise defined herein shall have the meaning set forth in the Loan Agreement.

C.     Borrower desires to assign to Lender the rents, leases and profits of and from the Property and the proceeds therefrom, as primary and not as secondary security for the payment of the Note and the Debt (as such term is hereinafter defined), and for the performance of the obligations in the Loan Agreement, Security Instrument and the other Loan Documents.

### Agreement

In consideration of the Loan from Lender to Borrower, which is of direct and substantial benefit to Borrower, the mutual covenants contained in this Assignment, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

1.     **Assignment.** Borrower absolutely and unconditionally assigns, transfers, sets over and conveys to Lender, and grants to Lender a security interest in, the following, absolutely and not as additional security:

(a)     Leases and Other Agreements. All existing and future written and oral leases, subleases, tenancies, subtenancies, licenses, contracts, contract rights, and occupancy and all other agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Property, now or hereafter made, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. § 101 *et seq.*, as the same may be amended from time to time (the "**Bankruptcy Code**"), together with any extension, renewal or replacement of the same (collectively the "**Leases**"); this Assignment of all such present and future leases and present and future agreements being effective without further or supplemental assignment.

ASSIGNMENT OF LEASES AND RENTS – Page 1

4822-3894-4920

(b)     Rents.  All rents, additional rents, revenues, payments (including payments in connection with the exercise of any purchase option or termination rights), income, issues and profits (including all oil and gas or other mineral royalties and bonuses), deposits, accounts and other benefits arising from the Leases or otherwise from the use, enjoyment and occupancy of the Property and any cash or security deposited in connection therewith, whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**").

(c)     Bankruptcy Claims.  All claims and rights to the payment of damages and other claims arising from any rejection by a lessee of any Lease under the Bankruptcy Code (the "**Bankruptcy Claims**").

(d)     Lease Guaranties.  All claims and rights under any and all lease guaranties, letters of credit and any other credit support (individually, a "**Lease Guaranty**," and collectively, the "**Lease Guaranties**") given to Borrower by any guarantor in connection with any of the Leases (individually, a "**Lease Guarantor**," and collectively, the "**Lease Guarantors**").

(e)     Proceeds.  All proceeds from any sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

(f)     Other Rights of Lessor.  All rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases and beneficiary under the Lease Guaranties, including the immediate and continuing right to make claim for, receive, collect and apply all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt), and to do all other things which Borrower or any lessor is or may become entitled to do under the Leases or the Lease Guaranties.

(g)     Entry and Possession.  The right, at Lender's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents and enforce the Leases.

(h)     Power of Attorney.  Borrower's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Property.

(i)     Other Rights and Agreements.  Any and all other rights of Borrower in and to the items set forth in subsections (a) through (h) above, and all amendments, modifications, replacements, renewals, extensions, supplements, restatements and substitutions thereof.

2.     **Debt.**  This Assignment secures the "**Debt**," as such term is defined in the Loan Agreement.  Nothing herein shall be construed to obligate Lender to make any renewals or additional loans or advances, including increasing the amount of the Note.

3.     **Term.**  This Assignment shall remain in effect until the Debt and all other obligations evidenced by the Note or advanced under the Loan Documents are paid in full, or this Assignment is voluntarily released by Lender. Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Security Instrument duly executed by Lender, this Assignment shall become null and void and shall be of no further force and effect.

4.     **Events of Default.**  The occurrence of any of the following shall constitute an "**Event of Default**" under this Assignment:  (a) the failure of Borrower to perform or to observe any agreement, covenant, or condition required under this Assignment, which failure is not cured within fifteen (15) days

ASSIGNMENT OF LEASES AND RENTS – Page 2

4822-3894-4920

after written notice from Lender to Borrower (provided that Borrower shall not be entitled to a cure period hereunder if such breach or default is not capable of being cured as determined by Lender); (b) the breach by Borrower of any representation or warranty given or made hereunder by Borrower or in any writing furnished or to be furnished by Borrower under this Assignment; or (c) the occurrence of an Event of Default under any of the Loan Documents which has continued beyond any applicable cure period therefor.

