## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (as amended, restated, supplemented or otherwise modified from time to time in accordance with the provisions hereof, this "**Agreement**"), made and entered into as of May 31, 2019, by and between **GALLERIA LOOP NOTE HOLDER LLC**, a Texas limited liability company ("**Grantor**"), in favor of **TIG ROMSPEN US MASTER MORTGAGE LP**, an exempted Cayman Islands limited partnership (together with its successors and assigns, the "**Secured Party**").

### RECITALS

A.      Pursuant to the terms of a Loan Agreement dated of even date herewith between Grantor and the Secured Party (as the same may be modified, amended or restated from time to time, the "**Loan Agreement**"), the Secured Party is making a loan to Grantor in the maximum aggregate principal amount of Eighteen Million Five Hundred Thousand and No/100ths US Dollars (USD $18,500,000.00) (the "**Loan**") for the purposes specified in the Loan Agreement, said purposes relating to the real property and improvements described in the Loan Agreement (which real property and improvements are collectively referred to herein as the "**Property**").  Each capitalized term used herein and not otherwise defined herein shall have the meaning given to such term in the Loan Agreement.

B.      The Secured Party has required, as security for making the Loan and the observance and performance of all the terms, covenants and provisions of the Loan Documents on the part of Grantor to be observed and performed, a pledge of, and security interest in, all Collateral (as hereinafter defined) associated therewith as evidenced by this Agreement.

C.      This Agreement is given by Grantor in favor of the Secured Party to secure the payment and performance of all of the Secured Obligations (as defined below).

D.      It is a condition to the Secured Party's agreement to make the Loan that Grantor enter into this Agreement.

### AGREEMENT

NOW, THEREFORE, to induce the Secured Party to enter into the Loan Agreement and make the Loan, and in consideration of the mutual promises, covenants, terms, conditions, representations, and warranties set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement agree as follows:

1.      Definitions.

(a)      Unless otherwise specified herein, all references to Sections and Schedules herein are to Sections and Schedules of this Agreement.

(b)      Unless otherwise defined herein, any term used herein that is defined in the UCC shall have the meaning assigned to such term in the UCC whether or not such term is capitalized herein.  However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

(c)      For purposes of this Agreement, the following terms shall have the following meanings:

"**Collateral**" has the meaning set forth in Section 2.

"**Event of Default**" has the meaning set forth in Section 11.

SECURITY AGREEMENT – Page 1

4823-0312-1815.3

"**First Priority**" means, with respect to any lien and security interest purported to be created in any Collateral pursuant to this Agreement, such lien and security interest is the most senior lien to which such Collateral is subject (subject only to liens permitted under the Loan Agreement).

"**Proceeds**" means "proceeds" as such term is defined in section 9-102 of the UCC and, in any event, shall include, without limitation, all dividends or other income from the Collateral, collections thereon or distributions with respect thereto.

"**Secured Obligations**" has the meaning set forth in <u>Section 3</u>.

"**UCC**" means the Uniform Commercial Code as in effect from time to time in the State of Texas or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code as in effect from time to time in such state.

2.     <u>Grant of Security Interest</u>. Grantor hereby pledges and grants to the Secured Party, and hereby creates a continuing First Priority lien and security interest in favor of the Secured Party in and to all of its right, title and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising or acquired (collectively, the "**Collateral**"):

(a)     all Accounts;

(b)     all Goods, including, without limitation: (i) all Equipment; (ii) all Inventory; (iii) all Fixtures; and (iv) all Accessions;

(c)     all Documents, Instruments and Chattel Paper, including, without limitation, all Electronic Chattel Paper and Tangible Chattel Paper, and expressly including all "Collateral", as such term is defined in the Loan Agreement;

(d)     all Letters of Credit and Letter-of-Credit Rights;

(e)     all Investment Property;

(f)     all Intellectual Property Collateral;

(g)     the Commercial Tort Claims described on <u>Schedule 1</u> hereof as supplemented by any written notification given by Grantor to the Secured Party pursuant to <u>Section 4(d)</u>;

