**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 24-10119-smr** |
| | § | |
| **1001 WL, LLC,** | § | **Chapter 7** |
| | § | |
| **Debtor.** | § | |

# EXHIBIT E

Deposition of Wesley Roitman (July 31, 2025), excerpts

*to the*

*Motion of Arabella PH 3201 LLC, Joined by Ali Choudhri, for an Order Requiring TIG Romspen US Master Mortgage LP to Show Its Authority, and Under Bankruptcy Rule 9024 to Vacate Orders and Strike Filings Made After February 6, 2024*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

In re: 1001 WL LLC,

Debtor.

CASE NO. 24-10119

CHAPTER 11

---

REMOTE STREAMING DEPOSITION OF

WESLEY NOAH ROITMAN

TAKEN ON

THURSDAY, JULY 31, 2025

11:05 A.M.

141 HEATH STREET E

TORONTO, ON M4T 1S6, CANADA

MR. CHOUDHRI: Thank you.
BY MR. CHOUDHRI:
**Q. Romspen provided an offset to the debt based on a foreclosure sale that happened on the La Vernia property. Is that correct?**
A. Yes.
MR. HIRSCH: Objection to form.
BY MR. CHOUDHRI:
**Q. And that is reflected in your proof of claim. Is that correct?**
A. I'm not sure. I believe so.
MR. CHOUDHRI: I'm going to share my screen. And Kyle, I have emailed you and the court reporter your 497 pages of exhibits. Did you receive that email?
MR. HIRSCH: I received an email from you at 12:27 p.m., and another email from you at 12:29 p.m. It looks to be the exhibit compilation that I had circulated to the parties.
BY MR. CHOUDHRI:
**Q. And Mr. Roitman, can you see the screen here? And can you read what it says on top here?**
A. Exhibit 1.
**Q. And how many pages do you see that this compilation is?**



A. From the little thing at the bottom, it says page 1/497.
**Q. So would that mean that this is 497 pages?**
A. Probably. I don't know what software you're using.
**Q. I'm going to scroll down here. And do you see Exhibit -- the first -- this is -- who is Blake Cassidy?**
A. He's partner of mine.
**Q. And you authorized the filing of this document, which is proof of claim 1-1?**
A. It looks like Blake did. So Blake authorized it. He has the authority to do that.
**Q. And you stand by the authority of Blake Cassidy?**
A. Yeah.
**Q. And I'm going to read to you here -- so tell me a little bit about TIG Romspen US Mortgage. It is a Cayman Islands Limited Partnership. Is that correct?**
A. Yes.
**Q. And what is the address of TIG Romspen US Master Mortgage LP?**
MR. HIRSCH: Object. Object. This is outside the scope. This has nothing to do with the



9019 motion.
BY MR. CHOUDHRI:
**Q. Are you going to answer that, Mr. Roitman?**
A. No.
**Q. You're refusing the question on the address for TIG Romspen US Master Mortgage LP?**
A. I hear my lawyer objecting to it, and it's outside the scope. So I'm not going to answer.
**Q. So you're refusing to answer my question?**
A. Yes.
**Q. And so what was the offset off the amended -- or off the proof of claim for the La Vernia property sale?**
A. I imagine it's whatever the La Vernia trustee told us was the sale price of that.
**Q. And who would that be?**
A. I'm not sure what the La Vernia trustee was.
**Q. And so you understand that you're -- the entity in this case is TIG Romspen US Master Mortgage LP. Is that correct?**
THE REPORTER: What was the last few words?
BY MR. CHOUDHRI:
**Q. You understand that the creditor here in**



**this case is TIG Romspen US Master Mortgage LP?**
A. Yes.
**Q. And could you read -- let me go down to it. Can you explain to me the relationship of Otisco and the La Vernia deed of trust that's spelled out on the amended proof of claim?**
A. I think Otisco was the owner of the collateral property.
**Q. And what is the collateral property?**
A. It's the undeveloped real estate near San Antonio.
**Q. And so what did TIG Romspen get in relation to its debt that it purports it acquired from foreclosure sale? Can you explain how that transaction connects with the debtor?**
MR. HIRSCH: Objection to form.
A. Yeah. It was a term to one of the loan amendments or forebearance agreements, one of the many loan amendments and forebearance agreements.I granted you, Ali.
MR. CHOUDHRI: Objection, non-responsive. Court reporter, can you read the question again, please?
THE REPORTER: Please stand by.
(WHEREUPON, the requested question was

Page 26

played.)

MR. HIRSCH: Object to the question as to form.

BY MR. CHOUDHRI:

**Q. You can answer.**

MR. HIRSCH: You can answer if you understand it, Wes.

A. I don't understand what you're asking. You know this already. You know it was -- this was part of one of the forebearance agreements. You granted this as additional collateral.

BY MR. CHOUDHRI:

**Q. So it's your contention that the La Vernia property was foreclosed by TIG Romspen. Is that correct?**

MR. HIRSCH: Objection to form.

