FILED

OCT 19 2026

U.S. BANKRUPTCY COURT
BY ______ DEPUTY

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-10119-smr |
| | § | |
| 1001 WL, LLC, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

# ALI CHOUDHRI'S REPLY TO RIC (WEST LOOP) LLC'S OBJECTION [ECF NO. 1107] TO HIS MOTION FOR LEAVE TO FILE OBJECTION TO THE TRUSTEE'S SALE MOTION [ECF NO. 1098]

TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:

Ali Choudhri ("Choudhri"), pro se, replies to the objection filed on October 14, 2026 by RIC (West Loop) LLC ("RIC West Loop"), through counsel who signs for both it and TIG Romspen US Master Mortgage LP ("Romspen"). ECF No. 1107. Travis B. Vargo, the purported receiver, is referred to as "Vargo"; the judgment is on appeal, Choudhri contends it is void, and the reference concedes nothing.

1. The objector is the purported buyer. RIC West Loop is not a disinterested creditor asking the Court to enforce a deadline. It is the party that would receive, for $25,000, "every remaining claim and cause of action" of this estate under the Sale Motion, ECF No. 1098, and it is Romspen's assignee, ECF Nos. 1026, 1029 ¶ 13, 1089. The claims it would buy include claims against Romspen and its affiliates. A purported buyer who asks the Court to foreclose any objection to its own purchase of claims against itself is not invoking Rule 9006(b)(1) to protect the orderly administration of the estate; it is invoking it to avoid scrutiny that the Fifth Circuit requires of any sale of estate litigation claims, and requires most where the buyer is the target. Cadle Co. v. Mims (In re Moore), 608 F.3d 253, 263–66 (5th Cir. 2010).

2. The Sale Motion disclosed a price, not what was being sold, and the Trustee refused to say more. RIC West Loop says the "details" of its bid were in the Sale Motion—"a cash payment of $25,000 for the free-and-clear transfer of the 'Residual Assets.'" ECF No. 1107 at 1. That is

the price. It is not the inventory. The email record is attached as Exhibit A. On May 19, 2026, the Trustee's counsel invited offers for the estate's litigation claims. On June 2, Choudhri submitted an offer. On August 13 at 3:58 p.m., counsel wrote that the Trustee had "received a higher and better offer" and asked Choudhri to "submit your best and final offer." At 4:02 p.m., Choudhri asked for "the higher offer amount and terms so it can be considered." No answer came. The Sale Motion, filed September 14, then told the Court that Choudhri had declined to submit a best and final offer. On October 6, Choudhri wrote again that this was not accurate, that he had been waiting for the information he requested, and asked for the amount and terms and a short extension; on October 12 he followed up. On October 13, the Trustee's counsel replied that "engaging with you is an exercise in futility" and that "the Trustee has nothing more to say to you." A party cannot submit a best and final offer against a bid whose terms the fiduciary will not disclose, and cannot object to a sale of "residual assets" he cannot see. That is the reason for the delay, and it is a reason attributable to the estate's fiduciary, not to Choudhri.

3. The Pioneer factors favor leave. Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 395 (1993). Prejudice: none—the sale has not closed, no hearing has been held, and RIC West Loop identifies no cost beyond having to defend the fairness of its own bid. Length of delay: one day, and the objection was tendered before any ruling. Reason: the Trustee's refusal, three times over two months, to disclose the terms of the competing bid or of the thing being sold, followed by a statement that he had "nothing more to say." Good faith: RIC West Loop's charge that the motion is "punitive" because Choudhri "fails to propose any offer that competes with the pending offer," ECF No. 1107 at 2, misstates both the record—Choudhri did bid, on June 2, and asked for the terms needed to bid again—and the standard; an objector to a sale of litigation claims need not outbid the buyer to be heard on whether the price is fair and the process is clean. The question under Moore is whether the Trustee has shown the price is the highest and best available, and that question cannot be answered by the buyer's own number. ECF No. 1098 ¶ 17.

4. The Court has seen this before. The Court will recall that, when the Trustee's proposed compromise with Romspen was before the Court under Rule 9019, a prospective purchaser appeared with a $500,000 offer for the estate's claims—an unsolicited offer, made without the claims having been marketed at all—and that the Court asked from the bench why that offer was

not more than the Trustee was obtaining under the compromise. The Court denied the compromise, reasoning that if an unsolicited offer of that size could surface without any marketing, the claims had not been shown to be worth what the Trustee proposed to accept for them. Choudhri will supply the transcript. Romspen then made its election to foreclose, purported to take the building at foreclosure, and took the position that the compromise was moot. The estate is now asked to sell the same claims, still unmarketed, to Romspen's assignee for $25,000, on a record in which the Trustee will not disclose the competing terms or the inventory of what is being sold. The Court's own reasoning on the 9019 motion is the reason the Sale Motion should be heard on evidence rather than disposed of on a one-day deadline.

5. The footnote about Suite 700 cuts the other way. RIC West Loop says the Sale Motion was served on Choudhri "at his addresses of record," one of which is, in RIC West Loop's words, "Suite 700 at the foreclosed commercial property now owned by RIC," where, it adds, Choudhri "has no lawful right of occupancy." ECF No. 1107 at 1 n.1. RIC West Loop therefore knew that one of the two addresses to which notice went was a suite in a building it claims to have taken by a purported foreclosure and from which it says Choudhri is excluded. A party that serves notice at an address it knows the recipient cannot receive mail at, and then objects that the recipient was a day late, is not describing prejudice to itself; it is describing the reason for the one-day delay. The footnote's reservation of rights about occupancy has nothing to do with the Motion for Leave, and Choudhri reserves all rights and objections concerning the purported foreclosure and the building; nothing in his silence on the point here is an admission.

6. What Romspen's counsel is telling the state court this Court did. The same counsel who signs ECF No. 1107 has submitted to the 333rd District Court of Harris County, in TIG Romspen US Master Mortgage LP v. Galleria Loop Note Holder, LLC, No. 2023-84714, a proposed Final Judgment for $42,371,306.88 against Choudhri individually and Galleria Loop Note Holder, LLC, jointly and severally, stipulated to by Vargo "by and through" his receivership, first on December 19, 2025 and again on October 7, 2026. That proposed judgment recites that Vargo "has been found by two United States Bankruptcy Judges to have the exclusive authority to represent the interests of Choudhri and entities controlled by Choudhri," citing this Court's ECF No. 996. The November 21, 2025 settlement behind it, drafted with Romspen's counsel, recites that Vargo's authority to settle is "subject only to approval by the

bankruptcy court with jurisdiction over the assets of a debtor owned and controlled by Choudhri, to wit: 1001 WL." Vargo in turn has told the receivership court, under penalty of perjury, in the collections table of his March 3, 2026 Report, that the $225,000 Romspen paid him was "as authorized by Judge Michael Parker" in the RIC (Lavernia) case and "as authorized by Judge Christopher Bradley" in this case—Judge Bradley being the judge who entered ECF No. 996 in this case while sitting in for Judge Robinson—and his Omnibus Response of April 15, 2026 says the settlement followed "Bankruptcy Court approval in the RICL Bankruptcy." Both pages, with those passages highlighted, are attached as Exhibit B. No motion under Bankruptcy Rule 9019 to approve that settlement was ever filed in this case, and this Court has approved nothing. ECF No. 996 at 8 n.36 says the Choudhri LLCs are exempt from turnover; it does not authorize anyone to consent to a $42 million judgment against Choudhri personally. Choudhri brings this to the Court's attention because the party invoking Rule 9006 against him here is, in another court, invoking this Court's name for an approval this Court never gave. RIC and Romspen are weaponizing this Court's orders: they take an order that decided who may litigate for named parties in this case, misstate it as a finding of "exclusive authority" over Choudhri and his entities, and present it to other courts as approval of a $42 million judgment and a settlement this Court has never seen. An objection from a party doing that should carry no weight when it asks the Court to shut the door on a one-day delay.

7. Notice of the related filing in the Southern District of Texas. On October 13, 2026, Choudhri filed in his own Chapter 11 case, In re Ali Choudhri, No. 25-90797 (Bankr. S.D. Tex.) (Lopez, J.), an Emergency Motion for Order to Show Cause, for Determination of Willful Violations of the Automatic Stay, and for Sanctions and Damages, ECF No. 39, with exhibits at ECF No. 40-1; a file-stamped copy of that motion is attached as Exhibit C, and a stand-alone notice of the filing, with its exhibits, is filed separately on this Court's docket. That motion documents, from Vargo's sworn Report of March 3, 2026 and his Omnibus Response of April 15, 2026, that Vargo told the receivership court the Romspen settlement was "authorized by Judge Michael Parker" and Judge Christopher Bradley and followed "Bankruptcy Court approval in the RICL Bankruptcy." Neither this Court nor the San Antonio Division approved it: no Rule 9019 motion was filed in either case, and the only 9019 application in the RIC (Lavernia) case that touched Romspen (ECF No. 225, corrective deeds) was dismissed as moot when that case was dismissed. The $25,000 sale now before the Court would transfer to Romspen's assignee the

estate's claims arising from that settlement and from the conduct surrounding it. The Court should know, in weighing whether to hear an objection one day late, that the parties who negotiated that settlement have represented to other courts that this Court blessed it.

8. RIC West Loop comes to this Court with unclean hands and without full disclosure. The objection does not tell the Court that the objector is Romspen's assignee acquiring claims against Romspen; that the terms of its bid were withheld from the only competing bidder for two months; that its counsel is simultaneously presenting to a state court a $42 million stipulated judgment against Choudhri that recites this Court's "finding" of exclusive authority; or that the settlement behind that judgment—the one Vargo swore was approved by this Court's judges—was never submitted to this Court at all. A party seeking the equitable discretion of a bankruptcy court to cut off an objection, and seeking the Court's approval of a sale to itself, owes the Court candor about the transaction and about what it has told other courts this Court did. Romspen has concealed the settlement itself from this Court. It has never filed it here, never asked this Court to approve it, and never disclosed, in any filing in this case, that the agreement recites that Vargo's authority to settle is "subject only to approval by the bankruptcy court with jurisdiction over the assets of a debtor owned and controlled by Choudhri, to wit: 1001 WL," or that in it Vargo "warrants and represents that his authority to enter into this Agreement is derived exclusively from the A-Case Receivership Order, the D-Case Receivership Order and the Authority Orders." The executed agreement, signed in counterparts by Vargo and by Romspen US Mortgage GP Inc. as Romspen's general partner, is attached as Exhibit D. Romspen and its assignee have instead told other courts that this Court approved it, while here, where approval would have to be sought, they say nothing. Nor did the Trustee's counsel disclose it. Brian T. Cumings of Graves Dougherty Hearon & Moody, who presents the Sale Motion for the Trustee, previously appeared before this Court for Vargo—on April 11, 2025 the Court asked him from the bench, "How is this not a conflict of interest in 1001?" (Texas REIT Hr'g Tr. 47)—and his Rule 2014 declaration of February 19, 2026 discloses that Vargo "has retained" the firm. ECF No. 1063-2. The Sale Motion, which would sell to Romspen's assignee the estate's claims arising from the Romspen–Vargo settlement, does not mention that settlement, the $225,000 paid to Vargo under it, or the recital that this Court's approval was required and never sought. The parties on every side of this transaction—the purported buyer, its assignor, the receiver who was paid, and the fiduciary's counsel who once represented him—knew of the agreement, and none

of them put it before the Court. RIC West Loop has not given the Court the candor it owes. On that record, Rule 9006(b)(1)'s equitable standard should be applied against the party invoking it, not in its favor.

9. The question RIC West Loop does not answer is why the terms of its bid were withheld. The Trustee's counsel invited offers, announced a "higher and better" one, refused three times to say what it was, and then told the Court that Choudhri had declined to bid. The purported buyer now asks that the one-day lateness of the objection be treated as forfeiture. If the bid is what RIC West Loop says it is, disclosure costs it nothing; the only party that benefits from keeping the terms and the inventory of "residual assets" out of view is the purported buyer that would acquire claims against itself. Choudhri asks that the Court grant the Motion for Leave, deem the Amended Objection and the Supplemental Objection to the Sale Motion timely filed, and set the Sale Motion for an evidentiary hearing at which the Trustee bears the burden of showing that the $25,000 price for the estate's remaining claims—including claims against the buyer's own affiliates—is the highest and best available.

Dated: October ~~14,~~ 19 2026

Respectfully submitted,

/s/ Ali Choudhri ______________________

Ali Choudhri, pro se

4521 San Felipe, Unit 3201, Houston, Texas 77027

(281) 630-6627 | ali@jetallcapital.com

**CERTIFICATE OF SERVICE**

I certify that on October ~~14~~ 19, 2026, this reply was served by email and by first-class United States mail on Kyle S. Hirsch, Bryan Cave Leighton Paisner LLP, 2200 Ross Avenue, Suite 4600E, Dallas, Texas 75201, counsel for RIC (West Loop) LLC and TIG Romspen US Master Mortgage LP; John Patrick Lowe, Chapter 7 Trustee (pat.lowe.law@gmail.com), and his counsel Brian T. Cumings, Graves Dougherty Hearon & Moody, P.C. (bcumings@gdhm.com); Leslie M. Luttrell, Luttrell + Carmody Law Group, 100 N.E. Loop 410, Suite 615, San Antonio, Texas 78216, counsel for Travis B. Vargo; and the Office of the United States Trustee, 903 San Jacinto Blvd., Room 230, Austin, Texas 78701.

/s/ Ali Choudhri ______________________

# EXHIBIT A

Email chain "1001 WL," Brian T. Cumings (counsel for the Chapter 7 Trustee) and Ali Choudhri, May 19, 2026 – October 13, 2026 (Gmail printout)

JETALL

Ali Choudhri <ali@jetallcapital.com>

## RE: 1001 WL

1 message

**Brian T. Cumings** <BCumings@gdhm.com>
To: Ali Choudhri <ali@jetallcapital.com>

Tue, Oct 13, 2026 at 9:00 AM

Ali,

The Trustee has learned from experience that engaging with you is an exercise in futility and does not believe that is in the best interests of the estate for him to waste its resources in that manner. You were provided instructions and chose to not follow them; the Trustee has nothing more to say to you.

Regards,

**Brian T. Cumings** | Attorney

Direct: (512) 480-5626 | Fax: (512) 536-9926

401 Congress Avenue, Suite 2700, Austin, Texas 78701

---

BOARD CERTIFIED®
Texas Board of Legal Specialization
BUSINESS BANKRUPTCY LAW

**From:** Ali Choudhri <ali@jetallcapital.com>
**Sent:** Monday, October 12, 2026 8:18 PM
**To:** Brian T. Cumings <BCumings@gdhm.com>
**Subject:** Re: 1001 WL

Brian,

I never heard back from you regarding the emails I sent on August 13 nor October 6.

Is there a reason you have not responded?

I hope you are doing ok.

On Tue, Oct 6, 2026 at 1:42 AM Ali Choudhri <ali@jetallcapital.com> wrote:

> Brian,
>
> I never heard back from you on my email below from August 13, in which I requested the amount and terms of the higher offer so I could respond. I just noticed the filing on PACER. The Trustee's Motion to Sell (Doc. 1098) says I declined to submit a best and final offer. That is not accurate. I was waiting for the information I had requested.
>
> Please send me the amount and terms of RIC's offer. I also ask that the Trustee agree to extend my time to respond to Doc. 1098 through October 16, 2026, and hold off on uploading an order until then. Please let me know by end of day. If the Trustee does not agree, I will ask the Court for leave.
>
> Thank you,
>
> Ali
>
> On Thu, Aug 13, 2026 at 4:02 PM Ali Choudhri <ali@jetallcapital.com> wrote:
>
> > Please provide the higher offer amount and terms so it can be considered
> >
> > On Thu, Aug 13, 2026 at 3:58 PM Brian T. Cumings <BCumings@gdhm.com> wrote:
> >
> > > The Trustee has received a higher and better offer.
> > >
> > > Please submit your best and final offer. If the Trustee concludes that your offer is the best available to him, you will have five business days to escrow the funds with the Trustee. Failure to timely escrow the funds will result in the Trustee moving on to the next best offer.

Regards,

**Brian T. Cumings** | Attorney

Direct: (512) 480-5626 | Fax: (512) 536-9926

401 Congress Avenue, Suite 2700, Austin, Texas 78701

---

BOARD CERTIFIED®
Texas Board of Legal Specialization
BUSINESS BANKRUPTCY LAW

---

**From:** Ali Choudhri <ali@jetallcapital.com>
**Sent:** Tuesday, June 2, 2026 6:38 PM
**To:** Brian T. Cumings <BCumings@gdhm.com>
**Subject:** Re: 1001 WL

I have an offer of $5k to purchase all claims of the estate

Please let me know next steps

Thanks

On Tue, May 19, 2026 at 12:56 PM Brian T. Cumings <BCumings@gdhm.com> wrote:

All,

The Trustee does not anticipate pursuing any litigation claims on behalf of the estate. If he does not receive any offers to purchase litigation claims within two weeks, it is his intent to proceed with closing out the estate.

