**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-10119-SMR |
| | § | |
| 1001 WL, LLC, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

**MOTION OF ARABELLA PH 3201 LLC, JOINED BY ALI CHOUDHRI, UNDER BANKRUPTCY RULE 9024 TO VACATE THE ORDER REGARDING MOTIONS TO SHOW AUTHORITY [ECF NO. 996] OR, IN THE ALTERNATIVE, TO CLARIFY ITS SCOPE**

TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:

Travis B. Vargo, the purported receiver, is referred to here as “Vargo.” The judgment is on appeal, and Choudhri contends it is void. Referring to him by name or as the purported receiver concedes nothing.

Arabella PH 3201 LLC (“Arabella”), an interested party, through its counsel, and Ali Choudhri (“Choudhri”), pro se, who joins in this motion (together, “Movants”), move under Federal Rule of Civil Procedure 60(b)(1), (3), (4), (5), and (6), made applicable by Federal Rule of Bankruptcy Procedure 9024, to vacate the Order Regarding Motions to Show Authority [ECF No. 996] (the “Authority Order”) or, in the alternative, to clarify its scope, and respectfully shows:

Arabella is an interested party because Vargo has used this Court’s order against it. On June 23, 2026, he told the 333rd District Court of Harris County that it “should affirm Receiver control of Arabella,” describing this Court’s ECF No. 996 as “finding Receiver had the sole authority to litigate on behalf of BDFI LLC, Galleria Loop Note Holder, LLC and Jetall Capital, LLC, and Choudhri himself”. Receiver’s Reply, Cause No. 2012-27197-A (June 23, 2026) (Ex. A). Arabella is a different company related to the condominium where Choudhri lives. It was not a party to the proceedings that produced ECF No. 996 and received no notice of them. A writ of possession and an order voiding certain deeds relating to the condominium followed on July 28, 2026. Id. Arabella’s own Chapter 11 case is pending in the District of Wyoming, In re Arabella PH 3201

LLC, No. 26-20432. Arabella reserves all rights, claims, and defenses, and nothing in this motion is an admission concerning title to or interests in any property.

**REQUEST FOR EXPEDITED CONSIDERATION.** This Court's Authority Order is being used right now to obtain a final state-court judgment of $42,371,306.88, plus $16,612.89 per day and 15.25% post-judgment interest, against Choudhri personally and against Galleria Loop Note Holder, LLC. On October 7, 2026, TIG Romspen US Master Mortgage LP submitted a revised proposed Final Judgment to the 333rd District Court of Harris County that is "unopposed by Travis Vargo" on Defendants' behalf and asks that court to find that "Travis Vargo has been found by two United States Bankruptcy Judges to have the exclusive authority to represent the interests of Choudhri and entities controlled by Choudhri," quoting this Court's ECF No. 996 by page. The state court may sign it at any time; it is set for no hearing. The proposed judgment is not only a money award: it recites seventeen findings, entered without evidence on Vargo's non-opposition, including that Vargo's exclusive authority over "Choudhri and entities controlled by Choudhri" was found by this Court, and that Romspen "is the current holder of the Note." Once signed, those findings will be offered as preclusive in other proceedings, including against this motion. Choudhri therefore asks the Court to hear this motion on an expedited basis, as set out in the accompanying motion for expedited hearing, and, pending a ruling, to confirm that ECF No. 996 does not authorize Vargo to consent to, or decline to oppose, a money judgment against Choudhri or Galleria Loop Note Holder, LLC.

Unofficial Copy Office of Marilyn

> Q. Travis Vargo has been found by two United States Bankruptcy Judges to have the exclusive authority to represent the interests of Choudhri and entities controlled by Choudhri; one of those judges expressly affirmed Mr. Vargo's exclusive authority to represent the interests of GLNH. *See* "Order Granting the Receiver's Motion to Show Authority," *In re RIC (Lavernia) LLC*, Case No. 24-51195, United States Bankruptcy Court, W.D. Tex., ECF No. 304, p. 6 (October 17, 2025) (Parker, J.) ("The Receiver's authority to manage and operate Mr. Choudhri's business – to manage and operate where Mr. Choudhri has the right to manage and operate – includes the authority to litigate claims."); "Order Regarding Motions to Show Authority [ECF Nos. 837, 838, 839, 840, 970]," *In re 1001 WL, LLC*, Case No. 24-10119, United States Bankruptcy Court, W.D. Tex., ECF No. 996, p. 9 (October 20, 2025) (Bradley, J.) ("The Amended Orders are clear: The Receiver has the exclusive power to litigate on behalf of Mr. Choudhri and on behalf of BDFI, LLC, Galleria Loop Note Holder, LLC, and Jetall Capital LLC.").

*Excerpt — Proposed Final Judgment, No. 2023-84714, ¶ Q (highlighting added).*

## I. SUMMARY

1. The Authority Order was entered on five days' notice, on a motion that told the Court Vargo held "sole ownership and operational control" of Choudhri-related LLCs. Vargo had testified under oath months earlier that his orders gave him distributions, not the LLCs. He did not tell this Court that. Since entry, he has used the Authority Order in other courts to claim control of entities this Court never considered. The order should be vacated. If the Court declines to vacate it, the Court should at least confirm its limits.

## II. JURISDICTION AND TIMELINESS

2. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and to interpret and enforce its own orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). The Authority Order was entered October 20, 2025. This motion is filed within one year of entry, as Rule 60(c)(1) requires for grounds (1) through (3), and within a reasonable time for the remaining grounds.

## III. BACKGROUND

3. Vargo filed his Motion to Show Authority on October 4, 2025 [ECF No. 970]. The Court heard it on October 9, 2025, with TIG Romspen's four ex parte motions [ECF Nos. 837–840], in a hearing consolidated with *In re Texas REIT, LLC*, No. 24-10120-smr. ECF No. 996 at 1–2.

4. Romspen's four motions were filed by a party whose own documents say it had already assigned the loan. Romspen moved as "senior secured lienholder." ECF No. 837 at 1. But its sworn Amended Proof of Claim calls RIC (LaVernia), LLC "Romspen's assignee" as of February 6, 2024, Claim No. 1-2, Attachment at 2; its counsel's trustee's deed, recorded March 26, 2024 (Wilson County Instrument No. 2024-141143), recites that the loan is "currently held by" RIC (LaVernia); and six days after filing ECF Nos. 837–840, its counsel testified that "TIG Romspen assigned its interest to RIC (Lavernia)" in an "assignment from one affiliate to another." Hirsch Dep. 60:11–24, 86:7–9 (July 31, 2025). Choudhri has filed a separate motion asking the Court to require Romspen to show its authority for every filing it has made since February 6, 2024, and to strike those filings and vacate the orders entered on them if it cannot.

5. The Court held that the Amended Orders' "Debtor's Business" paragraph vests in Vargo the power to manage and operate the business of the judgment debtors not in bankruptcy, including authority to litigate for Choudhri and for BDFI, LLC, Galleria Loop Note Holder, LLC, and Jetall Capital LLC. ECF No. 996 at 7–8. The Court stated that *WC 4th & Colorado* was not relevant "as the Choudhri LLCs are exempt from turnover in the Amended Orders." *Id.* at 8 n.36. It ordered that the named attorneys lack authority to represent those parties "in this Court or any other Court." *Id.* at 9.

| Issue | *WC 4th & Colorado* | Choudhri Receivership Orders (April 2025) |
|---|---|---|
| What the order says about entity interests | Receiver may seize the debtor's interests and "sell, manage, and operate" them | LLC ownership interests are **excluded** from Receivership Assets (A-Case ¶ 8; D-Case ¶ 14) |
| Remedy against LLC interests | Direct control | Charging order only, reaching distributions (A-Case ¶ 18; D-Case ¶ 24; Tex. Bus. Orgs. Code § 101.112) |
| *Heckert* exception | Applied on an evidentiary record: entity not operating, no one's interests disrupted | **Never.** No evidentiary hearing, no findings |
| Rule | Receiver has only the powers the order gives (*Ex parte Hodges*) | Same rule, opposite result: the order withholds what *WC 4th*'s order granted |

*Summary chart: WC 4th & Colorado, LP v. Colorado Third Street, LLC compared with the Choudhri Receivership Orders (prepared by Movant; highlighting added)*

[35] ECF No. 931-1 at ¶ 41; ECF No. 931-2 at ¶ 47.
[36] The parties dispute the effect of *WC 4th & Colo. v. Colo. Third St., LLC*, No. 14-22-00764-CV, 2025 Tex. App. LEXIS 2857 (Tex. App.—Houston [14th Dist.] Apr. 29, 2025, no pet. h.). However, this case is not relevant to the Court's decision here, as the Choudhri LLCs are exempt from turnover in the Amended Orders. ECF No. 931-1 at ¶¶ 8, 17; ECF No. 931-2 at ¶¶ 14, 15,
[37] ECF No. 931-1 at ¶ 20; ECF No. 931-2 at ¶ 26.

