# EXHIBIT T

Supplemental record of Vargo's continuing conduct: MCITBE transcript, Sept. 23, 2026, pp. 145, 170 (highlighted); In re MCITBE, LLC, ECF No. 20 (July 7, 2026); Reporter's Record, Cause No. 2026-63841 (Sept. 10, 2026); video recorded Sept. 15, 2026 (lodged)

A Again, I don't know. I'm not a bankruptcy practitioner or a judge.

Q But aren't you arguing that MCITBE has filed their bankruptcy in bad faith in part because you've alleged that Ali Choudhri has filed multiple bankruptcies?

A I mean, I think our pleadings would speak for themselves. I'm just --

Q I'm asking you, though.

A Can I finish my answer? Is that okay, Mark?

Q I'm just asking you a question.

A Okay. So, I'm not a bankruptcy lawyer and I'm not a bankruptcy judge. Ms. Luttrell is taking and arguing positions based on the facts. I'm testifying to the facts that I know.

Q So are you saying you did not approve the legal arguments that she's made?

A I didn't say that.

Q Well, then did you approve the legal arguments? You are an attorney, right?

A Yes.

Q Did you approve the legal argument that bad faith is proven by multiple bankruptcy filings?

MS. LUTTRELL: Your Honor, I'm going to object again. It far exceeds the scope of direct, and it's mischaracterizing both the evidence that's been presented and my argument.

THE COURT: Mr. Yablon?

Receiver Assets -- Choudhri Receiver Assets -- Jiminy Crickets.

THE COURT: It's like Yablon Law. I'm telling you, it's a tongue twister.

MR. YABLON: I was waiting for that. You know that, right? All right.

BY MR. YABLON:

Q "Choudhri receivership Assets includes all assets owned by Choudhri except his ownership interests in any limited liability company." So, if Mr. Choudhri owned an interest in company A, does that then give you the authority to take over company A?

A I'm not following what you're saying. Can you repeat that or rephrase it?

Q Number 8, it's saying that the assets that you can take over have to be owned by Choudhri, correct? Under Number 8.

A Yes.

Q Except for his ownership interests in any limited liability company, correct?

A That's what it says here.

Q Well, is that correct?

A Well, that's what it says here.

Q Okay. So, if Choudhri owned part of Vargo Law -- that's not a good example. If Choudhri owned part of a laundromat, it was an LLC and he owned part of it, would Number 8 give you the authority to take over that laundromat based on Number 8?

Leslie M. Luttrell (SBOT 12708650)
**Luttrell + Carmody Law Group**
100 NE Loop 410, Ste. 615
San Antonio, Texas 78216
Tel. 210.426.3600
Email: luttrell@lclawgroup.net

***Counsel for Travis B. Vargo, Court Appointed Receiver***

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | **§** | **Case No. 26-32580-mnl11** |
| | **§** | |
| **MCITBE, LLC** | **§** | **Chapter 11** |
| | **§** | |
| **Debtor.** | **§** | |

## NOTICE OF FILING ORDERS REGARDING APPOINTMENT OF RECEIVER AND CHARGING ORDERS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Travis B. Vargo, Court-Appointed Receiver.[1], by and through his counsel of record, and files certified copies of the following orders:

1. Amended Order Granting Turnover, Charging Order and Appointment of Receiver Against Judgment Debtor, entered in Cause No. 2012-27197-A styled *Mokaram-Latif West Loop, Ltd. and Osama Abdullatif v. Ali Choudhri*, pending in the 333rd Judicial District Court of Harris County, Texas on April 9, 2025, certified by Marilyn Burgess, District Clerk of Harris County, Texas on April 29, 2025 ("**Amended Receivership Order No. 1**"), and

[1] Travis Vargo was appointed as the Receiver of Ali Choudhri in Cause No. 2012-27197-A styled *Mokaram-Latif West Loop, Ltd. and Osama Abdullatif v. Ali Choudhri*, pending in the 333rd Judicial District Court of Harris County, Texas and of Ali Choudhri, Dalio Holdings I LLC, and Dalio Holdings II LLC in Cause No. 2012-27197-D styled *Mokaram-Latif West Loop, Ltd. v. Ali Choudhri and Angel Valle*, pending in the 333rd Judicial District Court of Harris County, Texas.

2. Amended Order Granting Turnover, Charging Order and Appointment of Receiver Against Judgment Debtor, entered in Cause No. 2012-27197-D styled *Mokaram-Latif West Loop, Ltd. v. Ali Choudhri and Angel Valle*, pending in the 333rd Judicial District Court of Harris County, Texas on April 8, 2025 and certified by Marilyn Burgess, District Clerk of Harris County, Texas on April 29, 2025 (“**Amended Receivership Order No. 2**”).

The certified copies of Amended Receivership Order No. 1 and Amended Receivership Order No. 2 are attached hereto as ***Exhibits 1 and 2*** and are incorporated herewith for all purposes.

Dated this 7th day of July 2026.

Respectfully submitted,

LUTTRELL + CARMODY LAW GROUP
One International Centre
100 N.E. Loop 410, Suite 615
San Antonio, Texas 78216
Tel. 210.426.3600
Email: luttrell@lclawgroup.net

By: */s/ Leslie M. Luttrell*
Leslie M. Luttrell
State Bar No. 12708650

**ATTORNEYS FOR TRAVIS B. VARGO, COURT-APPOINTED RECEIVER**

## CERTIFICATE OF SERVICE

I do hereby certify that on the 7th day of July 2026 I caused a copy of the foregoing instrument to be served to the Debtor, Debtor's Counsel, and all parties listed on the attached service list either through the Court's ECF System or via U.S. First Class Mail, postage prepaid.

**Debtor**
MCITBE, LLC
2232 Swift Blvd.
Houston, TX 77030

**Attorney for Debtor**
Yablon Law Firm
Mark Yablon
2777 Allen Parkway, Ste. Flr. 10
Houston, TX 77019

**U.S. Trustee**
United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75202

**Sub V Trustee**
Behrooz P. Vida
3000 Central Dr.
Bedford, TX 76021

**Parties Requesting Notice**

Kyle Woodard
JaKayla J. DaBera
Kane Russell Coleman Logan PC
901 Main Street, Suite 5200
Dallas, Texas 75202

Tara L. Grundemeier
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 3064
Houston, TX 77253

*s/ Leslie M. Luttrell*
Leslie M. Luttrell

# EXHIBIT 1

FILED
Marilyn Burgess
District Clerk
APR 09 2025
Time: 1037
Harris County, Texas
By
Deputy

2012-27197A

**CAUSE NO. 2012-27197-A**

| | | |
|---|---|---|
| **MOKARAM-LATIF WEST LOOP, LTD. AND OSAMA ABDULLATIF,** *Plaintiffs,* | § | **IN THE DISTRICT COURT** |
| **vs.** | § | **HARRIS COUNTY, TEXAS** |
| **ALI CHOUDHRI,** *Defendant.* | § | **333rd JUDICIAL DISTRICT** |

pg- 14
MODIX

**AMENDED ORDER GRANTING TURNOVER, CHARGING ORDER AND APPOINTMENT OF RECEIVER AGAINST JUDGMENT DEBTOR**

On April 1, 2025, this Court granted Abdullatif's Motion to Adopt and Join Ali Mokaram's Second Application to Appoint Collection Receiver over Judgment Debtor (the "Motion")[1] and issued an order resulting therefrom. The Court wanting to clarify its April 1, 2025, ruling[2] issues this Amended Order Granting Turnover, Charging Order and Appointment of Receiver against Judgment Debtor.

**The Court DEFINES that:**

1) "Abdullatif" or "Creditor" refers to Plaintiff, Osama Abdullatif, c/o his attorney of record, T. Michael Ballases.

2) "Choudhri" as well as "Debtor" refers to Defendant Ali Choudhri, c/o of his attorney of record, Justin Rayome.

3) "Judgment" refers to the Final Judgment entered by this Court in the above referenced case on October 23, 2023, in favor of Abdullatif against Debtor in the amount of $3,332,366.98 plus post-judgment interest at the maximum rate permitted under the law compounded annually on all such amounts from the date of October 24, 2023, until the judgment is paid in full in addition to all awards of attorneys' fees, court costs and expenses awarded to Abdullatif in the Order signed by the Court on March 6, 2025, in the total amount of $16,662.50, and the amount of any legal fees, costs and/or expenses awarded by the court to Abdullatif herein or hereafter. No amounts have been collected, and the full amount of the Judgment remains due and owing.

---

[1] As this Court recalls, Abdullatif filed his Adoption of and Joinder to Mokaram's Second Application to Appoint Collection Receiver Over Judgment Debtor on March 21, 2025.

[2] The Court notes that in its original April 1, 2025, ruling, it specifically stated therein multiple times that nothing in said order was intended to violate any bankruptcy stay that may be applicable.

4911-5780-7404.1

Certified Document Number: 119925187 - Page 1 of 14

RECORDER'S MEMORANDUM
This instrument is of poor quality at the time of imaging

4) "Receiver," who is an agent of this Court, refers to Travis B. Vargo (State Bar No. 24047027), 12012 Wickchester, Suite 670, Houston, Texas 77079; (713) 524-2441 telephone; (832) 779-8838 facsimile; tvargo@vargolawfirm.com.

5) "Texas REIT Bankruptcy" refers to that certain bankruptcy case styled In re Texas REIT, LLC, Case No. 24-10120-SMR, pending in the Bankruptcy Court.

6) "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, Austin Division and the United States Bankruptcy Court for the Southern District of Texas, Houston Division whichever may apply to Bankrupt entities.

7) "Stay Order" refers to that certain Order Granting in Part Creditors' Expedited Motion for Relief from Stay (Document #524) entered in the Texas REIT Bankruptcy on March 20, 2025.

8) "Choudhri Receivership Assets" includes all assets owned by Choudhri, except his ownership interests in any limited liability company.

9) "Choudhri LLC's" shall mean each limited liability company in which Choudhri owns a membership interest, including but not limited to the following, but excluding his interest in the Bankrupt LLCs (defined below):

a. ARABELLA PH 3201 LLC
b. 2727 Kirby 26L LLC
c. 9201 Memorial Drive LLC
d. 50BH Acquisition, LLC
e. BDFI LLC
f. Forest Legacy LLC
g. Jetall GP, LLC
h. Jetall Capital, LLC
i. Jetall Croix Properties LLC
j. JETALL/CROIX GP, LLC
k. JETALL CONSTRUCTION & DEVELOPMENT GP, INC.
l. Jetall Investment and Realty Inc
m. Meandering Bend LLC
n. MCITBE LLC
o. OTISCO RDX, LLC
p. Otisco Rdx
q. PBAC 507 Holdings LLC
r. Vanguard Realty Partners LLC
s. VGRP Holdings LLC
t. Milestone Capital CRE 1, LLC
u. Milestone Capital CRE 2, LLC
v. Milestone Capital CRE 3, LLC
w. QB Loop Property, LP
x. Memorial Glen Cove, LLC.