5. **License to Borrower Prior to Default.** Notwithstanding that this Assignment is an absolute assignment of the Leases and Rents and not merely the collateral assignment of, or the grant of a lien or security interest in the Leases and Rents, Lender hereby grants to Borrower an exclusive license revocable upon occurrence of an Event of Default to possess, use and enjoy the Property and to collect and retain the Rents of and from the Property, unless and until an Event of Default occurs. Even prior to the occurrence of an Event of Default, no Rents or other payment in excess of one month in advance shall be collected or accepted by Borrower without the prior written consent of Lender.

6. **Lender's Remedies Upon Default.** Upon the occurrence of an Event of Default, Borrower's license to collect and retain the Rents under Section 5 above shall immediately terminate. Lender will have the right at its option to enforce and to exercise any or all of its rights under this Assignment or otherwise, but Borrower expressly agrees that Lender's exercise of any rights hereunder or Lender's affirmative act to collect the Rents or other income or to acquire possession of the Property shall not be a prerequisite or precondition to the full enforceability of Lender's rights hereunder.

6.1 Upon the occurrence of an Event of Default, and upon Lender's election, Borrower shall deliver to Lender all of the original Leases, and all modifications, extensions, renewals, amendments, and other agreements relating thereto and to the Property. Any oral Leases shall be described in a writing delivered by Borrower to Lender.

6.2 Upon the occurrence of an Event of Default, Lender, at its option, and without any notice whatsoever to Borrower, shall have the right and is hereby authorized to: (a) take possession and control of the Property; (b) manage and operate the Property; (c) preserve and maintain the Property; (d) make repairs and improvements to the Property which Lender at its discretion deems necessary; (e) collect all Rents from the Property; (f) enforce the Leases; (g) eject tenants or repossess personal property, as provided by law, for breaches of the conditions of the Leases; (h) in the name of either Borrower or Lender enter into real or personal property leases, subleases or tenancy agreements, or other contracts or agreements, with such third parties as Lender may at its discretion select, and upon such terms and conditions as Lender in its discretion may determine; (i) sue for unpaid rents, payments or proceeds in the name of Borrower or Lender; (j) maintain actions for possession of property or for rent; (k) compromise or give acquittance for rents, payments or proceeds that may become due; (l) maintain suits on contracts and agreements; (m) delegate any and all rights and powers given to Lender by this Assignment; and (n) use such measures, legal or equitable, as in its discretion may carry out and effectuate the provisions of this Assignment.

In addition, upon the occurrence of an Event of Default, Lender may, at its option, and without any notice whatsoever to Borrower, and without regard to the value of the Property or the adequacy of the Property (together with any other property securing the Debt) to secure repayment of the Debt, have a receiver appointed to do all of the actions set forth in the immediately preceding paragraph and to, with the consent of Lender, dispose (by lease, sale or otherwise) of some or all of the Property in the course of the proceeding in which such receiver is appointed.

ASSIGNMENT OF LEASES AND RENTS – Page 3

4822-3894-4920

All such actions shall be taken at the expense of the Borrower, who agrees to reimburse Lender for all amounts expended, together with interest thereon from the date of expenditure at the Default Rate stated in the Note, upon demand.

7.      **Appointment.** Borrower irrevocably appoints Lender its true and lawful attorney-in-fact, which appointment is coupled with an interest, exercisable following the occurrence of an Event of Default, to execute any or all of the rights or powers described in this Assignment, with the same force and effect as if executed by the Borrower, and Borrower ratifies and confirms any and all acts done or omitted to be done by Lender, its agents, servants, employees or attorneys under the authority of such power of attorney.

8.      **Instructions to Lessees.** This Assignment constitutes an irrevocable direction to and full authority from Borrower to any lessee, tenant, subtenant, occupant of premises, or other contracting party to pay directly to Lender, upon Lender's request, all Rents and other amounts which may be or become due to Borrower. No proof of the occurrence of an Event of Default shall be required. Any lessee, tenant, subtenant or other contracting party is hereby irrevocably authorized by Borrower to rely upon and comply with any notice or demand by the Lender for the payment to the Lender of any rental or other amounts which may be or become due under its Lease, or for the performance of any obligations under such Lease. Borrower irrevocably agrees that the lessee, tenant, subtenant, or other contracting party following such instructions from Lender shall not be liable to Borrower or any person claiming under Borrower, for making any payment or rendering any performance to Lender. The lessee, tenant, subtenant or other party to any Lease shall have no obligation or right to inquire whether any Event of Default has actually occurred or is then existing. By its execution of this Assignment, Borrower irrevocably makes and delivers the aforementioned instructions.