(h)     all General Intangibles, including, without limitation, all Payment Intangibles and Software;

(i)     all Money and all Deposit Accounts;

(j)     all Supporting Obligations;

(k)     all books and Records relating to the Collateral;

(l)     to the extent not covered by clauses (a) through (k) of this sentence, all other assets, personal property and rights of Grantor, whether tangible or intangible; and

(m)     all Proceeds and products, whether tangible or intangible, of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to such Grantor from time to time with respect to any of the foregoing, and any and all Accounts, Chattel Paper, Deposit Accounts, Documents, General Intangibles, Goods, Instruments, Investment Property, Letter of Credit Rights, Letters of

SECURITY AGREEMENT – Page 2

4823-0312-1815.3

Credit, real property, Supporting Obligations, money, or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the Proceeds thereof.

3.      Secured Obligations. The Collateral secures the due and prompt payment and performance of the following (collectively, the "**Secured Obligations**"):   all liabilities, obligations, or undertakings owing by Grantor to the Secured Party of any kind or description arising out of or outstanding under, advanced or issued pursuant to, or evidenced by this Agreement, the Loan Agreement, or the other Loan Documents, irrespective of whether for the payment of money, whether direct or indirect, absolute or contingent, due or to become due, voluntary or involuntary, whether now existing or hereafter arising, and including all interest (including interest that accrues after the filing of a case under the Bankruptcy Code regardless of whether allowed or allowable in such proceeding) and any and all costs, fees (including reasonable attorneys' fees), and expenses which Grantor is required to pay pursuant to any of the foregoing, by law, or otherwise.

4.      Perfection of Security Interest and Further Assurances.

        (a)      Grantor shall, from time to time, as may be reasonably required by the Secured Party with respect to all Collateral, promptly take all actions as may be requested by the Secured Party to perfect the security interest of the Secured Party in the Collateral, including, without limitation, with respect to all Collateral over which control may be obtained within the meaning of sections 8-106, 9-104, 9-105, 9-106 and 9-107 of the UCC, as applicable, Grantor shall immediately take all actions as may be requested from time to time by the Secured Party so that control of such Collateral is obtained and at all times held by the Secured Party.  All of the foregoing shall be at the sole cost and expense of Grantor.

        (b)      Grantor hereby irrevocably authorizes the Secured Party at any time and from time to time to file in any relevant jurisdiction any financing statements and amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any financing statement or amendment relating to the Collateral, including any financing or continuation statements or other documents for the purpose of perfecting, confirming, continuing, enforcing or protecting the security interest granted by Grantor hereunder, without the signature of Grantor where permitted by law, including the filing of a financing statement describing the Collateral as "all assets now owned or hereafter acquired by Grantor," or words of similar effect.  Grantor agrees to provide all information required by the Secured Party pursuant to this Section promptly to the Secured Party upon request.

        (c)      If Grantor shall at any time hold or acquire any certificated securities, promissory notes, tangible chattel paper, negotiable documents or warehouse receipts relating to the Collateral, Grantor shall promptly upon request endorse, assign and deliver the same to the Secured Party, accompanied by such instruments of transfer or assignment duly executed in blank as the Secured Party may from time to time specify.

        (d)      If Grantor shall at any time hold or acquire a commercial tort claim, Grantor shall (i) promptly notify the Secured Party in a writing signed by Grantor of the particulars thereof and grant to the Secured Party in such writing a security interest therein and in the proceeds thereof, all upon the terms of this Agreement, with such writing to be in form and substance satisfactory to the Secured Party and (ii) deliver to the Secured Party an updated Schedule 1.

        (e)      If any Collateral is at any time in the possession of a bailee, Grantor shall promptly notify the Secured Party thereof and, at the Secured Party's request and option, shall promptly obtain an acknowledgment from the bailee, in form and substance satisfactory to the Secured Party, that the bailee holds such Collateral for the benefit of the Secured Party and the bailee agrees to comply, without further consent of Grantor, at any time with instructions of the Secured Party as to such Collateral.