A. That's correct.

BY MR. CHOUDHRI:

**Q. What was your answer?**

A. It was foreclosed by one of our affiliates.

**Q. Which affiliate?**

A. RIC La Vernia, it says here.

**Q. And so who foreclosed the property? Which entity foreclosed the property?**

Page 27

MR. HIRSCH: Objection, form, calls for a legal conclusion.

BY MR. CHOUDHRI:

**Q. You can answer, Mr. Roitman.**

A. Yeah, again, you're asking legal questions. You know, I don't know. I know that there was a foreclosure, and RIC La Vernia was the bidder, the winning bidder, who is one of our affiliates. It says here, For a successful bid in the amount of $100,000. That's what the Trustee told us, and that's what we credit bid.

BY MR. CHOUDHRI:

**Q. And what is RIC La Vernia LLC? Who owns RIC La Vernia LLC?**

A. I'm not sure. It's someone in our corporate structure. We have a large corporate structure.

**Q. Do you have any ownership in RIC La Vernia LLC, indirectly or directly?**

MR. HIRSCH: Objection to form, and this is going outside the scope of the 9019.

You can answer if you can, Mr. Roitman.

But Mr. Choudhri, I'm just letting you know that these lines of questions are getting close to the edge of the scope, outside.

Page 28

A. I own some shares in the fund, but I would otherwise have no interest in this personally.

BY MR. CHOUDHRI:

**Q. What fund? You own shares in what fund?**

A. Feeder funds that flow into TIG Romspen US Master Mortgage LP.

**Q. And so what is your connection to RIC La Vernia, LLC?**

A. Well, RIC La Vernia also ultimately flows into -- it's the same fund. They're all part of the same fund. They all flow up to the same fund.

**Q. So how did RIC La Vernia -- so who owns -- or what entity -- who was the ultimate owner of RIC La Vernia LLC?**

MR. HIRSCH: Object. Instruct the witness not to answer. This is outside the scope of the 9019 motion, Mr. Choudhri. If you can explain how this is relevant to the 9019 motion, I'll listen and maybe I'll instruct the witness otherwise. But at this point, there is a 9019 motion that was submitted by the Chapter 11 Trustee. This question relating to other litigation involving other parties is outside the scope of the 9019 application submitted by the Chapter 11 Trustee.

Can you explain how this is relevant to

Page 29

the 9019 motion, Mr. Choudhri?

MR. CHOUDHRI: Mr. Hirsch, this is your exhibit that you've attached to approve the 9019. This is an amended proof of claim that calculates the amount of the debt that your client is contending they're owed. I'm entitled to get into this and ask questions about the calculations and how this debt -- and what the amount of the debt is and what the offsets are.

MR. HIRSCH: Mr. Choudhri, you don't know -- you don't know why this exhibit is included in our exhibit list. There are several matters that are set for hearing. If you can articulate how you believe your line of questioning about an entity that is not a party to this bankruptcy case is relevant to the application to approve a compromise and settlement between TIG Romspen and the Chapter 11 Trustee, I will listen to your explanation. But at this point, delving into an entity that is not a party to this proceeding is outside the scope of the 9019 motion. And I'm instructing the witness not to answer unless you can provide an adequate explanation.

MR. CHOUDHRI: I'm entitled to get into this and ask questions about a credit bid that

Page 30

aggects the debt that is being settled as part of the 9019. So Mr. Hirsch --

MR. HIRSCH: So you can talk about -- so go ahead and talk about the settlement between the Trustee as it relates to this particular proof of claim. I have no problem with those questions. I do have a problem with you delving into the identity of non-parties to this case.

BY MR. CHOUDHRI:

**Q. Mr. Roitman, are you representing to the bankruptcy court that the La Vernia property was sold to RIC La Vernia on February the 6th, 2024? It's a "yes" or "no" question.**

A. It says in here, On February 6th, the La Vernia property was sold to Romspen's assignee, RIC La Vernia LLC, for successful bid in the amount of $100,000.

**Q. I'm sorry, Mr. Roitman. We were talking over each other. Why don't you read what you were -- I was trying to ask you a question, and you're reading a document. So let's try this again. Can you read me what you just read again into the record? And I don't want to upset the court reporter and talk over each other, so let me allow you to read what you were reading. And I'm sorry if**

Page 31

**I interrupted you.**

**Go ahead, Mr. Roitman.**

A. What this says is on February 6th, 2024, the La Vernia property was sold to Romspen's assignee, RIC La Vernia LLC, for a successful bid in the amount of $100,000.

**Q. And so just so record is clear, it says that Romspen now amends the proof of claim to deduct its $100,000 credit bid, reducing the amount due and owing as of the petition date. Is that correct?**

A. That's correct.

**Q. And so the -- has Romspen taken all lawful offsets and credits to its debt that it's representing to the bankruptcy court that it's owed in the proof of claim?**

A. Yes.

**Q. And is RIC La Vernia LLC a debtor in bankruptcy in Judge Parker's court, as we sit here today?**

MR. HIRSCH: Object. Object, outside the scope of the 9019. Mr. Choudhri, if you can explain how that question relates to the 9019, I'll consider it. But at this point, the question is outside the scope. RIC La Vernia is not a party to the settlement between Romspen and the Chapter 11

Page 32

Trustee of the 1001 WL bankruptcy estate.