Regards,

**Brian T. Cumings** | Attorney

Direct: (512) 480-5626 | Fax: (512) 536-9926

401 Congress Avenue, Suite 2700, Austin, Texas 78701

---

BOARD CERTIFIED®
Texas Board of Legal Specialization
BUSINESS BANKRUPTCY LAW

# EXHIBIT B

/argo's sworn Report, Cause No. 2012-27197-D (Mar. 3, 2026), collections table, and Omnibus Response (Apr. 15, 2026), p. 5
ed by Judge Michael Parker … as authorized by Judge Christopher Bradley"; "Following Bankruptcy Court approval" (highligl

CAUSE NO. 2012-27197-D

| | | |
|---|---|---|
| Mokaram-Latif West Loop, Ltd.<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| V. | §<br>§ | HARRIS COUNTY, TEXAS |
| Ali Choudhri et al<br>Defendants | §<br>§ | 333rd JUDICIAL DISTRICT |

**RECEIVER'S REPORT, ACCOUNTING, AND MOTION TO DISTRIBUTE**

TO THE HONORABLE JUDGE RANDY WILSON:

Receiver Travis Vargo ("Receiver") reports the following:

**RECEIVER COLLECTIONS**

1. Judgment Debtor Ali Choudhri ("Choudhri") has voluntarily paid no money toward his legal obligations. Receiver has labored since March 31, 2025, and collected the following:

| Amount ($) | Source of Funds / Explanation |
|---|---|
| 1,480.16 | Levy on Zions (Amegy) Bank |
| 2,870.46 | Levy on Wallace State Bank |
| 24,151.00 | Levy on Fidelity Brokerage Services |
| 16,550.31 | Levy on Hancock Whitney Bank |
| 100,000.00 | Settlement and resolution of Ali Choudhri's legal claims in Harris County District Clerk Cause Nos. 2012-27197-C per Hon. Randy Wilson Order signed 10/27/2025 |
| 75,948.35 | Order Distributing Money in the Registry per Hon. Randy Wilson Order signed 09/16/2025 in Cause No. 2012-27197-C |
| 225,000.00 | Settlement and resolution of claims on behalf of Milestone Capital CRE1 LLC and Otisco RDX LLC associated with Bankruptcy Case # 24-51195-MMP, in the Western District of Texas (San Antonio) as authorized by Judge Michael Parker and Case # 24-10119-SMR in the Western District of Texas (Austin) as authorized by Judge Christopher Bradley |
| 500,000.00 | Settlement and resolution of Ali Choudhri's legal claims in Harris County District Clerk Cause Nos. 2020-79998 and 2020-51949 |
| 688,527.83 | Net Proceeds from the Sale of 6531 Rodrigo St., Houston, TX 77007 per Hon. Randy Wilson Order signed 2/9/2026 |
| 920,553.65 | Net Proceeds from the Sale of 402 Terrace Dr., Houston, TX 77007 per Hon. Randy Wilson Order signed 2/9/2026 |
| **2,555,081.76** | **Total** |

D Case Order.

12. The stipulated judgment was part of an overall settlement of multiple claims pending in multiple adversary proceedings within two bankruptcy proceedings—*In re: 1001 WL, LLC* pending in the Western District of Texas, Austin Division under Case No. 24-10119-smr and *In re: RIC (Lavernia) LLC* pending in the Western District of Texas, San Antonio Division under Case No. 24-51195-mmp (the "RICL Bankruptcy")—involving Mr. Choudhri, Galleria Loop Note Holder, LLC, 1001 WL, LLC, Milestone Capital CRE I, LLC, OTISCO RDX, LLC, and BDFI, LLC. Mr. Choudhri contends, contrary to the great weight of the evidence, that the assets involved in these proceedings had substantial equity and that all of Mr. Choudhri's actions, directly or through the cadre of lawyers that were involved[1], were legally appropriate and in the best interest of the respective entities. That was simply not the case. Upon the examination by the Receiver of the rulings in the adversaries and bankruptcy proceedings and the evaluation of the likelihood of success on the appeal of the losses sustained by Mr. Choudhri and his entities prior to the involvement of the Receiver, the Receiver, using his best judgment, agreed to what the facts supported and what would have been the inevitable outcome. Following Bankruptcy Court approval in the RICL Bankruptcy, in exchange for the dismissal of the unmeritorious appeals, and an agreement not to oppose the entry of meritorious judgments against Mr. Choudhri, the Receivership estate received a payment of $250,000.00. In Receiver's business judgment and discretion, that is a fair bargain. Here is the language of the agreement:

[1] Mr. Choudhri and his entities, prior to the confirmation by the Bankruptcy Courts of the exclusive authority of the Receiver to act, were represented by six different lawyers and law firms with all issues determined against the interests of Mr. Choudhri and his entities.



Unofficial Copy Office of Marilyn Burgess District Clerk

# EXHIBIT C

Emergency Motion of Debtor Ali Choudhri, In re Ali Choudhri, No. 25-90797 (Bankr. S.D. Tex.), ECF No. 39 (filed Oct. 13, 2026) (file-stamped copy; exhibits at ECF No. 40-1)

United States Courts
Southern District of Texas
FILED

OCT 13 2026

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-90797 (CML) |
| | § | |
| ALI CHOUDHRI, | § | CHAPTER 11 |
| | § | |
| Debtor. | § | |

**EMERGENCY MOTION OF DEBTOR ALI CHOUDHRI, PRO SE, FOR ORDER TO SHOW CAUSE, FOR DETERMINATION OF WILLFUL VIOLATIONS OF THE AUTOMATIC STAY, FOR TURNOVER ACCOUNTING UNDER 11 U.S.C. § 543, AND FOR SANCTIONS AND DAMAGES UNDER 11 U.S.C. §§ 362(k) AND 105(a), AND TO CORRECT THE RECORD CONCERNING VARGO'S MOTION TO DISMISS [ECF NO. 21]**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**RELIEF IS REQUESTED NOT LATER THAN OCTOBER 15, 2026, before the 333rd District Court of Harris County acts on the proposed final judgment described in Part I-A below.**

TO THE HONORABLE CHRISTOPHER M. LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Debtor Ali Choudhri ("Choudhri"), pro se, moves for a determination that Travis B. Vargo, the purported receiver ("Vargo"), willfully violated the automatic stay while this case was pending, for actual and punitive damages under 11 U.S.C. § 362(k)(1), and to correct the record concerning statements Vargo made to this Court in his Motion to Dismiss [ECF No. 21]. In support, Choudhri respectfully shows:

The judgment is on appeal, and Choudhri contends it is void. Referring to Vargo by name or as the purported receiver concedes nothing.

Choudhri brings this motion as the Debtor whose estate the stay protected. The acts it describes also reached Arabella PH 3201 LLC ("Arabella"), a different company related to the condominium where Choudhri lives. On December 5, 2025, while this Court's stay was in effect, Vargo obtained the dismissal of the Meandering Bend case by asserting "sole control" over Choudhri's Meandering Bend membership interest. On June 23, 2026, Vargo cited that dismissal order to the 333rd District Court of Harris County, which he told "should affirm Receiver control of Arabella"; a writ of possession and an order voiding certain deeds relating to the condominium followed on July 28, 2026. Arabella's own Chapter 11 case is pending in the District of Wyoming, In re Arabella PH 3201 LLC, No. 26-20432, and whether acts taken after its petition violated its automatic stay is for that court; Choudhri does not ask this Court to decide that question. Arabella is not a movant here, and nothing in this motion is an admission concerning title to or interests in any property.

## I. SUMMARY

1. This case was filed at 11:13 a.m. on December 5, 2025. ECF No. 1. The automatic stay arose at that moment and remained in effect until the Court's dismissal order was entered at 11:50 a.m. on December 19, 2025. ECF No. 33; Notice of Electronic Filing (Exhibit 1). The Court never annulled the stay and never granted Vargo relief from it.

2. With written notice of this case, and while the stay was in effect, Vargo (a) pressed another bankruptcy court that afternoon to dismiss a case on the ground that he controlled

Choudhri's membership interest in Meandering Bend, LLC—property of this estate; and (b) through his counsel, continued to work in the state-court judgment-enforcement cases against Choudhri, including preparing filings and attending a show-authority hearing. His own counsel's billing records, filed by Vargo in the state court, document these acts. The $42,371,306.88 stipulated judgment Vargo had agreed to in November 2025 was then filed on December 19, 2025.

3. Vargo's Motion to Dismiss also told this Court that the receivership orders transferred Choudhri's "interests and management rights" in all of his LLCs. Three months earlier, Vargo, through the same counsel, had told a federal bankruptcy court the opposite: that those orders gave him control of Choudhri's receivership assets "excluding management rights in the Choudhri LLC's." Choudhri asks the Court to know what the record shows.

> Receivership Order (collectively the "Receivership Orders"), the Receiver was given exclusive control over all of the Choudhri Receivership Assets, as therein defined, excluding management rights in the Choudhri LLC's, as defined in the Receivership Orders. Subsequent to the entry of the Receivership Orders, the 14th Court of Appeals published its opinion in *WC 4th & Colo. V. Colo. Third St. LLC* which likely impacts the

*Excerpt — 1001 WL ECF No. 935 (Aug. 29, 2025) (highlighting added).*

## I-A. WHY EMERGENCY CONSIDERATION IS REQUIRED

**A. On October 7, 2026, TIG Romspen US Master Mortgage LP submitted to the 333rd District Court of Harris County, in Cause No. 2023-84714, a revised proposed final judgment of $42,371,306.88, plus $16,612.89 per day from June 16, 2025 and post-judgment interest at 15.25%, against Choudhri personally, "unopposed by Travis Vargo" on his behalf. It recites seventeen findings of fact, including that Vargo has exclusive authority to act for Choudhri. The state court may sign it at any time; no hearing has been set. (Exhibit 4.)**

B. That judgment is the same judgment Romspen first presented on December 19, 2025. (Exhibit 4.) It rests on the same authority Vargo asserted to this Court and to the Meandering Bend court while the stay was in effect.

C. The harm if relief is not obtained promptly is concrete. Vargo is using the Meandering Bend dismissal he obtained during the stay as a finding that he controls Choudhri's companies: his counsel described it that way to the Southern District of Texas on August 28, 2026, where an evidentiary hearing on that order is set for October 15, 2026, and to the state court to obtain a writ for a different company's property. In re Meandering Bend, LLC, No. 26-34918

(Bankr. S.D. Tex.). A later damages award cannot undo those uses. Choudhri therefore asks the Court to set this motion for hearing on an emergency basis and, at that hearing, to determine whether the acts taken against Choudhri or property of his estate between 11:13 a.m. on December 5, 2025 and 11:50 a.m. on December 19, 2025 violated the stay and are void.

## II. JURISDICTION

4. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O). A bankruptcy court retains jurisdiction after dismissal to adjudicate violations of the automatic stay that occurred while the case was pending.

## III. FACTS

### A. The filing and Vargo's notice of it

5. Choudhri filed his voluntary Chapter 11 petition at 11:13 a.m. Central time on December 5, 2025. ECF No. 1; Notice of Electronic Filing (Exhibit 1). He signed the petition under penalty of perjury. ECF No. 1 at 6. He had filed no bankruptcy case in the preceding eight years. *Id.* at 3, line 9.

6. At 1:17 p.m. that day, Choudhri's counsel emailed the courtroom deputy for the Honorable Shad M. Robinson in In re Meandering Bend, LLC, No. 25-11334-smr (Bankr. W.D. Tex.), with a copy to Vargo's counsel, Leslie M. Luttrell: "Mr. Choudhri, the principal of the debtor, filed his own Chapter 11 case today, Case No. 25-90797 in the Southern District of Texas. We respectfully submit that because of this filing the hearing today should be cancelled." (Exhibit 2.) At 1:58 p.m., six minutes before the hearing, Mr. Duke wrote to Ms. Luttrell directly: "I wish to confirm your receipt of notice of the Chapter 11 filing for Mr. Choudhri. As I am sure you are aware, the receiver has no authority to proceed. Please confirm that the receiver will not be proceeding today in any fashion nor take any action as it relates to the estate of Ali Choudhri. Also please confirm that you will put a litigation hold in all communications . . . you've had with TIG Romspen or RIC Lavernia and other parties, such as Osama Abdullatif and counsel." (Exhibit 2.)

Mr. Duke's office copy of that email, kept on Eastern time, shows it sent at 2:58:18 p.m., which is 1:58 p.m. Central. (Exhibit 12 at 4.) The hearing began at 2:04 p.m. Central, and Vargo proceeded.

> To: "jennifer_lopez@txwb.uscourts.gov" <jennifer_lopez@txwb.uscourts.gov>
> Cc: Ali Choudhri <ali@jetallcapital.com>, Leslie Luttrell <luttrell@lclawgroup.net>
>
> Ms. Lopez:
>
> I write concerning the above matter, which has a hearing on a receiver motion scheduled today for 2:00 CST. I wanted to advise Chambers that Mr. Choudhri, the principal of the debtor, filed his own Chapter 11 case today, Case No. 25-90797 in the Southern District of Texas. We respectfully submit that because of this filing the hearing today should be cancelled. Thank you.
>
> Kind Regards,
>
> Bruce J. Duke, Esq. (Member NY & NJ Bars)
>
> DUKE LAW FIRM
>
> NJ Office: 141-I Rte 130 S. #380, Cinnaminson, NJ 08077
>
> NY Office: 83 Haviland Dr. Suite 3, Patterson, NY 12563

*Excerpt — Email from Bruce Duke, copying Leslie Luttrell (Dec. 5, 2025, 1:17 p.m.) (highlighting added).*

> Bruce Duke <bruce@bdukelawfirm.com> Fri, Dec 5, 2025 at 1:58 PM
> To: Leslie Luttrell <luttrell@lclawgroup.net>
> Cc: Ali Choudhri <ali@jetallcapital.com>
>
> Ms. Luttrell:
>
> As advised on my previous email to Judge Robinson's chambers concerning the Meandering Bend matter, I wish to confirm your receipt of notice of the Chapter 11 filing for Mr. Choudhri. As I am sure you are aware, the receiver has no authority to proceed. Please confirm that the receiver will not be proceeding today in any fashion nor take any action as it relates to the estate of Ali Choudhri. Also please confirm that you will put a litigation hold in all communications and you've had with TIG Romspen or RIC Lavernia and other parties, such as Osama Abdullatif and counsel.

*Excerpt — Email from Bruce Duke to Leslie Luttrell (Dec. 5, 2025, 1:58 p.m.) (highlighting added).*

## B. The Meandering Bend hearing that afternoon

7. The hearing on Vargo's motion to dismiss Meandering Bend began at 2:04 p.m., with Vargo attending by video. Meandering Bend Hr'g Tr. 2:17–18, 4:3–6 (Dec. 5, 2025) (Exhibit 3). Choudhri's counsel announced this filing on the record and stated that it "would obviate any authority that the receiver has to proceed." *Id.* at 6:12–20.

8. Judge Robinson asked whether Choudhri's Meandering Bend membership interest had become property of this estate. *Id.* at 7:20–23. Vargo's counsel answered that, "pursuant to the receivership orders that are on file," Vargo had "sole control over all of the . . . nonexempt assets . . . of Mr. Choudhri, including the Meandering Bend membership interest." *Id.* at 8:12–19. Vargo adopted his counsel's unsworn proffer and asked that the case be dismissed with prejudice. *Id.* at 15:13–16:24. Meandering Bend was dismissed that day. Meandering Bend ECF No. 125.

> MS. LUTTRELL: Your Honor, to the extent that Mr. Choudhri filed a bankruptcy proceeding of any kind, I believe that the only property that he has control over for purposes of filing that bankruptcy proceeding would be as to his exempt property because the -- this Court has found, in connection with the motions to show authority, the -- Mr. Vargo has control over all -- pursuant to the receivership orders that are on file -- in all of the cases that are presently pending with the Choudhri-related entities.
>
> The receiver has sole control over all of the assets of all of -- all of the nonexempt assets -- of Mr. Choudhri, including the Meandering Bend membership interest. And, as a matter of fact, the basis today for the motion to dismiss is that the motion -- that the original filing, as acknowledged by the Chapter 7 Trustee, Mr. Osherow, was not authorized, and therefore, this case should be dismissed.

*Excerpt — Meandering Bend transcript, Tr. 8 (In re Meandering Bend, LLC, No. 25-11334, Dec. 5, 2025) (highlighting added).*

9. **Vargo was told on the record, before he acted.** Before any proffer, Choudhri's counsel told the Meandering Bend court: "A Chapter 11 bankruptcy proceeding was filed on behalf of Mr. Choudhri today," and "**the filing of the bankruptcy would obviate any authority that the receiver has to proceed**. . . . we have an automatic stay at this point." Meandering Bend Hr'g Tr. 6:12–7:2 (Dec. 5, 2025) (Exhibit 3). Vargo was present by video. Id. at 6:3.

MR DUKE: A Chapter 11 bankruptcy proceeding was filed on behalf of Mr. Choudhri today, and I just wanted to make the Court and the parties aware.
THE COURT: Okay. How does that have to -- what does that have to do with this case, though?
MR. DUKE: Well, my understanding is, is that Mr. Choudhri has an interest in Meandering Bend, and we believe that the filing of the bankruptcy would obviate any authority that the receiver has to proceed.
THE COURT: How so?
MR. DUKE: Well, without -- we have an automatic

*Excerpt — Meandering Bend Hr'g Tr. 6 (Dec. 5, 2025) — notice of this case on the record (highlighting added).*

10. **His "testimony" was an unsworn proffer, which he adopted with three words.** The court told him: "**I'm not going to swear you in, sir**." Tr. 15:13. Ms. Luttrell then proffered that Vargo "was neither consulted nor consented to the filing of the Meandering Bend bankruptcy proceeding" and asked that it be dismissed "with prejudice." Asked whether the proffer was "true, correct, and accurate" and whether he adopted it as his own testimony, Vargo answered "**Yes**" three times. Id. at 15:13–16:24. That unsworn adoption, made after written and on-the-record notice of this case, is the act through which Vargo exercised control over Choudhri's Meandering Bend interest while the stay was in effect.

before the Court. I'm not going to swear you in, sir, as the court appointed receiver, licensed attorney in the state of Texas, and officer of this particular Court. You know

*Excerpt — Meandering Bend Hr'g Tr. 15:13–15 (Dec. 5, 2025) (highlighting added).*

THE COURT: All right. Does anyone -- excuse me -- Mr. Vargo, did you -- as an officer -- as an officer of the Court, sir -- did you listen carefully the proffer of your testimony provided by Ms. Luttrell?