*Excerpt — 1001 WL ECF No. 996 n.36 (highlighting added).*

6. On January 23, 2026, the Court denied Choudhri's motion to reconsider [ECF No. 1042].

7. Since then, Vargo has cited the Authority Order in the 333rd Judicial District Court as support for "operational control of the Choudhri LLC's" (Ex. A), and offered it in *In re MCITBE, LLC*, No. 26-32580-mvl11 (Bankr. N.D. Tex.), in seeking dismissal of that Chapter 11 case for lack of authority, although MCITBE's sole member of record is Shahnaz Choudhri (Ex. B). At the September 23, 2026 hearing in that case, his counsel told the court that Judges Robinson, Bradley, and Parker "have made determinations that Mr. Vargo is in charge of and has control over the Choudhri LLCs." Hearing Tr. 51:16–22 (Exhibit C). The court declined to admit those orders as evidence. *Id.* at 108:15–109:13. On cross-examination, shown paragraph 8 of the A Case Order, Vargo answered, "That's what it says here." *Id.* at 170:14–21. Asked for his proof that Choudhri

owns MCITBE, he pointed to the listing at paragraph 9(n) and said, "I'm relying upon Judge Wilson's orders." *Id.* at 173:2–6, 178:14.

Q Number 8, it's saying that the assets that you can take
over have to be owned by Choudhri, correct? Under Number 8.
A Yes.
Q Except for his ownership interests in any limited
liability company, correct?
A That's what it says here.
Q Well, is that correct?
A Well, that's what it says here.

*Excerpt — MCITBE transcript, Tr. 170:14–21 (In re MCITBE LLC, No. 26-32580, Sept. 23, 2026) (highlighting added).*

8. This motion does not re-urge the arguments decided in the Order Denying Ali Choudhri's Motion to Reconsider [ECF No. 1042]. It does not re-argue the supersedeas, the appeals of the original turnover orders, abstention, or the *WC 4th* and *Heckert* charging-order argument. It rests on grounds the Court has not considered: Vargo's undisclosed prior sworn account of his authority, the notice actually given, the factual premise of the order, and events since entry.

9. The judgments the Amended Orders enforce remain on appeal. Choudhri, Dalio Holdings I, and Dalio Holdings II appealed the A-Case judgment, and Choudhri appealed the D-Case judgment; Vargo himself so stated in this Court. Choudhri does not ask this Court to address those appeals or the supersedeas question. Two consequences follow. First, if either judgment is reversed or vacated, Rule 60(b)(5) independently authorizes relief from an order "based on an earlier judgment that has been reversed or vacated," and Choudhri reserves that ground. Second, the equities of continued prospective application weigh differently while the judgments are under review: Vargo has used the Authority Orders to stipulate to new personal liability, void a lien, and obtain possession and sale of Choudhri's residence, steps that cannot readily be undone if the judgments fall.

## IV. GROUNDS FOR VACATUR

**A. Rule 60(b)(3): the Authority Order was obtained through fraud, misrepresentation, and misconduct — Vargo presented the Amended Orders as granting control he had disclaimed under oath, and concealed his own contrary sworn statements and filings.**

10. Vargo's representations were material and knowing. He made them to obtain relief, in this Court, after telling this Court under oath that he held "a right to his distributions only," after writing that he held "a charging order over the LLCs only," and after filing, through the same counsel, a motion stating that his control was "excluding management rights in the Choudhri LLC's." He did not disclose any of those statements when he sought the Authority Order. Those are misrepresentations of material fact made with knowledge of their falsity, and omissions of facts he had a duty to disclose to the Court, and they prevented Choudhri from fully and fairly presenting his case. Fed. R. Civ. P. 60(b)(3); see Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978). Choudhri asks the Court to find so.

> Receivership Order (collectively the "Receivership Orders"), the Receiver was given exclusive control over all of the Choudhri Receivership Assets, as therein defined, excluding management rights in the Choudhri LLC's, as defined in the Receivership Orders. Subsequent to the entry of the Receivership Orders, the 14th Court of Appeals published its opinion in *WC 4th & Colo. V. Colo. Third St., LLC* which likely impacts the

*Excerpt — 1001 WL ECF No. 935 (Aug. 29, 2025) (highlighting added).*

> 24-10119-smr Doc#979 Filed 10/08/25 Entered 10/08/25 11:40:58 Main Document Pg 12 of 27
>
> Kell,
>
> The Order speaks for itself. However, I read and the law is that Receiver has a charging order over the LLCs **only**. I do **not** direct the acts and conduct of following entities and their lawyers:
>
> 1. Milestone Capital CRE 1, LLC
> 2. Galleria Loop Noteholder, LLC

*Excerpt — Vargo email to Kell Mercer (Apr. 4, 2025), 1001 WL ECF No. 979 (highlighting added).*

11. Rule 60(b)(3) permits relief for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." The movant must show by clear and convincing evidence that the adverse party engaged in misrepresentation or misconduct that

prevented the movant from fully and fairly presenting his case. *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005). Relief does not require that the result would have been different.

12. The Receiver's Motion to Show Authority told this Court that the Amended Orders gave him "sole ownership and operational control of BDFI, LLC, Galleria Loop Note Holder, LLC, and Jetall Capital LLC . . . as well as all of the non-exempt assets of Ali Choudhri." ECF No. 970 at 2 (quoted in ECF No. 996 at 3). The Amended Orders say the opposite about ownership: they exclude Choudhri's "ownership interests in any limited liability company" from Receivership Assets, as this Court recognized. ECF No. 996 at 7, 8 n.36.

13. That representation was contrary to Vargo's own sworn account. On April 3, 2025, under oath before Judge Robinson in *WCW Houston Properties v. Texas REIT*, Adv. No. 24-01045-smr, Vargo testified that the turnover orders entitled him to distributions on Choudhri's LLC interests and did not turn over the LLCs themselves. The Court told him it was "taking everything as you're saying right now under oath." Tr. 13:16–20 (Apr. 3, 2025), In re Texas REIT, LLC, No. 24-10120, and Adv. No. 24-01045 (Exhibit D). Asked, "Are you seeking to exercise control over those LLC interests?" he answered, "No." Id. at 19:19–23. He testified that "[t]his order does not turn over his LLC interest to me," id. at 21:17–19; agreed that he was "not taking the position that this order allows [him] to take possession of Mr. Choudhri's LLC interest," id. at 22:19–22; stated that "there's only a charging order" and that he was "entitled to distributions from his LLC interests to the extent that they're made," id. at 27:1–6; and said, "I have a right to his distributions only," id. at 35:6. Counsel for the judgment creditors then told the Court, "we'll submit an amended order to Judge Wilson" that "will address all of the issues that you addressed." Id. at 52:11–23. The Amended Orders followed five and six days later. The next day, he confirmed the same position in writing to Choudhri's bankruptcy counsel. Apr. 4, 2025 email from Vargo to Kell Mercer (ECF No. 979, Ex. 1; Exhibit E). The Amended Orders entered days later on April 8 and 9, 2025, narrowed Vargo's reach further by expressly excluding Choudhri's "ownership interests in any limited liability company" from Receivership Assets. On September 23, 2026, he

confirmed that his April 2025 position predated *WC 4th & Colorado* and that the opinion post-dates the Amended Orders. Hearing Tr. 141:4–21 (Exhibit C).

**THE COURT:** And the non-exempt asset of Choudhri then would be the LLC interest in Texas REIT.

**MR. VARGO:** I believe that -- the answer to that is no, Judge. This order does not turn over his LLC interest to me.

*Excerpt — Texas REIT transcript, Tr. 21:15–19 (Apr. 3, 2025) (highlighting added).*

14. Vargo's own counsel said the same thing to Judge Robinson eight days later. At the April 11, 2025 hearing in In re Texas REIT, LLC, Brian Cumings, appearing "for Travis Vargo," said his reading of the receivership order was that "it is not intended to do anything other than be a charging order as to the entities. In other words, the judgment creditor, in this case the receiver, doesn't have control of any of the bankrupt entities." Tr. 47:13–21 (Apr. 11, 2025), No. 24-10120 (Exhibit P). He added that Vargo "never intended to and will not be taking any actions that would disrupt what the trustee in this case will be intended to do or, for that matter, 1001." Id. at 42:2–5. Mr. Cumings was at the same time counsel to John Patrick Lowe, the trustee in In re 1001 WL, LLC, No. 24-10119, a debtor the amended receivership order itself names among the receivership's defined "bankrupt LLCs." Id. at 37:12–16 ("That does include 1001 WL, LLC"). He was thus representing Vargo under an order that lists the very estate whose trustee he also represented. The Court asked him, "How is this not a conflict of interest in 1001?" Id. at 36:14–17, 47:2–8. He answered that if the trustee shared Mr. Mercer's concern, "I think I would have to withdraw." Id. at 48:1–3. Mr. Cumings continues to represent Mr. Lowe in this case. Six days after that hearing, the trustee moved for approval of Graves Dougherty's continued employment, attaching a supplemental declaration. ECF No. 715 & Ex. 1 (Apr. 17, 2025). GLNH, BDFI, and Choudhri objected, ECF No. 737 (Apr. 30, 2025); the trustee responded, ECF No. 750; and the motion was approved at the June 27, 2025 hearing. After conversion, Mr. Cumings filed a new verified Rule 2014 declaration on February 19, 2026. In it he states that "Travis Vargo, a party-in-

interest in this proceeding, briefly retained GDHM on a limited scope in a bankruptcy case filed by an affiliate of 1001 WL, LLC and has retained GDHM to represent him in an unrelated case, In re Private Lender Network, LLC, Case No. 25-10742-smr," and that "if any matters arise in this bankruptcy case relating to Travis Vargo, the Trustee will handle them directly." ECF No. 1063-2 at 2 (Feb. 19, 2026). The same declaration discloses that GDHM was paid for its Chapter 11 work "through a surcharge on the collateral of Debtor's secured creditor," Romspen, and that Romspen's counsel contacted GDHM in August 2024 about serving as conflicts counsel. Id. at 2–3. So while this motion and Romspen's motions concerning Vargo's authority were pending, the trustee's counsel in this case was also Vargo's counsel in another case before this Court. Among the GLNH filings Romspen's ECF No. 837 sought to have silenced was GLNH's April 30, 2025 objection "to the continued employment of counsel for the Chapter 11 trustee." ECF No. 837 at 2 (citing ECF No. 737).