Certified Document Number: 119925187 - Page 2 of 14

10) "Bankrupt LLCs" means each limited liability company in which Choudhri owns a membership interest that is presently subject to a bankruptcy proceeding, including but not limited to:

a. Texas REIT, LLC
b. 1001 WL LLC
c. Galleria West Loop Investments LLC
d. Jetall Companies Inc.
e. NIA ATX LLC
f. SAL ATX LLC
g. Maya J ATX LLC

11) "Choudhri Agent's" shall mean any individual or entity operating under a separate Agent Agreement whereby Agent is holding assets for and acting on behalf of Ali Choudhri or one of his LLCs. Individuals operating under such agreements, now or in the past, include but are not limited to: Drew Dennett, Brad Parker, Azeemah Zaheer, Shahnaz Choudhri, and Dward Darjean.

**The Court FINDS that:**

12) This court has jurisdiction for this proceeding and can proceed in granting the relief set forth herein immediately. *See* Tex. Civ. Prac. & Rem. § 31.002(a); *Childre v. Great Sw. Life Ins. Co.*, 700 S.W.2d 284, 289 (Tex. App.—Dallas 1985, no writ) (creditor does not have to wait 30 days before turnover can be granted because a receivership is in the nature of an attachment and garnishment, so the waiting period of Rule 627 is not required).

13) The Judgment is valid, and the amount of the Judgment is unsatisfied by Debtor. *See* Tex. Civ. Prac. & Rem. § 34.001.

14) Pursuant to this Order, the Receiver will have a judicial lien on all non-exempt assets of Debtor that are the subject of this Order, regardless of whether the Receiver takes actual possession. No one—not even a lien holder with a prior filed deed of trust-can sell property held in *custodia legis* by a duly appointed the Receiver without first obtaining approval from the Court in which the Receivership is pending.[3] Any unauthorized transfer of property in the custody of a the Receiver is *not merely voidable, it is* void.[4] Thus, any attempt by Debtor to transfer any nonexempt property after the turnover order has been signed is void, and any conveyance of property in the custody of the Receiver without approval by the court has no effect upon the Receivership and the accomplishment of its purposes.[5] Nothing in this Order is intended to violate any bankruptcy stay that may be applicable.

15) For the avoidance of doubt, this Order is not intended to, and does not, assert jurisdiction over Texas REIT, LLC or any of its rights, assets, real or personal property, lawsuits, claims, defenses and/or matters constituting property of its bankruptcy estate. Moreover, this Order is not intended to, and does not, assert jurisdiction over any interest Choudhri holds in Texas

[3] *First S. Props.*, at 341; *Huffmeyer v. Mann*, 49 S.W.3d 554,560 (Tex.Civ.App.-Corpus Christi, 2001).
[4] *First S. Props.*, at 341.
[5] *T.H. Neel v. WL Fuller*, 557 S.W2d 73, 76 (Tex. 1977).



Certified Document Number: 119925187 - Page 3 of 14

REIT, LLC. This Order is subject to all orders of the Texas REIT Bankruptcy, including the Stay Order. Subject to any approval required by the Bankruptcy Court, The Receiver may assert rights and claims on behalf of Dalio against Texas REIT, LLC and/or WCW in the Texas REIT Bankruptcy.

**THEREFORE, the Court ORDERS the relief as set out below:**

16) Appointment / Bond. After taking the oath of office, the Receiver shall be authorized, subject to the control of this Court, to do any and all acts necessary to the proper and lawful conduct of said Receivership. No bond is required of the Receiver because this is a Chapter 31 post-judgment appointment. *Children v. Great Sw. Life Ins. Co.*, 700 S.W. 2d 284, 289 (Tex. App.—Dallas 1985, no writ) (noting that a bond is not required in a Chapter 31 receivership and further noting that "since the underlying obligation has been determined by final judgment, the Debtor will not be harmed if no bond, or merely a nominal bond, is required.").

17) Turnover. The Choudhri Receivership Assets are hereby turned over to the Receiver (jointly the "Receivership Assets"). Debtor is enjoined from selling, transferring, gifting, destroying, disposing of, or otherwise encumbering the Receivership Assets. The Receiver is now the legal and equitable owner of the Receivership Assets, regardless of whether the Receiver takes actual possession of them.

18) Charging Orders. Pursuant to Texas Business Organizations Code Section 101.112, the Court hereby issues this charging order against all membership interests owned by Choudhri in the Choudhri LLC's (collectively, the "Companies"). All Companies and Choudhri shall pay to the Receiver any distributions and/or proceeds that would otherwise be due from such Companies to Choudhri until satisfaction of the Judgment is made in full. Choudhri may not receive any payment from any of the Companies, directly or indirectly, until the Judgment is paid in full and/or without written consent from the Court. For the avoidance of doubt, the foregoing paragraph does not apply to the Bankrupt LLCs. As noted previously herein, nothing in this Order is intended to violate any bankruptcy stay that may be applicable.

19) Debtor' Responsibilities to the Receiver and the Court. Debtor is Ordered to:

a. Deliver Receivership Assets to the Receiver, including by executing all documents to transfer ownership of same as requested by the Receiver

b. Deliver electronic copies of the items described in Exhibit A attached hereto as part of this Order within ten (10) days, as well as all documents subsequently requested by the Receiver in writing, also by providing within ten (10) days.

c. Identify and provide a list in writing to the Receiver of all property owned by Debtor that he contends is exempt from collection and turnover within ten (10) days.

d. Comply with written requests of the Receiver. If Debtor believe that the Receiver's requests are inappropriate, Debtor must first comply, then seek protection from the



Certified Document Number: 119925187 - Page 4 of 14

Court, after giving full notice to the Receiver in writing and attempting to resolve the issues without Court intervention.

e. Debtor shall provide a list of all individuals operating under an Agent Agreement with Debtor or Debtor's LLCs.

20) Debtor's Business. All authority and power of Debtors to manage and operate the businesses of Debtors not currently in Bankruptcy is vested in the Receiver and no decision may be made or carried out without the express approval of the Receiver.[6] This order supersedes the authority of any officers, directors or managers of Debtors. For the avoidance of doubt, the foregoing paragraph shall not apply to Choudhri's ability to manage and operate the business Texas REIT, LLC, which is subject to the jurisdiction of the Bankruptcy Court, nor any other Bankrupt LLC. As noted previously herein, nothing in this Order is intended to violate any bankruptcy stay that may be applicable and the Bankruptcy Court shall maintain exclusive jurisdiction over any litigation pertaining to any Bankrupt LLCs.

21) Peace Officers Responsibilities to the Receiver and the Court. Every constable, deputy constable, sheriff, deputy sheriff, and other peace officer may accompany the Receiver to locations designated by the Receiver where the Receiver believes that a Debtor' assets or records may be located. The peace officers are ordered to prevent interference with the Receiver's carrying out any duty under this order or interference with property in the Receiver's control or subject to this order.

22) Exclusive Jurisdiction Over Related Disputes and Lawsuits.

a. *Custodia Legis*. Receivership Assets are in *custodia legis*. Except for the Bankruptcy Court's jurisdiction, no other court or forum has jurisdiction to adjudicate rights relating to the Receivership Assets because this Court maintains exclusive, sole authority for assets held in *custodia legis* by it.[7] Notwithstanding anything herein to the contrary, the Bankruptcy Court shall continue to have exclusive jurisdiction over any disputes pending or otherwise brought in the Texas REIT Bankruptcy, including disputes between Dalio I and/or Dalio II and WCW or any other Bankrupt LLCs.

b. Immunity. The Receiver and persons engaged or employed by him are not liable for loss or damage incurred by any person or entity by reason of any for any act performed or omitted to be performed by the Receiver or those engaged or employed by the Receiver for the discharge of their duties and responsibilities for the Receivership, including exercising control

[6] *Id.* "Texas law asserts that Receiver has the full rights that the corporation had."

[7] *See Tex. Am. Bank/West Side v. Haven*, 728 S.W.2d 102, 104 (Tex. App.—Fort Worth 1987,writ dismissed for want of jurisdiction) ("If a court of competent jurisdiction, federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty.") (quoting *Palmer v. Texas*, 212 U.S. 119 (1909)), *Chimp Haven, Inc. v. Primarily Primates, Inc.*, 281 S.W.3d 629, 633 (Tex. App.—San Antonio 2009, no pet); *see, also Neel v. Fuller*, 557 S.W.2d 73, 76 (Tex. 1977); *Lauraine v. Ashe*, 109 Tex. 69, 191 S.W. 563, 565 (1917).



Certified Document Number: 119925187 - Page 5 of 14

over Receivership Assets. This Court retains the exclusive jurisdiction, to the exclusion of any other court, over the Receiver for the purpose of determining whether the Receiver is immune for any action taken by the Receiver. Any suit or claim against the Receiver must be brought in this appointing Court and/or transferred to this Court for adjudication; however, this paragraph 28(b) does not limit the jurisdiction of the Bankruptcy Court.

c. Exempt Property Disputes. If there is any dispute whether an asset of Debtor is non-exempt, or property of Debtor (as opposed to a third-party), the Receiver is authorized to take custody or control of the asset pending objections, if any, and/or adjudication by this Court. Debtor claiming an exemption shall file an objection or statement with this Court that claims the exemption, cites the legal and factual grounds for the exemption, and describes the property with sufficient specificity that a constable can levy upon it.

d. Disputed Third-Party Rights to Property. This Court shall maintain exclusive jurisdiction over fraudulent transfer lawsuits brought by the Receiver or Creditors; *provided, however*, that the Bankruptcy Court will continue to have exclusive jurisdiction over any claims brought against Texas REIT, LLC or any of the other Bankrupt Entities currently in Bankruptcy Court. The Court shall further maintain exclusive jurisdiction over any litigation pertaining to the ownership interests disputed during the Receiver's actions involving a third-party; *provided, however*, that the Bankruptcy Court will continue to have exclusive jurisdiction over any claims brought against Texas REIT, LLC and the litigation currently pending between WCW, Dalio I, and Dalio II in the Texas REIT Bankruptcy and related adversary proceedings. If any third-party alleges or claims that an asset in the possession of the Receiver or otherwise subject to this order is not or should not be a Receivership asset, they must file a verified claim or intervention into this turnover proceeding, that attaches admissible evidence substantiating their claim to Receivership Assets in *custodia legis,* with this court within twenty (20) days of their knowledge of the earlier of (1) this order or (2) the Receivership's collection, control, possession of the property; *provided, however*, that the foregoing shall not apply to any of the Bankrupt Entities including Texas REIT, LLC or the Bankruptcy Court. The Court may require a disputing party to post a bond to cover the Receiver's efforts and additional costs associated with the dispute if the Court cannot promptly adjudicate the claim.