9.      **Application of Income.** The Rents, payments, proceeds and income collected by Lender may be applied as follows, in whatever order Lender in its discretion may determine:

(a)     To the payment of the operating expenses of the Property, including costs of management (which shall include reasonable compensation to the Lender and its agent or agents, if management be delegated to an agent or agents); improvements, alterations, replacements and repairs to the Property; placing the Property in such condition as will, in the judgment of Lender, make it readily rentable; premiums on fire, flood, tornado, casualty, liability or other insurance if Lender deems such insurance necessary; and any claims for damages arising out of the ownership or management of the Property.

(b)     To the payment of the actual costs and expenses incurred by Lender in collecting such Rents, payments, proceeds and income, including commissions paid to secure tenants or lessees; reasonable attorneys' fees incurred in recovering the Property or any personal property from any lessee or other contracting party for any cause whatsoever and in the collection of unpaid Rents, payments, income or proceeds; and attorneys' fees incurred by Lender in connection with the enforcement of this Assignment or in protecting Lender or its interest in any of the collateral securing the Loan (including attorney's fees and litigation expenses related to or arising out of any lawsuit or proceeding brought by or against Lender in any court or other forum, including actions or proceedings brought by or on behalf of Borrower's bankruptcy estate or any guarantor or indemnitor).

(c)     To the payment of taxes, special assessments and insurance premiums which become due and delinquent on the Property; all obligations contained in the Loan Documents; and any liens or encumbrances on the Property or any personal property of Borrower.

(d) To the payment of bills for reasonable and necessary repairs and improvements on the Property.

(e) To the payment of the Debt and any and all indebtedness, together with interest, evidenced by the Loan Documents, or any deficiency which may result from any foreclosure sale, in such amount and manner as Lender shall determine in its discretion.

10. **Lien on Property.** If the Rents, payments, income and proceeds from the Property are insufficient to reimburse Lender for any expenses incurred by Lender pursuant to this Assignment, any unpaid disbursements shall be a lien on the Property with priority equal to the lien of the Security Instrument.

11. **Lender as Agent.** Lender is acting solely as agent of Borrower in taking any actions in connection with the Property. Lender assumes no liability in any other capacity. Lender shall not be obligated to perform any obligation or duty, or discharge any liability under any of the Leases under or by reason of this Assignment.

12. **Bankruptcy.**

12.1 If Lender determines at any time and from time to time that it is necessary or desirable to protect Lender's interest in the Loan and the Property, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code. Borrower shall give Lender notice promptly upon Borrower learning that a petition under the Bankruptcy Code has been filed by or against Tenant.

12.2 If there shall be filed by or against Borrower a petition under the Bankruptcy Code, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease. Lender shall have the right, but not the obligation, to serve upon Borrower within such ten (10) day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code, and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

13. **No Liability of Lender; Indemnification of Lender.**

13.1 Lender shall not in any way be liable to Borrower for any action or inaction of Lender, its employees or agents with respect to Lender's exercise of the powers granted Lender by this Assignment, including any liability relating to the renting or leasing of the Property after an Event of Default by Borrower, or damage to the Property (unless caused by the willful misconduct or gross negligence of Lender). Borrower expressly waives and releases Lender from all such liability.

13.2 Lender shall not be responsible for any failure to perform any covenants in any of the Leases, either before or after the exercise of any assignments or remedies contained in this Assignment. Lender shall not be responsible for the condition or operation of the Property or for any

ASSIGNMENT OF LEASES AND RENTS – Page 5

4822-3894-4920

damage or harm to the Property or any additions, improvements, or fixtures to the Property. This Assignment shall not operate to place upon Lender any obligation for the control, care, management or repair of the Property, or for the discovery of or correction of any dangerous or defective condition on the Property, including any environmental matters described in the separate Environmental Indemnity, or any negligence in the management, upkeep, repair or control of the Property. Lender also shall not be liable to any person or entity for any accidents or other occurrences occurring on or with respect to any part of the Property, except for any such accidents or other occurrences resulting from the willful misconduct or grossly negligent actions of Lender.