SECURITY AGREEMENT – Page 3

4823-0312-1815.3

(f)     Grantor agrees that at any time and from time to time upon Secured Party's reasonable request, at the expense of Grantor, Grantor will promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable in Secured Party's reasonable opinion in order to perfect and protect any security interest granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder or under any other agreement with respect to any Collateral.

5.     Representations and Warranties. Grantor represents and warrants as follows:

(a)     (i) Grantor's exact legal name as shown in its Certificate of Formation on file with the Secretary of State of the State of Texas is that indicated in the first paragraph of this Agreement and on the signature page hereof, (ii) Grantor is a limited liability company, and is organized in the State of Texas, (iii) Grantor's organizational identification number issued by the State of Texas is [         ], and (iv) Grantor's place of business (or, if more than one, its chief executive office) is 162 Cumberland St., Suite 300, Toronto, Ontario M5R 3N5, and the books and records relating to the Collateral are located at such address.

(b)     Grantor holds no commercial tort claims except as indicated on Schedule 1.  None of the Collateral constitutes, or is the proceeds of, "farm products" as defined in section 9-102(a)(34) of the UCC. None of the account debtors or other persons obligated on any of the Collateral is a governmental authority covered by the Federal Assignment of Claims Act or like federal, state or local statute or rule in respect of such Collateral.  Grantor has at all times operated its business in compliance with all applicable provisions of the federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state and local statutes and ordinances dealing with the control, shipment, storage or disposal of hazardous materials or substances.

(c)     At the time the Collateral becomes subject to the lien and security interest created by this Agreement, Grantor will be the sole, direct, legal and beneficial owner thereof, free and clear of any lien, security interest, encumbrance, claim, option or right of others except for the security interest created by this Agreement and other liens expressly permitted by the Loan Agreement.

(d)     The pledge of the Collateral pursuant to this Agreement creates a valid and perfected First Priority security interest in the Collateral, securing the payment and performance when due of the Secured Obligations.

(e)     It has full power, authority and legal right to borrow the Loans and pledge the Collateral pursuant to this Agreement.

(f)     Each of this Agreement and the Loan Agreement has been duly authorized, executed and delivered by Grantor and constitutes a legal, valid and binding obligation of Grantor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and subject to equitable principles (regardless of whether enforcement is sought in equity or at law).

(g)     No authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the borrowing of the Loans and the pledge by Grantor of the Collateral pursuant to this Agreement or for the execution and delivery of the Loan Agreement and this Agreement by Grantor or the performance by Grantor of its obligations thereunder.

(h)     The execution and delivery of the Loan Agreement and this Agreement by Grantor and the performance by Grantor of its obligations thereunder, will not violate any provision of any applicable law or regulation or any order, judgment, writ, award or decree of any court, arbitrator or governmental authority, domestic or foreign, applicable to Grantor or any of its property, or the organizational or governing documents of Grantor or any agreement or instrument to which Grantor is party or by which it or its property is bound.

(i)     Grantor has taken all action required on its part for control (as defined in sections 8-106, 9-104, 9-105, 9-106 and 9-107 of the UCC, as applicable) to have been obtained by the Secured Party over all

SECURITY AGREEMENT – Page 4

4823-0312-1815.3

Collateral with respect to which such control may be obtained pursuant to the UCC.  No person other than the Secured Party has control or possession of all or any part of the Collateral.

6.      Receivables.  If any Event of Default shall have occurred and be continuing, the Secured Party may, or at the request and option of the Secured Party Grantor shall, notify account debtors and other persons obligated on any of the Collateral of the security interest of the Secured Party in any account, chattel paper, general intangible, instrument or other Collateral and that payment thereof is to be made directly to the Secured Party.