BY MR. CHOUDHRI:

**Q. You can answer, Mr. Roitman.**

MR. HIRSCH: No. If you can explain how your question relates to the 9019, otherwise, I'm advising the witness not to answer. And it's outside the scope.

MR. CHOUDHRI: Mr. Hirsch, are you instructing the witness not to answer my question?

MR. HIRSCH: I'm pretty sure my objection was clear. We had an agreed scope. This question is outside the scope. I asked you if you would provide an explanation as to how your question fits within the scope of the 9019, and if you're unable to provide such an explanation, I am instructing the witness not to answer the question as outside the agreed scope.

BY MR. CHOUDHRI:

**Q. Mr. Roitman, you understand that we are here regarding a 9019 and matters that are set on August the 4th, 2024, in front of Judge Robinson. You're aware of that. Right?**

A. Yes.

**Q. And you're going to take your attorney's instruction and not answer my questions when he**

Page 33

**instructs you not to answer. Is that correct?**

MR. HIRSCH: Objection, form.

BY MR. CHOUDHRI:

**Q. Is that correct, Mr. Roitman?**

A. Yes. I follow my legal advice. I told you that before.

**Q. So Mr. Roitman, the collateral that was provided to TIG Romspen to secure its debt, I think -- what is the principal amount of the debt that Romspen contends is the loan amount?**

A. The original principal amount was $18,500,000, according to this.

**Q. And this is according to what we're reading as the -- what does it say on top?**

A. Amended Proof of Claim.

**Q. Mr. Roitman, so the borrower -- who is the borrower for TIG Romspen in this case?**

MR. HIRSCH: Objection to form.

A. According to this, it says we made a loan to Galleria Loop Note Holder, GLNH.

BY MR. CHOUDHRI:

**Q. Did TIG Romspen make a loan to 1001 WL LLC?**

A. I can't be sure. Maybe before Galleria Loop Note -- no, I don't think so. I don't think

Choudhri whose request for a deposition was made with insufficient notice and with inadequate time to prepare, yet Mr. Roitman appeared. He answered questions that were presented for two hours on what was intended to be a very limited scope, for which Mr. Choudhri repeatedly exceeded.

We object to any re-call. We object to the suspension, we believe that we have satisfied all obligations to the extent any existed, given Mr. Roitman was not subpoenaed, given there was no notice of a deposition that was filed in this case.

MR. CHOUDHRI: And let the record reflect that Mr. Hirsch refused to cooperate with a scheduled deposition or a continuance, and has refused to cooperate and has made multiple objections and running objections, and coaching the witness, and instructing the witness not to answer basic questions that go to the root and fundamental of the matter that is in controversy.

But I think -- I think that's it. Madam Court Reporter --

MR. HIRSCH: It is -- it is patently false that I did not agree to cooperate. That's why we're here, and you know that, Mr. Choudhri. My objections were properly posed. My objections were



properly raised. Answers were given to proper questions.

MR. CHOUDHRI: It's fine, Mr. Hirsch. I don't have to have the last word. It's fine. But I do appreciate everyone's professionalism. More professionalism is always better.

And thank you, Madam Court Reporter. I appreciated it. We can go off the record. Is that okay with you, Mr. Hirsch?

MR. HIRSCH: Yeah.

THE REPORTER: Okay. Mr. Choudhri, would you like to order the original?

MR. CHOUDHRI: Yes. Is it possible to get it emailed as soon as possible?

THE REPORTER: Yes. Would you like it by tomorrow at 5:00 p.m.?

MR. CHOUDHRI: Yeah, that's fine. If it can be sooner, that would be better. I would prefer sooner would be better.

THE REPORTER: Okay. And Mr. Hirsch, you'd like a copy? And yours is due tomorrow at 5:00 p.m.?

MR. HIRSCH: Yes, please.

THE REPORTER: Yes. Please stand by. We're off the record, 2:05 p.m.



(WHEREUPON, a recess was taken.)

MR. CHOUDHRI: Getting back on the record for sixty seconds. Madam Court Reporter, we're back on the record. I believe we're going to get back on at 3:00, so hopefully that's still the case, and we'll go from there.

Thank you so much. So I'll circulate the same Zoom.

THE REPORTER: Sounds good.

(WHEREUPON, the deposition of WES ROITMAN was adjourned at 2:05 p.m.)



CERTIFICATE

I, Brittany Douglas, do hereby certify that I reported all proceedings adduced in the foregoing matter and that the foregoing transcript pages constitutes a full, true and accurate record of said proceedings to the best of my ability.

I further certify that I am neither related to counsel or any party to the proceedings nor have any interest in the outcome of the proceedings.

IN WITNESS HEREOF, I have hereunto set my hand this 1st day of August, 2025.



Brittany Douglas
Certificate No. 4235