MR VARGO: Yes.

THE COURT: That proffer of your testimony is true, correct, and accurate based on your actual knowledge of those statements?

MR. VARGO: Yes.

THE COURT: And you adopt that proffer of your testimony as your own testimony before the Court today?

MR. VARGO: Yes.

*Excerpt — Meandering Bend Hr'g Tr. 16:12–24 (Dec. 5, 2025) — Vargo adopts the proffer (highlighting added).*

11. **Judge Robinson left the stay question for this Court.** He told the parties: "if something happens after this, **perhaps there is a violation of the stay in Mr. Choudhri's case. But that's not for me to decide. That's for some other judge to decide.**" Tr. 10:7–10. **This is that judge.** And Judge Robinson confined his ruling: "I am not making that finding. **All I'm finding is that this petition was not properly filed. . . . I'm not going to make any other findings.**" Id. at 23:14–24; see id. at 24:4–5 ("that evidence is not before the Court").

THE COURT: -- if something happens after this, perhaps there is a violation of the stay in Mr. Choudhri's case. But that's not for me to decide. That's for some other judge to decide. But this is -- to me -- is no

*Excerpt — Meandering Bend Hr'g Tr. 10:7–10 (Dec. 5, 2025) (highlighting added).*

> I am not making that finding. All I'm finding is that this petition was not properly filed. Because it was not properly filed, the Court does not have subject matter jurisdiction, and the remedy is dismissal of the bankruptcy case. It's not an act to collect a debt. It's the Court exercising and making a determination as to its subject matter jurisdiction.
>
> So for those reasons, I'm going to grant the motion to dismiss. I'm not going to make any other findings. I've reviewed the proposed form of order, Ms.

*Excerpt — Meandering Bend Hr'g Tr. 23 (Dec. 5, 2025) — the limits of the ruling (highlighting added).*

12. **Two passing remarks do not change this.** First, Judge Robinson said: "I just don't think it's property of Mr. Choudhri's estate." Tr. 8:24–9:1. That was a comment, not a finding. He said it only after Vargo's counsel represented that Vargo had "sole control" of the interest, id. at 8:12–19; he then made "no other findings," said the related evidence was "not before the Court," and left any stay violation to "some other judge." Id. at 10:7–10, 23:14–24, 24:4–5. The receivership orders exclude Choudhri's ownership interests in any limited liability company, A-Case Order ¶ 8 (Exhibit 7), so the Meandering Bend interest remained Choudhri's and became property of this estate when he filed. 11 U.S.C. § 541(a)(1). Whether it was estate property was for **this** Court to decide, as Vargo's own stay motion acknowledged when it sought relief "pending this Court's determination." ECF No. 22 ¶ 12. Second, Choudhri's counsel agreed that "simply asking that the stay be lifted is not a violation of the automatic stay." Tr. 10. **Choudhri does not complain that Vargo asked. They complain of what he did:** claiming "sole control" of the Debtor's interest, adopting that claim as unsworn testimony, and obtaining the dismissal of the Meandering Bend case on it, after notice of this case.

13. The receivership orders say the opposite of what the Court was told. Each defines "Choudhri Receivership Assets" as all of Choudhri's assets "except his ownership interests in any limited liability company," lists Meandering Bend LLC by name among the "Choudhri LLC's,"

and imposes a charging order on those LLCs under Texas Business Organizations Code § 101.112. A-Case Order ¶¶ 8, 9(m), 18; D-Case Order ¶¶ 14, 16(m), 24 (filed in this case at ECF Nos. 19-1, 19-2).

8) "Choudhri Receivership Assets" includes all assets owned by Choudhri, except his ownership interests in any limited liability company.

9) "Choudhri LLC's" shall mean each limited liability company in which Choudhri owns a membership interest, including but not limited to the following, but excluding his interest in the Bankrupt LLCs (defined below):

a. ARABELLA PH 3201 LLC
b. 2727 Kirby 26L LLC
c. 9201 Memorial Drive LLC
d. 50BH Acquisition, LLC
e. BDFI LLC
f. Forest Legacy LLC
g. Jetall GP, LLC
h. Jetall Capital, LLC
i. Jetall Croix Properties LLC
j. JETALL/CROIX GP, LLC
k. JETALL CONSTRUCTION & DEVELOPMENT GP, INC.
l. Jetall Investment and Realty Inc
m. Meandering Bend LLC
n. MCITBE LLC

*Excerpt — A-Case Amended Order ¶¶ 8–9 (Apr. 2025) (highlighting added).*

### C. Vargo's motions in this case

14. On December 10, 2025, Vargo filed his Motion to Dismiss [ECF No. 21] and his Motion for Relief from Stay [ECF No. 22]. The Motion to Dismiss stated that, under the receivership orders "as confirmed by the Authority Orders," "all non-exempt assets of Ali Choudhri ('Choudhri'), including the interests and management rights of Choudhri in all Choudhri LLC's . . . were transferred in custodia legis" to the receivership court. ECF No. 21 ¶¶ 4, 9 & n.7. It cited the Meandering Bend dismissal as evidence of Choudhri's bad faith. *Id.* at 5 nn.10, 12; *id.* ¶ 16.

15. The Motion for Relief from Stay sought one thing: an order "lifting the automatic stay provisions of 11 U.S.C. §362 to permit him to respond to any and all matters asserted in the Receivership Court by Choudhri." ECF No. 22 ¶ 12. It did not seek leave to settle, compromise, or

consent to any judgment against Choudhri. TIG Romspen US Master Mortgage LP was on its service list. *Id.* at 8. The motion was set for January 13, 2026, and was never heard or granted.

> 12. While preserving the position of the Receiver that the non-exempt assets of Choudhri are not assets of this bankruptcy estate and pending this Court's determination of the Motion to Dismiss, the Receiver seeks an order lifting the automatic stay provisions of 11 U.S.C. §362 to permit him to respond to any and all matters asserted in the Receivership Court by Choudhri.

*Excerpt — In re Ali Choudhri, No. 25-90797, ECF No. 22 ¶ 12 (highlighting added).*

**D. The $42 million stipulated judgment**

16. On December 19, 2025, TIG Romspen US Master Mortgage LP filed a Motion for Entry of Stipulated Judgment and a proposed Final Judgment in *TIG Romspen US Master Mortgage LP v. Galleria Loop Note Holder, LLC and Ali Choudhri*, Cause No. 2023-84714 (80th Dist. Ct., Harris County). (Exhibit 4.) The proposed judgment awards $42,371,306.88 against Choudhri individually and Galleria Loop Note Holder, LLC, jointly and severally, plus $16,612.89 per day and post-judgment interest at 15.25%. It recites that Choudhri stipulates to it "by and through Travis Vargo as state court-appointed receiver," and it is signed for Vargo by Ms. Luttrell. Romspen's motion represented that "[a]s of the date of this Motion, neither of the Defendants is a debtor in an active bankruptcy case." Vargo later described the arrangement to the receivership court: he "resolved a dispute with the Plaintiff, TIG Rompsen Master Mortgage LP, through the bankruptcy court in exchange for valuable consideration paid to the Receiver." Vargo's Report to Court ¶ 6(a) (June 9, 2026) (Exhibit 9). The settlement agreement, executed as of November 21, 2025, required Vargo to "reasonably cooperate with Romspen in connection with entry of a judgment in the Romspen Enforcement Action" and provided for Romspen to pay Vargo $225,000 once Romspen took title to 1001 West Loop and the RIC (Lavernia) case was resolved. Settlement Agreement §§ II.4, II.10 (Exhibit 10). In it, acting expressly "on behalf of . . . Choudhri," Vargo also waived Choudhri's limitations defenses and any objection to Romspen's $33 million lien

claim. *Id.* §§ II.3 & n.1. He later told the receivership court the estate "received a payment of $250,000.00" in exchange for, among other things, "an agreement not to oppose the entry of meritorious judgments against Mr. Choudhri." Vargo's Omnibus Response ¶ 12 (Apr. 15, 2026) (Exhibit 10). Vargo thus consented to a $42 million judgment against the debtor personally in exchange for a payment to the receivership, on which he has requested a 25% fee. Exhibit 8 ¶¶ 1, 14.

> Plaintiff TIG Romspen US Master Mortgage LP ("Plaintiff") and Defendants Galleria Loop Note Holder, LLC ("GLNH") and Ali Choudhri, an individual ("Choudhri" and, together with GLNH, "Defendants"), by and through Travis Vargo as state court-appointed receiver ("Receiver"), stipulate to the entry of this Judgment.
>
> The Court hereby finds as follows:

of Marilyn Burgess

*Excerpt — Proposed Final Judgment, No. 2023-84714, preamble (highlighting added).*

17. Romspen filed the stipulated judgment on December 19, 2025. The billing records of Vargo's counsel show that the Romspen settlement and the "Agreed Motion to enter Judgment" were negotiated and revised between November 16 and November 24, 2025. Exhibit 8 at Nov. 16, 19, 20, 24, 2025 entries.

18. The judgment presented during the stay is still being pressed. On October 7, 2026, Romspen submitted a revised proposed Final Judgment in the same case, now pending in the 333rd District Court. It deletes the stipulation: the judgment is now "unopposed by Travis Vargo as state court-appointed receiver . . . on behalf of Defendants," and Vargo's counsel signs "[a]greed as to form only." It still seeks $42,371,306.88, plus $16,612.89 per day from June 16, 2025, against Choudhri personally, and its paragraph Q relies on the same "Authority Orders" Vargo cited to this Court. Revised Proposed Final Judgment (Oct. 7, 2026) (Exhibit 4). Choudhri and Galleria Loop Note Holder, LLC have objected to its entry.

**Continuing conduct, and what Vargo has told other courts**

19. The records described in this motion show that Vargo and Ms. Luttrell were actively pursuing the Debtor and property of his estate while the automatic stay was in effect, and that they

have continued to act on what they did during the stay. The December 5, 2025 assertion of "sole control" over the Debtor's Meandering Bend membership interest, the settlement-related work billed during the stay, and the stipulated judgment Vargo had agreed to are still being used against the Debtor today. (Exhibits 3, 4, 8.)

20. Vargo has also told other courts that a federal bankruptcy judge authorized his settlement with TIG Romspen US Master Mortgage LP. No such authorization was ever given. In a report signed under penalty of perjury, Vargo listed $225,000 received from Romspen as "[s]ettlement and resolution of claims on behalf of Milestone Capital CRE1 LLC and Otisco RDX LLC associated with Bankruptcy Case # 24-51195-MMP, in the Western District of Texas (San Antonio) as authorized by Judge Michael Parker and Case # 24-10119-SMR in the Western District of Texas (Austin) as authorized by Judge Christopher Bradley." Report ¶ 1, Cause No. 2012-27197-D (Mar. 3, 2026). He later told the same court that the payment came "[f]ollowing Bankruptcy Court approval in the RICL Bankruptcy, in exchange for . . . an agreement not to oppose the entry of meritorious judgments against Mr. Choudhri." Omnibus Resp. at 5, Cause No. 2012-27197-A (Apr. 15, 2026). No motion to approve that settlement under Bankruptcy Rule 9019 was ever filed in either bankruptcy case, and no order approved it.

| | |
|---|---|
| 75,948.35 | Order Distributing Money in the Registry per Hon. Randy Wilson Order signed 09/16/2025 in Cause No. 2012-27197-C |
| 225,000.00 | Settlement and resolution of claims on behalf of Milestone Capital CRE1 LLC and Otisco RDX LLC associated with Bankruptcy Case # 24-51195-MMP, in the Western District of Texas (San Antonio) as authorized by Judge Michael Parker and Case # 24-10119-SMR in the Western District of Texas (Austin) as authorized by Judge Christopher Bradley |
| 500,000.00 | Settlement and resolution of Ali Choudhri's legal claims in Harris County District Clerk Cause Nos. 2020-79998 and 2020-51949 |

*Excerpt — Vargo's sworn Report ¶ 1, Cause No. 2012-27197-D (Mar. 3, 2026) (highlighting added).*

> involvement of the Receiver, the Receiver, using his best judgment, agreed to what the facts supported and what would have been the inevitable outcome. Following Bankruptcy Court approval in the RICL Bankruptcy, in exchange for the dismissal of the unmeritorious appeals, and an agreement not to oppose the entry of meritorious judgments against Mr. Choudhri, the

*Excerpt — Vargo's Omnibus Response at 5, Cause No. 2012-27197-A (Apr. 15, 2026) (highlighting added).*

21. The Debtor learned the full extent of these representations at the September 23, 2026 hearing in In re MCITBE, LLC, No. 26-32580 (Bankr. N.D. Tex.), where Vargo's counsel told the court that "Judge Robinson, Judge Bradley, Judge Parker have made determinations that Mr. Vargo is in charge of and has control over the Choudhri LLCs," and Vargo, asked under oath whether he approved his counsel's arguments, answered: "I didn't say that." MCITBE Hr'g Tr. 51:16–23, 145:11–16 (Exhibit 14). Shown paragraph 8 of his own receivership orders, which excludes the Debtor's ownership interests in any limited liability company, he testified: "That's what it says here." Id. at 170:14–19. Based on that testimony, given as recently as September 23, 2026, and on the way Vargo continues to use those orders against Choudhri and the companies related to him, motions to vacate those orders under Federal Rule of Civil Procedure 60(b), made applicable by Bankruptcy Rule 9024, have been filed and are being filed immediately by Choudhri and the affected entities, on the ground that they were obtained and are being used through misrepresentation and misconduct, Fed. R. Civ. P. 60(b)(3): in In re Meandering Bend, LLC, No. 25-11334, In re 1001 WL, LLC, No. 24-10119, and In re Texas REIT, LLC, No. 24-10120 (Bankr. W.D. Tex., Robinson, J.), and in In re RIC (Lavernia) LLC, No. 24-51195 (Bankr. W.D. Tex., Parker, J.). Those motions identify, among other things, Vargo's sworn testimony that the orders did not give him Choudhri's LLC interests, his later contrary representations to those same courts, and his statements that those courts approved a settlement that none of them approved.

So Judge, the authority of the Receiver over the Choudhri LLCs has been confirmed, as I indicated repeatedly, in the Western District of Texas. We cite to the various proceedings in the Western District of Texas in which Judge Robinson, Judge Bradley, Judge Parker have made determinations that Mr. Vargo is in charge of and has control over the Choudhri LLCs. Those are cited at Page 4 and 5 of the

*Excerpt — MCITBE Hr'g Tr. 51:16–22 (Sept. 23, 2026) (highlighting added).*

A Okay. So, I'm not a bankruptcy lawyer and I'm not a bankruptcy judge. Ms. Luttrell is taking and arguing positions based on the facts. I'm testifying to the facts that I know.
Q So are you saying you did not approve the legal arguments that she's made?
A I didn't say that.

*Excerpt — MCITBE Hr'g Tr. 145:11–16 (Sept. 23, 2026) (highlighting added).*

A I'm not following what you're saying. Can you repeat that or rephrase it?
Q Number 8, it's saying that the assets that you can take over have to be owned by Choudhri, correct? Under Number 8.
A Yes.
Q Except for his ownership interests in any limited liability company, correct?
A That's what it says here.
Q Well, is that correct?

*Excerpt — MCITBE Hr'g Tr. 170:12–20 (Sept. 23, 2026) — Vargo, shown ¶ 8 of the receivership orders (highlighting added).*

22. Vargo himself placed the receivership orders before the Northern District court. On July 7, 2026, his counsel filed certified copies of both amended receivership orders in In re MCITBE, LLC. Notice of Filing Orders Regarding Appointment of Receiver and Charging Orders, ECF No. 20, No. 26-32580 (Exhibit 17). Paragraph 8 of each excludes the Debtor's ownership interests in any limited liability company. The Debtor served Ms. Luttrell with a motion for sanctions under Bankruptcy Rule 9011 on September 2, 2026, concerning her representations to that court about the ownership and control of MCITBE, LLC and Vargo's asserted authority, and filed notice of it on September 4, 2026. ECF No. 122, No. 26-32580 (Exhibit 16). That matter is pending.