47

them to May 1st at 9:30 a.m. via Zoom for a status conference.
The only other thing I want to hear, Mr. Cumings, is from you. How is this not a conflict of interest in 1001? Are you going to be withdrawing under 1001 to represent --
**MR. CUMINGS:** No --
**THE COURT:** -- Mr. Lowe? Isn't it --
**MR. CUMINGS:** If the Trustee asks --
**THE COURT:** -- a conflict of interest?
**MR. CUMINGS:** -- me to. I don't think Mr. Lowe has the same reading of this as Mr. Mercer does. But obviously it's something I have to talk about with Mr. Lowe. He has seen a copy of the order, the amended order.
So my reading of the order, although it -- I do agree with Mr. Mercer, it could have been perhaps more clearly drafted -- is it is not intended to do anything other than be a charging order as to the entities.
In other words, the judgment creditor, in this case the receiver, doesn't have control of any of the bankrupt entities. Those are carved out from the other Choudhri entities. He may have control over other Choudhri entities that are not in bankruptcy but not the bankrupt ones.
I agree that, again, is not perhaps the best drafted order. But I know that the receiver has a different reading of

*Excerpt — Texas REIT transcript, Tr. 47 (Apr. 11, 2025) (highlighting added).*

15. Vargo's authority theory, in his own words, comes in three steps. First, under oath before the Bankruptcy Court on April 3, 2025, he disclaimed any control of the LLC interests: "I have a right to his distributions only." Tr. 35:6. Second, to obtain the Authority Order, he relied not

on anything in the receivership orders but on WC 4th & Colorado, an appellate opinion issued after those orders, which he had told this Court in August 2025 "likely impacts" the orders and would require their modification, and which he described in October as "presently pending before" the appointing court. Third, on September 23, 2026, again under oath and shown paragraph 8, he could not identify any provision of the orders giving him authority over an LLC ("No. We'd have to go through this," Tr. 154:1–4), agreed the orders exclude Choudhri's LLC ownership interests ("That's what it says here," Tr. 170:14–21), and acknowledged that WC 4th "post-dates" them (Tr. 141:19–21). The Authority Order thus rests on a theory Vargo had disclaimed under oath before it was entered and that, by his own later testimony, the orders themselves do not contain. That is the circumstance Rule 60(b)(3) addresses, and it warrants prompt correction.

16. Vargo said the same thing to Choudhri directly. In a recorded telephone call on August 1, 2025, asked about his April 2025 statement to Mr. Mercer that he did not direct the Choudhri entities, Vargo answered that "there was some changes in the law subsequent to that," identifying only "the decision in the W.C. Colorado case." He said he had authorized counsel for Milestone and Otisco "to continue objecting for the time being while I'm in limbo, and I get clarification as to my authority," and that he was "trying to get clarification on the legal rights that I'm allowed to pursue and negotiate and advocate for." Asked whether he would represent Choudhri, he said: "I can never represent you. I would have a conflict of interest representing you." He also confirmed that Romspen's counsel, Kyle Hirsch, had contacted him about the motion Romspen then filed to bar Choudhri from representing himself: "Kyle's the one who reached out to me first." Recorded call, Aug. 1, 2025 (Exhibit Q). Two months later, without the clarification he said he lacked, and while his application under WC 4th & Colorado remained pending before the receivership court, Vargo asked this Court to declare his authority, and on that authority later stipulated to a $42 million judgment against the man he said he could "never represent."

17. Vargo's own conduct confirms he knew the orders did not give him the LLC interests. In July 2025, he sent Choudhri a proposed "Agreed Order of Turnover" for the receivership court, reciting that "[u]pon agreement of the Judgment Debtor, Ali Choudhri," "one hundred percent

(100%) of the ownership, equity, units, interest, and/or shares" in Dalio Holdings LLC, Galleria West Loop Investment LLC, Meandering Bend LLC, Memorial Glen Cove LLC, and PBAC 507 Holdings, LLC "are turned over to Receiver Travis Vargo for liquidation." Proposed Agreed Order of Turnover, Cause No. 2012-27197-A (document dated July 10, 2025) (Exhibit R). Choudhri did not sign it. On the recorded August 1, 2025 call, Choudhri told Vargo he had never agreed to sign documents Vargo had sent. A receiver who already held those ownership interests under the Amended Orders would need neither the judgment debtor's agreement nor a new order to obtain them. Within weeks Vargo was telling bankruptcy courts that the existing orders already gave him that control.

18. The same theme runs through how Vargo presents himself to third parties. On August 19, 2026, his counsel wrote to the taxing authorities' counsel in a suit against Arabella PH 3201 LLC that "I represent Travis Vargo, who is the Court-Appointed Attorney for Ali Choudhri and two of his entities. The turnover orders are attached. They were entered in April 2025." The orders he attached are the April 2025 Amended Orders, whose ¶ 8 excludes Choudhri's "ownership interests in any limited liability company," yet the same email calls Arabella PH 3201 LLC a receivership asset "in custodia legis." The attached orders list "ARABELLA PH 3201 LLC" first among the "Choudhri LLC's" that are subject only to a charging order (A-Case Order ¶ 9(a); D-Case Order ¶ 16(a)). Their only "attorney" language is a limited power of attorney to sign the Debtor's name "to transfer real property titled in the names of Debtor" (A-Case Order ¶ 27; D-Case Order ¶ 33); the condominium is titled in Arabella PH 3201 LLC, not in Choudhri. Nothing in either order appoints Vargo as anyone's attorney. Six days later Vargo wrote that "I'm a receiver that's taken over the property . . . . I just need a couple months to sell it." Emails of Aug. 19 and 25, 2026, City of Houston v. Arabella PH 3201 LLC, No. 2023-67381. And on August 1, 2025 Vargo told Choudhri: "I can never represent you. I would have a conflict of interest representing you."

19. He relies on the authority orders in the same way in other courts. His July 14, 2026 motion to dismiss the MCITBE, LLC Chapter 11 states that "[t]he Receivership Orders determined that MCITBE is a 'Choudhri LLC' and the Authority Orders determined that the Receiver has the

exclusive power and authority to manage and operate the businesses of Choudhri," and that he was given exclusive control "[p]ursuant to the terms of the [Receivership Orders] as confirmed by the Authority Orders," defined as ECF No. 996 in 1001 WL, ECF No. 784 in Texas REIT, and ECF No. 304 in RIC (Lavernia), "entered by three judges in four separate Choudhri related matters." In re MCITBE, LLC, No. 26-32580 (Bankr. N.D. Tex.), ECF No. 21 ¶¶ 4, 8 & n.8 (Exhibit B). A "Choudhri LLC" is, under both Receivership Orders, an entity subject only to a charging order and excluded from Receivership Assets. A-Case Order ¶¶ 8–9; D-Case Order ¶¶ 14, 16.

20. Vargo did not disclose his April 3, 2025 testimony to this Court, and his Motion to Show Authority did not mention his April 4, 2025 email. Choudhri's counsel attached the email to her response, ECF No. 979, Ex. 1, and it was admitted at the consolidated October 9, 2025 hearing. See In re Texas REIT, LLC, No. 24-10120, ECF No. 793 (exhibit index: "Vargas Exhibit 1 (ECF 979) Admitted"). In it Vargo named two of the three entities at issue, Galleria Loop Note Holder, LLC and BDFI, LLC, and wrote that he had "a charging order over the LLCs only," that he did "not direct the acts and conduct" of those entities "and their lawyers," and that he was "allowed to monitor." The Authority Order does not mention the email. Nor was the April 3 sworn testimony, given before this Court, put before it in this proceeding. On an expedited schedule measured in days, the Court decided the scope of Vargo's authority on his own characterization of it, without his sworn contrary account and without any explanation from him of how his authority over those entities changed between April 4 and October 4. That is the kind of conduct Rule 60(b)(3) addresses.