23) Third-Parties Responsibilities to the Receiver and the Court. Notwithstanding anything herein to the contrary, the following shall not apply to the Bankruptcy Court's ability to oversee and administer the Bankrupt Entities including the Texas REIT Bankruptcy, their plan confirmation and/or liquidation of its real or personal property or any property of the bankruptcy estate. Third-Parties not subject to a Bankruptcy Court order with actual notice of this order is ordered not to interfere with property in the Receiver's control or subject to this order and is ordered not to interfere with the Receiver in the performance of the Receiver's duties. Third-parties are notified that the Receiver (not Debtors) is the party entitled to possess, sell, liquidate, and otherwise deal with Debtors' non-exempt property and once any third-party receives notice of this Order, the third-party may be subject to liability if the third-party releases property, unless directed by the Receiver or the Court.

a. All third-parties who hold Debtors' property or records are ordered to immediately notify the Receiver and to deliver the property within five (5) business days of the



Certified Document Number: 119925187 - Page 6 of 14

Receiver's demand. Notwithstanding the foregoing, any documents requested from Texas REIT, LLC or other Bankrupt Entities must comply with the Federal Rules of Bankruptcy Procedure.

b. All third-parties who owe money or other things of value to Debtors shall promptly pay or deliver same to the Receiver; *provided, however*, that the foregoing shall not alter or otherwise impact the claims administration process in the Texas REIT Bankruptcy.

c. Comply with requests for records and documents from the Receiver as set forth herein.

d. Comply with the Receiver requests and notices for stenographic or non-stenographic examinations to discuss Receivership Assets, Debtor' or third-parties' knowledge of same.

e. Anyone resisting the Receiver's order or request, based on legal or other advice, is ordered to give the full name, address, fax number, e-mail address, cell phone number, and direct telephone number for each person giving that advice and to instruct those persons to immediately contact the Receiver. Doing so waives no attorney-client communication privilege.

24) Other Judgments. The Receiver may obtain permission from this and other courts to satisfy several judgments against the same Debtor.[8] The Receiver may notice other subsequent receiverships or their controlling court of this receivership and may take legal actions necessary to abate or quash subsequent receiverships.

**Powers GRANTED unto the Receiver by this Court:**

25) Possession of Receivership Property. The Receiver shall take possession, custody, and control of Receivership Assets in Debtor' actual or constructive possession, custody, or control, or that the Receiver reasonably believes that Debtor otherwise owns or controls in the possession of third-parties.

26) Possession of Documents and Devices. The Receiver may take possession, custody and control of records, documents, and devices containing records and information that may lead to the discovery of Receivership Assets in Debtor' actual or constructive possession, custody, or control, or that Debtor otherwise owns or controls in the possession of third-parties. The Receiver may review information and documents that come into his actual or constructive possession, custody, or control.

27) Title Holds and Transfers. The Receiver is hereby granted power of attorney and authorized to sign the name of Debtor to transfer real property titled in the names of Debtor to himself (as Receiver) wherever located. *See Reeves v. Federal Sav. & Loan Ins. Corp.*, 732 S.W.2d 380, 382-83 (Tex. App.—Dallas 1987, no writ) (authorizing the turnover of real property outside the state owned by a Debtor under the jurisdiction of Texas courts). Receiver may also elect to place holds on titles to personal property (e.g., vehicles), intangible property, and file notices of

[8] *Barrera v. State*, 130 S.W.3d. 253 (Tex.App.–Houston [14th Dist.] 2004, no pet.)



Certified Document Number: 119925187 - Page 7 of 14

receivership and turnover. For the avoidance of doubt, the foregoing paragraph shall not include the right to transfer ownership interests in the Bankruptcy LLCs.

28) Value and Sale. The Receiver shall use discretion in incurring expenses associated with appraisals, evaluations, listing and advertising agreements in connection with the sale of Receivership Assets.

29) Documents from Third-Parties. The Receiver may request documents and records from third-parties in writing, without a subpoena, and set a reasonable deadline for responses within his reasonable discretion given the circumstances surrounding the request. A written request from the Receiver has the same effect and subpoena and third-parties are hereby directed to comply. The Receiver may issue subpoenas with the following language to third-parties: "Please do not disclose or notify the user of the issuance of this subpoena. Disclosure to the user could impede an investigation or obstruct justice." Third-Parties shall follow this instruction and refrain from informing the Debtors. Notwithstanding the foregoing, any documents requested from Texas REIT, LLC must comply with the Federal Rules of Bankruptcy Procedure.

30) Authority to Order Tax Returns. The Court declares that the Receiver is a person authorized to sign Internal Revenue Forms 4506-T (Request for Transcript of Tax Return) and 4506 (Request for Copy of Tax Return) to obtain the Debtor(s) tax returns. The Receiver is further authorized and empowered to take additional steps, within the discretion of the Receiver, in Order to obtain the Debtor' tax returns, e.g., logging into the Internal Revenue Service online tax return transcript system.

31) Tax Refunds. The Receiver is authorized to sign and submit documents to the Internal Revenue Service to obtain the Debtor' tax refunds or other monies due from the Department of the Treasury.

32) Redirect Postal Mail. The Receiver may redirect, read, and copy Debtor' mail, whether electronic, paper, or facsimile, or otherwise, and whether sent to a street address, telephone line, post office box, or via the internet, before and exclusive of receipt. The Receiver may establish procedures for allowing Debtor to retrieve the mail, or copies, which includes making copies available to the Debtor electronically.

33) Support and Assistance. The Receiver may hire any person, firm, or company to further remedies available to the Receiver, including hiring persons to change locks to premises belonging to Debtor; exclude persons from interfering with the Receiver's custody of the premises; moving or storing Debtor' property; collect accounts receivable; or sell Debtor' non-exempt property. The Receiver may employ counsel, at not more than $500.00 per hour, for representation and assistance in the prosecution of this Order, in defense of the Receiver, or in defense or prosecution of causes of action asserted by third-parties to Receivership Assets.

34) Checks and Transactional Instruments. The Receiver may endorse and cash checks and negotiable instruments payable to a Debtor as described herein.



Certified Document Number: 119925187 - Page 8 of 14

35) Real Property Sale. All real property sales of Receivership Assets must be individually ordered, after notice and hearing.

36) Receiver's Writs. Writs of turnover issued under this order, must not be limited in time, or have an expiration date. The clerk is ordered to issue writs on an expedited basis, upon request.

37) Service to the Receiver. All parties must serve the Receiver with copies of all motions, notices, discovery responses, correspondence, and communications between them at the Receiver's address provided above, unless the Receiver provides alternative instructions.

38) Service by the Receiver. The Receiver may serve Debtors by serving their attorney of record, or if any of them do not have an attorney of record, by sending the documents to Ali Choudhri's email (ali@jetallcapital.com), by placing the documents to be served in the Debtors' mailbox, by taping them to the Debtors' door, and/or delivering them to any adult person at the Debtors' residence or place of business. The Receiver may serve non-natural entities by placing the documents to be served in the registered agents for the entities' mailbox, taping them to the registered agent for the entities' door, or delivering them to the receptionist of the registered agent for an entity's place of business.

39) Receiver Reports. The Receiver will file reports with this Court every 90 days. Any party to this suit or subject to the Receiver's actions may file an objection to the Receiver's report. Should no objections be timely received, reports by the Receiver will be considered facts and conclusions of law. Unopposed facts will be conclusively admitted. The Court, *sua sponte,* may confirm, modify, correct, reject, reverse, or recommit the report, after it is filed, as the court may deem proper and necessary. Objections must be filed within 10 days, state each disputed ground, the reasons for each dispute, and attach the documents supporting each objection.

40) Abandonment of Receivership Assets. Notice of abandonment of receivership assets must be provided: At least ten days before any abandonment, the Receiver must file a notice of the intended sale or abandonment that describes the property to be abandoned, its price, if any, and how it will be abandoned; by first class mail to Debtor and every person who has filed a request for notice. Objections to the proposed abandonment must state the grounds and be filed within five days after the Receiver's service of the notice. If no objection is timely filed, the Receiver may abandon the property as described in the notice, without further order. If an objection is timely filed, the proposed abandonment must not be completed until the Court has decided the objection.

41) Ancillary Litigations. The Receiver may but is not required to defend or prosecute any litigation regarding the Debtors or Receivership Assets. The Receiver may intervene into lawsuits being prosecuted by Creditors and/or Debtors given the Receiver's potential interest in Debtors' assets. The Receiver is authorized to engage, employ, supervise, and compensate legal counsel for litigation. Any contingency fee agreement between the Receiver and proposed counsel must be approved by this Court.



Certified Document Number: 119925187 - Page 9 of 14

42) Compromise and/or Settlement of Claims. The Receiver is authorized to compromise and settle any disputes, claims and/or causes of action by and/or against Debtor within his discretion.

43). Receiver Expenses. The Receiver may incur reasonable expenses in furtherance of this Order and reimburse himself for same without further Order of this Court. The Receiver may advance these costs or accept an advance of costs from the Creditor(s). Nevertheless, the Receiver shall account for expenses incurred in his reports and file accountings when requesting reimbursement or fees.

44) Fees and Expenses Taxed Against Debtor(s). The Receiver's fees and expenses are taxed as costs of court against the Debtor(s).

45) Receiver Expenses and Fees. The Receiver is entitled to reimbursement of their expenses and a reasonable and customary fee. Given that the Debtors has had an opportunity to pay the judgment(s) but has not and that the judgment creditor has labored to get the judgment(s), a contingency fee is the most economical and equitable way to compensate a receiver. Competent and experienced receivers are rare. The skills and tasks performed by the Receivers are unique and separate from those ordinarily performed by lawyers, investigation, surveillance, use of law enforcement, etc. The Receivers who are licensed lawyers have a high opportunity cost insofar as they are foregoing hourly work billed against retainers and/or contingency fee work that does not pose a danger to their health, safety, and welfare as is many times the case with receivership work. For these reasons, it is presumed that a reasonable Receiver's fee is 25% of all sales of Receivership Assets that come into his actual, constructive, or legal possession, and all recoveries and credits against the Judgment(s). In the case of a full collection of the Judgment(s), the Court presumes that 33% of all sales of Receivership Assets that come into his actual, constructive, or legal possession, and all recoveries and credits against the Judgment(s) is reasonable. The presumptive fee shall be used by the Receiver to determine the amounts in excess of the Judgment(s) that the Receiver is authorized to collect. To be paid a fee or reimbursed expenses, the Receiver shall make application to this Court who shall consider the relevant factors. Notice shall be given to Debtors and Creditors. The Receiver may apply for fees or reimbursement of expenses from collections as frequently as needed within his discretion.

46) Receiver Reports and Discharge. The Receiver may file interim reports, accountings, and/or inventories to keep the Court apprised of developments, if any. The Receiver shall file accountings, as necessary, setting forth the work performed, expenses incurred, and the proposed distribution of same for reimbursement of expenses, a fee, and Creditor distributions. If the Debtor(s) file bankruptcy, the Receiver's fee shall be the greater of: (i) 25% of the value of assets held in *custodia legis* during the receivership; or (ii) a reasonable hourly rate for attorneys practicing in Harris County. The Receiver shall file a final accounting with a motion to terminate the receivership when collection is complete or the Receiver, in their discretion, determines that collection will not be successful.

47) Attorney's fees. The Court takes judicial notice of the time that is reasonable and necessary for obtaining this order and conducting other post judgment collection activities as set forth in the application to appoint receiver. Thus, Debtors are ordered to pay Creditors the amount



Certified Document Number: 119925187 - Page 10 of 14

of $5,000.00 in attorneys' fees for its fees and expenses. See Tex. Civ. Prac. & Rem. 31.002(e). Additional fees may be awarded, after notice and hearing. These fees are included in the definition of the Judgment..