13.3  Borrower shall save, defend, indemnify and hold Lender and its agents, employees, contractors, and managers harmless from and against any and all costs, expenses, liability, damages, claims or assertions that may be incurred by or made against Lender or any such persons or entities arising from or related to the Leases or Rents, or by reason of this Assignment, including any claims by reason of any alleged obligations and undertakings on Lender's part to perform or discharge any of the terms, covenants or agreements contained in the Leases, or any right to maintain, inspect, manage or otherwise exercise any control or supervision over the Property or the condition thereof, or any claims described in the preceding subsection of this Assignment, except for any claims resulting from the willful misconduct or grossly negligent actions of Lender. Should Lender incur any such liability, loss or damage, Borrower shall on demand pay to Lender any and all cost, expense, liability, or damage arising therefrom plus costs, expenses and attorneys' fees and expenses, with interest from the date the cost or loss is incurred, at the Default Rate stated in the Note, and all of the foregoing shall be secured by this Assignment and by the other Loan Documents.

14.  **Remedies Cumulative.** The remedies provided in this Assignment and in the other Loan Documents are cumulative and not mutually exclusive. The remedies can be exercised successively or concurrently, as many times as and as often as the occurrence of an occasion for which Lender is entitled to a remedy under the Loan Documents or applicable law, and the exercise of any one or more remedies shall not be a waiver of or preclude the exercise of any one or more remedies at the same or any later time for the same or any later default.

15.  **Continuing Effect.** No judgment or decree which may be entered on any Debt secured or intended to be secured by the Security Instrument or any other Loan Documents shall lessen the effect of this instrument, but this Assignment shall continue in full effect until the full payment and discharge of (a) the Debt secured by the Security Instrument or any other Loan Documents, and (b) all expenses incurred by Lender relating to the Property. This Assignment shall remain in full effect during the pendency of any foreclosure proceedings under any of the other Loan Documents, both before and after sale, until the issuance of a deed to the foreclosure sale purchaser.

16.  **Further Assurances; Receivership and Other Proceedings.**

16.1  Upon Lender's request, Borrower shall execute any documents or instruments Lender may request, for the purpose of providing further evidence of this Assignment, to carry out the intent and terms of this Assignment, to evidence other amounts that may become payable from Borrower to Lender as referred to in this Assignment, or to accomplish any other purpose deemed appropriate by Lender.

16.2  Borrower consents and authorizes any court of competent jurisdiction to issue, *ex parte* and without any notice to Borrower or its counsel (which notice is hereby waived), any orders that may be appropriate, in Lender's discretion, to enforce the terms of this Assignment or to grant Lender such powers and authority as Lender may need to enforce this Assignment, including the appointment of a receiver for the Property. No bond shall be required of Lender. The parties recognize and agree that

ASSIGNMENT OF LEASES AND RENTS – Page 6

4822-3894-4920

time will be of the essence in any such proceeding. Such receiver shall be entitled without notice to take possession of and protect the Property, operate the same, collect the Rents therefrom, and otherwise exercise any rights or authority granted to Borrower in this Assignment or any other Loan Documents. Lender's right to the appointment of a receiver shall continue regardless of the value of the Property as security for the Debt or the solvency of any person or corporation liable for the payment of such amount. Notwithstanding the appointment of any receiver, liquidator or trustee for Borrower, or of any of its property, or of the Property, Lender shall be entitled to retain possession and control of all Property now or hereafter held under this Assignment and any other Loan Documents, including the Rents.