7.      Covenants.  Grantor covenants as follows:

(a)      Grantor will not, without providing at least 30 days' prior written notice to the Secured Party, change its legal name, identity, type of organization, jurisdiction of organization, corporate structure, location of its chief executive office or its principal place of business or its organizational identification number.  Grantor will, prior to any change described in the preceding sentence, take all actions reasonably requested by the Secured Party to maintain the perfection and priority of the Secured Party's security interest in the Collateral.

(b)      The Collateral, to the extent not delivered to the Secured Party pursuant to Section 4, will be kept at the Property or the address set forth in Section 5(a), and Grantor will not remove the Collateral from such locations without providing at least 30 days' prior written notice to the Secured Party.  Grantor will, prior to any change described in the preceding sentence, take all actions reasonably required by the Secured Party to maintain the perfection and priority of the Secured Party's security interest in the Collateral.

(c)      Grantor shall, at its own cost and expense, defend title to the Collateral and the First Priority lien and security interest of the Secured Party therein against the claim of any person claiming against or through Grantor and shall maintain and preserve such perfected First Priority security interest for so long as this Agreement shall remain in effect.

(d)      Grantor will not sell, offer to sell, dispose of, convey, assign or otherwise transfer, grant any option with respect to, restrict, or grant, create, permit or suffer to exist any mortgage, pledge, lien, security interest, option, right of first offer, encumbrance or other restriction or limitation of any nature whatsoever on, any of the Collateral or any interest therein, except as permitted by the Loan Documents.

(e)      Grantor will keep the Collateral in good order and repair and will not use the same in violation of law or any policy of insurance thereon.  Grantor will permit the Secured Party, or its designee, to inspect the Collateral at any reasonable time, wherever located.

(f)      Grantor will pay promptly when due all taxes, assessments, governmental charges, and levies upon the Collateral or incurred in connection with the use or operation of the Collateral or incurred in connection with this Agreement.

(g)      Grantor will continue to operate its business in compliance with all applicable provisions of the federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state and local statutes and ordinances dealing with the control, shipment, storage or disposal of hazardous materials or substances.

(h)      Grantor shall maintain accurate records of the Collateral, furnish the Secured Party any requested information related to the Collateral, and allow the Secured Party to inspect and copy all records relating to the Collateral.

(i)      Grantor shall do, make, execute and deliver all such additional and further acts, things, assurances and instruments which the Secured Party may reasonably require to more completely vest in and assure to the Secured Party its lien in all Collateral.

(j)      Grantor shall promptly notify the Secured Party in writing of any loss, damage, investigation, action, suit, proceeding or claim relating to a material portion of the Collateral or which may result in any material adverse change in Grantor's business, assets, liabilities or condition, financial or otherwise.

SECURITY AGREEMENT – Page 5

4823-0312-1815.3

8.      <u>Secured Party Appointed Attorney-in-Fact</u>. During the continuance of an Event of Default, Grantor hereby appoints the Secured Party Grantor's attorney-in-fact, with full authority in the place and stead of Grantor and in the name of Grantor or otherwise, from time to time in the Secured Party's discretion to take any action and to execute any instrument which the Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement (but the Secured Party shall not be obligated to and shall have no liability to Grantor or any third party for failure to do so or take action). This appointment, being coupled with an interest, shall be irrevocable. Grantor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.

9.      <u>Secured Party May Perform</u>. If Grantor fails to perform any obligation contained in this Agreement within the time period specified for performance thereof, the Secured Party may itself perform, or cause performance of, such obligation, and the reasonable expenses of the Secured Party incurred in connection therewith shall be payable by Grantor; *provided that* the Secured Party shall not be required to perform or discharge any obligation of Grantor.

10.     <u>Reasonable Care</u>. The Secured Party shall have no duty with respect to the care and preservation of the Collateral beyond the exercise of reasonable care. The Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which the Secured Party accords its own property, it being understood that the Secured Party shall not have any responsibility for (a) ascertaining or taking action with respect to any claims, the nature or sufficiency of any payment or performance by any party under or pursuant to any agreement relating to the Collateral or other matters relative to any Collateral, whether or not the Secured Party has or is deemed to have knowledge of such matters, or (b) taking any necessary steps to preserve rights against any parties with respect to any Collateral. Nothing set forth in this Agreement, nor the exercise by the Secured Party of any of the rights and remedies hereunder, shall relieve Grantor from the performance of any obligation on Grantor's part to be performed or observed in respect of any of the Collateral.