Case 26-32580-mvl11 Doc 20 Filed 07/07/26 Entered 07/07/26 15:30:37 Desc Main Document Page 1 of 37

Leslie M. Luttrell (SBOT 12708850)
Luttrell + Carmody Law Group
100 NE Loop 410, Ste. 615
San Antonio, Texas 78216
Tel. 210.426.3600
Email: luttrell@lclawgroup.net

*Counsel for Travis B. Vargo, Court Appointed Receiver*

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 26-32580-mnl11 |
| | § | |
| MCITBE, LLC | § | Chapter 11 |
| | § | |
| Debtor. | § | |

**NOTICE OF FILING ORDERS REGARDING APPOINTMENT OF RECEIVER AND CHARGING ORDERS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Travis B. Vargo, Court-Appointed Receiver.[1], by and through his counsel of record, and files certified copies of the following orders:

1. Amended Order Granting Turnover, Charging Order and Appointment of Receiver Against Judgment Debtor, entered in Cause No. 2012-27197-A styled *Mokaram-Latif West Loop, Ltd. and Osama Abdullatif v. Ali Choudhri*, pending in the 333rd Judicial District Court of Harris County, Texas on April 9, 2025, certified by Marilyn Burgess, District Clerk of Harris County, Texas on April 29,

*Excerpt — In re MCITBE, LLC, No. 26-32580, ECF No. 20 (July 7, 2026) (highlighting added).*

## E. Vargo's prior positions, under oath and in writing

23. Vargo first told a federal court, under oath, that the receivership orders did not give him the Debtor's LLC interests. At the April 3, 2025 hearing in In re Texas REIT, LLC, No. 24-10120 (Bankr. W.D. Tex.), Judge Robinson asked whether he was seeking to exercise control over those LLC interests. Vargo answered: "No." The Court confirmed: "So your testimony under oath is you're not seeking to control those LLC interests." Texas REIT Hr'g Tr. 19:19–23 (Apr. 3, 2025) (Exhibit 15). Vargo then testified: "This order does not turn over his LLC interest to me," id. at 21:17–19, and "I have a right to his distributions only." Id. at 35:6.

LLC. Who's the membership interest holder?

**MR. VARGO:** My understanding is Mr. Choudhri.

**THE COURT:** Okay. Are you seeking to exercise control over those LLC interests?

**MR. VARGO:** No.

**THE COURT:** Okay. So your testimony under oath is you're not seeking to control those LLC interests. All right. You have a state or court order granting a turnover?

**MR. VARGO:** May I clarify, Judge?

**EXCEPTIONAL REPORTING SERVICES, INC**

*Excerpt — Texas REIT Hr'g Tr. 19:17–25 (Apr. 3, 2025) (highlighting added).*

**THE COURT:** And the non-exempt asset of Choudhri then would be the LLC interest in Texas REIT.

**MR. VARGO:** I believe that -- the answer to that is no, Judge. This order does not turn over his LLC interest to me.

*Excerpt — Texas REIT Hr'g Tr. 21:15–19 (Apr. 3, 2025) (highlighting added).*

Choudhri's LLC's show me each limited liability company in which he owns a membership interest. So again, I don't know the difference between 11 and 12, but it looks like to me that you have a right to exercise rights over Mr. Choudhri's membership interest in Texas REIT, correct?

**MR. VARGO:** I have a right to his distributions only.

**THE COURT:** Okay. Well, then what's the charging order? That's pursuant to 18. You exercise the charge. You

*Excerpt — Texas REIT Hr'g Tr. 35:1–8 (Apr. 3, 2025) (highlighting added).*

24. On August 29, 2025, Vargo, through Ms. Luttrell, told Judge Robinson in the Meandering Bend case that under the same receivership orders "the Receiver was given exclusive control over all of the Choudhri Receivership Assets, as therein defined, excluding management

rights in the Choudhri LLC's," and asked for leave to seek a modification of those orders in the state court. Meandering Bend ECF No. 28 ¶¶ 7, 10 & prayer ¶ B (Exhibit 5). Judge Robinson granted leave on September 12, 2025, stating that he was "not ruling upon any of the issues." Meandering Bend ECF No. 65 at 2–3. No determination or modification had been entered when this case was filed.

| Issue | *WC 4th & Colorado* | Choudhri Receivership Orders (April 2025) |
|---|---|---|
| What the order says about entity interests | Receiver may seize the debtor's interests and "sell, manage, and operate" them | LLC ownership interests are **excluded** from Receivership Assets (A-Case ¶ 8; D-Case ¶ 14) |
| Remedy against LLC interests | Direct control | Charging order only, reaching distributions (A-Case ¶ 18; D-Case ¶ 24; Tex. Bus. Orgs. Code § 101.112) |
| *Heckert* exception | Applied on an evidentiary record: entity not operating, no one's interests disrupted | **Never.** No evidentiary hearing, no findings |
| Rule | Receiver has only the powers the order gives (*Ex parte Hodges*) | Same rule, opposite result: the order withholds what *WC 4th*'s order granted |

*Summary chart: WC 4th & Colorado, LP v. Colorado Third Street, LLC compared with the Choudhri Receivership Orders (prepared by Movant; highlighting added)*

11 U.S.C. § 362(d)(1). The Court further finds that the automatic stay should be modified to permit the Receiver to proceed in the Receivership Court to obtain relief as hereinafter provided. In addition, the Court *sua sponte* finds that cause exists due to the limited scope of the relief requested by the Receiver. The Court issues this Order to allow the Receivership Court (or such other court with proper jurisdiction) to determine the issue of the scope of the Receivership and the authority of the Receiver. Based on the foregoing, it is therefore

**ORDERED** that the Receiver is hereby authorized to:

A. Seek and obtain a determination from the Receivership Court (or such other court with proper jurisdiction) regarding the application of *WC 4th & Colo. v. Colo. Third St., LLC*, 2025 Tex. App. LEXIS 2857* (Tex. App. Houston [14th Dist.] 2025) to the Receivership Orders;

B. Seek and obtain a modification of the Receivership Orders to conform, as applicable, to *WC 4th & Colo. V. Colo. Third St., LLC*, 2025 Tex. App. LEXIS 2857* (Tex. App. Houston [14th Dist.] 2025);

C. Confirm the active status of the Receivership and, as applicable, the adequacy of

*Excerpt — Meandering Bend ECF No. 65 (Sept. 12, 2025) (highlighting added).*

25. On October 31, 2025, Vargo, through Ms. Luttrell, told the Meandering Bend court that he "does not challenge the validity of the filing of bankruptcy proceeding and supports the efforts of the Chapter 7 Trustee . . . to sell the real property that is the primary asset of the Debtor." Meandering Bend ECF No. 97 at 2 (Exhibit 6). Twenty-five days later, he moved to dismiss that case as unauthorized.

**F. What Vargo's counsel did while the stay was in effect**

26. On March 3, 2026, Vargo filed a sworn Report, Accounting, and Motion to Distribute in the receivership court, asking to reimburse himself $167,000 in fees paid to his bankruptcy counsel, including for work in this case, from receivership collections. Vargo's Report, Accounting, and Motion to Distribute ¶¶ 2–3, 19(b), Cause No. 2012-27197-D (Exhibit 8). He reported that his counsel "assisted the Receiver with Choudhri's personal bankruptcy" and that he "filed a motion to dismiss in that matter and otherwise participated." *Id.* ¶¶ 3, 8. The invoices he attached record the following work between December 5 and December 19, 2025: December 6 —"Prepare Advisory to the Court regarding Meandering Bend Dismissal - A-Case" and the same

for the "D-Case"; December 7—"Review and finalize form of Authority Order A-Case, Removed Adversary"; December 13—an exchange with K. Kerr "regarding status of Meandering Bend sale"; and December 19—"Appear for/Attend hearing on Motion to Show Authority, Advise Court of Bankruptcy filing by Choudhri and pending Motions by Receiver." *Id.*, Ex. 2. The A-Case and D-Case are the judgment-enforcement proceedings against Choudhri; by Vargo's own account, the A-Case remained pending as removed Adversary No. 25-03628 in this District until January 21, 2026. *Id.* ¶ 8.

27. On December 15, 2025, Vargo's counsel billed time to "[p]ull [a]uthorities and prepare response . . . regarding . . . Receiver's status under 11 USC §543(d)." Exhibit 8. Vargo therefore considered, while this case was pending, his status as a custodian under § 543.

28. The same records show deposits of $27,000 on December 19, 2025 and $50,000 on December 23, 2025 into Vargo's retainer account with his counsel, and payments from that account on December 29, 2025 against invoices that include the work described above. Exhibit 8 (trust ledger).

## IV. THE STAY APPLIED TO VARGO

29. The filing of a petition operates as a stay of, among other things, "the commencement or continuation . . . of a judicial . . . proceeding against the debtor," "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1), (3), (6). A receiver appointed in a non-bankruptcy proceeding is a "custodian," 11 U.S.C. § 101(11)(A), and a custodian with knowledge of the case "may not . . . take any action in the administration of[] property of the debtor" except to preserve it. 11 U.S.C. § 543(a).

30. Choudhri's membership interest in Meandering Bend became property of this estate on the petition date. 11 U.S.C. § 541(a)(1). The receivership orders exclude it from Receivership Assets, A-Case Order ¶ 8; D-Case Order ¶ 14, so it was not in custodia legis. The Romspen lawsuit is a pending judicial proceeding against Choudhri on a pre-petition guaranty claim.

31. Vargo did not dispute that the stay applied to him. He asked this Court for relief from it. ECF No. 22; see also ECF No. 21 ¶ 23. He did not obtain it. The Court did not annul the stay, and its dismissal order does not validate any act taken while the case was pending. ECF No. 33.

32. Vargo's position in this Court was that the stay did not protect most of what Choudhri owned. His motion to dismiss told the Court: "Because all non-exempt assets of Choudhri were transferred to the Receivership Court, the only assets owned by Choudhri that could be the subject of the instant bankruptcy proceeding are the exempt assets of Choudhri which, upon the designation of the same, will be removed from the bankruptcy estate." ECF No. 21 ¶ 4 (Exhibit 11). It described that "transfer" as reaching "the interests and management rights of Choudhri in all Choudhri LLC's," id., the very interests the receivership orders exclude. A-Case Order ¶ 8; D-Case Order ¶ 14.

> 4. Pursuant to the terms of the Receivership Orders, *infra.*, all non-exempt assets of Ali Choudhri ("Choudhri"), including the interests and management rights of Choudhri in all Choudhri LLC's[2] (as defined in the Receivership Orders) that were not in a pending bankruptcy as of the date of the entry of the Receivership Orders, *infra.*, were transferred in *custodia legis* to the 333[rd] Judicial District Court of Harris County, Texas (the "Receivership Court") in care of the Receiver. Because all non-exempt assets of Choudhri were transferred to the Receivership Court, the only assets owned by Choudhri that could be the subject of the instant bankruptcy proceeding are the exempt assets of Choudhri which, upon the designation of the same, will be removed from the bankruptcy estate. 11 U.S.C. §522(l); *Schwab v. Reilly* 560 U.S. 770, 774 (2010).

*Excerpt — Vargo's Motion to Dismiss, In re Ali Choudhri, No. 25-90797, ECF No. 21 ¶ 4 (Dec. 10, 2025) (highlighting added).*

33. He went further, asking the Court to find that the non-exempt assets "are not property of the estate pursuant to 11 U.S.C. §541(d) because . . . Choudhri only held bare legal title to the non-exempt assets," ECF No. 21 at 3, and describing the receivership orders as an "express transfer of the ownership of the non-exempt assets of Choudhri." Id. ¶ 10.

> or suspension is in the best interest of the creditors of the estate. As a third alternative, the Receiver seeks a determination by this Court that the non-exempt assets of Choudhri *are not* property of the estate pursuant to 11 U.S.C. §541(d) because pursuant to the Receivership Orders as of the Petition Date[3] Choudhri only held bare legal title to the non-exempt assets with no avenue to reclaim them since the Receivership Orders are final non-appealable orders and the instant bankruptcy was filed more than ninety (90) days after the entry of Receivership Orders.

*Excerpt — ECF No. 21 at 3 (highlighting added).*

> 10. Despite the express transfer of the ownership of the non-exempt assets of Choudhri under the terms of the Receivership Orders and the determinations in the Authority Orders, Choudhri persists in his efforts to undermine the authority of the

*Excerpt — ECF No. 21 ¶ 10 (highlighting added).*

34. Then, in a motion filed the same day, he asked this Court to lift the stay so he could keep acting in the receivership court, "[w]hile preserving the position of the Receiver that the non-exempt assets of Choudhri are not assets of this bankruptcy estate." ECF No. 22 ¶ 12 (Exhibit 11). A party who believes the stay does not reach him does not ask for relief from it.

35. That is not how the automatic stay works. The stay arises automatically when the petition is filed and covers the debtor and all property in which the debtor holds an interest. 11 U.S.C. §§ 362(a), 541(a)(1). It does not sort itself into "exempt" and "non-exempt" assets, and it does not wait for a creditor or a receiver to decide what it reaches. Exemptions are claimed by the debtor and determined by this Court under 11 U.S.C. § 522; until then, the debtor's property, exempt or not, is property of the estate. Owen v. Owen, 500 U.S. 305, 308 (1991). A party who contends that particular property is not protected must ask this Court, by motion under § 362(d). Vargo and Ms. Luttrell did not. They decided the question for themselves, drawing a line between "exempt" and "non-exempt" assets that no court had drawn, treating everything on their side of it as outside the stay, and acting on that view in the Meandering Bend court on December 5, 2025, five days before they asked this Court for anything. A party who acts on its own view of what the

stay covers acts at its peril; a good-faith belief that property was not protected is no defense to a willful violation. In re Chesnut, 422 F.3d 298, 302 (5th Cir. 2005).

36. Vargo's own stay motion shows that he knew the question was this Court's to decide. He told the Court that, under the receivership orders, "all of the non-exempt assets of Choudhri were transferred in custodia legis to the Receivership Court," relying on "the three Authority Orders entered by the Bankruptcy Courts in the Western District of Texas." ECF No. 22 ¶ 7. He described his companion motion as one asking this Court, in the alternative, "To Determine That The Non-Exempt Assets Of Ali Choudhri Are Not Property Of The Estate," and he filed the stay motion "as a prophylactic measure." Id. ¶ 11. Then he asked for relief "[w]hile preserving the position of the Receiver that the non-exempt assets of Choudhri are not assets of this bankruptcy estate and pending this Court's determination of the Motion to Dismiss." Id. ¶ 12. A party who asks the Court to determine what is property of the estate, and asks for stay relief "pending this Court's determination," knows that the determination has not been made. Vargo had already acted on his own answer five days earlier, and this Court never made the determination he asked for. (Exhibit 11.)

> 11. The Receiver, contemporaneously herewith, filed his *Motion To Dismiss Bankruptcy Proceeding For Cause Pursuant To 11 U.S.C. §1112(b), To Abstain Pursuant to 11 U.S.C. §305(a)(1), Or Alternatively To Determine That The Non-Exempt Assets Of Ali Choudhri Are Not Property Of The Estate Pursuant To 11 U.S.C. §541* (the "Motion to Dismiss"). Pending determination of the Motion to Dismiss, the Receiver files this Motion for Relief from as a prophylactic measure anticipating that he will need to take a position in connection with any filing made by Choudhri in the A-Case and/or D-Case.
>
> **III.**
> **RELIEF REQUESTED**
>
> 12. While preserving the position of the Receiver that the non-exempt assets of Choudhri are not assets of this bankruptcy estate and pending this Court's determination of the Motion to Dismiss, the Receiver seeks an order lifting the automatic stay provisions of 11 U.S.C. §362 to permit him to respond to any and all matters asserted in the Receivership Court by Choudhri

*Excerpt — In re Ali Choudhri, No. 25-90797, ECF No. 22 ¶¶ 11–12 (highlighting added).*

37. The position is wrong on every level. As Choudhri told this Court on December 12, 2025, "[c]ourts examining the role of a receiver once a bankruptcy case commences have consistently reached the same conclusion: absent an order of the bankruptcy court '[t]he receivership is effectively over and done with; it has come to an end.'" ECF No. 26 at 3–4 (quoting In re Smith, 2016 WL 3582209, at *2 (Bankr. S.D. Tex. June 23, 2016) (Isgur, J.)). First, a receiver takes custody of a debtor's property, not ownership; the debtor's interest is property of the estate, 11 U.S.C. § 541(a)(1), and property seized before the petition remains property of the estate that must be turned over. United States v. Whiting Pools, Inc., 462 U.S. 198, 205–09 (1983). Congress addressed this exact situation in § 543, which requires a custodian holding the debtor's property to stop administering it, turn it over, and account for it. Second, exempt property is property of the estate unless and until it is exempted. 11 U.S.C. § 522(l). Third, the stay does not depend on what is property of the estate at all: § 362(a)(1) and (6) stay the continuation of judicial proceedings against the debtor and acts to collect pre-petition claims against him, whatever assets they concern. And

fourth, the receivership orders themselves exclude Choudhri's LLC interests from what Vargo holds. A-Case Order ¶ 8; D-Case Order ¶ 14. Vargo acted on a theory that the Bankruptcy Code forecloses, after notice, and while asking this Court for permission he never received.

## V. VARGO'S VIOLATIONS WERE WILLFUL

38. A violation is willful under § 362(k) when (1) the defendant knew of the stay, (2) the defendant's acts were intentional, and (3) the acts violated the stay. *Young v. Repine* (*In re Repine*), 536 F.3d 512, 519 (5th Cir. 2008) (citing *In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005)). Specific intent to violate the stay is not required.

39. **Knowledge.** Vargo's counsel had written notice of this case by 1:17 p.m. on December 5, 2025, and at 1:58 p.m. received a direct written demand that Vargo not proceed "in any fashion" or "take any action as it relates to the estate of Ali Choudhri." Exhibit 2. Vargo heard the filing announced on the record at the start of the Meandering Bend hearing and proceeded anyway. Exhibit 3. He appeared in this case on December 9 and filed his motions on December 10. ECF Nos. 17, 21, 22. On December 12, Choudhri's counsel sent Ms. Luttrell, with a copy to Vargo, a formal demand under §§ 542 and 543 with a deadline of 3:00 p.m. on December 15. Exhibit 12. On December 14, counsel for National Bank of Kuwait told Vargo's counsel, copying Vargo, that the bankruptcy had "terminated the receivership" and that § 543 required turnover and an accounting. Exhibit 13. His counsel researched his status as a custodian under § 543(d) on December 15. Exhibit 8.