21. Vargo's prior contrary position was not limited to the April 2025 testimony and email. He repeated it in writing to this Court, in this case, six weeks before the Authority Order, through the same counsel who later filed the Motion to Show Authority. On August 29, 2025, he moved for relief from the automatic stay. ECF No. 935 (Exhibit F). He told this Court that under the Amended Orders "the Receiver was given exclusive control over all of the Choudhri Receivership Assets, as therein defined, excluding management rights in the Choudhri LLC's, as defined in the Receivership Orders." *Id.* ¶ 6. He told this Court that *WC 4th & Colorado* "likely impacts the scope

of the Receivership Orders," *id.*; that "clarification of the scope of the Receivership Orders is required," *id.* ¶ 9; and that Judge Wilson had "declined to hear and consider" the receivership questions until each bankruptcy court authorized him to proceed, *id.* ¶ 8. He asked for leave to "[s]eek and obtain a modification of the Receivership Orders to conform, as applicable," to that opinion. *Id.* at 6 (prayer ¶ B). The same afternoon, seeking an expedited hearing, he told this Court that "confirmation of the scope of the Receiver's authority" had to be "promptly determined by the Receivership Court who will not act without authorization from this Court." ECF No. 936 ¶ 4 (Exhibit F). He filed the same motion, in the same words, in *In re Meandering Bend, LLC*, No. 25-11334-smr. Meandering Bend ECF No. 28 ¶ 7 (Exhibit F). He later confirmed in *In re RIC (Lavernia) LLC* that he had filed these motions in each of the "Choudhri Cases," a term he defined to include 1001 WL and Texas REIT. RIC (Lavernia) ECF No. 240 ¶¶ 12, 14 (Exhibit N). Two days before filing ECF No. 935, he filed Judge Wilson's orders in this case under the title "Notice of Filing Orders Regarding Appointment of Receiver and Charging Orders." ECF No. 931 (Aug. 27, 2025).

22. This Court granted the motion on September 12, 2025, after a hearing on September 4. ECF No. 954 (Exhibit F). The order is explicit about what it did and did not decide. The Court found cause "due to the limited scope of the relief requested by the Receiver" and stated that it issued the order "to allow the Receivership Court (or such other court with proper jurisdiction) to determine the issue of the scope of the Receivership and the authority of the Receiver." *Id.* at 2. It ordered that "all parties reserve any and all rights, remedies, and arguments that can be asserted in the Receivership Court," and that "[t]his Court is not ruling upon any of the issues outlined above by virtue of this Order." *Id.* at 3. It also ordered that nothing in it permitted Vargo "to seek to recover and/or exercise control over property of the estate unless authorized by further order of this Court." *Id.* at 2–3. Judge Robinson entered an order in the same terms in Meandering Bend. Meandering Bend ECF No. 65 at 2–3 (Exhibit F). Vargo had obtained no determination or modification from Judge Wilson when, three weeks later, he filed the Motion to Show Authority. That motion told this Court that the same, unmodified orders, together with WC 4th & Colorado,

gave him "sole ownership and operational control" of BDFI, LLC, Galleria Loop Note Holder, LLC, and Jetall Capital, LLC, and that WC 4th & Colorado "confirms the scope of the Receivership Orders." ECF No. 970 ¶ 1. In the next sentence it conceded that "[t]he application of WC 4th & Colo. is presently pending before the Hon. Randy Willson for determination." Id. It then asked this Court to treat Vargo as in control "[u]ntil such time as this Court determines that Choudhri, and not the Receiver, has the authority." Id. ¶ 7. The motion did not mention ECF No. 935, ECF No. 936, or ECF No. 954. It did not tell this Court that Vargo had represented, in this case, that the orders excluded management rights in the Choudhri LLCs, or that this Court had sent the scope question to Receivership Court and expressly declined to rule on it. It did not even cite the orders' location in this case correctly: it described them as "filed as ECF 208 in this proceeding," id. ¶ 1, the docket number they bear in In re RIC (Lavernia) LLC; in this case they are ECF No. 931. The Authority Order then decided the scope question on Vargo's presentation. A written admission by the movant, made to this Court in this case weeks earlier by the same counsel, is independent of and more specific than the April 2025 testimony, and its omission is the kind of material nondisclosure Rule 60(b)(3) reaches.

> **IT IS FURTHER ORDERED** that all parties reserve any and all rights, remedies, and arguments that can be asserted in the Receivership Court (or such other court with proper jurisdiction). This Court is not ruling upon any of the issues outlined above by virtue of this Order.
>
> **IT IS FURTHER ORDERED** that the Court is not ruling upon any other issues in this bankruptcy case by virtue of this Order.

*Excerpt — 1001 WL ECF No. 954 (Sept. 12, 2025) (highlighting added).*

**B. Rule 60(b)(4): the order is void to the extent it adjudicated rights without the notice Vargo's own motion promised, and to the extent it purports to bind other courts.**

23. A judgment is void under Rule 60(b)(4) if the court acted in a manner inconsistent with due process. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). The Receiver's Motion to Show Authority was filed October 4, 2025, under 21-day negative-notice language. ECF No. 970. On Vargo's motion to expedite, respondents were ordered to file briefs and evidence by

noon on October 8, and the matter was heard October 9, 2025, five days after filing. ECF No. 996 at 1–2. The three entities whose right to counsel was adjudicated—BDFI, LLC, Galleria Loop Note Holder, LLC, and Jetall Capital LLC—filed no response, and the order nonetheless held that they may not hire counsel in this Court "or any other Court." *Id.* at 2, 9.

24. Independently, the order is void to the extent it purports to determine the authority of counsel and parties "in . . . any other Court." ECF No. 996 at 9. This Court's authority to decide who may appear before it is not authority to decide who may appear before other courts in other proceedings, and Vargo has since used that language in other forums. At minimum, that phrase should be vacated.

**C. Rule 60(b)(1): the order rests on a factual premise that is mistaken.**

25. The order found that Choudhri "owns a membership interest in BDFI, LLC, Galleria Loop Note Holder, LLC, and Jetall Capital LLC," relying on the listing of entities in paragraph 9 of the A Case Order and the Receiver's Exhibit 8. ECF No. 996 at 7 & n.33. [State the actual ownership of each entity with supporting documents (company agreements, certificates of formation, K-1s). If Choudhri's ownership or management rights in any of them differ from what the order assumed, Vargo's authority over that entity fails on the order's own reasoning, because the Debtor's Business paragraph transfers only Choudhri's rights. If ownership is as the order states, delete this ground.]

**D. Rule 60(b)(5) and (6): changed circumstances make continued prospective application inequitable.**

26. The order operates prospectively: it directs that future filings be stricken. Rule 60(b)(5) permits relief where "applying it prospectively is no longer equitable," and a significant change in circumstances can warrant revision. *Horne v. Flores*, 557 U.S. 433, 447 (2009). Rule 60(b)(6) permits relief in extraordinary circumstances. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

27. Circumstances have changed since the order was entered. First, Vargo now presents this order and its companions as broader than they are. At the September 23, 2026 hearing in the

MCITBE case, his counsel described them as "determinations that Mr. Vargo is in charge of and has control over the Choudhri LLCs," and as the source of "the authority generally that was vested in the Receiver pursuant to the terms and conditions of the receivership orders as interpreted by Judges Robinson, Parker, and Bradley." Hearing Tr. 51:16–22, 101:5–8 (Exhibit C). He offered them to seek dismissal of a Chapter 11 case whose debtor's sole member of record is not a judgment debtor. Second, at the same hearing Vargo conceded that paragraph 8 excludes Choudhri's LLC ownership interests ("That's what it says here"), and testified that *WC 4th & Colorado*, the basis of his current position, post-dates the Amended Orders. *Id.* at 141:4–21, 170:14–21. Third, whether a charging order is a receiver's exclusive remedy against LLC interests is pending before the Supreme Court of Texas in No. 26-0267. [Candor note — required: On September 3, 2026, Judge Wilson denied Choudhri's Motion to Clarify and Enforce Charging-Order Limitations, which asked for a declaration that the Debtor's Business paragraph gives Vargo no management rights over any Choudhri LLC. The denial contains no findings and does not amend the orders, but Vargo will cite it, and this motion should disclose and address it.]

28. Since entry, Vargo has used this order and its two companion orders—ECF No. 996 in *In re 1001 WL, LLC*, ECF No. 784 in *In re Texas REIT, LLC*, and ECF No. 304 in *In re RIC (Lavernia) LLC*, which he calls the "Authority Orders"—to obtain relief that none of them decided:

29. (a) *Meandering Bend.* On December 5, 2025, on three days' notice of an expedited setting, Vargo obtained dismissal of *In re Meandering Bend, LLC*, No. 25-11334-smr. His counsel told the court that "pursuant to the receivership orders" Vargo had "sole control" over the Choudhri assets, "including the Meandering Bend membership interest"—an interest the Amended Orders exclude, A Case Order ¶ 8, and that his own ECF No. 28 had conceded he did not control. Meandering Bend Hr'g Tr. 8:12–19 (Dec. 5, 2025) (Exhibit G). The court read from this order, offered as the Receiver's Exhibit 3-A, though this order does not address Meandering Bend. *Id.* at 20:12–21:21. That morning, at 11:13 a.m., Choudhri had filed an individual Chapter 11 petition; Vargo's counsel had written notice of it by 1:17 p.m. (Exhibit H).

MS. LUTTRELL: Your Honor, to the extent that Mr. Choudhri filed a bankruptcy proceeding of any kind, I believe that the only property that he has control over for purposes of filing that bankruptcy proceeding would be as to his exempt property because the -- this Court has found, in connection with the motions to show authority, the -- Mr. Vargo has control over all -- pursuant to the receivership orders that are on file -- in all of the cases that are presently pending with the Choudhri-related entities.