48) Tex. R. Civ. P. 679a. Personal Property Rights of Debtor: The Receiver must comply with Texas Rule of Civil Procedure 679b. The Receiver to Hold Property: The Receiver must not disburse funds to Judgment Creditor or sell property within 14 days after serving Debtor with the Notice of Protected Property Rights, the Instructions for Protected Property Claim Form, and the Protected Property Claim Form approved by the Supreme Court, or within 17 days if service was by mail. If the Judgment Debtor asserts an exemption, the Receiver may only disburse funds to Judgment Creditor or sell property with Judgment Debtor's written consent or a court order.

BE IT SO ORDERED. Any and all further relief not expressly stated herein is denied.

Signed this 9th day of April 2025.

APRIL 09, 2025

Randy Wilson
Presiding Judge

Agreement to serve:

*/s/ Travis Vargo*
Travis Vargo, Texas Bar # 24047027
PROPOSED RECEIVER

4911-5780-7404.1
4918-9384-9200, v. 2

Certified Document Number: 119925187 - Page 11 of 14

## EXHIBIT A

Deadline to Comply: Debtor/Debtor shall deliver the following documents in hard copy or electronic form to the Receiver within ten (10) calendar days of this Order.

**Scope / Time Periods: Unless otherwise stated in the request, all time periods are for January 1, 2021, through the present.**

Continuing Obligation to Supplement: The turnover order is continuing in nature and must be supplemented. Should Debtor come into possession, custody, or control of anything that was ordered turned over or produced, Debtor must turn over the item within ten (10) days.

Format of Records Due to Receiver: Debtor shall produce records electronically to the Receiver by email, dropbox, or other means authorized by the Receiver. The Receiver may authorize or require paper production or otherwise (e.g., native files) within his discretion.

**As noted previously herein, nothing in this Order is intended to violate any bankruptcy stay that may be applicable. For the avoidance of doubt, this turnover request does not apply to any assets of Texas REIT, LLC or any rights Choudhri holds in Texas REIT, LLC.**

### Definitions and Instructions

a. "Account Information" means the login, username, or other account identifier along with all passwords associated with accessing the accounts.
b. "Contact Information," "telephone number," and "address," mean that person's full name, nick names, d/b/a's, and all addresses (including work and residence), all telephone numbers (including home, office, fax, pager, and cell numbers), as well as e-mail, Facebook, social networking, and web site addresses. If any of the information is lacking, provide the Contact Information for every person believed to be able to provide the missing information.
c. "Copies" means complete, legible copies.
d. "Debtor" has the meaning as defined in the Order for Turnover and Appointment of Receiver.
e. "Entity" or "Entities" includes all business organizations, whatever their form, including public or private corporations, professional corporations, limited liability companies, general and limited partnerships, joint ventures, unincorporated associations, and individual proprietorships in which Debtor or their spouse have an interest or over which they exercise management or control.
f. "Manager" refers collectively to anyone who is an officer, director, manager, or supervisor of an Entity, or who makes business decisions for the Companies.
g. "Receiver Order" means Order for Turnover and Appointment of Receiver entered by the Court.

4911-5780-7404.1
4918-9364-9200, v. 2

Certified Document Number: 119925187 - Page 12 of 14

h. "Produce," means to deliver. If an item is not listed in this exhibit, the Judgment Debtor or witness must turn over the item in the time period specified by the demand.
i. "Records" and "Documents" are mutually inclusive, and include the records, documents, and items formally ordered turned over, or requested by the Receiver. Requests regarding property or Documents owned or possessed by Debtor also apply to Debtor's spouse, brothers, sisters, children, mother, father, accountants, attorneys, advisors, clients, employees, partners, or co-owners of small businesses, if the requests involve documents that Debtor would be required to turnover if Debtor had possessed or controlled the item.
j. "Shareholder" includes the owners, members, partners, and others who have ownership rights in any Entity.
k. "Turnover" includes to create a list or report if no list or report currently exists.
l. "Turnover" also means to convey the information that is available to you, not merely the information that is of your present knowledge, including providing information, Documents or Records that are known by you, or that are in your possession, or the possession of your family, employees, co-workers, co-owners or agents, including your attorney or any agent or investigator of your attorney.
m. "Witness" means any person who is not Debtor but who may have information, Records or Documents relating to Debtor or their spouse.
n. "You" means to Debtor identified on page one (1) of the attached Order.
o. Document labeling and identification.
a. "All" is presumed to apply to every item. If a type of item is listed, this Order means all similar items.
b. Each turned over Document, file, or photograph must be given a consecutive identification number and produced in the condition and order of arrangement in which it existed when the application for this Order was filed, including all file labels, dividers, or associated identifying markers. An index must be provided, if the documents are large, or if the Receiver requests one.
c. Creating lists and compilations. To the extent that the Order or this exhibit requires Debtor to compile or create a list or document, Debtor is ordered to do so.
d. Lost Document, Records, or tangible things. If Debtor, or Debtor's wife, attorneys, agents or representatives, had possession or control of a Document, Record, or tangible thing ordered turned over which has been lost, destroyed, purged, or is not presently in their possession or control, the item must be identified and described in detail and the circumstances surrounding the loss, destruction, purging, or separation from their possession or control must also be provided, including the dates the circumstances occurred.
e. No Document, file or photograph requested by the Receiver may be altered, changed, modified, disposed of, or destroyed.

Any other capitalized terms not defined on Exhibit A shall have the same meaning as defined in the Receiver Order.

**For the avoidance of doubt, the documents that Debtors are required to produce shall NOT include documents solely within the possession of Texas REIT, LLC.**

**<u>Items to Due to the Receiver from Debtor</u>**



Certified Document Number: 119925187 - Page 13 of 14

1) The original IBC Note.
2) The original IBC Deed of Trust.
3) All Documents reflecting transfer of the IBC Note from and/or to Debtors.
4) All Documents reflecting transfer of the IBC Deed of Trust from and/or to Debtors.
5) All Communications by and between Texas REIT, LLC and/or either of Debtors.
6) All Documents reflecting payment by Texas REIT, LLC to either of Debtors.
7) All Documents that calculate the amount due on the IBC Note, including any debits or credits to the amount owed on the IBC Note and any interest accrued on the IBC Note.
8) All Documents reflecting payment received by Debtors from any tenant at the real property owned by Texas REIT, LLC (a "Tenant") and where the payment was deposited or sent.
9) All statements from all accounts into which payments relating to the IBC Note have been deposited and/or maintained.
10) All bank account statements of Debtors.
11) All credit card statements of Debtors.
12) All documents evidencing and/or reflecting all amounts paid by Debtors to any person or entity in the last three years.
13) All direct communications between Debtors and any Tenant.
14) All financial statements of Debtor, including but not limited to, profit and loss, balance sheets, cash flow statements, general ledgers, and journal entries.
15) All documents evidencing and/or reflecting any asset owned by Debtors within the last three years.
16) All documents evidencing and/or reflecting any asset sold, assigned, conveyed, transferred and/or gifted by Debtors within the last three years.
17) For all of the Companies (for the avoidance of doubt, Companies does not include Texas REIT, LLC ):
   a. Each membership agreement and all other company agreements or organizational documents.
   b. All documents evidencing and/or reflecting to whom any payment from any Tenant renting real property owned by such company was made, and where the payment was deposited or sent.
   c. All statements from all accounts into which payments to the limited liability company were made.
   d. All bank account statements.
   e. All credit card statements of Debtors.
   f. All documents evidencing and/or reflecting all amounts paid by such company to Choudhri and/or any entity owned and/or controlled by Choudhri.
   g. All financial statements of each such company, including but not limited to, profit and loss, balance sheets, cash flow statements, general ledgers, and journal entries.
   h. All documents evidencing and/or reflecting any asset owned by such company within the last three years.
   i. All documents evidencing and/or reflecting any asset sold, assigned, conveyed, transferred and/or gifted by such company within the last three years



Certified Document Number: 119925187 - Page 14 of 14

I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this September 8, 2025

Certified Document Number: 119925187 Total Pages: 14

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT 2

FILED
Marilyn Burgess
District Clerk
APR 08 2025
Time: 12:08
By
Harris County, Texas
Deputy
Shannon North-González

2012-27197-D

Pg-14
MODIX

**Cause No. 2012-27197-D**

| | | |
|---|---|---|
| **MOKARAM-LATIF WEST LOOP, LTD.** *Plaintiff,* | § | **IN THE DISTRICT COURT** |
| **vs.** | § | |
| **ALI CHOUDHRI and ANGEL VALLE** *Defendants,* | § | **HARRIS COUNTY, TEXAS** |
| **vs.** | § | |
| **ALI MOKARAM,** *Intervenor* | § | **333rd JUDICIAL DISTRICT** |

**AMENDED ORDER (2) GRANTING TURNOVER, CHARGING ORDER AND APPOINTMENT OF RECEIVER AGAINST JUDGMENT DEBTORS**

On the date of entry below, this Court considered Mokaram's Second Application to Appoint Collection Receiver over Judgment Debtors (the "Motion"), and having reviewed the application, evidence and arguments, the Court enters the following amended order, which amends the prior order appointing a receiver issued on March 31, 2025:

**The Court DEFINES that:**

1) "Mokaram" refers to Plaintiff (Plaintiff-in-Intervention) Ali Mokaram, c/o his attorney of record, D. Scott Funk.

2) "Nemeti" refers to Plaintiff (Plaintiff-in-Intervention) Erica L. Nemeti, c/o her attorney of record, David Thornton.

3) "Creditors" refers to Mokaram and Nemeti (and their assigns).

4) "Choudhri" refers to Defendant Ali Choudhri.

5) "Dalio I" refers to Defendant Dalio Holdings I, LLC.

6) "Dalio II" refers to Defendant Dalio Holdings II, LLC.

7) "Debtors" refers to Choudhri, Dalio I and Dalio II.

8) "Judgment" refers to the Final Judgment Upon AAA Arbitration Award entered by this Court in the above referenced case on November 7, 2023 in favor of Mokaram against Debtors, jointly and severally, in the amount of $3,467,217.20, plus pre-judgment interest at the per diem rate of $430.38 from October 30, 2023, until November 7, 2023, and plus post-judgment interest

4921-1300-1779.1

Certified Document Number: 119951170 - Page 1 of 14

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

at the rate of 5% compounded annually on all such amounts from the date of November 7, 2023, until the judgment is paid in full; and in favor Nemeti against Debtors, jointly and severally, in the amount of $294,151.85, plus pre-judgment interest at the per diem rate of $39.78 from October 30, 2023, until November 7, 2023, and plus post-judgment interest at the rate of 5% compounded annually on all such amounts from the date of November 7, 2023. "Judgment" also includes the attorneys' fees and expenses awarded to Mokaram in the Order signed by the Court on March 6, 2025, in the total amount of $355,721.30, and the amount of any legal fees, costs and/or expenses awarded by the court to Mokaram herein or hereafter. No amounts have been collected and the full amount of the Judgment remains due and owing.