17. **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE WHERE THE LAND IS LOCATED WITHOUT REGARD TO THE CONFLICTS OF LAW PROVISIONS THEREOF ("**GOVERNING STATE**"). BORROWER HEREBY CONSENTS TO PERSONAL JURISDICTION IN THE GOVERNING STATE. JURISDICTION AND VENUE OF ANY ACTION BROUGHT TO ENFORCE THIS ASSIGNMENT OR ANY OTHER LOAN DOCUMENT OR ANY ACTION RELATING TO THE LOAN OR THE RELATIONSHIPS CREATED BY OR UNDER THE LOAN DOCUMENTS ("**ACTION**") SHALL, AT THE ELECTION OF LENDER, BE IN (AND IF ANY ACTION IS ORIGINALLY BROUGHT IN ANOTHER VENUE, THE ACTION SHALL AT THE ELECTION OF LENDER BE TRANSFERRED TO) A STATE OR FEDERAL COURT OF APPROPRIATE JURISDICTION LOCATED IN THE GOVERNING STATE. BORROWER HEREBY CONSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF THE STATE COURTS OF THE GOVERNING STATE AND OF FEDERAL COURTS LOCATED IN THE GOVERNING STATE IN CONNECTION WITH ANY ACTION AND HEREBY WAIVES ANY AND ALL PERSONAL RIGHTS UNDER THE LAWS OF ANY OTHER STATE TO OBJECT TO JURISDICTION WITHIN SUCH STATE FOR PURPOSES OF ANY ACTION. Borrower hereby waives and agrees not to assert, as a defense to any Action or a motion to transfer venue of any Action, (i) any claim that it is not subject to such jurisdiction, (ii) any claim that any Action may not be brought against it or is not maintainable in those courts or that this Assignment may not be enforced in or by those courts, or that it is exempt or immune from execution, (iii) that the Action is brought in an inconvenient forum, or (iv) that the venue for the Action is in any way improper.

18. **Legal Challenges.** Borrower shall appear for itself (and for Lender, if Lender so requests) in any action or proceeding affecting the Property, the Leases, the Rents or this Assignment, and shall at its own cost vigorously defend title to the Property and the enforceability of the Leases and this Assignment against all legal challenges. Where necessary or where requested by Lender, Borrower shall at its own cost institute any legal actions respecting the same. Borrower shall not challenge, and irrevocably waives any challenge to, the legality or enforceability of this Assignment and all provisions of this Assignment.

19. **Set-Off.** Upon default by Borrower under this Assignment, Lender (or the holder or owner of any Debt secured by this Assignment) shall immediately have the right, without further notice to Borrower, to set off against the Note and any other debts secured by this Assignment all debts of Lender (or such holder or owner) to Borrower, whether or not then due.

20. **Notices.** All notices, consents, approvals and requests required or permitted hereunder or under any other Loan Document shall be given in writing (including by facsimile) and shall be effective for all purposes if hand delivered or sent by (a) certified or registered United States mail, postage prepaid, (b) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, or (c) by facsimile (with a copy sent contemporaneously by certified or registered United States mail, postage prepaid answer back acknowledged), addressed as follows:

ASSIGNMENT OF LEASES AND RENTS – Page 7

4822-3894-4920

If to Lender:     TIG Romspen US Master Mortgage LP
162 Cumberland Street, Suite 300
Toronto, Ontario M5R 3N5
Attention:  Vince Berry
Telephone: (416) 928-5110
Facsimile: (416) 966-1161
Email:  vinceberry@romspen.com

with a copy to:    Foley & Lardner LLP
2021 McKinney Ave., Suite 1600
Dallas, Texas 75201
Attention:  Clifton M. Dugas, II
Telephone: (214) 999-4004
Facsimile: (214) 999-4667
Email:  cdugas@foley.com

If to Borrower:    Galleria Loop Note Holder LLC
1001 West Loop, Suite 700
Houston, Texas  77027
Attention:  Ali Choudhri
Telephone:  (832) 208-3857
Email: ali@jetallcompanies.com

with a copy to:    Thompson & Knight LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Attention:  Bruce Merwin
Telephone: (713) 217-2859
Email: bruce.merwin@tklaw.com

or at such other address and Person as shall be designated from time to time by any party hereto, as the case may be, in a written notice to the other parties hereto in the manner provided for in this Section.  A notice shall be deemed to have been given:  in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; in the case of expedited prepaid delivery, upon the first attempted delivery on a Business Day, in the case of facsimile, upon completion of transmission (which is confirmed by telephone or by a statement generated by the transmitting machine) with receipt acknowledged by the recipient thereof.