11.     <u>Events of Default</u>.

(a)      As used herein, the term "Event of Default" has the meaning set forth in the Loan Agreement.

(b)      During the continuance of any Event of Default (whether or not the Secured Party has knowledge that such Event of Default exists), all Secured Obligations, shall, at the option of the Secured Party and notwithstanding any time allowed in any Loan Document, immediately become due and payable without demand and without notice to Grantor.

12.     <u>Remedies Upon Default</u>. If any Event of Default shall have occurred and be continuing:

(a)      The Secured Party, without any other notice to or demand upon Grantor, may assert all rights and remedies of a secured party under the UCC or other applicable law, including, without limitation, the right to take possession of, hold, collect, sell, lease, deliver, grant options to purchase or otherwise retain, liquidate or dispose of all or any portion of the Collateral. If notice prior to disposition of the Collateral or any portion thereof is necessary under applicable law, written notice mailed to Grantor at its notice address as provided in the Loan Agreement at least ten days prior to the date of such disposition shall constitute reasonable notice, but notice given in any other reasonable manner shall be sufficient. So long as the sale of the Collateral is made in a commercially reasonable manner, the Secured Party may sell such Collateral on such terms and to such purchaser(s) as the Secured Party in its absolute discretion may choose, without assuming any credit risk and without any obligation to advertise or give notice of any kind other than that necessary under applicable law. Without precluding any other methods of sale, the sale of the Collateral or any portion thereof shall have been made in a commercially reasonable manner if conducted in conformity with reasonable commercial practices of creditors disposing of similar property. At any sale of the Collateral, if permitted by applicable law, the Secured Party may be the purchaser, licensee, assignee or recipient of the Collateral or any part thereof and shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold, assigned or licensed at such sale, to use and apply any of the Secured Obligations

<small>SECURITY AGREEMENT – Page 6</small>

<small>4823-0312-1815.3</small>

as a credit on account of the purchase price of the Collateral or any part thereof payable at such sale. To the extent permitted by applicable law, Grantor waives all claims, damages and demands it may acquire against the Secured Party arising out of the exercise by it of any rights hereunder. Grantor hereby waives and releases to the fullest extent permitted by law any right or equity of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if any, of marshalling the Collateral and any other security for the Secured Obligations or otherwise. At any such sale, unless prohibited by applicable law, the Secured Party or any custodian may bid for and purchase all or any part of the Collateral so sold free from any such right or equity of redemption. Neither the Secured Party nor any custodian shall be liable for failure to collect or realize upon any or all of the Collateral or for any delay in so doing, nor shall it be under any obligation to take any action whatsoever with regard thereto. The Secured Party shall not be obligated to clean-up or otherwise prepare the Collateral for sale.

(b)     Any cash held by the Secured Party as Collateral and all cash Proceeds received by the Secured Party in respect of any sale of, collection from, or other realization upon all or any part of the Collateral shall be applied in whole or in part by the Secured Party to the payment of expenses incurred by the Secured Party in connection with the foregoing or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Secured Party hereunder, including reasonable attorneys' fees, and the balance of such proceeds shall be applied or set off against all or any part of the Secured Obligations in such order as the Secured Party may elect. Any surplus of such cash or cash Proceeds held by the Secured Party and remaining after payment in full of all the Secured Obligations shall be paid over to Grantor or to whomsoever may be lawfully entitled to receive such surplus. Grantor shall remain liable for any deficiency if such cash and the cash Proceeds of any sale or other realization of the Collateral are insufficient to pay the Secured Obligations and the fees and other charges of any attorneys employed by the Secured Party to collect such deficiency.