40. **Meandering Bend.** After receiving notice, Vargo asserted "sole control" over Choudhri's Meandering Bend membership interest and asked a court to dismiss the case with prejudice on that basis. That is an act "to exercise control over property of the estate," § 362(a)(3), and an action "in the administration of" the debtor's property by a custodian, § 543(a).

41. **The state-court enforcement proceedings.** Preparing and presenting advisories and a proposed authority order in the A-Case and D-Case, and attending a show-authority hearing in

those proceedings, while this case was pending, continued judicial proceedings against the debtor. § 362(a)(1), (2), (6).

42. Acts taken in violation of the stay are voidable, and they remain subject to this Court's determination unless the stay is annulled under § 362(d). *In re Jones*, 63 F.3d 411, 412–13 & n.3 (5th Cir. 1995). The stay was not annulled.

## V-A. ORDER TO SHOW CAUSE AND CIVIL CONTEMPT

43. Section 362(k) provides a damages remedy. This Court also has authority under 11 U.S.C. § 105(a) and its inherent power to enforce the automatic stay through civil contempt, and the stay is an order of this Court. Civil contempt is appropriate where there is no fair ground of doubt that the conduct was barred. See Taggart v. Lorenzen, 587 U.S. 554, 560–62 (2019) (discharge injunction).

44. There was no fair ground of doubt here. Vargo's counsel, Leslie M. Luttrell, received written notice of this case with its case number at 1:17 p.m. on December 5, 2025, and at 1:58 p.m. a direct demand that Vargo not proceed "in any fashion" (Exhibit 2). At 2:04 p.m., with Vargo attending by video, Choudhri's counsel announced the filing on the record. Meandering Bend Hr'g Tr. 4:3–6, 6:12–20 (Exhibit 3). Ms. Luttrell then told the court that Vargo had "sole control" over "the Meandering Bend membership interest," id. at 8:12–19, and Vargo proceeded on an unsworn proffer to ask that the Meandering Bend case be dismissed with prejudice. Id. at 15:13–16:24. The court declined to decide whether that conduct violated the stay, leaving it "for some other judge to decide." Id. at 10:7–10. This is that Court.

45. Five days later, Vargo asked this Court for relief from the stay so that he could continue acting in the receivership proceedings, ECF No. 22, conceding that the stay applied to him. He never obtained that relief, and he never sought it for the acts he had already taken on December 5.

46. Choudhri therefore asks the Court to order Travis B. Vargo, Leslie M. Luttrell, and TIG Romspen US Master Mortgage LP to appear and show cause why they should not be held in civil contempt and sanctioned for the acts taken on December 5, 2025 after notice of this case, and for

the other acts described in Part V to the extent the evidence shows they occurred while this case was pending, with damages, fees, and costs to be determined at the evidentiary hearing.

## V-B. ROMSPEN'S PARTICIPATION, VARGO'S DUTIES AS CUSTODIAN, AND DISCOVERY

47. TIG Romspen US Master Mortgage LP knew of this case. It was on the service list of Vargo's stay-relief motion on December 10, 2025, ECF No. 22 at 8, and its counsel was in contact with Vargo's counsel throughout the period covered by this motion. Exhibit 8. Romspen and Vargo had agreed in November 2025 that Vargo would "reasonably cooperate with Romspen in connection with entry of a judgment" against Choudhri, Settlement Agreement § II.4 (Exhibit 10), and Romspen filed that judgment on December 19, 2025. Choudhri contends that Romspen and Vargo acted together, while this case was pending, to prepare and position that judgment against the debtor, and that Romspen's acts during the stay to that end were willful violations of § 362(a)(1) and (6).

48. Vargo was a custodian of Choudhri's property under 11 U.S.C. § 101(11), as his own counsel recognized on December 15, 2025. Exhibit 8. Upon learning of this case, a custodian "shall deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property," and "file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian." 11 U.S.C. § 543(b)(1)–(2). In a Chapter 11 case the debtor in possession has the rights of the trustee. 11 U.S.C. § 1107(a). Vargo did neither, even after a written demand. On December 12, 2025, Choudhri's counsel sent Ms. Luttrell, with a copy to Vargo, a "Demand for Turnover of Property Pursuant to 11 U.S.C. §§542 and 543." Exhibit 12. It demanded that Vargo "[t]urn over to Debtor-in-Possession all property that is in your possession or control that is owned by Choudhri"; that he "not distribute, settle, or otherwise encumber or alienate any litigation matters, assets, or liabilities of or related to Choudhri"; that he "[t]urnover all correspondence to/from the Purported Receiver to/from any

other interested party"; that he "immediately identify all property in the Purported Receiver's possession or custody in which the Debtor-in-Possession has an interest"; and that he comply with § 543, quoting it in full. Id. at 1–2. It warned that "the automatic stay applies across-the-board, and not at the discretion or choosing of the Purported Receiver," and that he had "already violated the automatic stay by proceeding in the Meandering Bend matter," and it set a deadline of "3:00 PM Monday, December 15, 2025." Id. at 2–3. On December 15, the day of that deadline, Vargo's counsel billed time not to comply but to "[p]ull [a]uthorities and prepare response . . . regarding . . . Receiver's status under 11 USC §543(d)." Exhibit 8. Vargo turned over no property and filed no accounting before the case was dismissed four days later. He filed no accounting in this Court, and his later report to the receivership court shows funds collected and disbursed during and after the stay. Exhibit 8.

49. Vargo was told the same thing by a creditor adverse to Choudhri. On Sunday, December 14, 2025, Ms. Luttrell emailed counsel for the United States Trustee, National Bank of Kuwait, and Choudhri, copying Vargo, that she would move the next day for expedited consideration of Vargo's motions. Exhibit 13. That evening, counsel for National Bank of Kuwait answered, copying Vargo: "Mr. Choudhri's bankruptcy filing superseded and terminated the receivership. See, e.g., In re Smith, 2016 WL 3582209, at *2 (Bankr. S.D. Tex. June 23, 2016) (Isgur, J.) ('Courts examining the role of a receiver once a bankruptcy case commences have consistently reached the same conclusion: absent an order of the bankruptcy court "[t]he receivership is effectively over and done with; it has come to an end."') . . . . Because of that, Mr. Vargo lacks standing to seek dismissal of Mr. Choudhri's bankruptcy. See, e.g., In re Rimsat, Ltd., 193 B.R. 499, 502 (Bankr. N.D. Ind. 1996) . . . ; see also 11 U.S.C. § 543 (requiring state court receivers to turn over and account for property of the estate and property of the debtor)." Id. The next morning, the day of Choudhri's turnover deadline, Vargo's counsel billed time to research Vargo's "status under 11 USC §543(d)." Exhibit 8. He still turned over nothing.

50. The facts of coordination and the property Vargo held are in the respondents' hands. Choudhri therefore asks the Court to order production, within three days, of the following,

excluding only communications between a party and its own counsel: (a) all communications between Vargo, Ms. Luttrell, Luttrell + Carmody Law Group, or anyone acting for Vargo, on one side, and any of TIG Romspen US Master Mortgage LP, Romspen Investment Corporation, Romspen (Reomaster II) Holdings, RIC (Lavernia) LLC, RIC (West Loop) LLC, or any other Romspen affiliate, Kyle S. Hirsch, Lynn Hamilton Butler, Lauren E. Hayes, Husch Blackwell LLP, or anyone else acting for any of them, on the other, from June 1, 2025 to the present; (b) all communications between Vargo, Ms. Luttrell, or anyone acting for Vargo and Osama Abdullatif, Mokaram-Latif West Loop, Ltd., Scott Funk, T. Michael Ballases, Beth Mendez, National Bank of Kuwait, S.A.K.P., New York Branch, and their counsel or agents, concerning Choudhri, his property, this case, or the Romspen judgment, from December 1, 2025 to the present; (c) all communications by Vargo, Ms. Luttrell, or anyone acting for Vargo with any person concerning efforts to collect from Choudhri or to take, sell, settle, encumber, or control any property, claim, or entity in which Choudhri holds or claims an interest, and all documents reflecting any action Vargo took toward Choudhri or that property, from December 1, 2025 to the present; (d) Vargo's complete accounting of all property and funds that came into his possession, custody, or control in connection with Choudhri, with bank and trust-account statements, from appointment to the present; and (e) all documents concerning any demand for turnover of receivership property to Choudhri's estate and Vargo's reasons for not turning it over.

## V-C. WHAT VARGO KEEPS DOING: HE DECIDES FOR HIMSELF THAT THE STAY DOES NOT APPLY TO HIM

51. **This was not a one-time mistake. It is a pattern.** Each time a bankruptcy filing stands between Vargo and Choudhri's property, Vargo makes the same move: he decides for himself that the automatic stay does not apply to him, and he acts on that decision without asking the bankruptcy court.

52. **December 2025 — this case.** Vargo told this Court that Choudhri's "non-exempt assets" were outside the stay, ECF No. 21 ¶ 4, while asking the Court to decide that very question

**"pending this Court's determination.**" ECF No. 22 ¶ 12. **He had already acted on his own answer on December 5,** when his counsel claimed "sole control" of the Meandering Bend interest after written notice of this case. Exhibits 2, 3, 11.

53. **He knows how to ask permission. He just does not wait for the answer.** Vargo's own stay motion told every party, in capital letters: **"THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS."** ECF No. 22 at 1. **If it is granted.** It never was. He asked for relief **"pending this Court's determination,"** id. ¶ 12, five days after he had already acted in the Meandering Bend court without asking at all. And in September 2026, with Arabella's stay in effect, he did not ask anyone; the writ was executed on his own say-so that "the stay doesn't apply." **Asking the Court for permission and then acting without it is not a misunderstanding of the stay. It is a choice, made over and over. This Court should put a stop to it.**

**MOTION OF TRAVIS VARGO, COURT APPOINTED RECEIVER, FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)(1)**

TO THE HONORABLE, CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

**L. RULE 4001 NOTICE**

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY**

*Excerpt — In re Ali Choudhri, No. 25-90797, ECF No. 22 at 1 (Dec. 10, 2025) — Vargo's Motion for Relief from Stay (highlighting added).*

> 11. The Receiver, contemporaneously herewith, filed his *Motion To Dismiss Bankruptcy Proceeding For Cause Pursuant To 11 U.S.C. §1112(b), To Abstain Pursuant to 11 U.S.C. §305(a)(1), Or Alternatively To Determine That The Non-Exempt Assets Of Ali Choudhri Are Not Property Of The Estate Pursuant To 11 U.S.C. §541* (the "Motion to Dismiss"). Pending determination of the Motion to Dismiss, the Receiver files this Motion for Relief from as a prophylactic measure anticipating that he will need to take a position in connection with any filing made by Choudhri in the A-Case and/or D-Case.
>
> **III.**
> **RELIEF REQUESTED**
>
> 12. While preserving the position of the Receiver that the non-exempt assets of Choudhri are not assets of this bankruptcy estate and pending this Court's determination of the Motion to Dismiss, the Receiver seeks an order lifting the automatic stay provisions of 11 U.S.C. §362 to permit him to respond to any and all matters asserted in the Receivership Court by Choudhri

*Excerpt — ECF No. 22 ¶¶ 11–12 — "a prophylactic measure" … "pending this Court's determination" (highlighting added).*

54. **September 10, 2026 — on the record, binding everyone in the room.** In Cause No. 2026-63841, before the Honorable Tracy Good, the court asked Vargo whether he objected to a pause so that the parties could be heard by the presiding judge of the 133rd District Court. Vargo answered: "**So, long as there's no orders coming out of this, I'm not removing him from the home. So, I have no objections.**" The court pinned it down: "**You will not remove Mr. Choudhri or his mother from the home until a hearing that's scheduled for the 14th in the 133rd; is that correct, yes?**" Vargo: "**Yes.**" Reporter's Record at 5:19–6:11 (Sept. 10, 2026) (Exhibit 19). Vargo also told Judge Good that "**he's not being removed from his home prior to Monday,**" RR 5:2–4, and that "Mr. Poynter's going to go through **Federal bankruptcy court orders, that also bolster my reading of the order**." Id. at 4:6–8. (Exhibit 19.)

55. **The court then made the agreement apply to everyone present.** It told Choudhri: "**Nothing will happen until after the presiding judge holds your hearing on the 14th.**" Id. at 8:6–8. And it closed the hearing this way: "**nobody within the hearing of my voice is going to do**

**anything to effect the eviction of Mr. Choudhri** over the weekend and that the issue related to his home will be presented to the 133rd on the 14th. All right. **I got everybody here. We're all in agreement and got it on the record.**" Id. at 8:21–9:3. The commitment was not limited to Vargo personally. It reached **everyone within the hearing of the court's voice** — Vargo, his counsel, and anyone acting with them — and it ran **until the hearing on Choudhri's home was actually held.** Those present included counsel for Constable Rosen, Felipe Guevara and Courtney Carlson of the Harris County Attorney's Office, and Vargo's associate, Michael Poynter. RR 2. The court stated the purpose of the agreement in its own words: no one would come after Choudhri or his mother "**until you actually have a full-fledged hearing before the court**." Choudhri: "Yes." The court: "You got that." RR 7:1–7. And it told Choudhri that, for the weekend, "**y'all have nothing to worry about as it relates to somebody evicting you guys out of your home**." RR 7:19–23.

56. **That hearing never happened.** On September 14, 2026, before the 3:00 p.m. setting, the cause was transferred administratively from the 133rd to the 333rd District Court. No hearing on Choudhri's home was held. No order released anyone from the agreement. **The writ was executed the next morning, September 15, 2026** — with Arabella's Chapter 11 stay in effect, and with the condition Vargo had agreed to on the record still unmet.

57. **September 15, 2026 — Arabella's case.** With Arabella's Chapter 11 case pending in Wyoming, No. 26-20432, and Choudhri reading the case number aloud, the response at the door was: "**the writ was issued before, the stay doesn't apply . . . That's correct. Google it.**" Video recorded Sept. 15, 2026 (Exhibit 18, lodged conventionally). **Same self-help theory, nine months later.** And the execution rested on a stale notice: the last notice posted at the home had set execution for September 12, 2026, before both the September 10 agreement and Arabella's September 11 petition. That date passed. No new notice was posted. The writ was executed on September 15 anyway.

58. **July 2026 — his mother's company.** MCITBE, LLC is owned by Choudhri's mother, Shahnaz Choudhri. Choudhri holds no membership interest in it. Vargo nonetheless told the Northern District of Texas that "**MCITBE is a Choudhri LLC owned solely by Choudhri**" and

moved to dismiss its Chapter 11 case for "lack of authority." Motion to Dismiss ¶ 13(a), In re MCITBE, LLC, No. 26-32580, ECF No. 21 (July 14, 2026) (Exhibit 20). He also recorded a notice of receivership that **clouds title** to the property at 2232 Swift Blvd., Houston, in which MCITBE holds an interest. The receivership orders he relies on, which his own counsel filed in that case, exclude Choudhri's ownership interests in any limited liability company. Exhibit 17. **Same move again: declare that a company belongs to Choudhri, then act as though the receivership reaches it, even when the company belongs to someone else.**

> serve no legitimate bankruptcy purpose." *In re Essential Financial Education, Inc.*, No. 18-33108-BJH, 2019 Bankr. LEXIS 1226, 2019 WL 1750906, at *4 (Bankr. N.D.Tex. Apr. 16, 2019). The burden to prove cause rests with the moving party; if the moving party meets the initial burden, it shifts. *In re Fedoruk*, 605 B.R. 444, 451 (Bankr. S.D. TX 2019) (*citing In re Chovev*, 559 B.R. 339, 343 (Bankr. . E.D.N.Y., 2016).
>
> 13. Cause to dismiss this case exists as follows:
>
> a. MCITBE is a Choudhri LLC owned solely by Choudhri[16].
>
> 15 See Exhibit 2 – Adversary No. 26-03230 Notice of Removal to Southern District of Texas [ECF No.

*Excerpt — In re MCITBE, LLC, No. 26-32580, ECF No. 21 ¶ 13(a) (July 14, 2026) (highlighting added).*

59. **The law does not permit this.** A party who acts on its own view of what the stay covers acts at its peril; a good-faith belief that property was not protected is no defense to a willful violation. In re Chesnut, 422 F.3d 298, 302 (5th Cir. 2005). And repetition matters. **One violation might be explained away; the same theory used again, after repeated warnings, shows knowledge, intent, and the absence of mistake.** See Fed. R. Evid. 404(b)(2). That pattern also bears directly on punitive damages under 11 U.S.C. § 362(k)(1).

60. **Notice he cannot deny.** Five separate notices preceded or accompanied his conduct in this case: the 1:17 p.m. and 1:58 p.m. emails of December 5, 2025; the announcement of the filing on the record at 2:04 p.m.; the formal §§ 542/543 demand of December 12; and the December 14 email from counsel for National Bank of Kuwait stating that the bankruptcy had "terminated the receivership." Exhibits 2, 3, 12, 13. **He acted anyway.**

61. **His own words.** April 3, 2025, under oath: asked whether he sought to control Choudhri's LLC interests, "**No**"; "**I have a right to his distributions only.**" Exhibit 15. December 10, 2025: the stay motion was "**a prophylactic measure.**" ECF No. 22 ¶ 11. September 23, 2026, shown paragraph 8 of his own orders: "**That's what it says here.**" Asked whether he approved his counsel's contrary arguments: "**I didn't say that.**" Exhibit 14.