The receiver has sole control over all of the assets of all of -- all of the nonexempt assets -- of Mr. Choudhri, including the Meandering Bend membership interest. And, as a matter of fact, the basis today for the motion to dismiss is that the motion -- that the original filing, as acknowledged by the Chapter 7 Trustee, Mr. Osherow, was not authorized, and therefore, this case should be dismissed.

*Excerpt — Meandering Bend transcript, Tr. 8 (In re Meandering Bend, LLC, No. 25-11334, Dec. 5, 2025) (highlighting added).*

30. (b) *Choudhri's individual Chapter 11.* On December 10, 2025, in *In re Ali Choudhri*, No. 25-90797 (Bankr. S.D. Tex.), Vargo told Judge Lopez that the Amended Orders, "as confirmed by the Authority Orders," transferred "the interests and management rights of Choudhri in all Choudhri LLC's," and that he holds "litigation rights on behalf of the Choudhri LLC's" generally. No. 25-90797 ECF No. 21 ¶¶ 4, 9 & n.7; ECF No. 22 ¶ 7 (Exhibit H). None of the Authority Orders so holds. ECF Nos. 996 and 784 each state that "the Choudhri LLCs are exempt from turnover in the Amended Orders," ECF No. 996 at 8 n.36; ECF No. 784 at 8 n.36, and ECF No. 304 limits Vargo to the rights the judgment debtors themselves hold, ECF No. 304 at 6 & n.7. The same motion cited the Meandering Bend dismissal as evidence of Choudhri's bad faith. ECF No. 21 at 5 nn.10, 12; *id.* ¶ 16.

31. (c) *A $42 million stipulated judgment against Choudhri personally.* On December 19, 2025, TIG Romspen US Master Mortgage LP filed a proposed Final Judgment against Choudhri individually and Galleria Loop Note Holder, LLC, jointly and severally, for $42,371,306.88 plus $16,612.89 per day, stipulated "by and through Travis Vargo as state court-appointed receiver" and

signed by his counsel. *TIG Romspen US Master Mortgage LP v. Galleria Loop Note Holder, LLC*, No. 2023-84714 (80th Dist. Ct., Harris County) (Exhibit I). The only authority it cites for Vargo's power to consent is that he "has been found by two United States Bankruptcy Judges" to hold exclusive authority, citing ECF No. 304 (Parker, J.) and ECF No. 996 (Bradley, J.). *Id.* at 4. A later motion in that case represented that ECF No. 996 confirmed "that Vargo's authority includes the authority to settle claims and causes of action." Unopposed Motion to Lift Abatement at 2–3 (Mar. 13, 2026) (Exhibit I). Neither order addresses settlement, compromise, or consent to a money judgment against Choudhri personally. The stipulation was filed the day Choudhri's Chapter 11 case was dismissed, while Vargo's own motion for relief from the stay in that case, which sought leave only to respond to matters in Receivership Court, remained pending. No. 25-90797 ECF Nos. 22, 33. Vargo has since told the receivership court how this came about: a bankruptcy court in this District "adjudicated Receiver as being in control of Galleria Loop Note Holder LLC based on this Court's Receivership Orders," and "[i]n reliance [on the] same, Receiver resolved a dispute with the Plaintiff, TIG Rompsen Master Mortgage LP, through the bankruptcy court in exchange for valuable consideration paid to the Receiver." Receiver's Report to Court ¶ 6(a) (June 9, 2026), Cause No. 2012-27197-A/D (Exhibit L). In other words, Vargo consented to a $42 million judgment against the judgment debtor personally in exchange for a payment to the receivership, from which he seeks a 25% fee. The settlement agreement, executed as of November 21, 2025, obligates Vargo to "reasonably cooperate with Romspen in connection with entry of a judgment in the Romspen Enforcement Action" in the attached form, and provides for Romspen to pay Vargo $225,000 once Romspen takes title to 1001 West Loop and the RIC (Lavernia) case is resolved. Settlement Agreement §§ II.4, II.10 (Exhibit M). Vargo later told the receivership court that, "in exchange for the dismissal of the unmeritorious appeals, and an agreement not to oppose the entry of meritorious judgments against Mr. Choudhri, the Receivership estate received a payment of $250,000.00." Receiver's Omnibus Response ¶ 12 (Apr. 15, 2026), Cause No. 2012-27197-A (Exhibit M). The agreement says $225,000—the same amount Vargo booked as a "[s]ettlement . . . on behalf of Milestone Capital CRE1 LLC and Otisco RDX LLC." No order in the RIC (Lavernia)

case approved this settlement. The only Rule 9019 application pending there that touched Romspen (RIC ECF No. 225, concerning corrective deed documents) was never ruled on and was dismissed as moot when the case was dismissed on December 5, 2025. RIC ECF Nos. 348, 350. Vargo nonetheless told the receivership court that the settlement followed "Bankruptcy Court approval in the RICL Bankruptcy." Omnibus Response ¶ 12. Nor does the 1001 WL docket reflect any motion by Vargo or Romspen to approve it. The only Rule 9019 motion there involving Romspen was the Chapter 11 trustee's (In re 1001 WL, ECF No. 699), which was granted in part and denied in part on November 4, 2025 (ECF No. 1009) and then finally denied on January 9, 2026 (ECF No. 1037). On October 7, 2026, Romspen's counsel submitted a proposed Final Judgment in the same case (envelope no. 120894748), served on Vargo and his counsel. The revised form drops the stipulation: it is now "unopposed by Travis Vargo as state court-appointed receiver . . . on behalf of Defendants," and his counsel signs "[a]greed as to form only." It still seeks $42,371,306.88 plus $16,612.89 per day from June 16, 2025, against Choudhri and Galleria Loop Note Holder. And its paragraph Q asks the state court to find that "Travis Vargo has been found by two United States Bankruptcy Judges to have the exclusive authority to represent the interests of Choudhri and entities controlled by Choudhri," citing RIC (Lavernia) ECF No. 304 and 1001 WL ECF No. 996 by name. Proposed Final Judgment ¶ Q (Exhibit I). The Authority Orders are thus being offered to a state court as the basis for a $42 million judgment against Choudhri personally and for a finding about every entity "controlled by Choudhri."

> Plaintiff TIG Romspen US Master Mortgage LP ("Plaintiff") and Defendants Galleria Loop Note Holder, LLC ("GLNH") and Ali Choudhri, an individual ("Choudhri" and, together with GLNH, "Defendants"), by and through Travis Vargo as state court-appointed receiver ("Receiver"), stipulate to the entry of this Judgment.
>
> The Court hereby finds as follows:

f Marilyn Burge

*Excerpt — Proposed Final Judgment, No. 2023-84714, preamble (highlighting added).*

32. The language Vargo stipulated to identifies this Court, not the receivership court, as the source of his power. Paragraph Q of the proposed judgment quotes ECF No. 996 at page 9: "The

Amended Orders are clear: The Receiver has the exclusive power to litigate on behalf of Mr. Choudhri and on behalf of BDFI, LLC, Galleria Loop Note Holder, LLC, and Jetall Capital LLC." It omits that the same order recognizes the Choudhri LLCs are "exempt from turnover," ECF No. 996 n.36, and that a power to litigate is not a power to confess a $42 million judgment against Choudhri personally. When Romspen resubmitted the judgment on October 7, 2026, it removed the word "stipulate" but kept paragraph Q word for word, now with Vargo's counsel signing "[a]greed as to form only." And Vargo "warrants and represents that his authority to enter into this Agreement is derived exclusively from the A-Case Receivership Order, the D-Case Receivership Order and the Authority Orders," with Romspen's payment to be returned if a court rules he lacked authority to bind Choudhri or GLNH. Settlement §§ II.13(m), (o). The parties to that agreement thus made this Court's order the condition of their bargain. In his sworn March 3, 2026 report to the receivership court, Vargo went further, listing the $225,000 as received for "[s]ettlement and resolution of claims on behalf of Milestone Capital CRE1 LLC and Otisco RDX LLC associated with Bankruptcy Case # 24-51195-MMP . . . as authorized by Judge Michael Parker and Case # 24-10119-SMR . . . as authorized by Judge Christopher Bradley." Receiver's Report, Accounting, and Motion to Distribute ¶ 1, Cause No. 2012-27197-D (Mar. 3, 2026) (sworn) (Exhibit J). No order of this Court or of Judge Parker authorized that settlement. This Court should say what its order decided.

33. Vargo has since told the receivership court that the bankruptcy courts approved this settlement. On April 15, 2026, he wrote that Romspen's payment was made "[f]ollowing Bankruptcy Court approval in the RICL Bankruptcy, in exchange for the dismissal of the unmeritorious appeals, and an agreement not to oppose the entry of meritorious judgments against Mr. Choudhri," and put the payment at $250,000. Receiver's Omnibus Response at 5, Cause No. 2012-27197-A (Apr. 15, 2026). On June 9, 2026, he reported that he "resolved a dispute with the Plaintiff, TIG Rompsen Master Mortgage LP, through the bankruptcy court in exchange for valuable consideration paid to the Receiver." Report to Court § 6(a) (June 9, 2026). That settlement is the basis for the $42,371,306.88 judgment now sought against Choudhri personally and against

Galleria Loop Note Holder, LLC, presented as "unopposed by Travis Vargo." But this Court made no finding and entered no order approving any settlement between Vargo and TIG Romspen. The settlement itself made Vargo's authority to enter it "subject only to approval by the bankruptcy court with jurisdiction over the assets of a debtor owned and controlled by Choudhri, to wit: 1001 WL" (Settlement recital ¶ 3), and no motion to approve it under Bankruptcy Rule 9019 was ever filed in this case.