9) "Receiver," who is an agent of this Court, refers to Travis B. Vargo (State Bar No. 24047027), 12012 Wickchester, Suite 670, Houston, Texas 77079; (713) 524-2441 telephone; (832) 779-8838 facsimile; tvargo@vargolawfirm.com.

10) "Texas REIT Bankruptcy" refers to that certain bankruptcy case styled *In re Texas REIT, LLC*, Case No. 24-10120-SMR, pending in the Bankruptcy Court.

11) "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, Austin Division.

12) "Stay Order" refers to that certain Order Granting in Part Creditors' Expedited Motion for Relief from Stay (Document #524) entered in the Texas REIT Bankruptcy on March 20, 2025.

13) "Dalio Receivership Assets" refers to all assets owned by Dalio I and/or Dalio II, as well as all right, title, ownership, and interest in and to all of the following:

a. The "IBC Note," which refers to that Real Estate Lien Note dated May 28, 2008, payable by Texas REIT, LLC to International Bank of Commerce in the original principal amount of $8,640,000.00 (see *Ex. 1 to Motion*).
b. The "IBC Deed of Trust," which refers to that Deed of Trust, Assignment of Rents, Security Agreement and Financing Statement dated May 28, 2008, executed by Texas REIT, LLC in favor of International Bank of Commerce to secure the IBC Note (see *Ex. 1 to Motion*).
c. All funds, cash and/or amounts in any bank account or other account collected and/or received by Dalio I or Dalio II, including but not limited to those arising out of or relating to the IBC Note.
d. All rights, claims and causes of action that Dalio I and/or Dalio II has against Texas REIT, LLC, including but not limited to claims for amounts owed under the IBC Note and/or the IBC Deed of Trust.
e. All claims and causes of action that Dalio I and/or Dalio II has against WCW Houston Properties, LLC ("WCW"), including but not limited to those asserted in Cause No. 2017-35320, and that were removed to the Bankruptcy Court.
f. The defense of all claims and causes of action asserted by WCW against Dalio I and/or Dalio II, including but not limited to those asserted in Cause No. 2017-35320, and that were removed to the Bankruptcy Court.



Certified Document Number: 119951170 - Page 2 of 14

14) "Choudhri Receivership Assets" includes all assets owned by Choudhri, except his ownership interests in any limited liability company.

15) "Receivership Assets" means the Dalio Receivership Assets and the Choudhri Receivership Assets. For the avoidance of doubt, Receivership Assets does not include the assets of Texas REIT, LLC, the Bankrupt LLCs, or any interest Choudhri holds in Texas REIT, LLC.

16) "Choudhri LLC's" shall mean each limited liability company in which Choudhri owns a membership interest, including but not limited to the following, but excluding his interest in the Bankrupt LLCs (defined below):

a) ARABELLA PH 3201 LLC
b) 2727 Kirby 26L LLC
c) 9201 Memorial Drive LLC
d) 50BH Acquisition, LLC
e) BDFI LLC
f) Forest Legacy LLC
g) Jetall GP, LLC
h) Jetall Capital, LLC
i) Jetall Croix Properties LLC
j) JETALL/CROIX GP, LLC
k) JETALL CONSTRUCTION & DEVELOPMENT GP, INC
l) Jetall Investment and Realty Inc
m) Meandering Bend LLC
n) MCITBE LLC
o) OTISCO RDX, LLC
p) Otisco Rdx
q) PBAC 507 Holdings LLC
r) Vanguard Realty Partners LLC
s) VGRP Holdings LLC
t) Milestone Capital CRE 1, LLC
u) Milestone Capital CRE 2, LLC
v) Milestone Capital CRE 3, LLC
w) QB Loop Property, LP
x) Memorial Glen Cove, LLC

17) "Bankrupt LLCs" means each limited liability company in which Choudhri owns a membership interest that is presently subject to a bankruptcy proceeding, including but not limited to:

a) Texas REIT, LLC
b) 1001 WL LLC
c) Galleria West Loop Investments LLC
d) Jetall Companies Inc.



Certified Document Number: 119951170 - Page 3 of 14

e) NIA ATX LLC
f) SAL ATX LLC
g) Maya J ATX LLC

**The Court FINDS that:**

18) This court has jurisdiction for this proceeding and can proceed in granting the relief set forth herein immediately. *See* Tex. Civ. Prac. & Rem. § 31.002(a); *Childre v. Great Sw. Life Ins. Co.*, 700 S.W.2d 284, 289 (Tex. App.—Dallas 1985, no writ) (creditor does not have to wait 30 days before turnover can be granted because a receivership is in the nature of an attachment and garnishment, so the waiting period of Rule 627 is not required).

19) The Judgment is valid, and the amount of the Judgment is unsatisfied by Debtors. *See* Tex. Civ. Prac. & Rem. § 34.001.

20) Pursuant to this Order, the Receiver will have a judicial lien on all non-exempt Receivership Assets of Debtors that are the subject of this Order, regardless of whether the Receiver takes actual possession. No one-not even a lien holder with a prior filed deed of trust-can sell property held in *custodia legis* by a duly appointed Receiver without first obtaining approval from the Court in which the Receivership is pending; *provided, however*, that the foregoing shall not impact or otherwise limit the Bankruptcy Court's jurisdiction to consider and approve the sale or other disposition of any assets of Texas REIT, LLC in the Texas REIT Bankruptcy.[1] Any unauthorized transfer of property in the custody of a Receiver is *not merely voidable, it is* void.[2] Thus, any attempt by Debtors to transfer any nonexempt property after the turnover order has been signed is void, and any conveyance of property in the custody of a Receiver without approval by the court has no effect upon the Receivership and the accomplishment of its purposes.[3]

21) For the avoidance of doubt, this Order is not intended to, and does not, assert jurisdiction over Texas REIT, LLC or any of its rights, assets, real or personal property, lawsuits, claims, defenses and/or matters constituting property of its bankruptcy estate. Moreover, this Order is not intended to, and does not, assert jurisdiction over any interest Choudhri holds in Texas REIT, LLC. This Order is subject to all orders of the Texas REIT Bankruptcy, including the Stay Order. Subject to any approval required by the Bankruptcy Court, Receiver may assert rights and claims on behalf of Dalio against Texas REIT, LLC and/or WCW in the Texas REIT Bankruptcy.

**THEREFORE, the Court ORDERS the relief as set out below:**

22) Appointment / Bond. After taking the oath of office, the Receiver shall be authorized, subject to the control of this Court, to do any and all acts necessary to the proper and lawful conduct of said Receivership. No bond is required of the Receiver because this is a Chapter 31 post-judgment appointment. *Children v. Great Sw. Life Ins. Co.*, 700 S.W.2d 284, 289 (Tex. App.—Dallas 1985, no writ) (noting that a bond is not required in a Chapter 31 receivership and

[1] *First S. Props.*, at 341; *Huffmeyer v. Mann*, 49 S.W.3d 554,560 (Tex.Civ.App.-Corpus Christi, 2001).
[2] *First S. Props.*, at 341.
[3] *T.H. Neel v. WL. Fuller*, 557 S.W2d 73, 76 (Tex. 1977).



Certified Document Number: 119951170 - Page 4 of 14

further noting that "since the underlying obligation has been determined by final judgment, the Debtors will not be harmed if no bond, or merely a nominal bond, is required.").

23) Turnover. The Receivership Assets are hereby turned over to the Receiver. Debtors is enjoined from selling, transferring, gifting, destroying, disposing of, or otherwise encumbering the Receivership Assets. The Receiver is now the legal and equitable owner of the Receivership Assets, regardless of whether Receiver takes actual possession of them.

24) Charging Orders. Pursuant to Texas Business Organizations Code Section 101.112, the Court hereby issues this charging order against all membership interests owned by Choudhri in the Choudhri LLC's (collectively, the "Companies"). All Companies and Choudhri shall pay to the Receiver any distributions and/or proceeds that would otherwise be due from such Companies to Choudhri until satisfaction of the Judgment is made in full. Choudhri may not receive any payment from any of the Companies, directly or indirectly, until the Judgment is paid in full and/or without written consent from the Court. For the avoidance of doubt, the foregoing paragraph does not apply to the Bankrupt LLCs.

25) Debtors' Responsibilities to Receiver and the Court. Debtors are Ordered to:

a. Deliver Receivership Assets to the Receiver, including by executing all documents to transfer ownership of same as requested by Receiver.

b. Deliver electronic copies of the items described in Exhibit A attached hereto as part of this Order within ten (10) calendar days, as well as all documents subsequently requested by Receiver in writing, also by providing within ten (10) calendar days.

c. Identify and provide a list in writing to Receiver of all property owned by Debtors that they contend are exempt from collection and turnover within ten (10) calendar days.

d. Comply with written requests of the Receiver. If Debtors believe that the Receiver's requests are inappropriate, Debtors must first comply, then seek protection from the Court, after giving full notice to the Receiver in writing and attempting to resolve the issues without Court intervention.

26) Debtors' Business. All authority and power of Debtors to manage and operate the business of Debtors is vested in the Receiver and no decision may be made or carried out without the express approval of the Receiver.[4] This order supersedes the authority of any officers, directors or managers of Debtors. For the avoidance of doubt, the foregoing paragraph shall not apply to Choudhri's ability to manage and operate the business Texas REIT, LLC, which is subject to the jurisdiction of the Bankruptcy Court.

27) Peace Officers Responsibilities to Receiver and the Court. Every constable, deputy constable, sheriff, deputy sheriff, and other peace officer may accompany Receiver to locations designated by Receiver where Receiver believes that Debtors' assets or records may be located.

[4] *Id.* "Texas law asserts that Receiver has the full rights that the corporation had."



Certified Document Number: 119951170 - Page 5 of 14

The peace officers are ordered to prevent interference with Receiver's carrying out any duty under this order or interference with property in Receiver's control or subject to this order.