21.  **Miscellaneous.**  The following provisions are additional terms of this Assignment:

21.1  Lender may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor, and may apply any other security held by it to the reduction or satisfaction of the Debt, without prejudice to any of its rights under this Assignment.

21.2  No waiver by Lender of any default shall operate as a waiver of any other default or of the same default on a future occasion.

21.3  All rights and remedies of Lender are cumulative and may be exercised successively or concurrently, and shall inure to the benefit of Lender's successors and assigns.

ASSIGNMENT OF LEASES AND RENTS – Page 8

4822-3894-4920

21.4    Nothing herein shall be interpreted to make Lender a "mortgagee in possession" in the absence of Lender's taking of actual possession of the Property.  Borrower hereby waives any claims against Lender by reason of Lender's exercise of any remedies hereunder.

21.5    All obligations of Borrower shall bind its heirs, executors, administrators, trustees, custodians, successors and assigns.

21.6    In case of any conflict between the terms of this Assignment and the terms of the Security Instrument or Loan Agreement, the terms of the Security Instrument or Loan Agreement shall prevail.

21.7    This Assignment, including this Section, may only be modified or amended by written documents and no oral amendment, waiver, extension or other modification hereof shall be enforceable, and the parties hereby:  (a) expressly agree that it shall not be reasonable for any of them to rely on any alleged, non-written amendment to this Assignment; (b) irrevocably waive any and all right to enforce any alleged, non-written amendment to this Assignment; and (c) expressly agree that it shall be beyond the scope of authority (apparent or otherwise) for any of their respective agents to agree to any non-written modification of this Assignment.

21.8    If any provision of this Assignment is held invalid or unenforceable, the holding shall affect only the provision in question and all other provisions of this Assignment shall remain in full force and effect.

21.9    For the purpose of facilitating the execution of this Assignment and for other purposes, this Assignment may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute but one and the same instrument.  A signature of a party by facsimile or other electronic transmission (including a .pdf copy sent by e-mail) shall be deemed to constitute an original and fully effective signature of such party. The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

22.    **Definitions; Rules of Construction.**

22.1    All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word **"Borrower"** shall mean "individually and collectively, jointly and severally, each Borrower (if more than one) and any subsequent owner or owners of the Property or any part thereof or any interest therein and Borrower in its capacity as debtor-in-possession after the commencement of a proceeding under the United States Bankruptcy Code"; **"Lender"** shall mean "Lender and any subsequent holder of the Note," the word **"Note"** shall mean "the Note and any other evidence of indebtedness secured by this Assignment," the word **"person"** shall include an individual, corporation, limited liability company, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the word **"Property"** shall include any portion of the Property and any interest therein, and the phrases **"attorneys' fees," "legal fees,"** and **"counsel fees"** shall include any and all attorneys', paralegal and law clerk fees and disbursements, including fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender (a) in protecting its interest in the Property, the Leases and the Rents, (b) relating to or arising out of any lawsuit or proceeding brought by or against Lender in any court or other forum (including actions or proceedings brought by or on behalf of Borrower's bankruptcy estate or any guarantor or indemnitor), or (c) in enforcing its rights under this Assignment.

ASSIGNMENT OF LEASES AND RENTS – Page 9

4822-3894-4920

22.2     The following rules of construction shall be applicable for all purposes of this Assignment and all documents or instruments supplemental hereto, unless the context otherwise clearly requires:

(a)     the terms "include," "including" and similar terms shall be construed as if followed by the phrase "without being limited to";

(b)     any pronoun used herein shall be deemed to cover all genders, and words importing the singular number shall mean and include the plural number, and vice versa;

(c)     all captions to the Sections hereof are used for convenience and reference only and in no way define, limit or describe the scope or intent of, or in any way affect, this Assignment;

(d)     the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or";

(e)     the words "hereof," "herein," "hereby," "hereunder," and similar terms in this Assignment refer to this Assignment as a whole and not to any particular provision or section of this Assignment;