(c)     If the Secured Party shall determine to exercise its rights to sell all or any of the Collateral pursuant to this Section, Grantor agrees that, upon request of the Secured Party, Grantor will, at its own expense, do or cause to be done all such acts and things as may be reasonably necessary to make such sale of the Collateral or any part thereof valid and binding and in compliance with applicable law.

13.     No Waiver and Cumulative Remedies. The Secured Party shall not by any act (except by a written instrument pursuant to Section 14), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Event of Default. All rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies provided by law.

14.     Amendments. None of the terms or provisions of this Agreement may be amended, modified, supplemented, terminated or waived, and no consent to any departure by Grantor therefrom shall be effective unless the same shall be in writing and signed by the Secured Party and Grantor, and then such amendment, modification, supplement, waiver or consent shall be effective only in the specific instance and for the specific purpose for which made or given.

15.     Addresses For Notices. All notices and other communications provided for in this Agreement shall be in writing and shall be given in the manner and become effective as set forth in the Loan Agreement, and addressed to the respective parties at their addresses as specified on the signature pages hereof or as to either party at such other address as shall be designated by such party in a written notice to each other party.

16.     Continuing Security Interest; Further Actions. This Agreement shall create a continuing First Priority lien and security interest in the Collateral and shall (a) subject to Section 17, remain in full force and effect until payment and performance in full of the Secured Obligations, (b) be binding upon Grantor, its successors and assigns, and (c) inure to the benefit of the Secured Party and its successors, transferees and assigns; *provided that* Grantor may not assign or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the Secured Party. Without limiting the generality of the foregoing clause (c), any assignee of the Secured Party's interest in any agreement or document which includes all or any of the Secured

Obligations shall, upon assignment, become vested with all the benefits granted to the Secured Party herein with respect to such Secured Obligations.

17.     Termination; Release.  On the date on which all Secured Obligations have been paid and performed in full, the Secured Party will, at the request and sole expense of Grantor, (a) duly assign, transfer and deliver to or at the direction of Grantor (without recourse and without any representation or warranty) such of the Collateral as may then remain in the possession of the Secured Party, together with any monies at the time held by the Secured Party hereunder, and (b) execute and deliver to Grantor a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement.

18.     Expenses.  Grantor agrees to pay promptly to the Secured Party upon demand all expenses, costs, charges, fees and disbursements of any kind, type, nature, and description, including reasonable attorneys' fees, litigation expenses, and all court costs, incurred by the Secured Party in connection with the underwriting, origination, making, documentation, administration, enforcement, or collection of the Loan Documents, including this Agreement, and the creation, perfection, administration, defense of, and enforcement of the assignments, pledges, and security interests granted herein, and all expenses incurred by the Secured Party shall be a part of the Secured Obligations.

19.     Severability.  The provisions of this Agreement are severable, and if any clause or provision of this Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision or part thereof in such jurisdiction and shall not in any manner affect such clause or provision in any other jurisdiction or any other clause or provision in this Agreement in any jurisdiction.

20.     Governing Law; Venue.  This Agreement shall be governed, construed, applied and enforced in accordance with the laws of the State of Texas without regard to the conflicts of law provisions thereof ("**Governing State**").  Grantor hereby consents to personal jurisdiction in the Governing State. JURISDICTION AND VENUE OF ANY ACTION BROUGHT TO ENFORCE THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR ANY ACTION RELATING TO THE LOAN OR THE RELATIONSHIPS CREATED BY OR UNDER THE LOAN DOCUMENTS ("**ACTION**") SHALL, AT THE ELECTION OF SECURED PARTY, BE IN (AND IF ANY ACTION IS ORIGINALLY BROUGHT IN ANOTHER VENUE, THE ACTION SHALL AT THE ELECTION OF SECURED PARTY BE TRANSFERRED TO) A STATE OR FEDERAL COURT OF APPROPRIATE JURISDICTION LOCATED IN THE GOVERNING STATE.  GRANTOR HEREBY CONSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF THE STATE COURTS OF THE GOVERNING STATE AND OF FEDERAL COURTS LOCATED IN THE GOVERNING STATE IN CONNECTION WITH ANY ACTION AND HEREBY WAIVES ANY AND ALL PERSONAL RIGHTS UNDER THE LAWS OF ANY OTHER STATE TO OBJECT TO JURISDICTION WITHIN SUCH GOVERNING STATE FOR PURPOSES OF ANY ACTION. Grantor hereby waives and agrees not to assert, as a defense to any Action or a motion to transfer venue of any Action, (i) any claim that it is not subject to such jurisdiction, (ii) any claim that any Action may not be brought against it or is not maintainable in those courts or that this Agreement may not be enforced in or by those courts, or that it is exempt or immune from execution, (iii) that the Action is brought in an inconvenient forum, or (iv) that the venue for the Action is in any way improper.