62. **The motive.** Vargo claims a **25% fee on everything he collects.** He took Romspen's $225,000 into his fee base, and his counsel billed settlement work while this case was pending. Exhibits 8, 9. **The money explains why the stay was ignored.**

63. **Counsel's role.** On December 15, 2025, the deadline for turnover, Ms. Luttrell billed time not to turn anything over but to research Vargo's "status under 11 USC §543(d)." Exhibit 8. **Counsel who participate in a willful stay violation answer for it too.**

64. **Credibility.** Vargo told the receivership court, under penalty of perjury, that the Romspen settlement was "**authorized by Judge Michael Parker**" and authorized in Case No. 24-10119. No such authorization exists. **A witness who will misstate a federal court's approval under oath cannot be credited when he explains why the stay did not apply to him.**

## VI. CORRECTION OF THE RECORD

65. This Court dismissed the case for failure to file verifications and noted "strong concerns about the lack of transparency and abuse of process." ECF No. 33 at 2. Choudhri does not ask the Court to revisit that dismissal. He asks the Court to know that the filing that accused him of bad faith—Vargo's Motion to Dismiss—itself (a) described the receivership orders in terms Vargo's own counsel had disclaimed in writing three months earlier, ¶¶ 13, 23 above; and (b) relied on a Meandering Bend dismissal that Vargo obtained after written notice of this case and while the stay protected Choudhri's interest in that company, ¶¶ 6–12 above.

## VII. RELIEF REQUESTED

Choudhri respectfully asks the Court to enter an order:

(a) ordering Travis B. Vargo, Leslie M. Luttrell, and TIG Romspen US Master Mortgage LP to appear and show cause why they should not be held in civil contempt and sanctioned, as described in Parts V-A and V-B;

(b) determining that the automatic stay was in effect from 11:13 a.m. on December 5, 2025 until 11:50 a.m. on December 19, 2025, and was not annulled;

(c) determining that Vargo's assertion of control over Choudhri's Meandering Bend membership interest on December 5, 2025, after notice of this case, violated 11 U.S.C. §§ 362(a)(3) and 543(a);

(d) determining that Vargo's acts in the A-Case and D-Case enforcement proceedings, to the extent they occurred while this case was pending, violated 11 U.S.C. § 362(a)(1), (2), and (6);

(e) finding that Vargo and Romspen willfully violated the stay, holding them and Vargo's counsel in civil contempt, and awarding Choudhri actual damages, including costs and attorney's fees, and punitive damages as appropriate, under 11 U.S.C. § 362(k)(1), in amounts to be proven at an evidentiary hearing;

(f) ordering Vargo, Ms. Luttrell, TIG Romspen US Master Mortgage LP, and RIC (Lavernia) LLC to produce, within three days, the communications, accounting, and documents described in Part V-B, excluding only communications between a party and its own counsel, and authorizing further discovery under Bankruptcy Rules 7026–7037 and 9014;

(g) ordering Vargo to file the accounting required by 11 U.S.C. § 543(b)(2) of all property of Choudhri, and its proceeds, that came into his possession, custody, or control, and to state what he did with it while this case was pending, within three days; and

(h) granting such other relief as is just.

Dated: October 13, 2026

Respectfully submitted,

/s/ Ali Choudhri

Ali Choudhri, Debtor, pro se
4521 San Felipe, Unit 3201, Houston, Texas 77027
(281) 630-6627 | ali@jetallcapital.com

**CERTIFICATE OF CONFERENCE**

I certify that on October 12, 2026, conference was attempted with counsel for Travis B. Vargo, Leslie M. Luttrell, regarding the relief requested in this motion. No agreement was reached, and Choudhri presents the motion as opposed.

/s/ Ali Choudhri

**CERTIFICATE OF ACCURACY**

**I certify under BLR 9013-1(i) that the facts stated in this motion concerning the need for emergency relief are true and accurate to the best of my knowledge, information, and belief.**

/s/ Ali Choudhri

**CERTIFICATE OF SERVICE**

I certify that on October 13, 2026, a true and correct copy of this motion, its exhibits, and the proposed order was served by email and by first-class United States mail, postage prepaid, on Travis B. Vargo and his counsel, Leslie M. Luttrell (luttrell@lclawgroup.net), Luttrell + Carmody Law Group, 100 NE Loop 410, Suite 615, San Antonio, Texas 78216; counsel for TIG Romspen US Master Mortgage LP, Kyle S. Hirsch and Justin D. Hanna, Bryan Cave Leighton Paisner LLP, 2200 Ross Avenue, Suite 4200W, Dallas, Texas 75201; and the United States Trustee, 515 Rusk Avenue, Suite 3516, Houston, Texas 77002.

/s/ Ali Choudhri

**EXHIBIT LIST**

| | |
|---|---|
| Exhibit 1 | Voluntary Petition [ECF No. 1] and Notice of Electronic Filing (entered 11:13 a.m., Dec. 5, 2025); Order Dismissing Bankruptcy Case Without Prejudice [ECF No. 33] and its Notice of Electronic Filing (entered 11:50 a.m., Dec. 19, 2025) |
| Exhibit 2 | Emails from Bruce J. Duke: to courtroom deputy, cc Leslie Luttrell (Dec. 5, 2025, 1:17 p.m.); to Leslie Luttrell (Dec. 5, 2025, 1:58 p.m.) |
| Exhibit 3 | Transcript, Meandering Bend hearing, Dec. 5, 2025 [W.D. Tex. No. 25-11334, ECF No. 138], and Order [ECF No. 125] |
| Exhibit 4 | TIG Romspen Motion for Entry of Stipulated Judgment and proposed Final Judgment (Dec. 19, 2025); Unopposed Motion to Lift Abatement (Mar. 13, 2026); revised proposed Final Judgment (Oct. 7, 2026) |
| Exhibit 5 | Meandering Bend ECF No. 28 (Aug. 29, 2025) and ECF No. 65 (Sept. 12, 2025) |
| Exhibit 6 | Meandering Bend ECF No. 97 (Oct. 31, 2025) |
| Exhibit 7 | A-Case and D-Case Amended Receivership Orders (also at ECF Nos. 19-1, 19-2) |
| Exhibit 8 | Vargo's Report, Accounting, and Motion to Distribute (Mar. 3, 2026), Cause No. 2012-27197-D, with Ex. 2 (Luttrell + Carmody invoices and trust ledger) |
| Exhibit 9 | Vargo's Report to Court (June 9, 2026), Cause No. 2012-27197-A/D |
| Exhibit 10 | Vargo's Omnibus Response (Apr. 15, 2026), Cause No. 2012-27197-A, with Ex. C (Romspen–Vargo Settlement Agreement, as of Nov. 21, 2025) |
| Exhibit 11 | Vargo's Motion to Dismiss [ECF No. 21] and Motion for Relief from Stay [ECF No. 22] (Dec. 10, 2025) |
| Exhibit 12 | Email from Bruce J. Duke to Leslie Luttrell, cc Travis B. Vargo (Dec. 12, 2025, 3:30 p.m.), transmitting Demand for Turnover of Property Pursuant to 11 U.S.C. §§ 542 and 543, with attached Dec. 5, 2025 email |
| Exhibit 13 | Emails: Leslie Luttrell to counsel for U.S. Trustee, NBK, and Choudhri, cc Travis B. Vargo (Dec. 14, 2025); reply of Reed C. Trechter, counsel for National Bank of Kuwait, cc Travis B. Vargo (Dec. 14, 2025) |
| Exhibit 14 | Transcript, In re MCITBE, LLC, No. 26-32580 (Bankr. N.D. Tex.), hearing of Sept. 23, 2026 (complete; highlighted) |
| Exhibit 15 | Transcript, In re Texas REIT, LLC, No. 24-10120 (Bankr. W.D. Tex.), hearing of Apr. 3, 2025 (highlighted) |
| Exhibit 16 | Notice of Intent to Seek Sanctions under Fed. R. Bankr. P. 9011, In re MCITBE, LLC, No. 26-32580, ECF No. 122 (Sept. 4, 2026), with Sept. 2, 2026 letter and motion served on Leslie M. Luttrell |
| Exhibit 17 | Notice of Filing Orders Regarding Appointment of Receiver and Charging Orders, In re MCITBE, LLC, No. 26-32580, ECF No. 20 (July 7, 2026) |
| Exhibit 18 | Video recorded at 4521 San Felipe, Unit 3201, Sept. 15, 2026 (lodged conventionally) |

| | |
|---|---|
| Exhibit 19 | Reporter's Record, hearing of Sept. 10, 2026, Cause No. 2026-63841, before the Hon. Tracy Good (excerpts) |
| Exhibit 20 | Vargo's Motion to Dismiss Bankruptcy Proceeding for Cause – Lack of Authority, In re MCITBE, LLC, No. 26-32580, ECF No. 21 (July 14, 2026) (highlighted) |

# EXHIBIT D

Settlement Agreement between TIG Romspen US Master Mortgage LP and Travis Vargo, as receiver (Nov. 21, 2025), execution version with counterpart signature pages (Vargo; Romspen US Mortgage GP Inc. for Romspen) and Exhibit II.4

**EXECUTION VERSION**

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is effective as of the 21st day of November, 2025 ("Execution Date"), by and between: (i) TIG Romspen US Master Mortgage LP, a Cayman Islands exempted limited partnership ("Romspen") and (ii) Travis Vargo, as state court-appointed receiver ("Receiver"). Romspen and Receiver are collectively referred to as the "Parties" and each as a "Party." In consideration of the agreements, representations, warranties, and covenants set forth herein, the Parties hereby agree as follows:

## I. RECITALS.

### A. Choudhri and the Relevant Choudhri-Related Entities

1. Ali Choudhri ("Choudhri") is an individual who resides in Houston, Texas.

2. Galleria Loop Note Holder, LLC ("GLNH") is a Texas limited liability company owned and controlled by Choudhri.

3. 1001 WL, LLC ("1001 WL") is a New York limited liability company. 1001 WL is presently a debtor in the bankruptcy case pending in the Western District of Texas, Austin Division (the "Austin Court") styled *In re 1001 WL, LLC*, Case No. 24-10119-smr (the "1001 WL Bankruptcy Case"). John Patrick Lowe has been appointed as Chapter 11 Trustee ("Trustee").

4. Milestone Capital CRE I, LLC (aka Milestone Capital CRE 1, LLC) ("Milestone") is a Texas limited liability company owned and controlled by Choudhri.

5. OTISCO RDX, LLC ("OTISCO") is a Texas limited liability company owned and controlled by Choudhri.

6. BDFI, LLC ("BDFI") is a Texas limited liability company owned and controlled by Choudhri.

### B. 1001 West Loop Property and the 1001 WL Bankruptcy Case

1. On May 31, 2019, Romspen made a loan to GLNH in the original principal amount of $18,500,000 (the "Romspen Loan"). At the time of the Romspen Loan, 1001 WL was the owner of that certain office building located at 1001 West Loop South, Houston, Texas ("1001 West Loop Property"). The Romspen Loan was intended to provide GLNH with the funds to allow Choudhri to acquire then-existing senior liens encumbering the 1001 West Loop Property, to then be foreclosed in order to extinguish junior indebtedness including a lien securing purported debt owed to BDFI. Under Choudhri's control and direction, GLNH acquired the then-existing senior liens, and on September 3, 2019, Choudhri's selected and duly-appointed substitute trustee completed a non-judicial foreclosure sale, with GLNH as the successful bidder. As a result, GLNH became the record title owner of the 1001 West Loop Property, effective on or about September 3, 2019. GLNH granted Romspen a senior-position lien encumbering the 1001

Unofficial Copy Office of Marilyn Burgess District Clerk

West Loop Property and all cash generated thereby as security for repayment of the Romspen Loan, as evidenced by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of September 4, 2019 and recorded at Instrument No. RP-2019-392981 in the Harris County, Texas, Official Records (the "Houston DOT").

2. GLNH defaulted under the Romspen Loan. Choudhri, on behalf of GLNH, negotiated several forbearance and/or reinstatement agreements with Romspen. GLNH and Choudhri failed and/or refused to comply with the forbearance and/or reinstatement agreements. Romspen therefore attempted to enforce its rights under the Romspen Loan.

3. On December 8, 2023, Romspen initiated Cause No. 2023-84714 in the Harris County, Texas, 190th Judicial District Court styled *TIG Romspen US Master Mortgage LP v. Galleria Loop Note Holder, LLC* (the "Romspen Enforcement Action") seeking, among other things, damages against GLNH under the Note and against Choudhri under his guaranty of the Note. The Romspen Enforcement Action has been abated but remains pending.

4. A non-judicial foreclosure sale was duly and properly noticed to occur on February 6, 2024 (the "1001 WL Petition Date"). On January 22, 2024, Choudhri, on behalf of GLNH, transferred the 1001 West Loop Property back to 1001 WL; and on the 1001 WL Petition Date, 1001 WL filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the 1001 WL Bankruptcy Case. As a result of the imposition of the automatic stay, Romspen did not proceed with the scheduled foreclosure sale.

5. On February 16, 2024, Romspen filed a secured proof of claim in the WL Bankruptcy Case at Claim No. 1 in the Official Claims Register, in the amount of $33,215,553.94, which was amended on July 12, 2024, to reflect a reduction to $33,115,553.94 (the "Romspen Claim").

6. On May 6, 2024, the judge in the WL Bankruptcy Case entered an order conditionally lifting the automatic stay to allow Romspen to conduct a non-judicial foreclosure sale. [ECF No. 151]. However, the judge entered orders periodically suspending the effectiveness of stay relief. [*See* ECF Nos. 206, 359]. On August 30, 2024, the judge entered an order expressly permitting Romspen to notice and post the 1001 West Loop Property for foreclosure in October 2024 or any month thereafter, and to conduct a foreclosure sale in accordance with the applicable loan documents and applicable law subject to a ruling on confirmation of the proposed, pending plan. [ECF No. 463]. On September 19, 2024, the judge entered an order denying confirmation of the Debtor's proposed, pending Chapter 11 plan in the WL Bankruptcy Case. [ECF No. 502]. Accordingly, Romspen is permitted to proceed with a non-judicial sale of the 1001 West Loop Property to occur as early as October 1, 2024.

7. A non-judicial foreclosure sale of the 1001 West Loop Property was duly and properly noticed to occur on October 1, 2024. On September 29, 2024, GLNH, under Choudhri's direction and control, initiated Cause No. 2024-67186 in Harris County, Texas,





Unofficial Copy Office of Marilyn Burgess District Clerk

District Court styled *Galleria Loop Note Holder, LLC v. TIG Romspen US Master Mortgage LP et al.* (the "GLNH TRO Action") seeking, among other things, entry of a temporary restraining order and preliminary injunction to prevent Romspen from conducting the scheduled October 1, 2024, foreclosure sale. Romspen removed the GLNH TRO Action to the United States District Court for the Southern District of Texas before the state court ancillary judge signed GLNH's proposed temporary restraining order. Romspen therefore intended to proceed with the non-judicial sale as scheduled. On October 1, 2025, Kirklin Properties, LLC, as the purported assignee of the lien interest of BDFI, filed Cause No. 2024-24786 in Harris County, Texas, District Court styled *Kirklin Properties, LLC v. George Lee et al.* (the "Kirklin Suit") seeking, among other things, entry of a temporary restraining order and preliminary injunction to prevent Romspen from conducting the scheduled October 1, 2024, foreclosure sale. The ancillary judge in the Kirklin Suit entered a temporary restraining order minutes before the scheduled start of the October 1, 2024, non-judicial trustee's sale. The substitute trustee conducted the October 1, 2024, sale in the event the temporary restraining order had not yet taken effect; however, after further analysis, the substitute trustee concluded that the sale was void and the substitute trustee declined to issue a substitute trustee's deed. The Kirklin Suit has since been non-suited.

8. Romspen has posted, noticed, and recorded the 1001 West Loop Property for a non-judicial foreclosure sale on December 2, 2025 (the "1001 WL December Sale").

9. The GLNH TRO Action was remanded back to the state court. GLNH sought *in rem* relief as to the 1001 West Loop Property. The Trustee intervened, removed the case to the United States District Court for the Southern District of Texas, and moved to transfer the case to the Austin Court – which motion was granted. The GLNH TRO Action is now pending in the Austin Court as Adversary Proceeding Case No. 25-01055.

10. Romspen initiated a separate adversary proceeding in the Austin Court styled *TIG Romspen US Master Mortgage LP v. Ali Choudhri, et al.*, Adversary Proceeding Case No. 24-01062 (the "Romspen Adversary"). Among other things, the Romspen Adversary seeks to enjoin Choudhri, GLNH, BDFI and others from interfering with or otherwise obstructing Romspen's lawful enforcement rights and remedies including any non-judicial foreclosure of the 1001 West Loop Property. The Romspen Adversary remains pending.