34. Romspen's filings in this Court also show that it no longer holds the claim it asks the state court to reduce to judgment. On December 4, 2025, two weeks after signing the settlement, Romspen gave notice here that it had transferred its claim against 1001 WL, together with its "interests in and to the Collateral," to RIC (West Loop) LLC. ECF No. 1026. RIC (West Loop) then moved to convert this case as the holder of that claim, ECF No. 1029 ¶ 13, and received the distribution on it, ECF No. 1091. Yet on December 19, 2025, and again on October 7, 2026, Romspen told the state court that "Plaintiff is the current holder of the Note" and asked for judgment in its own name, without disclosing the transfer. A party that has transferred its claim and collateral is not the real party in interest to collect on them, and Vargo's non-opposition cannot supply standing Romspen does not have. Choudhri asks the Court to state that its order did not approve any settlement between Vargo and TIG Romspen, and that it makes no determination that TIG Romspen holds the note or claim it transferred to RIC (West Loop) LLC.

| | |
|---|---|
| 75,948.35 | Order Distributing Money in the Registry per Hon. Randy Wilson Order signed 09/16/2025 in Cause No. 2012-27197-C |
| 225,000.00 | Settlement and resolution of claims on behalf of Milestone Capital CRE1 LLC and Otisco RDX LLC associated with Bankruptcy Case # 24-51195-MMP, in the Western District of Texas (San Antonio) as authorized by Judge Michael Parker and Case # 24-10119-SMR in the Western District of Texas (Austin) as authorized by Judge Christopher Bradley |
| 500,000.00 | Settlement and resolution of Ali Choudhri's legal claims in Harris County District Clerk Cause Nos. 2020-79998 and 2020-51949 |

*Excerpt — Vargo's sworn report, Cause No. 2012-27197-D (Mar. 3, 2026) ¶ 1 (highlighting added).*

35. Vargo's coordination with Romspen began before he sought the Authority Orders. His own counsel's invoices, filed by Vargo in the receivership court, record: September 18 and 22, 2025—calls and a Zoom with Romspen's counsel (Lynn Butler and Kyle Hirsch) about RIC

(Lavernia), the OTISCO deed of trust, the RIC Rule 9019 motion, and the Milestone adversary; October 1, 2025—"Telephone conference with K. Hirsch regarding Motion to Show Authority and Strike Pleadings - RIC Lavernia, Texas REIT, and 1001 WL," three days before Vargo filed those motions; October 20, 2025, the day this Court entered the Authority Order—"Zoom meeting with K. Hirsch and L. Butler regarding framework of deal on RIC (Lavernia) and 1001 WL"; and October 30, 2025—"Telephone conference with L. Butler regarding TIG Romspen resolution opportunities - RIC (Lavernia) and 1001 WL." Receiver's Report, Accounting, and Motion to Distribute, Ex. 2 (Luttrell + Carmody invoices). The Court was not told that Vargo was coordinating his motion with the party that would pay him to settle once the order was entered, or that the settlement would rest on the order. Romspen had also filed its own four ex parte motions to show authority in this case, which the Court heard with Vargo's. ECF Nos. 837–840; ECF No. 996 at 1–2. Vargo's own first statement in this case about the Romspen motions that produced the Authority Order was that he would only watch. Asking to appear by Zoom at the August 4, 2025 hearing on Romspen's four ex parte motions to show authority (ECF Nos. 837–840), he wrote that the motion would "determine whether my receivership has rights to participate in this proceeding," and that he did "not intend to participate or take any positions at the hearing." Docket entry of July 30, 2025 (request for Zoom appearance). And on November 24, 2025, three days after the settlement's execution date, he filed his response opposing Choudhri's timely motion to vacate the Authority Order (ECF No. 1007, filed November 3, 2025, the fourteenth day) without disclosing the settlement. ECF No. 1023 (filed 10:59 a.m.).

36. Vargo relies on the Amended Orders' general authority to "compromise and settle any disputes, claims and/or causes of action by and/or against Debtor within his discretion." A Case Order ¶ 42; D Case Order ¶ 48. Choudhri does not contend that Vargo lacks all settlement authority. But that authority is a fiduciary's discretion exercised for the receivership estate; it does not license consenting to $42 million of new personal liability for the judgment debtor in exchange for a $225,000 payment on which Vargo then seeks a 25% fee, and it does not enlarge what the

Authority Orders decided. At a minimum, the Court should confirm that its order is not a source of authority for that settlement.

37. The settlement agreement makes this order load-bearing. It recites that the Authority Orders "confirmed that Receiver has the legal right and authority over the claims and assets of Choudhri, Milestone, OTISCO, BDFI and GLNH" and that his "authority includes the authority to settle claims"—though none of the Authority Orders addresses settlement. Settlement Agreement § I.D.3. Vargo "warrants and represents that his authority to enter into this Agreement is derived exclusively from the A-Case Receivership Order, the D-Case Receivership Order and the Authority Orders," *id.* § II.13(o), and the agreement provides that Romspen's payment must be returned if a court rules that he lacked authority to bind Choudhri, OTISCO, Milestone, or GLNH, *id.* § II.13(m). Under it, Vargo, acting expressly "on behalf of . . . Choudhri," waived Choudhri's limitations defenses, acknowledged equitable tolling based on Choudhri's conduct, waived any objection to Romspen's $33 million lien claim, agreed to stipulate to an injunction against Choudhri, and released Romspen on Choudhri's behalf. *Id.* §§ II.3 & n.1, II.11. (Exhibit M.)

38. (d) *Collecting LLC money as receivership assets.* In a sworn report filed March 3, 2026, Vargo listed among his receivership "collections" $225,000 from the "[s]ettlement and resolution of claims on behalf of Milestone Capital CRE1 LLC and Otisco RDX LLC," describing it as "authorized by Judge Michael Parker" in RIC (Lavernia) and "by Judge Christopher Bradley" in this case, and he asked the receivership court to pay him a 25% fee on all collections, including that sum. Receiver's Report, Accounting, and Motion to Distribute ¶¶ 1, 14, Cause No. 2012-27197-D (Exhibit J). The Amended Orders exclude Choudhri's LLC interests from Receivership Assets and limit Vargo to a charging order on distributions. A Case Order ¶¶ 8, 18. An order deciding who may litigate for an entity does not make that entity's settlement proceeds the judgment debtor's property.

39. (e) *Telling the appointing court its orders say the opposite of their text.* On May 27, 2026, Vargo told Judge Wilson that the Amended Orders "listed MCITBE as an entity under the Receiver's control" and contain an "adjudication . . . that Ali Choudhri was the owner of MCITBE

(and that MCITBE has been turned over to the Receiver)," and he called a $433,946.26 note held by MCITBE "a receivership asset." Receiver's Special Report on MCITBE, LLC ¶¶ 1, 7(b) & Conclusion, Cause No. 2012-27197-D (Exhibit K). The Amended Orders list MCITBE among the "Choudhri LLC's," whose ownership interests are excluded from Receivership Assets and subject only to a charging order. A Case Order ¶¶ 8, 9(n), 18. Four months later, shown paragraph 8 under oath, Vargo conceded: "That's what it says here." Hearing Tr. 170:14–21 (Sept. 23, 2026) (Exhibit C). The next day he asked Judge Wilson for a writ of possession of 2232 Swift Blvd.—real property titled in MCITBE, not in Choudhri—on the ground that "the Swift Property has not been turned over to the Receiver as required by the Amended Receivership Orders," relying on the "Debtors' business" paragraph for an entity that is not a "Debtor" under either order. Receiver's Motion for Possession and Comfort Order ¶¶ 1, 3–5 (May 28, 2026) (Exhibit K); see A Case Order ¶ 2; D Case Order ¶ 7. A creditor of a member has no right "to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company." Tex. Bus. Orgs. Code § 101.112(f).