28) Exclusive Jurisdiction Over Related Disputes and Lawsuits.

a. Custodia Legis. Receivership Assets are in *custodia legis*. No other court or forum has jurisdiction to adjudicate rights relating to the Receivership Assets because this Court maintains exclusive, sole authority for assets held in *custodia legis* by it.[5] Notwithstanding anything herein to the contrary, the Bankruptcy Court shall continue to have exclusive jurisdiction over any disputes pending or otherwise brought in the Texas REIT Bankruptcy, including disputes between Dalio I and/or Dalio II and WCW.

b. Immunity. Receiver and persons engaged or employed by him are not liable for loss or damage incurred by any person or entity by reason of any for any act performed or omitted to be performed by Receiver or those engaged or employed by Receiver for the discharge of their duties and responsibilities for the Receivership, including exercising control over Receivership Assets. This Court retains the exclusive jurisdiction, to the exclusion of any other court, over the Receiver for the purpose of determining whether the Receiver is immune for any action taken by Receiver. Any suit or claim against the Receiver must be brought in this appointing Court and/or transferred to this Court for adjudication; however, this paragraph 28(b) does not limit the jurisdiction of the Bankruptcy Court.

c. Exempt Property Disputes. If there is any dispute whether an asset of Debtors is non-exempt, or property of Debtors (as opposed to a third party), the Receiver is authorized to take custody or control of the asset pending objections, if any, and/or adjudication by this Court. Any of the Debtors claiming an exemption shall file an objection or statement with this Court that claims the exemption, cites the legal and factual grounds for the exemption, and describes the property with sufficient specificity that a constable can levy upon it.

d. Disputed Third Party Rights to Property. This Court shall maintain exclusive jurisdiction over fraudulent transfer lawsuits brought by the Receiver or Creditors; *provided, however*, that the Bankruptcy Court will continue to have exclusive jurisdiction over any claims brought against Texas REIT, LLC. The Court shall further maintain exclusive jurisdiction over any litigation pertaining to the ownership interests disputed during the Receiver's actions involving a third party; *provided, however*, that the Bankruptcy Court will continue to have exclusive jurisdiction over any claims brought against Texas REIT, LLC and the litigation currently pending between WCW, Dalio I, and Dalio II in the Texas REIT Bankruptcy and related adversary proceedings. If any third party alleges or claims that an asset in the possession of the

[5] *See Tex. Am. Bank/West Side v. Haven*, 728 S.W.2d 102, 104 (Tex. App.—Fort Worth 1987, writ dismissed for want of jurisdiction) ("If a court of competent jurisdiction, federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty.") (quoting *Palmer v. Texas*, 212 U.S. 119 (1909)), *Chimp Haven, Inc. v. Primarily Primates, Inc.*, 281 S.W.3d 629, 633 (Tex. App.—San Antonio 2009, no pet); *see, also Neel v. Fuller*, 557 S.W.2d 73, 76 (Tex. 1977); *Lauraine v. Ashe*, 109 Tex. 69, 191 S.W. 563, 565 (1917).



Certified Document Number: 119951170 - Page 6 of 14

Receiver or otherwise subject to this order is not or should not be a Receivership asset, they must file a verified claim or intervention into this turnover proceeding, that attaches admissible evidence substantiating their claim to Receivership Assets in *custodia legis,* with this court within twenty (20) days of their knowledge of the earlier of (1) this order or (2) the Receivership's collection, control, possession of the property; *provided, however*, that the foregoing shall not apply to Texas REIT, LLC or the Bankruptcy Court. The Court may require a disputing party to post a bond to cover the Receiver's efforts and additional costs associated with the dispute if the Court cannot promptly adjudicate the claim.

29) Third Parties' Responsibilities to Receiver and the Court. Every person with actual notice of this order is ordered not to interfere with property in Receiver's control or subject to this order and is ordered not to interfere with Receiver in the performance of Receiver's duties. Notwithstanding anything herein to the contrary, the foregoing shall not apply to the Bankruptcy Court's ability to oversee and administer the Texas REIT Bankruptcy, including Texas REIT, LLC's plan confirmation and/or liquidation of its real or personal property or any property of the bankruptcy estate. Third parties are notified that Receiver (not Debtors) is the party entitled to possess, sell, liquidate, and otherwise deal with Debtors' non-exempt property and once any third party receives notice of this Order, the third party may be subject to liability if the third party releases property, unless directed by Receiver or the Court.

a. All third parties who hold Debtors' property or records are ordered to immediately notify Receiver and to deliver the property within five (5) business days of Receiver's demand. Notwithstanding the foregoing, any documents requested from Texas REIT, LLC must comply with the Federal Rules of Bankruptcy Procedure.

b. All third parties who owe money or other things of value to Debtors shall promptly pay or deliver same to Receiver; *provided, however*, that the foregoing shall not alter or otherwise impact the claims administration process in the Texas REIT Bankruptcy.

c. Comply with requests for records and documents from the Receiver as set forth herein.

d. Comply with Receiver's requests and notices for stenographic or non-stenographic examinations to discuss Receivership Assets, Debtors or third parties' knowledge of same.

e. Anyone resisting Receiver's order or request, based on legal or other advice, is ordered to give the full name, address, fax number, e-mail address, cell phone number, and direct telephone number for each person giving that advice and to instruct those persons to immediately contact Receiver. Doing so waives no attorney-client communication privilege.

30) Other Judgments. The Receiver may obtain permission from this and other courts to satisfy several judgments against the same Debtors.[6] The Receiver may notice other subsequent

[6] *Barrera v. State*, 130 S.W.3d. 253 (Tex.App.--Houston [14th Dist.] 2004, no pet.)

4921-1300-1779.1

Certified Document Number: 119951170 - Page 7 of 14

receiverships or their controlling court of this receivership and may take legal actions necessary to abate or quash subsequent receiverships.

**Powers GRANTED unto the Receiver by this Court:**

31) Possession of Receivership Property. Receiver shall take possession, custody, and control of Receivership Assets in Debtors' actual and/or constructive possession, custody, or control, or that the Receiver reasonably believes that Debtors otherwise own or control in the possession of third parties.

32) Possession of Documents and Devices. Receiver may take possession, custody and control of records, documents, and devices containing records and information that may lead to the discovery of Receivership Assets in Debtors actual or constructive possession, custody, or control, or that Debtors otherwise owns or controls in the possession of third parties. Receiver may review information and documents that come into his actual or constructive possession, custody, or control.

33) Title Holds and Transfers. Receiver is hereby granted power of attorney and authorized to sign the name of Debtors to transfer real property titled in the names of Debtors to himself (as Receiver) wherever located. *See Reeves v. Federal Sav. & Loan Ins. Corp.*, 732 S.W.2d 380, 382-83 (Tex. App.—Dallas 1987, no writ) (authorizing the turnover of real property outside the state owned by a Debtors under the jurisdiction of Texas courts). Receiver may also elect to place holds on titles to personal property (e.g., vehicles), intangible property, and file notices of receivership and turnover. For the avoidance of doubt, the foregoing paragraph shall not include the right to transfer ownership interests in the Bankruptcy LLCs.

34) Value and Sale. Receiver shall use discretion in incurring expenses associated with appraisals, evaluations, listing and advertising agreements in connection with the sale of Receivership Assets.

35) Documents from Third Parties. Receiver may request documents and records from third parties in writing, without a subpoena, and set a reasonable deadline for responses within his reasonable discretion given the circumstances surrounding the request. A written request from the Receiver has the same effect and subpoena and third parties are hereby directed to comply. The Receiver may issue subpoenas with the following language to third parties: "Please do not disclose or notify the user of the issuance of this subpoena. Disclosure to the user could impede an investigation or obstruct justice." Third Parties shall follow this instruction and refrain from informing the Debtors. Notwithstanding the foregoing, any documents requested from Texas REIT, LLC must comply with the Federal Rules of Bankruptcy Procedure.

36) Authority to Order Tax Returns. The Court declares that Receiver is a person authorized to sign Internal Revenue Forms 4506-T (Request for Transcript of Tax Return) and 4506 (Request for Copy of Tax Return) to obtain the Debtors tax returns. Receiver is further authorized and empowered to take additional steps, within the discretion of Receiver, in Order to obtain the Debtors' tax returns, e.g., logging into the Internal Revenue Service online tax return transcript system.



Certified Document Number: 119951170 - Page 8 of 14

37) Tax Refunds. Receiver is authorized to sign and submit documents to the Internal Revenue Service to obtain the Debtors' tax refunds or other monies due from the Department of the Treasury.

38) Redirect Postal Mail. Receiver may redirect, read, and copy Debtors' mail, whether electronic, paper, or facsimile, or otherwise, and whether sent to a street address, telephone line, post office box, or via the internet, before and exclusive of receipt. Receiver may establish procedures for allowing Debtors to retrieve the mail, or copies, which includes making copies available to the Debtors electronically.

39) Support and Assistance. The Receiver may hire any person, firm, or company to further remedies available to Receiver, including hiring persons to change locks to premises belonging to Debtor; exclude persons from interfering with Receiver's custody of the premises; moving or storing Debtors' property; collect accounts receivable; or sell Debtors' non-exempt property. Receiver may employ counsel, at not more than $500.00 per hour, for representation and assistance in the prosecution of this Order, in defense of the Receiver, or in defense or prosecution of causes of action asserted by third parties to Receivership Assets.

40) Checks and Transactional Instruments. The Receiver may endorse and cash checks and negotiable instruments payable to a Debtors as described herein.

41) Real Property Sale. All real property sales of Receivership Assets must be individually ordered, after notice and hearing.

42) Receiver's Writs. Writs of turnover issued under this order, must not be limited in time, or have an expiration date. The clerk is ordered to issue writs on an expedited basis, upon request.

43) Service to Receiver. All parties must serve Receiver with copies of all motions, notices, discovery responses, correspondence, and communications between them at the Receiver's address provided above, unless the Receiver provides alternative instructions.

44) Service by Receiver. The Receiver may serve Debtors by serving their attorney of record, or if any of them do not have an attorney of record, by sending the documents to Ali Choudhri's email (ali@jetallcapital.com), by placing the documents to be served in the Debtors' mailbox, by taping them to the Debtors' door, and/or delivering them to any adult person at the Debtors' residence or place of business. The Receiver may serve non-natural entities by placing the documents to be served in the registered agents for the entities' mailbox, taping them to the registered agent for the entities' door, or delivering them to the receptionist of the registered agent for an entity's place of business.

45) Receiver Reports. The Receiver will file reports with this Court every 90 days. Any party to this suit or subject to the Receiver's actions may file an objection to the Receiver's report. Should no objections be timely received, reports by the Receiver will be considered facts and conclusions of law. Unopposed facts will be conclusively admitted. The Court, *sua sponte,* may confirm, modify, correct, reject, reverse, or recommit the report, after it is filed, as the court may



Certified Document Number: 119951170 - Page 9 of 14

deem proper and necessary. Objections must be filed at least three (3) business days before submission or hearing on Receiver's motion, state each disputed ground, the reasons for each dispute, and attach the documents supporting each objection.

46) Abandonment of Receivership Assets. Notice of abandonment of Receivership Assets must be provided: At least ten days before any abandonment, Receiver must file a notice of the intended sale or abandonment that describes the property to be abandoned, its price, if any, and how it will be abandoned; by first class mail to Debtors and every person who has filed a request for notice. Objections to the proposed abandonment must state the grounds and be filed within five days after Receiver's service of the notice. If no objection is timely filed, Receiver may abandon the property as described in the notice, without further order. If an objection is timely filed, the proposed abandonment must not be completed until the Court has decided the objection.

47) Ancillary Litigations. Receiver may but is not required to defend or prosecute any litigation regarding the Debtors or Receivership Assets. Receiver may intervene into lawsuits being prosecuted by Creditors and/or Debtors given Receiver's potential interest in Debtors' assets. Receiver is authorized to engage, employ, supervise, and compensate legal counsel for litigation. Any contingency fee agreement between Receiver and proposed counsel must be approved by this Court.

48) Compromise and/or Settlement of Claims. Receiver is authorized to compromise and settle any disputes, claims and/or causes of action by and/or against Debtors within his discretion.

49) Receiver Expenses. Receiver may incur reasonable expenses in furtherance of this Order and reimburse himself for same without further Order of this Court. Receiver may advance these costs or accept an advance of costs from the Creditors. Nevertheless, Receiver shall account for expenses incurred in his reports and file accountings when requesting reimbursement or fees.