(f)     an Event of Default shall "continue" or be "continuing" until such Event of Default has been waived in writing by Lender;

(g)     no inference in favor of or against any party shall be drawn from the fact that such party has drafted any portion hereof or any other Loan Document; and

(h)     wherever Lender's judgment, consent, approval or discretion is required under this Assignment for any matter or thing or Lender shall have an option, election, or right of determination or any other power to decide any matter relating to the terms and conditions of this Assignment, including any right to determine that something is satisfactory or not ("**Decision Power**"), such Decision Power shall be exercised in the sole and absolute discretion of Lender unless otherwise expressly stated to be reasonably exercised. Such Decision Power and each other power granted to Lender upon this Assignment or any other Loan Document may be exercised by Lender or by any authorized agent of Lender (including any servicer and/or attorney-in-fact), and Borrower hereby expressly agrees to recognize the exercise of such Decision Power by such authorized agent.

23.     **Trial by Jury.** BORROWER HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING UNDER THE LOAN DOCUMENTS, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION THEREOF OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THE LOAN DOCUMENTS (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND BORROWER HEREBY AGREES AND CONSENTS THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE

4822-3894-4920

CONSENT OF BORROWER TO THE WAIVER OF ANY RIGHT BORROWER MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

24. **Local Law Provisions.** In the event of any inconsistencies between the terms and conditions of this Section and any other terms and conditions of this Assignment, the terms and conditions of this Section shall be binding.

(a) Upon the occurrence of an Event of Default, the license granted to Borrower in <u>Section 5</u> of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and all sums due under any Lease Guaranties, whether or not Lender enters upon or takes control of the Property. Such right of Lender to collect and possess all Rents may be accomplished by either:

(i) Upon the occurrence of an Event of Default, Lender shall be entitled to provide Borrower with written notice demanding that Borrower pay to Lender all Rents that accrued before but remain unpaid as of the date of such notice, as well as all Rents that accrue on or after such date. All such Rents shall be turned over to Lender within five (5) days after Borrower's receipt thereof; or

(ii) Upon the occurrence of an Event of Default, Lender shall be entitled to provide written notice to all lessees or occupants of the Property demanding that all unpaid accrued Rents and all unaccrued Rents as they accrue be paid directly to Lender. Such notice to the lessees or other occupants of the Property shall substantially comply with Section 64.056 of the Texas Property Code or any superseding statutory provision, and a copy of such notice shall be provided to Borrower.

(b) <u>INDEMNITY.</u> IT IS THE EXPRESS INTENTION OF BORROWER AND BORROWER HEREBY AGREES THAT THE INDEMNITIES SET FORTH IN THIS ASSIGNMENT (INCLUDING, WITHOUT LIMITATION, THOSE CONTAINED IN <u>SECTION 13</u> HEREOF) AND THE OTHER LOAN DOCUMENTS WILL APPLY TO AND FULLY PROTECT EACH INDEMNIFIED PARTY EVEN THOUGH ANY CLAIMS, DEMANDS, LIABILITIES, LOSSES, DAMAGES, CAUSES OF ACTION, JUDGMENTS, PENALTIES, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES) THEN THE SUBJECT OF INDEMNIFICATION MAY HAVE BEEN CAUSED BY, ARISE OUT OF, OR ARE OTHERWISE ATTRIBUTABLE TO, DIRECTLY OR INDIRECTLY, THE NEGLIGENCE (EXCLUDING GROSS NEGLIGENCE) IN WHOLE OR IN PART OF SUCH INDEMNIFIED PARTY AND/OR ANY OTHER PARTY.

(c) <u>Section 26.02 Notice.</u> IN ACCORDANCE WITH SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, THIS ASSIGNMENT AND THE OTHER DOCUMENTS EVIDENCING, SECURING OR PERTAINING TO ALL OR ANY PORTION OF THE DEBT REPRESENT THE FINAL AGREEMENT BETWEEN BORROWER AND LENDER AS TO THE SUBJECT MATTER THEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF SUCH PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN SUCH PARTIES.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have executed this Assignment of Leases and Rents the day and year first above written.