21.     Rules Of Construction.  Section and subsection headings in this Agreement are included in this Agreement for convenience of reference only and shall not constitute a part of this Agreement or be given any substantive effect.  Unless the context of this Agreement clearly requires otherwise, references to the plural include the singular and to the singular include the plural, the part includes the whole, the term "including" is not limiting (and means, including without limitation), and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or."  The words "hereof," "herein," "hereby," "hereunder," and other similar terms in this Agreement refer to this Agreement as a whole and not exclusively to any particular provision of this Agreement.  Article, section, subsection, exhibit, and schedule references are to this Agreement unless otherwise specified.  All of the exhibits or schedules attached to this Agreement shall be

SECURITY AGREEMENT – Page 8

4823-0312-1815.3

deemed incorporated in this Agreement by reference.  Any reference to any of the following documents includes any and all alterations, amendments, restatements, extensions, modifications, renewals, or supplements thereto or thereof, as applicable: this Agreement or any of the other Loan Documents.  No inference in favor of, or against, any party shall be drawn from the fact that such party has drafted any portion of this Agreement, each party having been represented by counsel of its choice in connection with the negotiation and preparation of this Agreement and the other Loan Documents.

22.     Counterparts.  For the purpose of facilitating the execution of this Agreement and for other purposes, this Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute but one and the same instrument.  A signature of a party by facsimile or other electronic transmission (including a .pdf copy sent by e-mail) shall be deemed to constitute an original and fully effective signature of such party.

23.     Waiver of Jury Trial. EACH OF SECURED PARTY AND GRANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY SECURED PARTY AND GRANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EACH OF SECURED PARTY AND GRANTOR IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY SECURED PARTY AND GRANTOR.

*[Separate Signature Pages Follow.]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**GRANTOR:**

**GALLERIA LOOP NOTE HOLDER LLC,**
a Texas limited liability company

By:_____

Name:   Ali Choudhri

Title:    Authorized Signatory

STATE OF TEXAS              )
                                          )
COUNTY OF Harris        )

Before me, the undersigned authority, on this day personally appeared Ali Choudhri, an Authorized Signatory of **GALLERIA LOOP NOTE HOLDER LLC**, a Texas limited liability company, known to me to be the person who signed the foregoing instrument, and acknowledged to me that he executed the instrument in the capacity and for the purposes therein expressed.

Given under my hand and seal of office on this 30th day of May, 2019.

[SEAL]                                         _____
                                                     Notary Public, State of Texas

My Commission Expires:

_____        _____
                                                     Printed Name

DEBRA JO LEE
Notary Public, State of Texas
Notary ID 85806
My Commission Exp. 10-21-2022

4823-0312-1815.3

**SECURED PARTY:**

**TIG ROMSPEN US MASTER MORTGAGE LP,**
an exempted Cayman Islands limited partnership

By:    Romspen US Mortgage GP Inc.,
       an Ontario corporation, its general partner

By:_____
Name:_____
Title:_____
          **Blake Cassidy**
          **Authorized Signing Officer**

SECURED PARTY SIGNATURE PAGE TO SECURITY AGREEMENT

4823-0312-1815.3

## SCHEDULE 1

### COMMERCIAL TORT CLAIMS

NONE