## C. The Lavernia Property and the RIC (Lavernia) Bankruptcy Case

11. In connection with one of the forbearance and/or reinstatement agreements between GLNH and Romspen, Choudhri induced Romspen by volunteering additional collateral to secure the Romspen Loan. As explained by Choudhri to Romspen, the additional collateral is real property located in Lavernia, Wilson County, Texas[3] (the "Lavernia Property") owned by OTISCO. Choudhri represented that the Lavernia Property was subject to an existing lien, but did not disclose that he had any relationship or affiliation with the lienholder. Choudhri represented to Romspen that OTISCO is comprised of investors with an interest in the 1001 West Loop Property. Choudhri represented and contended that because OTISCO would be harmed if Romspen were to foreclose its lien in





Unofficial Copy Office of Marilyn Burgess District Clerk

**EXECUTION VERSION**

the 1001 West Loop Property, OTISCO would be willing to grant Romspen a lien interest in the Lavernia Property in exchange for Romspen's forbearance. Romspen relied on Choudhri's representations, and accepted a lien against the Lavernia Property given by OTISCO to secure a portion of the Romspen Loan ($2,266,000) as evidenced by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated "as of the __the of August, 2023" and recorded on August 18, 2023, in the Wilson County, Texas, Official Records at Document No. 135641, Receipt No. 20230822000016 (the "Lavernia DOT"). Choudhri failed to disclose that Milestone, the holder and beneficiary of the prior lien encumbering the Lavernia Property, is an entity owned and controlled by Choudhri, or the circumstances giving rise to the alleged indebtedness owed by OTISCO purportedly secured by the deed of trust recorded in the Wilson County, Texas, Official Records on May 23, 2023, at Document No. 132703, Receipt No. 20230523000016 (the "Milestone DOT").

2. After GLNH failed to perform as agreed, Romspen pursued foreclosure of its lien encumbering the Lavernia Property pursuant to a non-judicial sale scheduled for the 1001 WL Petition Date. Choudhri attended the sale; Romspen did not. After the sale, the substitute trustee reported to Romspen that the sale had closed and Romspen had acquired the Lavernia Property for its opening bid of $100,000. Romspen then caused to be formed RIC (Lavernia) LLC ("RIC"), to serve as Romspen's designee of the successful credit bid. Romspen assigned its rights to the Lavernia DOT to RIC, and the substitute trustee issued a substitute trustee's deed reflecting that RIC was the successful bidder at the foreclosure sale for a $100,000 credit bid (the "RIC Deed"). The RIC Deed was recorded in the Wilson County, Texas, Official Records on March 26, 2024 at Document Number 141143, Receipt Number 20240326000033. Choudhri alleges irregularities in the foreclosure sale that render the RIC Deed void.

3. Milestone, under Choudhri's control, then purported to conduct a foreclosure sale of its alleged senior lien interest pursuant to the Milestone DOT. RIC initiated Cause No. CVW-2404240 in the Wilson County, Texas, 218th Judicial District Court styled *RIC (Lavernia) LLC v. Milestone Capital CRE 1, LLC* seeking, among other things, a temporary restraining order and preliminary injunction to prevent Milestone from foreclosing on the Lavernia Property; and disputing the validity of the Milestone DOT (the "RIC Lien Action"). The Wilson County state court issued a temporary restraining order, but later denied RIC's request for a preliminary injunction.

4. On June 27, 2024 (the "RIC Petition Date"), RIC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the San Antonio Court"), thereby commencing Case No. 24-51195 styled *In re RIC (Lavernia) LLC* (the "RIC BK Case").

5. On June 28, 2024, RIC removed the RIC Lien Action to the San Antonio Court, where it is now pending as Adversary Proceeding Case No. 24-05043. In the RIC Lien Action, the judge in the San Antonio Court has made findings that, among other things: (i) Choudhri controls Milestone; (ii) Choudhri controls OTISCO; and (iii) the Milestone DOT was fabricated by Chaudhri.





Unofficial Copy Office of Marilyn Burgess District Clerk

6. RIC has proposed a plan of reorganization (the "RIC Plan") in the RIC BK Case, which is scheduled for a confirmation hearing on November 24, 2025.

7. On May 1, 2025, OTISCO commenced Adversary Proceeding Case No. 25-05040 in the San Antonio Court styled *OTISCO RDX, LLC v. RIC (Lavernia) LLC et al.* (the "OTISCO Adversary") seeking declaratory judgment setting aside the RIC Deed. The OTISCO Adversary was disposed of on Summary Judgment with an adverse ruling on OTISCO's claims. The judgment is presently on appeal (the "OTISCO Appeal").

8. RIC and Romspen negotiated a resolution to correct documents relating to RIC's acquisition of the Lavernia Property, including a correction to the RIC Deed. On September 4, 2025, RIC filed in the RIC BK Case an application to approve the compromise between RIC and Romspen relating to the corrective documents (the "RIC 9019").

## D. The Lavernia Property and the RIC (Lavernia) Bankruptcy Case

1. On March 31, 2025, the Hon. Randy Wilson, sitting by special assignment, entered his Order Granting Turnover, Charging Order, and Appointment of Receiver Against Judgment Debtors in Cause No. 2012-27197-D styled *Mokaram-Latif West Loop, Ltd. v. Ali Choudhri and Angel Valle*, pending in the 333rd Judicial District Court of Harris County, Texas (the "D-Case"). Thereafter, on April 9, 2025, Judge Wilson entered his Amended Order (2) Granting Turnover, Charging Order, and Appointment of Receiver Against Judgment Debtors in the D-Case (the "D-Case Receivership Order").

2. On April 1, 2025, the Hon. Randy Wilson, sitting by special assignment, entered his Order Granting Turnover, Charging Order, and Appointment of Receiver Against Judgment Debtors in Cause No. 2012-27197-A styled *Mokaram-Latif West Loop, Ltd. and Osama Abdullatif v. Ali Choudhri*, pending in the 333rd Judicial District Court of Harris County, Texas (the "A-Case"). Thereafter, on April 7, 2025, Judge Wilson entered his Amended Order Granting Turnover, Charging Order, and Appointment of Receiver Against Judgment Debtors in the A-Case (the "A-Case Receivership Order").

3. By orders entered in the RIC BK Case and the 1001 WL Bankruptcy Case, the San Antonio Court at ECF 304 and the Austin Court at ECF 996 (respectively) have confirmed that Receiver has the legal right and authority over the claims and assets of Choudhri, Milestone, OTISCO, BDFI and GLNH, among others (collectively, the "Authority Orders"). Receiver's authority includes the authority to settle claims and causes of action pursuant to the A-Case Receivership Order and the D-Case Receivership Order, subject only to approval by the bankruptcy court with jurisdiction over the assets of a debtor owned and controlled by Choudhri, to wit: 1001 WL.

4. Following good faith negotiations, the Parties desire to settle and compromise various disputes arising in connection with the foregoing matters on the terms set forth herein to avoid the expense, risk, and uncertainty of litigation.



Unofficial Copy Office of Marilyn Burgess District Clerk

EXECUTION VERSION

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties covenant and agree as follows:

## II. OPERATIVE PROVISIONS.

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree to these Operative Provisions.

1. Incorporation of Recitals. All of the foregoing Recitals are incorporated into these Operative Provisions without any difference or distinction between the two segments of this Agreement.

2. Effective Date. This Agreement will become effective on the date all of the Parties have exchanged their signatures (the "Effective Date").

3. 1001 West Loop Property Foreclosure and 1001 WL Bankruptcy Case Resolution. Receiver[1] agrees not to interfere with Romspen's non-judicial foreclosure of the 1001 West Loop Property, including as it relates to the 1001 WL December Sale. Receiver further agrees to take such actions as reasonably requested by Romspen to render ineffective any purported injunction or other mechanism pursued by or at the direction of Choudhri to interfere with and/or obstruct Romspen's non-judicial foreclosure of the 1001 West Loop Property. Such actions may include, but are not limited to: (a) filing for withdrawal of any application for temporary restraining order sought by Choudhri or at Choudhri's direction; or (b) stipulating to the entry of an order in the Romspen Adversary that enjoins Choudhri, GLNH, BDFI, or any other party to that litigation from taking any action to interfere with and/or obstruct Romspen's non-judicial foreclosure of the 1001 West Loop Property. Receiver: (i) expressly acknowledges and affirms that Choudhri's actions and conduct as it relates to Romspen's efforts to foreclose the 1001 West Loop Property are the type of actions and conduct that support application of equitable tolling of any statute of limitations; (ii) expressly acknowledges and affirms that the statute of limitations does not operate as a bar to the 1001 WL December Sale or any other attempt by Romspen to foreclose its interests in the 1001 West Loop Property; (iii) expressly waives any and all limitations defenses in connection with the 1001 WL December Sale or any other attempt by Romspen to foreclose its interests in the 1001 West Loop Property; (iv) expressly acknowledges, affirms, and waives any objection whatsoever to the extent, validity, priority, and/or amount of Romspen's lien claims as set forth in the Romspen Claim; (v) consents to the turnover by any trustee of the 1001 WL bankruptcy estate of such property on account of Romspen's valid, perfected lien interests; (vi) consents to relief from the automatic stay in the 1001 WL Bankruptcy Case to the extent necessary to pursue a judicial foreclosure of the 1001 West Loop Property, and to reasonably cooperate with Romspen in connection with pursuing and conducting a judicial sale of the 1001 West Loop

---

1 Unless stated otherwise, all agreements, acknowledgements, affirmations, consents, obligations, actions and responsibilities of Receiver as set forth in these Operative Provisions shall be on behalf of the receivership estate, Choudhri, GLNH, BDFI, Milestone, OTISCO, and any and all other Choudhri-related entities over which the Receiver asserts control subject only to approval by the bankruptcy court with jurisdiction over the assets of a debtor owned and controlled by Choudhri.





Unofficial Copy Office of Marilyn Burgess District Clerk

Property including, without limitation, through the Romspen Enforcement Action. Receiver agrees not to interfere with any assignment, designation, or transfer by Romspen of its lien interests in and to the 1001 West Loop Property to facilitate the substitute trustee's conveyance of title to such assignee, designee, or transferee. Receiver agrees that Receiver will support and will not oppose such resolution of the 1001 WL Bankruptcy Case as proposed by Romspen including, without limitation, conversion to Chapter 7.

4. Judgment in the Romspen Enforcement Action. Receiver agrees to reasonably cooperate with Romspen in connection with entry of a judgment in the Romspen Enforcement Action in the form attached here as Exhibit II.4. To the extent Romspen seeks to proceed with a judicial foreclosure of the 1001 West Loop Property through the Romspen Enforcement Action, Receiver agrees to reasonably cooperate in modifying Exhibit II.4 accordingly.

5. Judgment in the RIC Lien Action. Receiver agrees to reasonably cooperate with RIC in connection with entry of a judgment invalidating the Milestone DOT in the RIC Lien Action in the form attached hereto as Exhibit II.5.

6. OTISCO Appeal Withdrawal. Receiver agrees to withdraw the OTISCO Appeal promptly after the Effective Date.

7. RIC BK Case Resolution. Receiver agrees to withdraw promptly after the Effective Date any and all objections asserted by Choudhri, OTISCO, or Milestone to, and to affirmatively support, the RIC 9019; and expressly waives any and all objections to RIC and Romspen entering into the corrective documents described therein, recordation of such documents, and RIC's ownership of the Lavernia Property pursuant to the RIC Deed and/or the documents reflected in the RIC 9019. Receiver further agrees to waive any and all objections to the RIC BK Plan. Receiver agrees not to oppose, and to consent to, any motion by RIC to dismiss the RIC BK Case.

8. Dismissal With Prejudice of the GLNH TRO Action. Receiver agrees to reasonably cooperate with Romspen and the Trustee to dismiss, with prejudice, the GLNH TRO Action, all parties to bear their respective fees and expenses, promptly after the Effective Date.

9. Dismissal Without Prejudice of the Romspen Adversary. Receiver agrees to reasonably cooperate with Romspen to dismiss, without prejudice, the Romspen Adversary. Romspen shall be entitled to determine when to pursue such dismissal.

10. Payment to Receivership Estate. Romspen agrees to pay the Receiver, for the benefit of the receivership estate, the sum of Two Hundred Twenty-Five Thousand and NO/100 Dollars ($225,000.00). Payment shall be due within three (3) business days after both of the following have occurred: (a) Romspen or its designee, or a third-party purchaser for value at a sale approved and/or conducted by Romspen, takes title to the 1001 West Loop Property; and (b) the RIC BK Case is resolved either through entry of an order confirming the RIC Plan or entry of an order dismissing the RIC BK Case.

11. Release of Romspen Release Parties. Contingent upon performance of, and except for, Romspen's obligations under this Agreement, upon the Effective Date, the Receiver, for the receivership estate, Choudhri, GLNH, Milestone, OTISCO, and all other Choudhri-related





Unofficial Copy Office of Marilyn Burgess District Clerk

businesses and interests under the Receiver's control, shall and hereby does release, remise and forever discharge Romspen and its respective officers, partners, managers, directors, employees, agents, representatives, attorneys and their respective successors, insurers and assigns, legal representatives, past and present affiliates, divisions, companies, associations, partnerships and businesses ("Romspen Release Parties") from any and all actions, suits, debts, demands, accounts, claims, counterclaims, bonds, guaranties, obligations, bills, liabilities, controversies, damages, attorneys' fees and litigation costs, judgments and causes of action, in law, in equity, or otherwise ("Claims") which the Receiver ever had, now has, or may have in the future against the Romspen Release Parties.

12. Further Assurance. The Parties each shall execute and/or deliver such additional documents, and do such other acts as may be reasonably required in connection with the transactions contemplated by this Agreement.

13. Miscellaneous.

a. Third Party Beneficiaries. With the exception of the Romspen Release Parties, expressly including RIC, all of whom are expressly third party beneficiaries of this Agreement, this Agreement is made for the sole protection and benefit of the Parties hereto and no other person or entity shall have any right of action hereon or be a third party beneficiary hereof.

b. Entire Agreement. This Agreement embodies the entire agreement of the Parties with regard to the subject matter hereof. There are no representations, promises, warranties, understandings or agreements expressed or implied, oral or otherwise, in relation thereto, except those expressly referred to or set forth herein. Each of the Parties acknowledges that the execution and delivery of this Agreement is its free and voluntary act and deed, and that said execution and delivery have not been induced by, nor done in reliance upon, any representations, promises, warranties, understandings or agreements made by either Party, its agents, officers, employees or representatives.

c. Changes in Writing. No promise, representation, warranty or agreement made subsequent to the execution and delivery of this Agreement by any party hereto, and no revocation, partial or otherwise, or change, amendment or addition to, or alteration or modification of, this Agreement shall be valid unless the same shall be in writing signed by all of the Parties.

d. Time of the Essence. Time is expressly made of the essence of this Agreement.

e. Choice of Law and Venue. This Agreement shall be governed by and construed according to the laws of the State of Texas, without regard to conflicts of law principles. Any and all disputes arising from and/or relating to this Agreement shall exclusively be pursued in any state and/or federal court located in the State of Texas.

f. Attorneys' Fees. Should any Party hereto breach any term of this Agreement, the breaching Party shall pay the non-breaching Party all reasonable attorneys'





Unofficial Copy Office of Marilyn Burgess District Clerk

fees and other costs and fees incurred by the non-breaching Party in enforcing this Agreement or preparing for legal or other proceedings, whether or not said proceedings are instituted. In the event a lawsuit or other proceeding is brought by any Party based on this Agreement or breach thereof, the prevailing Party shall be entitled to recover its reasonable attorneys' fees and other costs and fees incurred enforcing this Agreement.

g. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be considered an original counterpart. Any signed Agreement or signature page to this Agreement that is transmitted by facsimile or in the portable document format (.pdf) shall be treated in all respects as an original Agreement or signature page.

h. Waiver of Presumptions. The Parties hereby waive the presumption that any ambiguities in a contract are read against the drafter of same. The Parties further agree that this Agreement was negotiated by the Parties and that each of them is the drafter of every part of this Agreement.

i. Headings. The headings or captions of sections and subsections in this Agreement are for convenience and reference only, do not define, control, or limit the provisions of such sections or paragraphs, and shall not affect the interpretation of this Agreement.

j. USE OF COUNSEL. THE PARTIES: (i) HAVE HAD AN OPPORTUNITY TO RETAIN LEGAL COUNSEL; AND (ii) ACKNOWLEDGE AND AGREE THAT PRIOR TO THEIR EXECUTION OF THIS AGREEMENT THEIR RESPECTIVE COUNSEL ADVISED THEM OF THE EFFECTS OF THIS AGREEMENT.

k. Notice. Any notice or communication required hereunder between the Parties must be in writing, and may be given personally, by next-day delivery through a nationally known overnight delivery service (such as, but not limited to, Federal Express or United Parcel Service), by certified or registered mail, or, if an email address is provided below, by email. Notice shall be deemed to have been given and received by the earlier of the date delivered to the Party to whom it is addressed and the date delivered to such Party's counsel. Any Party hereto may at any time, by giving ten (10) days' written notice to the other Party hereto, designate any address other than the one shown below and in substitution of the address shown below, or any additional address, to which such notice or communication shall be given. Notices under this Agreement shall be given to the Parties at their addresses set forth below:

Unofficial Copy Office of Marilyn Burgess District Clerk

| If to Receiver: | With a copy to: |
|---|---|
| Travis B. Vargo<br>12012 Wickchester, Suite 670<br>Houston, Texas 77079<br>Email: tvargo@vargolawfirm.com | Leslie M. Luttrell<br>Luttrell + Carmody Law Group<br>100 N.E. Loop 410, Ste. 615<br>San Antonio, Texas 78216<br>Email: luttrell@lclawgroup.net |

**EXECUTION VERSION**

| If to Romspen and/or RIC: | With a copy to: |
|---|---|
| TIG Romspen US Master Mortgage LP<br>Attn: Mark Aber<br>162 Cumberland Street, Suite 300<br>Toronto, Ontario M5R 3N5<br>Markaber@Romspen.com | Bryan Cave Leighton Paisner LLP<br>Attn: Kyle S. Hirsch, Esq.<br>2200 Ross Avenue, Suite 4200W<br>Dallas, Texas 75201<br>Kyle.Hirsch@bclplaw.com |

l. No Admission of Liability. By entering into this Agreement, none of the Parties admit to any liability or wrongdoing whatsoever with respect to any claims or conduct heretofore or hereinafter asserted by any of the Parties hereto, and all Parties expressly deny any and all such liability and wrongdoing. The Parties acknowledge and agree that this Agreement may not be used as evidence to prove any alleged wrongdoing or any other alleged wrong, other than a failure to comply with the terms of this Agreement in any action or proceeding initiated by the Parties or any other individual or entity against the Parties. The Parties agree that this Agreement may be used as evidence in any action to enforce the terms of this Agreement.

m. Severability. If any of the provisions in this Agreement are determined to be invalid by a court, arbitrator, or government agency of competent jurisdiction, it is agreed that such determination shall not affect the enforceability of the other provisions herein. Notwithstanding the foregoing sentence, if a court, arbitrator, or government agency of competent jurisdiction issues a final ruling that Receiver lacks the authority to enter into this Agreement on behalf of Choudhri, OTISCO, Milestone, GLNH, or any other entity for whom Receiver makes agreements, acknowledgements, or affirmations herein or for whom Receiver is granting releases in favor of the Romspen Released Parties; and if in that event, Claims otherwise resolved and/or released herein are pursued against any of the Romspen Release Parties, then Romspen's payment obligations as set forth in Paragraph II.7 hereof shall be of no force or effect, and any payment made by Romspen on account of Paragraph II.7 shall be promptly returned to Romspen.

n. Integration. No promises, representations, understandings, or warranties have been made by any Party other than those that are expressly contained herein. This Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements between the Parties, written or oral, pertaining to the same subject matter of this Agreement.

Unofficial Copy Office of Marilyn Burgess District Clerk

o. Warranty of Right and Authority. Each of the Parties to this Agreement expressly acknowledges that the execution, delivery and performance of this Agreement (a) are within its powers; (b) have been duly authorized by all necessary action on its behalf and all necessary consents or approvals have been obtained and are in full force and effect; and (c) do not violate any of the terms and conditions of: (i) its governing documents; and (ii) any Applicable Law. For purposes of this Agreement, "Applicable Law" means all existing laws, rules, regulations, statutes, treaties, codes, ordinances, permits, certificates, orders, decrees, licenses and concessions or any interpretations by, any governmental authority that are applicable to the relevant Party and the transactions contemplated by this Agreement. Each of the Parties that is not a natural person further warrants that the person signing on its behalf is duly authorized by appropriate entity action to sign this Agreement and bind their respective entities to it. The Receiver warrants and represents that his authority to enter into this Agreement is derived exclusively from the A-Case Receivership Order, the D-Case Receivership Order and the Authority Orders.

p. Construction. Should any term or provision of this Agreement be construed to be against public policy or determined by a court of competent jurisdiction to be void, invalid or unenforceable, such construction and decision shall affect only those paragraphs, clauses or provisions so construed or interpreted, and shall in no way affect the remaining paragraphs, clauses or provisions of this Agreement, which shall remain in force.

q. Calculation of Time. In the event that the first day a notice is deemed given under this Agreement, or the date for the performance of any obligation hereunder, falls on a Saturday, Sunday or legal holiday, the date such notice is deemed given, or the date for performance of such covenant or obligation, will be extended to the next Business Day. If any deadline or notice date herein is extended to the next Business Day, and such deadline is used to calculate a subsequent date, the extended date that falls on the next Business Day will be used to calculate the subsequent date. Unless otherwise provided in this Agreement, all time periods will be in calendar days. "Business Day" shall mean a day that is not a Saturday, Sunday or legal holiday.

(Execution Page To Follow)

Unofficial Copy Office of Marilyn Burgess District Clerk

**EXECUTION VERSION**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Execution Date.

| |
|---|
| **Travis Vargo, State Court-Appointed Receiver**<br>By: ______________ Receiver<br>Name: Travis B. Vargo |
| **TIG Romspen US Master Mortgage LP,** a Cayman Islands exempted limited partnership<br><br>By: Romspen US Mortgage GP Inc.,<br>An Ontario corporation, its general partner<br><br>By: ______________<br>Name:<br>Its: |

Unofficial Copy Office of Marilyn Burgess District Cle

**EXECUTION VERSION**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Execution Date.

| |
|---|
| **Travis Vargo, State Court-Appointed Receiver**<br><br>By:________________________<br>Name: Travis B. Vargo |
| **TIG Romspen US Master Mortgage LP,** a Cayman Islands exempted limited partnership<br><br>By: Romspen US Mortgage GP Inc.,<br>An Ontario corporation, its general partner<br><br>By:________________________<br>Name: J. Mickel...<br>Its: A.S.O. |

Unofficial Copy Office of Marilyn Burgess District Cle

**EXECUTION VERSION**

**EXHIBIT II.4**

Form of Judgment in the Romspen Enforcement Action
(To Follow)

Unofficial Copy Office of Marilyn Burgess District Clerk

CAUSE NO. 2023-84714

| | | |
|---|---|---|
| TIG ROMSPEN US MASTER MORTGAGE LP,<br><br>Plaintiff,<br><br>v.<br><br>GALLERIA LOOP NOTE HOLDER, LLC; and ALI CHOUDHRI, an individual,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br><br><br>80TH JUDICIAL DISTRICT<br><br><br>OF HARRIS COUNTY, TEXAS |

Unofficial Copy Office of Marilyn Burgess District Clerk

**FINAL JUDGMENT**

Plaintiff TIG Romspen US Master Mortgage LP ("Plaintiff") and Defendants Galleria Loop Note Holder, LLC ("GLNH") and Ali Choudhri, an individual ("Choudhri" and, together with GLNH, "Defendants"), by and through Travis Vargo as state court-appointed receiver ("Receiver"), stipulate to the entry of this Judgment.

The Court hereby finds as follows:

A. As of May 31, 2019, Plaintiff and GLNH entered into a loan transaction (the "Loan") evidenced by, among other things: (i) that certain Loan Agreement (the "Loan Agreement") and (ii) that certain Promissory Note, as amended by that Amended and Restated Promissory Note (together, the "Note") in the original principal amount of $25,678,501.32. Plaintiff is the current holder of the Note.

B. GLNH's payment and performance obligations are secured by, among other things, certain real property, related personal property, and improvements thereon located at 1001 West Loop South, Houston, Texas, 77027 (the "Property"), as more fully described in, among other things: (i) that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 4, 2019, and recorded on September 5, 2019, in the Official

Records of Harris County, Texas at Document Number RP-2019-392981 (the "Deed of Trust"); and (ii) that certain Assignment of Leases and Rents dated September 4, 2019, and recorded on September 5, 2019, in the Official Records of Harris County, Texas at Document Number RP-2019-393175 (the "Assignment of Rents").

C. Under the Loan Agreement, GLNH's failure to pay or perform as agreed constitutes a default, and if, after notice and an opportunity to cure, the failure continues, such failure constitutes an Event of Default.

D. Upon the occurrence of an Event of Default, Plaintiff is entitled to, among other things, (i) accelerate the maturity of the Note (if not already matured), (ii) demand immediate payment thereof plus interest at the default rate that is 5.0% higher than the non-default rate, (iii) demand all rents (and proceeds thereof) and books and records relating to the operation of the Property, and (iv) recover all attorneys' fees and costs incurred in connection with collecting on the unpaid outstanding balance owed by GLNH.

E. Choudhri personally guaranteed GLNH's Loan repayment and performance obligations as set forth in that certain Guaranty agreement dated as of May 31, 2019, executed by Choudhri in favor of Plaintiff (the "Guaranty").

F. Under the Guaranty, Choudhri absolutely, unconditionally, and irrevocably guaranteed to Plaintiff, as primary obligor and not merely as surety, the due, prompt, and full payment and performance of all liabilities, obligations, or undertakings owing by GLNH to Plaintiff of any kind or description arising out of or outstanding under, advanced or issued pursuant to, or evidenced by the Loan Agreement or other Loan documents or in any other agreement between GLNH and Plaintiff.

Unofficial Copy Office of Marilyn Burgess District Clerk

G. Among other things, Choudhri unconditionally agreed: (i) to pay to Plaintiff the full amount of the Loan as and when the same became due and payable under the Loan documents and (ii) to repay all attorneys' fees and costs incurred by Plaintiff in connection with enforcing the Guaranty and/or any Loan document.

H. GLNH defaulted under the Loan in numerous ways, including but not limited to: failing to repay the outstanding balance of the Note when it matured on May 31, 2020; failing to pay property taxes when due, resulting in the filing of third party tax liens; permitting additional liens to be placed against the Property; and failing to cure the same within the applicable cure period (the "Maturity Date Defaults"). As a result of the Maturity Date Defaults, Plaintiff has the lawful right to enforce its rights and remedies.

I. Plaintiff, through its legal counsel, provided written notice to Defendants and numerous opportunities to cure their defaults. Despite such notice and opportunity to cure, Defendants failed to cure.

J. Plaintiff, through its legal counsel, demanded as of no later than October 13, 2023, immediate repayment of the outstanding Loan and Guaranty obligations. Defendants failed and/or refused to pay as demanded by Plaintiff.

K. GLNH's failure to pay and perform as agreed under the Loan Agreement, the Note, the Deed of Trust, the Assignment of Rents, and other documents evidencing and relating to the Loan constitutes a breach by GLNH of its contracts with Plaintiff.

L. Choudhri's failure to pay and perform as agreed under the Guaranty constitutes a breach by Choudhri of his contract with Plaintiff.

M. On December 8, 2023, Plaintiff initiated this suit against Defendants to, among other things, recover on the unpaid Loan.



Unofficial Copy Office of Marilyn Burgess District Clerk

N. As of June 16, 2025, the following amounts remain unpaid, due and owing:

| | |
|---|---|
| Outstanding unpaid principal: | $20,464,692.94 |
| Property tax advances: | $494,020.22 |
| Outstanding unpaid interest at the non-default rate of 10.25%: | $10,354,024.02 |
| Outstanding unpaid interest at the additional 5.0% default rate: | $8,020,864.77 |
| Fees and other Loan Agreement charges: | $1,107,376.54 |
| Attorney's fees and other expenses incurred: | $1,903,328.39 |
| **TOTAL:** | **$42,371,306.88** |

O. Interest accrues on the outstanding unpaid balance at the default rate of 15.25% in the per diem amount of **$16,612.89**.

P. Plaintiff has been damaged as a result of Defendants' breaches in an amount calculated as the unpaid, due and owing amounts, plus interest thereon.

Q. Travis Vargo has been found by two United States Bankruptcy Judges to have the exclusive authority to represent the interests of Choudhri and entities controlled by Choudhri; one of those judges expressly affirmed Mr. Vargo's exclusive authority to represent the interests of GLNH. *See* "Order Granting the Receiver's Motion to Show Authority," *In re RIC (Lavernia) LLC*, Case No. 24-51195, United States Bankruptcy Court, W.D. Tex., ECF No. 304, p. 6 (October 17, 2025) (Parker, J.) ("The Receiver's authority to manage and operate Mr. Choudhri's business – to manage and operate where Mr. Choudhri has the right to manage and operate – includes the authority to litigate claims."); "Order Regarding Motions to Show Authority [ECF Nos. 837, 838, 839, 840, 970]," *In re 1001 WL, LLC*, Case No. 24-10119, United States Bankruptcy Court, W.D. Tex., ECF No. 996, p. 9 (October 20, 2025) (Bradley, J.) ("The Amended Orders are clear: The Receiver has the exclusive power to litigate on behalf of Mr. Choudhri and on behalf of BDFI, LLC, Galleria Loop Note Holder, LLC, and Jetall Capital LLC.").





Unofficial Copy Office of Marilyn Burgess District Clerk

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff TIG Romspen US Master Mortgage LP shall have and recover of and from Defendants Galleria Loop Note Holder, LLC and Ali Choudhri, jointly and severally, the following sums:

1. Actual damages in the amount of **$42,371,306.88** due to Defendants' breaches of their contractual obligations owed, plus interest at the daily rate of **$16,612.89** through the date of entry of Judgment; and

2. Post-Judgment interest at the rate of 15.25% per annum.

The foregoing amounts shall be reduced by any recovery by Plaintiff from any other collateral securing Defendants' payment and performance obligations in accordance with applicable law. However, nothing in this Judgment constitutes an order or direction that Plaintiff marshal assets towards recovery of the judgment amount; rather, Plaintiff may pursue recovery from any and all available sources in any order or manner not inconsistent with applicable law, in Plaintiff's sole and absolute discretion.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Judgment is final and that Plaintiff TIG Romspen US Master Mortgage LP is allowed such writs and processes as may be necessary in the enforcement and collection of this Judgment.

This Judgment disposes of all claims and all parties, and is therefore a final judgment that is appealable immediately upon entry.

SIGNED this _____ day of __________________, 20____.

Unofficial Copy Office of Marilyn Burgess District Clerk

______________________________

JUDGE PRESIDING

Stipulated and agreed by:
**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Justin D. Hanna*
Kyle S. Hirsch
Texas Bar No. 24117262
Justin D. Hanna
Texas Bar No. 24095726
2200 Ross Ave., Suite 4200W
Dallas, Texas 75201
(214) 721-8000 (Telephone)
(214) 721-8100 (Facsimile)
kyle.hirsch@bclplaw.com
justin.hanna@bclplaw.com

**ATTORNEYS FOR PLAINTIFF RIC (LAVERNIA) LLC**

**LUTTRELL + CARMODY LAW GROUP**

*/s/ Leslie M. Luttrell*
Leslie M. Luttrell (Tex. Bar No. 12708650)
One International
100 N.E. Loop 410, Suite 615
San Antonio, TX 78216
Telephone: 210-426-3600
Email: luttrelll@lclawgroup.net

**COUNSEL FOR TRAVIS VARGO, AS RECEIVER**

Unofficial Copy Office of Marilyn Burgess District Clerk

**EXHIBIT II.5**

Form of Judgment in the RIC Lien Action
(To Follow)

Unofficial Copy Office of Marilyn Burgess District Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:**<br><br>**RIC (LAVERNIA) LLC,**<br><br>**Debtor** | § § § § § § | **Case No. 24-51195-mmp**<br><br>**Chapter 11** |
| **RIC (LAVERNIA) LLC,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**MILESTONE CAPITAL CRE 1, LLC; LORI DAVES AND JOHN DAVES, AS SUBSTITUTE TRUSTEE; ANDRES CEDILLOS,**<br><br>**Defendants** | § § § § § § § § § § § § § | **Adversary No. 24-05043-mmp** |

Unofficial Copy Office of Marilyn Burgess District Clerk

**STIPULATED JUDGMENT**

Plaintiff RIC (Lavernia) LLC ("**Plaintiff**") and Defendant Milestone Capital CRE 1, LLC ("**Milestone**"), by and through Travis Vargo as state court-appointed receiver ("**Receiver**"), stipulate to the entry of this Judgment.

The Court finds and concludes as follows:

1. Plaintiff owns good and valid title to the property that is described on Exhibit A hereto (the "**Property**").

2. This Judgment incorporates by this express reference the allegations set forth in Paragraphs 2.1-2.8 of this Court's *Order Granting Plaintiff's Motion For Sanctions* entered on October 9, 2025 [ECF 176] (the "**Sanctions Order**"), which allegations are deemed to be true.

3. The Receiver has the exclusive authority to represent the interests of Milestone in this adversary proceeding. *See In re RIC (Lavernia) LLC*, Case No. 24-51195, United States Bankruptcy Court, W.D. Tex., ECF Nos. 304, 305.

Given the foregoing, **JUDGMENT IS HEREBY RENDERED** that:

A. The Deed of Trust and Security Agreement dated January 2, 2023, and recorded on May 23, 2023, in the Official Public Records of Wilson County, Texas (the "**Wilson County Records**") (Document No. 2023-132703) (the "**Milestone DOT**"), which purports to secure repayment by OTISCO RDX, LLC of a promissory note in the original principal amount of $5,900,000 payable to Milestone, is invalid, void, and of no force or effect.

B. Upon recording of this Judgment in the Wilson County Records, the Milestone DOT is deemed expunged. For the avoidance of any doubt, Milestone has no right, title and/or interest in the Property, and upon the recording of this Judgment in the Wilson County Records, any purported right, title and/or interest of Milestone in the Property reflected in the Wilson County Records is deemed expunged.

Unofficial Copy Office of Marilyn Burgess District Clerk

###

Stipulated and agreed by:
**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Justin D. Hanna*
Kyle S. Hirsch
Texas Bar No. 24117262
Justin D. Hanna
Texas Bar No. 24095726
2200 Ross Ave., Suite 4200W
Dallas, Texas 75201
(214) 721-8000 (Telephone)
(214) 721-8100 (Facsimile)
kyle.hirsch@bclplaw.com
justin.hanna@bclplaw.com

**ATTORNEYS FOR PLAINTIFF RIC (LAVERNIA) LLC**

**LUTTRELL + CARMODY LAW GROUP**

*/s/ Leslie M. Luttrell*
Leslie M. Luttrell (Tex. Bar No. 12708650)
One International
100 N.E. Loop 410, Suite 615
San Antonio, TX 78216
Telephone: 210-426-3600
Email: luttrelll@lclawgroup.net

**COUNSEL FOR TRAVIS VARGO, AS RECEIVER**

Unofficial Copy Office of Marilyn Burgess District Clerk