40. (f) Choudhri's residence. On June 12, 2026, Vargo asked Receivership Court for possession of 4521 San Felipe Street, Unit 3201, the condominium where Choudhri lives. Arabella PH 3201 LLC is a different company related to the condominium. He told that court that his control of the "Choudhri LLCs" "was later confirmed and ratified by United States Bankruptcy Judges Parker and Bradley." Vargo's Mot. ¶ 2, Cause No. 2012-27197-A (June 12, 2026) (Exhibit A). His reply, under the heading "The Court Should Affirm Receiver Control of Arabella," cited Texas REIT ECF No. 784 as "finding Receiver had the sole authority to prosecute Dalio Holdings I LLC and Choudhri himself" and 1001 WL ECF No. 996 as "finding Receiver had the sole authority to litigate on behalf of BDFI LLC, Galleria Loop Note Holder, LLC and Jetall Capital, LLC, and Choudhri himself," and argued that a ruling that he controls Arabella "is consistent with the past rulings in this matter and related bankruptcy matters." Receiver's Reply ¶¶ 2–3 (June 23, 2026) (Exhibit A). On July 28, 2026, ruling by submission without an evidentiary hearing, Receivership Court granted the motion. It took "judicial notice of its docket and prior orders," found Vargo

"entitled to possession of the Penthouse," ordered a writ of possession "to remove all occupants and personal property," authorized Vargo to hire a realtor "to market and sell the Penthouse," and ordered that the recorded "General Warranty Deed" (RP-2024-272170) and "Correction General Warranty Deed" (RP-2026-83776) "are declared VOID and EXPUNGED." Order Granting Vargo's Mot. for Writ of Possession at 1–2 (July 28, 2026) (Exhibit A); Staub Decl. ¶¶ 3–4 (Exhibit A). None of the Authority Orders mentions Arabella, its property, or title to real estate. [Order language verified against the clean copy attached to the Staub declaration. Confirm that Arabella PH 3201 LLC was not a party. Staub Decl. ¶ 7 reports that at the Aug. 19, 2026 new-trial hearing the court acknowledged it could not open the exhibits, including the deeds, when it ruled; obtain the Aug. 19 transcript before relying on that statement. A title practitioner's declaration (A. Matsushima, Aug. 28, 2026) opines that the order issued without notice or a title claim; it supports the state-court challenge but is not needed here and should not be offered for legal conclusions.]

41. Each of these uses depends on reading the Authority Orders as a transfer of control over every Choudhri LLC and over Choudhri's personal liabilities. The orders do not say that, and continued prospective application of an order being used this way is not equitable. At minimum, the Court should confirm the order's limits.

42. Receivership Court has since been asked to clarify the Amended Orders and has declined, without explanation. On June 22, 2026, Choudhri and the Dalio entities moved Judge Wilson to declare that Vargo's authority over Choudhri's LLC membership interests is "limited exclusively to receiving distributions under the charging-order provisions," that Vargo has "no management, voting, possession, or compulsion rights over any Choudhri LLC," and that the "Debtors' Business" clause does not authorize him "to manage, control, possess, or sell property of any Choudhri LLC." Defs.' Mot. to Clarify & Enforce Charging-Order Limitations at 13 (Exhibit S). Vargo opposed. He told Judge Wilson that WC 4th & Colorado recognizes "an exception to the charging order exclusivity when the company in question has no business operations and no third parties would be affected," and that he "has sought, and will continue to seek, express authority from the Court confirming his authority when necessary." Vargo's Resp. ¶¶ 6, 8 (Aug. 21, 2026)

(Exhibit S). On September 3, 2026, Judge Wilson denied the motion in a one-line order, without findings or reasons. Order ¶ 2, Cause No. 2012-27197-A (Sept. 3, 2026) (Exhibit S).

43. That order does not change the analysis here. It modifies nothing in the Amended Orders; paragraph 8 still excludes Choudhri's "ownership interests in any limited liability company." It applies WC 4th & Colorado to no entity. And it adopts no reading of the orders: Vargo opposed the motion on grounds including finality, lack of evidence, and that it sought an "advisory opinion," Vargo's Resp. ¶¶ 1, 3–5, 10, and a denial on any of those grounds decides nothing about scope. What the response does establish is Vargo's own account of how any exception works: entity by entity, on a showing that the company has no business operations and that no third parties would be affected, by "express authority from the Court." Id. ¶¶ 6, 8. No such order has been entered as to BDFI, LLC, Galleria Loop Note Holder, LLC, or Jetall Capital, LLC. Galleria Loop Note Holder holds a note and is a party to litigation with TIG Romspen, a third party. The Authority Order made neither finding; it held WC 4th & Colorado "not relevant." ECF No. 996 at 8 n.36. Yet Vargo has used it as if it were the entity-specific authority he told Judge Wilson he must obtain.

## IV-A. VARGO'S CONTINUING USE OF THIS COURT'S ORDER: WHAT HE KEEPS DOING

44. **This was not a one-time misstatement. It is a pattern, and it continues.** Each time a court order or a bankruptcy filing stands between Vargo and Choudhri's property, Vargo decides for himself what the orders allow, invokes this Court's order to justify it, and acts. These events occurred as recently as September 23, 2026, and this motion followed promptly.

45. **December 5, 2025 — the Meandering Bend hearing.** Choudhri had filed his own Chapter 11 case that morning, In re Ali Choudhri, No. 25-90797 (Bankr. S.D. Tex.). His counsel told the court on the record that "**the filing of the bankruptcy would obviate any authority that the receiver has to proceed** . . . . we have an automatic stay at this point." Meandering Bend Hr'g Tr. 6:12–7:2 (Dec. 5, 2025) (Ex. G). Vargo, through counsel, nonetheless claimed "sole control" of

Choudhri's Meandering Bend membership interest, id. at 8:12–19, and, after being told "**I'm not going to swear you in, sir**," adopted that unsworn proffer with three "Yes" answers. Id. at 15:13–16:24.

46. **This Court left the stay question open and limited the ruling.** "**perhaps there is a violation of the stay in Mr. Choudhri's case. But that's not for me to decide. That's for some other judge to decide.**" Tr. 10:7–10 (Ex. G). "All I'm finding is that this petition was not properly filed . . . . **I'm not going to make any other findings.**" Id. at 23:14–24.

47. **December 10, 2025 — he asks permission, then does not wait.** Vargo told the Southern District that, under the receivership orders "as confirmed by the Authority Orders," Choudhri's "non-exempt assets" were outside the stay, while asking that court to decide that very question "**pending this Court's determination**." His own stay motion warned: "**IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS.**" It was never granted. He had already acted on December 5. In re Ali Choudhri, No. 25-90797, ECF Nos. 21, 22 (Ex. H).

48. **July 14, 2026 — his mother's company.** MCITBE, LLC is owned by Choudhri's mother, Shahnaz Choudhri. Vargo told the Northern District of Texas that "**MCITBE is a Choudhri LLC owned solely by Choudhri**" and moved to dismiss its Chapter 11 case for "lack of authority," relying on the "Authority Orders." In re MCITBE, LLC, No. 26-32580, ECF No. 21 ¶ 13(a) (Ex. B). He also recorded a notice of receivership that clouds title to the property at 2232 Swift Blvd., Houston, in which MCITBE holds an interest. The receivership orders his own counsel filed in that case exclude Choudhri's ownership interests in any limited liability company. Id., ECF No. 20 (Ex. T).

49. **September 10 and 15, 2026 — an on-the-record agreement, then execution during a stay.** Before the Honorable Tracy Good, Vargo agreed: "**I'm not removing him from the home**"; the court confirmed no removal "until a hearing that's scheduled for the 14th," and closed: "**I got everybody here. We're all in agreement and got it on the record.**" Reporter's Record, Cause No. 2026-63841, at 5:19–9:3 (Sept. 10, 2026) (Ex. T). The hearing never occurred. On

September 15, 2026, with Arabella's Chapter 11 stay in effect and on a posted notice that had set execution for September 12, the writ was executed at the home. When Choudhri read the bankruptcy case number aloud, the response was: "**the writ was issued before, the stay doesn't apply . . . That's correct. Google it.**" Video recorded September 15, 2026 (Ex. T, lodged). Those present included counsel for Constable Rosen from the Harris County Attorney's Office and Vargo's associate, Michael Poynter. RR 2 (Ex. T). The court described the agreement as protecting Choudhri and his mother "**until you actually have a full-fledged hearing before the court**." Id. at 7:2–5. At that same hearing, Vargo invoked this District's orders to the state court: "**Mr. Poynter's going to go through Federal bankruptcy court orders, that also bolster my reading of the order**." Id. at 4:6–8. In the same breath he accused Choudhri of the very thing he was doing: Choudhri, he said, "**weaponizes any and all rulings by any Court and then tries to utilize them in the next court**." Id. at 5:9–12.

50. **September 23, 2026 — under oath.** Vargo's counsel told the Northern District that "**Judge Robinson, Judge Bradley, Judge Parker have made determinations that Mr. Vargo is in charge of and has control over the Choudhri LLCs**." MCITBE Hr'g Tr. 51:16–23 (Ex. B). Asked whether he approved those arguments, Vargo answered: "**I didn't say that**." Id. at 145:11–16 (Ex. T). Shown paragraph 8 of his own orders, which excludes Choudhri's ownership interests in any limited liability company, he testified: "**That's what it says here**." Id. at 170:14–19 (Ex. T).

51. **Statements that federal courts approved what they never approved.** In a report signed under penalty of perjury, Vargo described $225,000 from TIG Romspen as "**authorized by Judge Michael Parker**" in Case No. 24-51195 and authorized in Case No. 24-10119. Report ¶ 1, Cause No. 2012-27197-D (Mar. 3, 2026) (Ex. J). He later told the same court the payment came "**[f]ollowing Bankruptcy Court approval**." Omnibus Resp. at 5 (Apr. 15, 2026) (Ex. M). No motion to approve that settlement was filed in either case, and no order approved it.

52. **Why this matters under Rule 60(b).** Rule 60(b)(3) reaches orders obtained or used through misrepresentation and misconduct, and Rule 60(b)(5) and (6) permit relief when continued prospective application is no longer equitable. An order that its beneficiary keeps re-describing to

other courts, and invokes to justify acts taken during other courts' automatic stays, should not continue in force in its current form. At a minimum, ECF No. 996 should be clarified so that it cannot be cited for what it does not say.

## V. ALTERNATIVE RELIEF: CLARIFICATION

53. If the Court declines to vacate the Authority Order, Choudhri asks the Court to confirm its limits, which follow from the order's own reasoning: it determined only who may litigate for the four named parties in this case; it did not adjudicate ownership or turnover of any LLC interest (ECF No. 996 at 8 n.36); it made no determination as to any LLC in which Choudhri holds no membership interest or any entity in bankruptcy (*id.* at 7 n.31, 8); and the phrase "in this Court or any other Court" does not determine Vargo's authority over any other entity or in any other proceeding. Choudhri further asks the Court to confirm that the Authority Order does not authorize Vargo to settle, compromise, or stipulate to a money judgment against Choudhri individually.

54. The Court has addressed Vargo's candor about these orders before. At the April 3, 2025 hearing in In re Texas REIT, LLC, after Vargo's testimony about the scope of the orders, the Court announced that it would issue an order to show cause. Tr. 40:17–21 (Exhibit D). The record set out above, including Vargo's undisclosed sworn statements, the settlement he did not disclose while defending his authority, and his description of this Court's order to other courts, warrants the same step. Choudhri asks that, after ruling on this motion, the Court on its own initiative under Bankruptcy Rule 9011(c)(3) and its inherent authority order Vargo, and TIG Romspen US Master Mortgage LP and its counsel as to ECF Nos. 837–840, to show cause why sanctions should not issue.

## VI. RELIEF REQUESTED

Choudhri respectfully asks the Court to vacate the Authority Order and deny the Motions to Show Authority [ECF Nos. 837–840, 970], or set them for a new evidentiary hearing on full notice; alternatively, to vacate the phrase "or any other Court"; and, in the further alternative, to enter the clarifying order submitted with this motion. Choudhri requests such other relief as is just. Choudhri further asks that, after ruling, the Court issue an order to show cause as described above.

Dated: October 13, 2026

Respectfully submitted,

/s/ Courtney A. Vincent
Courtney A. Vincent
Minnesota Bar No.: 0403083
Admitted to the U.S. Bankruptcy Court
for the Western District of Texas
Vincent Law, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas 77079
Mailing Address:
P.O. Box 940129
Houston, Texas 77094
Tel: (713) 223-9300
Fax: (832) 603-4444
info@vincentlawpllc.com
**COUNSEL FOR ARABELLA PH 3201 LLC**

**JOINED BY:**
Ali Choudhri joins in this motion and in each request for relief in it.
/s/ Ali Choudhri
Ali Choudhri, pro se
4521 San Felipe, Unit 3201, Houston, Texas 77027
(281) 630-6627 | ali@jetallcapital.com

## CERTIFICATE OF CONFERENCE

I certify that on October 12, 2026, Movants conferred or attempted to confer with counsel for Travis B. Vargo, Leslie M. Luttrell, regarding the relief requested in this motion. No agreement was reached, and Movants present the motion as opposed.

/s/ Courtney A. Vincent

## CERTIFICATE OF SERVICE

I certify that on October 13, 2026, a true and correct copy of this Motion and the proposed order was served through the Court's CM/ECF system on all parties registered to receive electronic notice in this case, and by email on the parties listed on the attached service list, including counsel for Travis Vargo (Leslie M. Luttrell).

/s/ Courtney A. Vincent

**EXHIBIT INDEX**

| | |
|---|---|
| Exhibit A | Vargo's filings in the 333rd District Court citing the authority orders: Motion for Writ of Possession (June 12, 2026); Reply (June 23, 2026); Order (July 28, 2026); Declaration of Derek Staub |
| Exhibit B | Transcript excerpts, In re MCITBE LLC, No. 26-32580 (Bankr. N.D. Tex.) (Sept. 23, 2026), pp. 51, 101; and the Receiver's Motion to Dismiss, ECF No. 21 (July 14, 2026) |
| Exhibit C | Transcript excerpts, In re MCITBE LLC, No. 26-32580 (Bankr. N.D. Tex.) (Sept. 23, 2026) |
| Exhibit D | Transcript, April 3, 2025 hearing, In re Texas REIT, LLC, No. 24-10120 (complete) |
| Exhibit E | Email from Vargo to Kell Mercer (Apr. 4, 2025) |
| Exhibit F | In re 1001 WL, LLC, ECF Nos. 935, 936 (Aug. 29, 2025) and 954 (Sept. 12, 2025); In re Meandering Bend, LLC, ECF Nos. 28 and 65 |
| Exhibit G | Transcript, December 5, 2025 hearing, In re Meandering Bend, LLC, No. 25-11334 (ECF No. 138) |
| Exhibit H | Choudhri Chapter 11 filings and notice, No. 25-90797 (Dec. 5–19, 2025), including ECF Nos. 21, 22, 33 |
| Exhibit I | TIG Romspen v. Galleria Loop Note Holder, LLC, No. 2023-84714: Motion for Entry of Stipulated Judgment and proposed Final Judgment (Dec. 19, 2025); revised proposed Final Judgment (Oct. 7, 2026); Unopposed Motion to Lift Abatement (Mar. 13, 2026) |
| Exhibit J | Receiver's Report, Accounting, and Motion to Distribute, Cause No. 2012-27197-D (Mar. 3, 2026) (sworn), with invoices |
| Exhibit K | Receiver's Special Report on MCITBE, LLC; Receiver's Motion for Possession and Comfort Order (May 28, 2026) |
| Exhibit L | Receiver's Report to Court (June 9, 2026) |
| Exhibit M | Settlement Agreement between TIG Romspen and Vargo (Nov. 21, 2025); Receiver's Omnibus Response (Apr. 15, 2026) |
| Exhibit N | In re RIC (Lavernia) LLC, No. 24-51195, ECF No. 240 (Sept. 17, 2025) |
| Exhibit P | Transcript excerpts, April 11, 2025 hearing, In re Texas REIT, LLC |
| Exhibit Q | Recorded call between Choudhri and Vargo (Aug. 1, 2025), with transcript |
| Exhibit R | Proposed "Agreed Order of Turnover" sent by Vargo (document dated July 10, 2025) |
| Exhibit S | Defendants' Motion to Clarify and Enforce Charging-Order Limitations; Receiver's Response (Aug. 21, 2026); Order (Sept. 3, 2026), Cause No. 2012-27197-A |
| Exhibit T | Supplemental record: transcript excerpts, In re MCITBE, LLC, No. 26-32580 (Sept. 23, 2026), pp. 145, 170; In re MCITBE, LLC, ECF No. 20 (July 7, 2026); Reporter's Record, Cause No. 2026-63841 (Sept. 10, 2026); video recorded Sept. 15, 2026 (lodged) |

**[PROPOSED ORDER — PRIMARY RELIEF]**

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-10119-SMR |
| | § | |
| 1001 WL, LLC, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

**ORDER VACATING THE ORDER REGARDING MOTIONS TO SHOW AUTHORITY [ECF NO. 996]**

Came on for consideration Ali Choudhri's Motion Under Bankruptcy Rule 9024 to Vacate the Order Regarding Motions to Show Authority [ECF No. 996] or, in the Alternative, to Clarify Its Scope [ECF No. ___]. Having considered the motion, any responses, the evidence, and the record, the Court finds that the motion should be GRANTED. It is therefore ORDERED:

1. The Order Regarding Motions to Show Authority [ECF No. 996] is VACATED.
2. [The Motions to Show Authority [ECF Nos. 837, 838, 839, 840, 970] are DENIED.] [ALTERNATIVE: The Motions to Show Authority [ECF Nos. 837, 838, 839, 840, 970] are set for evidentiary hearing on __________, 2026, at ____ __.m.]

# # #

**[PROPOSED ORDER — ALTERNATIVE RELIEF]**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-10119-SMR |
| | § | |
| 1001 WL, LLC, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

**ORDER CLARIFYING THE ORDER REGARDING MOTIONS TO SHOW AUTHORITY [ECF NO. 996]**

Came on for consideration Ali Choudhri's Motion Under Bankruptcy Rule 9024 to Vacate the Order Regarding Motions to Show Authority [ECF No. 996] or, in the Alternative, to Clarify Its Scope [ECF No. ___]. The request to vacate is DENIED. The alternative request is GRANTED, and the Order Regarding Motions to Show Authority [ECF No. 996] (the "Authority Order") is clarified as follows:

1. The Authority Order determines who may litigate on behalf of Ali Choudhri, BDFI, LLC, Galleria Loop Note Holder, LLC, and Jetall Capital LLC in this bankruptcy case and its related adversary proceedings.

2. The Authority Order does not adjudicate that Vargo owns, or that the Amended Orders turn over, any membership interest in any limited liability company. See Authority Order at 8 n.36.

3. The Authority Order makes no determination as to any limited liability company in which Ali Choudhri does not own a membership interest, or as to any entity that is a debtor in a bankruptcy case.

4. The phrase "in this Court or any other Court" on page 9 of the Authority Order does not determine Vargo's authority over any other entity or in any other proceeding.

5. The Authority Order does not authorize Vargo to settle, compromise, or stipulate to a money judgment against Ali Choudhri individually.

# # #