50) Fees and Expenses Taxed Against Debtors. Receiver's fees and expenses are taxed as costs of court against the Debtors, jointly and severally.

51) Receiver Expenses and Fees. The Receiver is entitled to reimbursement of their expenses and a reasonable and customary fee. Given that the Debtors has had an opportunity to pay the judgment(s) but has not and that the judgment creditor has labored to get the judgment(s), a contingency fee is the most economical and equitable way to compensate a receiver. Competent and experienced receivers are rare. The skills and tasks performed by Receivers are unique and separate from those ordinarily performed by lawyers, investigation, surveillance, use of law enforcement, etc. Receivers who are licensed lawyers have a high opportunity cost insofar as they are foregoing hourly work billed against retainers and/or contingency fee work that does not pose a danger to their health, safety, and welfare as is many times the case with receivership work. For these reasons, it is presumed that a reasonable Receiver's fee is 25% of all sales of Receivership Assets that come into his actual, constructive, or legal possession, and all recoveries and credits against the Judgment(s). In the case of a full collection of the Judgment(s), the Court presumes that 33% of all sales of Receivership Assets that come into his actual, constructive, or legal possession, and all recoveries and credits against the Judgment(s) is reasonable. The presumptive

fee shall be used by the Receiver to determine the amounts in excess of the Judgment(s) that the Receiver is authorized to collect. To be paid a fee or reimbursed expenses, the Receiver shall make application to this Court who shall consider the relevant factors. Notice shall be given to Debtors and Creditors. Receiver may apply for fees or reimbursement of expenses from collections as frequently as needed within his discretion.

52) Receiver Reports and Discharge. Receiver may file interim reports, accountings, and/or inventories to keep the Court apprised of developments, if any. Receiver shall file accountings, as necessary, setting forth the work performed, expenses incurred, and the proposed distribution of same for reimbursement of expenses, a fee, and Creditor distributions. If the Debtor(s) file bankruptcy, Receiver's fee shall be the greater of: (i) 25% of the value of assets held in *custodia legis* during the receivership; or (ii) a reasonable hourly rate for attorneys practicing in Harris County. Receiver shall file a final accounting with a motion to terminate the receivership when collection is complete or the Receiver, in their discretion, determines that collection will not be successful.

53) Attorneys' fees. The Court takes judicial notice of the time that is reasonable and necessary for obtaining this order and conducting other post judgment collection activities as set forth in the application to appoint receiver. Thus, Debtors are ordered to pay Creditors the amount of $5,000.00 in attorneys' fees for its fees and expenses. See Tex. Civ. Prac. & Rem. 31.002(e). Additional fees may be awarded, after notice and hearing. These fees are included in the definition of the Judgment.

54) Tex. R. Civ. P. 679a. Personal Property Rights of Debtor: Receiver must comply with Texas Rule of Civil Procedure 679b. Receiver to Hold Property: Receiver must not disburse funds to Judgment Creditor or sell property within 14 days after serving Debtors with the Notice of Protected Property Rights, the Instructions for Protected Property Claim Form, and the Protected Property Claim Form approved by the Supreme Court, or within 17 days if service was by mail. If the Judgment Debtors asserts an exemption, Receiver may only disburse funds to Judgment Creditor or sell property with Judgment Debtors' written consent or a court order.

BE IT SO ORDERED. Any and all further relief not expressly stated herein is denied.

Signed this 8th day of April, 2025.

APR 0 8 2025

Randy Wilson
Presiding Judge

Agreement to serve:

/s/ Travis Vargo

Travis Vargo, Texas Bar # 24047027
PROPOSED RECEIVER

4921-1300-1779.1

Certified Document Number: 119951170 - Page 11 of 14

## EXHIBIT A

Deadline to Comply: Debtors shall deliver the following documents in hard copy or electronic form to the Receiver within ten (10) calendar days of this Order.

**Scope / Time Periods: Unless otherwise stated in the request, all time periods are for January 1, 2021, through the present.**

Continuing Obligation to Supplement: The turnover order is continuing in nature and must be supplemented. Should Debtors come into possession, custody, or control of anything that was ordered turned over or produced, Debtors must turn over the item within ten (10) days.

Format of Records Due to Receiver: Debtors shall produce records electronically to the Receiver by email, dropbox, or other means authorized by the Receiver. The Receiver may authorize or require paper production or otherwise (e.g., native files) within his discretion.

**For the avoidance of doubt, this turnover request does not apply to any assets of Texas REIT, LLC or any rights Choudhri holds in Texas REIT, LLC.**

### Definitions and Instructions

a. "Account Information" means the login, username, or other account identifier along with all passwords associated with accessing the accounts.
b. "Contact Information," "telephone number," and "address," mean that person's full name, nick names, d/b/a's, and all addresses (including work and residence), all telephone numbers (including home, office, fax, pager, and cell numbers), as well as e-mail, Facebook, social networking, and web site addresses. If any of the information is lacking, provide the Contact Information for every person believed to be able to provide the missing information.
c. "Copies" means complete, legible copies.
d. "Debtor" has the meaning as defined in the Order for Turnover and Appointment of Receiver.
e. "Entity" or "Entities" includes all business organizations, whatever their form, including public or private corporations, professional corporations, limited liability companies, general and limited partnerships, joint ventures, unincorporated associations, and individual proprietorships in which Debtors or their spouse have an interest or over which they exercise management or control.
f. "Manager" refers collectively to anyone who is an officer, director, manager, or supervisor of an Entity, or who makes business decisions for the Companies.
g. "Receiver Order" means Order for Turnover and Appointment of Receiver entered by the Court.
h. "Produce," means to deliver. If an item is not listed in this exhibit, the Judgment Debtors or witness must tum over the item in the time period specified by the demand.



Certified Document Number: 119951170 - Page 12 of 14

i. "Records" and "Documents" are mutually inclusive, and include the records, documents, and items formally ordered turned over, or requested by the Receiver. Requests regarding property or Documents owned or possessed by Debtors also apply to Debtors' spouse, brothers, sisters, children, mother, father, accountants, attorneys, advisors, clients, employees, partners, or co-owners of small businesses, if the requests involve documents that Debtors would be required to turnover if Debtors had possessed or controlled the item.
j. "Shareholder" includes the owners, members, partners, and others who have ownership rights in any Entity.
k. "Turnover" includes to create a list or report if no list or report currently exists.
l. "Turnover" also means to convey the information that is available to you, not merely the information that is of your present knowledge, including providing information, Documents or Records that are known by you, or that are in your possession, or the possession of your family, employees, co-workers, co-owners or agents, including your attorney or any agent or investigator of your attorney.
m. "Witness" means any person who is not Debtors but who may have information, Records or Documents relating to Debtors or their spouse.
n. "You" means to Debtors identified on page one (1) of the attached Order.
o. Document labeling and identification.
a. "All" is presumed to apply to every item. If a type of item is listed, this Order means all similar items.
b. Each turned over Document, file, or photograph must be given a consecutive identification number and produced in the condition and order of arrangement in which it existed when the application for this Order was filed, including all file labels, dividers, or associated identifying markers. An index must be provided, if the documents are large, or if the Receiver requests one.
c. Creating lists and compilations. To the extent that the Order or this exhibit requires Debtors to compile or create a list or document, Debtors is ordered to do so.
d. Lost Document, Records, or tangible things. If Debtor, or Debtors' wife, attorneys, agents or representatives, had possession or control of a Document, Record, or tangible thing ordered turned over which has been lost, destroyed, purged, or is not presently in their possession or control, the item must be identified and described in detail and the circumstances surrounding the loss, destruction, purging, or separation from their possession or control must also be provided, including the dates the circumstances occurred.
e. No Document, file or photograph requested by the Receiver may be altered, changed, modified, disposed of, or destroyed.

Any other capitalized terms not defined on Exhibit A shall have the same meaning as defined in the Receiver Order.

**For the avoidance of doubt, the documents that Debtors are required to produce shall NOT include documents solely within the possession of Texas REIT, LLC.**

**<u>Items to Due to the Receiver from Debtor</u>**
1) The original IBC Note.
2) The original IBC Deed of Trust.

4921-1300-1779.1

Certified Document Number: 119951170 - Page 13 of 14

3) All Documents reflecting transfer of the IBC Note from and/or to Debtors.
4) All Documents reflecting transfer of the IBC Deed of Trust from and/or to Debtors.
5) All Communications by and between Texas REIT, LLC and/or either of Debtors.
6) All Documents reflecting payment by Texas REIT, LLC to either of Debtors.
7) All Documents that calculate the amount due on the IBC Note, including any debits or credits to the amount owed on the IBC Note and any interest accrued on the IBC Note.
8) All Documents reflecting payment received by Debtors from any tenant at the real property owned by Texas REIT, LLC (a "Tenant") and where the payment was deposited or sent.
9) All statements from all accounts into which payments relating to the IBC Note have been deposited and/or maintained.
10) All bank account statements of Debtors.
11) All credit card statements of Debtors.
12) All documents evidencing and/or reflecting all amounts paid by Debtors to any person or entity in the last three years.
13) All direct communications between Debtors and any Tenant.
14) All financial statements of Debtor, including but not limited to, profit and loss, balance sheets, cash flow statements, general ledgers, and journal entries.
15) All documents evidencing and/or reflecting any asset owned by Debtors within the last three years.
16) All documents evidencing and/or reflecting any asset sold, assigned, conveyed, transferred and/or gifted by Debtors within the last three years.
17) For all of the Companies (for the avoidance of doubt, Companies does not include the Bankruptcy LLCs):

a. Each membership agreement and all other company agreements or organizational documents.
b. All documents evidencing and/or reflecting to whom any payment from any Tenant renting real property owned by such company was made, and where the payment was deposited or sent.
c. All statements from all accounts into which payments to the limited liability company were made.
d. All bank account statements.
e. All credit card statements of Debtors.
f. All documents evidencing and/or reflecting all amounts paid by such company to Choudhri and/or any entity owned and/or controlled by Choudhri.
g. All financial statements of each such company, including but not limited to, profit and loss, balance sheets, cash flow statements, general ledgers, and journal entries.
h. All documents evidencing and/or reflecting any asset owned by such company within the last three years.
i. All documents evidencing and/or reflecting any asset sold, assigned, conveyed, transferred and/or gifted by such company within the last three years.



Certified Document Number: 119951170 - Page 14 of 14



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this September 8, 2025

Certified Document Number: 119951170 Total Pages: 14



Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Label Matrix for local noticing
0539-3
Case 26-32580-mvl11
Northern District of Texas
Dallas
Tue Jul 7 15:04:53 CDT 2026

Houston ISD
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

1100 Commerce Street
Room 1254
Dallas, TX 75242-1305

City of Houston
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Houston City College
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Houston ISD
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Naegeli Deposition & Trial
111 SW 5th Ave, Ste 2020
Portland, OR 97204-3623

Shahnaz Choudhri
11511 Gallant Ridge Ln
Houston, TX 77082-6836

Behrooz P. Vida -SBRA V
3000 Central Dr.
Bedford, TX 76021-3671

City of Houston
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

MCITBE LLC
2232 Swift Blvd
Houston, TX 77030-1125

City of Houston
Attn: Tara L. Grundemeier
c/o Linebarger Goggan Blair & Sampson, L
PO Box 3064
Houston, TX 77253-3064

Cleanair Lawncare
PO Box 925867
Houston, TX 77292-5867

Houston Community College System
Attn: Tara L. Grundemeier
c/o Linebarger Goggan Blair & Sampson, L
PO Box 3064
Houston, TX 77253-3064

Houston Independent School District
Attn: Tara L. Grundemeier
c/o Linebarger Goggan Blair & Sampson, L
PO Box 3064
Houston, TX 77253-3064

Reliant Energy
1301 McKinney St
Houston, TX 77010-3095

United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-0996

Mark P Yablon
Yablon Law PLLC
2777 Allen Parkway
Ste Flr 10
Houston, TX 77019-2165

Houston City College
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Security State Bank & Trust
P.O. Box 471
Fredericksburg, TX 78624-0471

City of Houston
c/o Linebarger Goggan Blair & Sampson, L
Attn: Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

(p)HARRIS COUNTY ATTORNEY'S OFFICE
P O BOX 2848
HOUSTON TX 77252-2848

Houston Community College System
c/o Linebarger Goggan Blair & Sampson, L
Attn: Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Houston Independent School District
c/o Linebarger Goggan Blair & Sampson, L
Attn: Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Security State Bank & Trust
501 Landa Street
New Braunfels, TX 78130-6109

Yablon Law PLLC
2777 Allen Parkway, Floor 10
Houston, TX 77019-2165

Russel Gribble
Security State Bank & Trust
501 Landa Street
New Braunfels, TX 78130-6109

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

24-10102-zsa Doc #11-12 Filed 10/20/26 Entered 10/20/26 15:30:37 Exhibit D Pg 40 of 51

Harris County Attorney's Office
Attn: Property Tax Division
PO Box 2848
Houston, TX 77252-2848

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)26-32580-11

(u)Centerpoint

(u)Houston Water Department

(u)UNITED STATES BANKRUPTCY COURTNORTHERN DIS

| | |
|---|---|
| End of Label Matrix | |
| Mailable recipients | 26 |
| Bypassed recipients | 4 |
| Total | 30 |

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
TRIAL COURT CAUSE NO. 2026-63841

| | | |
|---|---|---|
| CHOUDHRI, ALI | ) | IN THE DISTRICT COURT |
| | ) | |
| vs. | ) | HARRIS COUNTY, TEXAS |
| | ) | |
| ROSEN, ALAN | ) | 333 JUDICIAL DISTRICT |

---

**TEMPORARY RESTRAING ORDER HEARING (EXCERPT)**

---

On the 10th day of September, 2026, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Tracy Good, Judge Presiding, held in Houston, HARRIS County, Texas.

Proceedings reported by computerized stenotype machine.

**APPEARANCES**

MS. GIA SAMAVATI
SBOT NO. 2407666
Trial Ninjas
PO Box 131803
Houston, TX 77219-1803
Telephone: 281-999-9990
E-mail: gia@trialninjas.com
Counsel for Arabella

MR. TRAVIS VARGO
SBOT NO. 24047027
Vargo Law Firm, PC
12012 Wickchester Lane
Suite 670
Houston, TX 77079-1235
Telephone: 713-524-2441
E-mail: tvargo@vargolawfirm.com
Counsel for Intervenor Plaintiff

*ALSO PRESENT:*

Ali Choudhri, Plaintiff
Justin Anthony, for Arabella Entities
Felipe Guevara, for Constable Rosen
Courtney Carlson, for Constable Rosen
Michael Poynter, Mr. Vargo
Courtney Vincent
Le Thuy

(Open Court; Parties appeared via Zoom)

(Excerpt begins)

16:58:08 THE COURT: Well, thank you and that's why
16:58:08 I raised the provisions in 22 -- paragraph 22 --
16:58:12 because, to that extent, you and Mr. Steely have issues
16:58:17 and there's a remedy afforded to you.

16:58:21 But I want to get to Mr. Vargo.

Mr. Vargo, there have been some -- some serious allegations, you know, levied your way. And you know that we're on the record. So, if you would like Mr. Poynter to argue these points or are more comfortable -- I mean, it is completely up to you -- but, to the extent that you testify, I have to bring you under oath. And I don't know if you want to go that far right now given the allegations made against you, but I want to afford you the opportunity to speak.

Or would you like Mr. Poynter to talk on your behalf?

16:59:07 MR. VARGO: Well, we're here to argue the
16:59:11 merits of the motion. So, I'm going to defer to
16:59:15 Mr. Poynter. I'm not backing down from addressing any
16:59:18 of these allegations if Your Honor has specific
16:59:21 questions or concerns about what you just heard.

I'll say that, I find it most interesting that Mr. Choudhri, in general, has stated that I'm,

basically, a henchman out there operating above and outside of the law; but Justice Wilson, four other judges in the Harris County District Courthouse, both Courts of Appeals have all sided with my orders and my interpretations of the order.

Mr. Poynter's going to go through Federal bankruptcy court orders, that also bolster my reading of the order. And, so, although Mr. Choudhri's analysis is -- and his "linguancy" skills are high -- but there are gross mischaracterizations of what has occurred --

THE COURT: And, again --

MR. VARGO: -- procedurally, factually --

THE COURT: And, again, that's why I'm asking you -- or we can go down that road where I don't know -- Mr. Poynter, as your lawyer, can elicit testimony; or perhaps the -- because if the only -- the only relief I hear Mr. Choudhri asking for is a continuation of the time period established by Judge Aston.

And if that -- you know, even if I do that, it would probably end on Monday, which would be a date that you guys would be in the 133rd. So, my question is this, do you want to continue this route of making an argument against the TRO; or would you like to just defer and hold everything at bay for three days so

that these issues can be raised in the 133rd?

MR. VARGO: Well, two things. Number one, Judge, he's not being removed from his home prior to Monday.

THE COURT: Well, no. That's not my -- my thing is, I just want to make sure that if that's the case, then you have no objection to there being a pause for three days; yes?

MR. VARGO: My objection is that Mr. Choudhri weaponizes any and all rulings by any Court and then tries to utilize them in the next court to say that you agreed with him.

THE COURT: No, I'm not saying anything about agreeing. The only thing I'm asking, again -- because let me tell you what he's doing -- well, let me tell you what I read under Section 8 of the orders established by -- I don't even want to get on that route -- I don't want to make -- I don't want to --

All I'm asking you is this, are you objecting to there being a pause for three days in order for you guys to get in front of the Presiding Judge of the 133rd? If the answer is, "I don't object to that, Judge, because nothing's going to happen," then this hearing is over.

MR. VARGO: So, long as there's no orders

17:02:42 coming out of this, I'm not removing him from the home.
17:02:42 So, I have no objections.
17:02:50 THE COURT: All right. You got that on
17:02:51 the record. You're not removing him from the home. You
17:02:52 have no objections, right?
17:02:52 MR. VARGO: Prior to?
17:02:54 THE COURT: Monday the 14th.
You will not remove Mr. Choudhri or his
mother from the home until a hearing that's scheduled
for the 14th in the 133rd; is that correct, yes?
17:03:09 MR. VARGO: Yes.
17:03:10 THE COURT: All right. Thank y'all very
17:03:11 much.
17:03:12 Mr. Choudhri, nothing's going to happen
17:03:15 until Monday. And, so, at that time, you can go ahead
17:03:18 and make your presentation. All right?
17:03:25 MR. CHOUDHRI: Your Honor, just one thing?
17:03:32 MR. VARGO: Thank you, Judge.
17:03:32 MS. SAMAVATI: Thank you.
17:03:33 THE COURT: Wait. Wait. Wait. Don't
17:03:33 leave yet.
17:03:33 MR. CHOUDHRI: I just like to -- it's very
17:03:33 simple --
17:03:33 THE COURT: Mr. Choudhri? Mr. Choudhri?
17:03:34 Again, your presentation was well-rounded. I understand

and I accept and I hear exactly what you're saying. And, again, the issue that you had was, you did not want there to be a situation where somebody comes after you or your mother in your home until you actually have a full-fledged hearing before the court.

MR. CHOUDHRI: Yes.

THE COURT: You got that.

MR. CHOUDHRI: Yes, Your Honor.

THE COURT: So, we're done.

MR. CHOUDHRI: And I just ask if I can get an expedited transcript of this because --

THE COURT: No worries.

MR. CHOUDHRI: -- this acknowledgment by Mr. Vargo -- and one last request, Your Honor, this is something my mom's been asking me and doesn't understand -- what is the claim of the amount that Mr. Vargo's claiming --

THE COURT: That, I'm not entertaining.

The only thing I'm doing right now, is to get both you and your mom -- and I wish her the best in her health -- the ability to -- for this weekend, y'all have nothing to worry about as it relates to somebody evicting you guys out of your home. All right.

MR. CHOUDHRI: So, so, so I want to get clarity, Your Honor, because I need to tell her because

she can't sleep. Can you tell me, is it going to be -- the earliest -- can he just -- can you tell me the earliest that he's going to evict?

THE COURT: No, the deal is --

MR. CHOUDHRI: Is it Monday or Tuesday?

THE COURT: Nothing will happen until after the presiding judge holds your hearing on the 14th. So, the same presentation you're making to me, I would imagine you're going to make the same presentation to the presiding judge of the 133rd. All right?

MR. CHOUDHRI: Yes, Your Honor.

THE COURT: All right.

So, is it Ms. Harrison?

(Court Reporter clarification)

THE COURT: All right. Mr. Choudhri, Ms. Harrelson is the Court Reporter. She's going to attach herself to the case in Zoom.

Could you, Mr. Choudhri, not share your screen anymore with me?

MR. CHOUDHRI: Oh, I apologize. I forgot.

THE COURT: All right. And, so, I want to get on the record from everybody, so we have a clear understanding that nobody within the hearing of my voice is going to do anything to effect the eviction of Mr. Choudhri over the weekend and that the issue related

17:05:59 to his home will be presented to the 133rd on the 14th.

All right. I got everybody here. We're all in agreement and got it on the record. Thank y'all so very much. Y'all have a good weekend.

17:06:15 MR. VARGO: Thank you, Your Honor.

17:06:17 MS. SAMAVATI: Thank you, Your Honor.

(Proceedings concluded)

STATE OF TEXAS

COUNTY OF HARRIS

I, Katelyn Harrelson, Deputy Official Court Reporter in and for the 333 District Court of Harris, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $200.00 and was paid by Mr. Ali Choudhri.

s/Katelyn Harrelson

Katelyn Harrelson, CSR
Texas CSR 9164
Deputy Official Court Reporter
333 District Court
Harris County, Texas
801 Congress, Suite 305
Houston, Texas 77002
Telephone: 832-683-7814
Expiration: 11/30/2026

*[To be inserted before filing: VIDEO — recorded at 4521 San Felipe, Unit 3201, Sept. 15, 2026 — lodged with the Clerk in conventional form (USB)]*