**BORROWER:**

**GALLERIA LOOP NOTE HOLDER LLC,**
a Texas limited liability company

By:_____
Name: Ali Choudhri
Title: Authorized Signatory


STATE OF TEXAS          )
                        )
COUNTY OF Harris        )


Before me, the undersigned authority, on this day personally appeared Ali Choudhri, an Authorized Signatory of **GALLERIA LOOP NOTE HOLDER LLC**, a Texas limited liability company, known to me to be the person who signed the foregoing instrument, and acknowledged to me that he executed the instrument in the capacity and for the purposes therein expressed.

Given under my hand and seal of office on this 30th day of May, 2019.

[SEAL]                    _____
                          Notary Public, State of Texas

My Commission Expires:

DEBRA JO LEE
Notary Public, State of Texas
Notary ID 83358-3
My Commission Exp. 10-21-2022

_____        _____
                                          Typed or Printed Name

Exhibit "A"

Legal Description

Being 3.889 acres of land out of the William White Survey, Abstract No. 836, Houston, Harris County, Texas and being the same property conveyed to HE 1001 West Loop, LP by Special Warranty Deed recorded under Harris County Clerk's File No. 20070732480, and being more particularly described by metes and bounds as follows:

BEGINNING at a 5/8 inch iron rod set on the East right of way line of I.H. 610 West Loop for the Northwest corner of Lot 1, Block 1, Post Oak Park, according to the Plat thereof recorded in Volume 134, Page 25 of the Map Records of Harris County, Texas;

THENCE North 02 degrees 26 minutes 59 seconds West, with the East right of way line I.H. 610 West Loop, a distance of 645.83 feet to a 5/8 inch iron rod set for the corner at the Southwest waters edge of Buffalo Bayou;

THENCE downstream along the Southwest water edge of Buffalo Bayou as follows:

South 69 degrees 17' 34" East, 138.43 feet;

South 62 degrees 02' 17" East, 100.04 feet;

South 58 degrees 53' 53" East, 100.36 feet;

South 58 degrees 37' 53" East, 100.48 feet;

South 59 degrees 55' 24" East, 100.22 feet;

South 52 degrees 39' 23" East, a distance of 20.56 feet to a point for corner of the North line of that certain 15.032 Square foot tract of land conveyed to Harris County Flood Control District by J. Brown Cutbirth, Jr., Trustee, as recorded in Volume 6960, Page 72 of the Deed Records of Harris County, Texas;

THENCE North 87 degrees 33' 01" East, with the North line of said 15.032 square foot tract, a distance of 40.06 feet to a point for corner;

THENCE South 53 degrees 15' 01" West, a distance of 45.83 feet to a point on the Northeast line of said Post Oak Park;

THENCE with the Northwesterly boundary of said Post Oak Park as follows:

North 69 degrees 15' 45" West, 22.74 feet;

South 10 degrees 28' 15" West, 85.00 feet;

South 83 degrees 23' 15" West, 34.60 feet;

North 32 degrees 38' 45" West, 87.00 feet;

South 46 degrees 48' 15" West, 39.70 feet;

South 01 degrees 01' 15" West, 48.40 feet;

South 78 degrees 50' 15" West, 59.60 feet;

South 02 degrees 57' 45" East, 96.40 feet;

South 60 degrees 41' 15" West, 41.10 feet;

South 11 degrees 19' 15" West, 68.00 feet;

EXHIBIT A TO ASSIGNMENT OF LEASES AND RENTS – Page 1

4822-3894-4920

North 72 degrees 24' 45" West, 145.40 feet;

South 24 degrees 05' 15" West, 30.01 feet;

South 42 degrees 57' 45" East, 68.90 feet;

South 43 degrees 26' 15" West, 60.30 feet;

South 89 degrees 37' 15" West, a distance of 71.62 feet to the PLACE OF BEGINNING and containing 3.889 acres of land, more or less.

RP-2019-393175

ASSIGNMENT OF LEASES AND RENTS – Page 2

4822-3894-4920

RP-2019-393175

# Pages 16

09/05/2019 09:07 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

DIANE TRAUTMAN

COUNTY CLERK

Fees  $72.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS